## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SOUTHCROSS ENERGY PARTNERS, L.P., *et al.*, | ) | Case No. 19-10702 (MFW) |
|  | ) |  |
| Debtors.[1] | ) | Jointly Administered |
|  | ) | **RE: D.I. 14** |

**INTERIM ORDER, PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, AND 507, (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED SUPERPRIORITY POST-PETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of Southcross Energy Partners, L.P. ("**Southcross**" or the "**Borrower**"), Southcross Energy Partners GP, LLC ("**Southcross GP**"), and Southcross's direct and indirect subsidiaries, each of which is a debtor and debtor in possession (collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy**

---

[1] The debtors and debtors in possession in these Chapter 11 Cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Southcross Energy Partners, L.P. (5230); Southcross Energy Partners GP, LLC (5141); Southcross Energy Finance Corp. (2225); Southcross Energy Operating, LLC (9605); Southcross Energy GP LLC (4246); Southcross Energy LP LLC (4304); Southcross Gathering Ltd. (7233); Southcross CCNG Gathering Ltd. (9553); Southcross CCNG Transmission Ltd. (4531); Southcross Marketing Company Ltd. (3313); Southcross NGL Pipeline Ltd. (3214); Southcross Midstream Services, L.P. (5932); Southcross Mississippi Industrial Gas Sales, L.P. (7519); Southcross Mississippi Pipeline, L.P. (7499); Southcross Gulf Coast Transmission Ltd. (0546); Southcross Mississippi Gathering, L.P. (2994); Southcross Delta Pipeline LLC (6804); Southcross Alabama Pipeline LLC (7180); Southcross Nueces Pipelines LLC (7034); Southcross Processing LLC (0672); FL Rich Gas Services GP, LLC (5172); FL Rich Gas Services, LLC (0219); FL Rich Gas Utility GP, LLC (3280); FL Rich Gas Utility, LP (3644); Southcross Transmission, LP (6432); T2 EF Cogeneration Holdings LLC (0613); and T2 EF Cogeneration LLC (4976). The debtors' mailing address is 1717 Main Street, Suite 5200, Dallas, TX 75201.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms further below in this Interim Order, the DIP Documents, or the Motion, as applicable (as such terms are defined herein).

Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), and the Local Rules of Bankruptcy Practice and Procedure of the

United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of

interim and final orders, among other things:

(i)      authorizing the Borrower to obtain, and the Borrower's Debtor subsidiaries (collectively, in their capacity as such, the "**Guarantors**" and, together with the Borrower, the "**Loan Parties**") to guaranty,  debtor-in-possession credit financing in an aggregate principal amount of up to $255 million (the "**DIP Financing**") to be funded by certain of the Prepetition Term Lenders (in their capacity as lenders under the DIP Facilities, the "**DIP Lenders**") under a secured term loan and letter of credit facility (the "**DIP Facility**") consisting of (A)  new money term loans (the "**DIP Term Loans**")) in an aggregate principal amount of up to $72.5 million, (B) letter of credit term loans (the "**DIP LC Loans**") in an aggregate principal amount of up to $55 million, the proceeds of which will be used to cash collateralize letters issued (or deemed issued) under a letter of credit sub-facility in an aggregate principal amount of up to $55 million (the "**DIP L/C Sub-Facility**")  and (C) roll-up term loans (the "**DIP Roll-Up Loans**" and, together with the DIP Term Loans and the DIP LC Loans, the "**DIP Loans**"), which shall be subject and subordinate to the DIP Term Loans and DIP LC Loans, to refinance dollar-for-dollar Prepetition Term Loans held by the DIP Lenders in the aggregate amount of $127.5 million;

(ii)     authorizing the Loan Parties, in connection with the DIP Facility,  to (A) execute and enter into the Superpriority Secured Debtor-in-Possession Credit Agreement, among the Loan Parties, the DIP Lenders, certain Prepetition Revolving Lenders, as issuers of DIP Letters of Credit (the "**DIP L/C Issuers**"), and Wilmington Trust, National Association, as administrative and collateral agent (collectively, solely in such capacities, the "**DIP Agent**" and, together with the DIP Lenders, the "**DIP Secured Parties**"), substantially in the form attached hereto as <u>Exhibit A</u> (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP Credit Agreement**" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments and amendments executed and delivered in connection therewith, including the Approved Budget (including any permitted variances), the "**DIP Documents**") and (B) to perform all such other and further acts as may be required in connection with the DIP Documents;

(iii)    granting to the DIP Agent, for the benefit of the DIP Lenders, valid, enforceable, non-avoidable and automatically and fully perfected liens and security interests, subject only to the Carve-Out and the Permitted Senior

Liens, to secure the DIP Obligations, which liens and security interests shall have the rankings and priorities set forth herein;

(iv) granting superpriority administrative claims to the DIP Secured Parties payable from, and having recourse to, all prepetition and post-petition property of the Loan Parties' estates and all proceeds thereof (other than Avoidance Actions, but, upon entry of the Final Order, including Avoidance Proceeds), subject to the Carve-Out and the Permitted Senior Liens;

(v) authorizing the Loan Parties (A) upon entry of this Interim Order, to incur in a single draw on the Closing Date, DIP Term Loans in an aggregate principal amount of up to $30 million (the "**Initial DIP Term Loans**") and DIP LC Loans in an aggregate principal amount of up to $55 million (the incurrence of such loans upon entry of this Interim Order, the "**Interim Financing**") and (B) upon entry of the Final Order, to incur in a single draw on or within 30 days after the entry of the Final Order, DIP Term Loans in an aggregate principal amount of $42.5 million (the "**Delayed Draw DIP Loans**"), in each case subject to the terms and conditions set forth in the DIP Documents, this Interim Order, and the Final Order;

(vi) authorizing the Debtors (A) upon entry of this Interim Order, to use proceeds of the DIP LC Loans to cash collateralize (in the amount of 103% of the face amount) the DIP Letters of Credit and to deem the Prepetition Letters of Credit to be cancelled and reissued under the DIP L/C Sub-Facility (the "**Prepetition L/C Refinancing**") and (B) upon entry of the Final Order, to use the DIP Roll-Up Loans to refinance and discharge dollar-for-dollar Prepetition Term Loans held by the DIP Lenders in the aggregate amount of $127.5 million (the "**Prepetition Term Loan Refinancing**" and, together with the Prepetition L/C Refinancing, the "**Prepetition Debt Refinancing**");

(vii) authorizing the Debtors' use of the proceeds of the DIP Facility pursuant to the DIP Credit Agreement and other the DIP Documents, including the Approved Budget (subject to permitted variances);

(viii) authorizing the Debtors to continue to use the Cash Collateral (subject to the Approved Budget and permitted variances thereunder) and all other Prepetition Collateral, and the granting of the Adequate Protection Obligations to the Prepetition Secured Parties with respect to, *inter alia*, such use of their Cash Collateral to the extent of diminution in the value of the Prepetition Collateral (including Cash Collateral);

(ix) approving certain stipulations by the Debtors with respect to the Prepetition Loan Documents and the Prepetition Collateral as set forth herein;

3

(x)     modifying the automatic stay as set forth herein and the DIP Documents, to the extent necessary, to implement and effectuate the foregoing and the other terms and provisions of the DIP Documents, the Interim Order and Final Order; and

(xi)    scheduling a final hearing (the "**Final Hearing**"), to be held within 30 days after the Petition Date, to consider entry of the Final Order approving the DIP Facilities and use of Cash Collateral, as set forth in the DIP Motion and the DIP Documents; and

the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C.

§ 1334 and the *Amended Standing Order of Reference from the United States District Court for*

*the District of Delaware*, dated February 29, 2012; and the Court having authority to hear the

matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the

requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C.

§ 157(b)(2); and due and proper notice of the Motion and opportunity for a hearing on the

Motion having been given to the parties listed therein, and it appearing that no other or further

notice need be provided; and the Court having reviewed and considered the Motion, the D'Souza

Declaration and the Howe Declaration; and the Court having held an interim hearing on the

Motion (the "**Interim Hearing**"); and the Court having determined that the legal and factual

bases set forth in the Motion and at the Interim Hearing establish just cause for the relief granted

herein; and the Court having found that the relief requested in the Motion being in the best

interests of the Debtors, their creditors, their estates, and all other parties in interest; and the

Court having determined that the relief requested in the Motion is necessary to avoid immediate

and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003;

and upon all of the proceedings had before the Court; and after due deliberation and sufficient

cause appearing therefor;

4

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.       *Petition Date*.  On April 1, 2019 (the "**Petition Date**"), each of the Debtors filed a separate voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "**Court**") commencing the Chapter 11 Cases.

B.       *Debtors in Possession*.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.       *Committee Formation*.  As of the date hereof, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") has not appointed a statutory committee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (if appointed, a "**Committee**").

D.       *Jurisdiction and Venue*.  The Court has core jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue of

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Error! Unknown document property name.

the Chapter 11 Cases and related proceedings is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

E.    *Notice*.  The Interim Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  Adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and under the circumstances, no other or further notice of the Motion or the entry of this Interim Order shall be required, except as set forth in paragraph 38 below.  The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

F.    *Debtors' Stipulations*.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of a Committee or any other party in interest (subject to the limitations thereon contained in paragraphs 19 and 20 below), the Debtors acknowledge, admit, stipulate and agree that:

(i)    Prepetition Revolving Credit Facility.  Pursuant to that certain Third Amended & Restated Revolving Credit Agreement, dated as of August 4, 2014 and amended six times through August 10, 2018 (as amended, supplemented, or otherwise modified from time to time in accordance with the terms thereof, the "**Prepetition Revolving Credit Agreement**" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments, and amendments executed and delivered in connection therewith, the "**Prepetition Revolving Facility Documents**"), among Southcross, as borrower, Wells Fargo Bank, National Association, as administrative agent (in such capacity, the "**Prepetition Revolving Agent**"), and the lenders party thereto (the "**Prepetition Revolving Lenders**" and, together with the Prepetition Revolving Agent, the "**Prepetition Revolving Secured Parties**"), the

6

Prepetition Revolving Lenders provided revolving credit and other financial accommodations to, and issued letters of credit for the account of, Southcross (the "**Prepetition Revolving Facility**"), which Prepetition Revolving Facility has been guaranteed on a joint and several basis by each of the Guarantors.

(ii)     <u>Prepetition Revolving Debt</u>.  As of the Petition Date, the Borrower and the Guarantors were justly and lawfully indebted and liable to the Prepetition Revolving Secured Parties, without defense, counterclaim, or offset of any kind, in respect of (a) outstanding loans in the aggregate principal amount of not less than $81.1 million, (b) undrawn Letters of Credit (as defined in the Prepetition Revolving Credit Agreement) (the "**Prepetition Letters of Credit**") in the amount of not less than $25.9 million, and (c) three Secured Hedging Agreements (as defined in the Prepetition Revolving Credit Agreement) with a notional value of not less than $275 million, pursuant to and in accordance with the terms of, the Prepetition Revolving Facility Documents (collectively, such indebtedness together with accrued and unpaid interest thereon and fees, expenses, charges, indemnities, and other obligations incurred in connection therewith as provided in the Prepetition Revolving Facility Documents, the "**Prepetition Revolving Debt**").

(iii)     <u>Prepetition Term Facility</u>.  Pursuant to that certain Term Loan Credit Agreement, dated as of August 4, 2014 (as amended, supplemented, or otherwise modified from time to time in accordance with the terms thereof, the "**Prepetition Term Loan Credit Agreement**" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments, and amendments executed and delivered in connection therewith, the "**Prepetition Term Facility Documents**"), among Southcross, as borrower, Wilmington Trust, N.A., as successor administrative agent (in such capacity,

Error! Unknown document property name.

the "**Prepetition Term Agent**" and, together with the Prepetition Revolving Agent, the "**Prepetition Agents**"), and the lenders party thereto (the "**Prepetition Term Lenders**" and, together with the Prepetition Term Agent, the "**Prepetition Term Secured Parties**" and, together with the Prepetition Revolving Secured Parties, the "**Prepetition Secured Parties**"), the Prepetition Term Lenders provided term loans to Southcross (the "**Prepetition Term Facility**" and, together with the Prepetition Revolving Facility, the "**Prepetition Secured Credit Facilities**"), which Prepetition Term Facility has been guaranteed on a joint and several basis by each of the Guarantors.

(iv)    <u>Prepetition Term Debt</u>.  As of the Petition Date, the Borrower and the Guarantors were justly and lawfully indebted and liable to the Prepetition Term Secured Parties, without defense, counterclaim or offset of any kind, in respect of loans (the "**Prepetition Term Loans**") in the aggregate principal amount of not less than $ $429,140,515.29, pursuant to and in accordance with the terms of the Prepetition Term Facility Documents (collectively, such indebtedness together with accrued and unpaid interest thereon and fees, expenses, charges, indemnities, and other obligations incurred in connection therewith as provided therein, the "**Prepetition Term Debt**" and, together with the Prepetition Revolving Debt, the "**Prepetition Secured Debt**").

(v)    <u>Validity of Prepetition Secured Debt</u>.  (a) The Prepetition Secured Debt constitutes legal, valid, binding, and non-avoidable obligations of the Borrower and the Guarantors, enforceable in accordance with the terms of the Prepetition Secured Debt Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code) and (b) no portion of the Prepetition Secured Debt or any payments made to the Prepetition Secured Parties or applied to or paid on account of the

Error! Unknown document property name.

obligations owing under the Prepetition Secured Debt Documents prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law.

(vi)    <u>Prepetition Liens</u>.  The liens and security interests granted to the Prepetition Secured Parties (the "**Prepetition Liens**"), pursuant to and in connection with the Prepetition Secured Debt Documents, are (a) valid, binding, perfected, enforceable liens and security interests in the Shared Collateral (as defined in the Intercreditor Agreement) (the "**Prepetition Collateral**"), (b) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense, or claim under the Bankruptcy Code or applicable non-bankruptcy law, and (c) as of the Petition Date, subject only to Permitted Senior Liens permitted under the Prepetition Secured Debt Documents.

(vii)    <u>No Control</u>.  None of the Prepetition Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Prepetition Secured Debt Documents.

(viii)    <u>No Claims or Causes of Action</u>.  No claims, counterclaims or causes of action of any kind or nature exist against, or with respect to, the Prepetition Secured Parties under any agreements by and among the Debtors and any such party that is in

9

existence as of the Petition Date, whether related to the Prepetition Secured Debt

Documents, any other agreement, the Debtors or otherwise.

G.      *Findings Regarding the DIP Financing and Use of Cash Collateral.*

(i)      Good and sufficient cause has been shown for the entry of this Interim

Order.

(ii)     The Loan Parties have an immediate and critical need to obtain the DIP

Financing and to continue to use the Prepetition Collateral (including "cash collateral"

within the meaning of section 363(a) of the Bankruptcy Code ("**Cash Collateral**")), in

each case on an interim basis, in order to permit, among other things, the orderly

continuation of the operation of their businesses, to maintain business relationships with

vendors, suppliers and customers, to make payroll, to make capital expenditures, to

administer these Chapter 11 Cases, to cash collateralize the Prepetition Letters of Credit

(in the amount of 103% of the face amount of issued and outstanding Prepetition Letters

of Credit), and to satisfy other working capital and operational needs.  The access of the

Loan Parties to sufficient working capital and liquidity through the use of Cash Collateral

and other Prepetition Collateral, incurrence of new indebtedness under the DIP

Documents and other financial accommodations provided under the DIP Documents are

necessary and vital to the preservation and maintenance of the going concern values of

the Loan Parties and to a successful reorganization of the Loan Parties.

(iii)    The Loan Parties are unable to obtain financing on more favorable terms

from sources other than the DIP Lenders under the DIP Documents and are unable to

obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy

Code as an administrative expense.  The Loan Parties are also unable to obtain secured

10

credit allowable under section 364(c)(1), 364(c)(2), or 364(c)(3) of the Bankruptcy Code without granting to the DIP Secured Parties the DIP Liens and the DIP Superpriority Claims and incurring the Adequate Protection Obligations, in each case subject to the Carve-Out and the terms and conditions set forth in this Interim Order and in the DIP Documents.

(iv)    Based on the Motion, the Howe Declaration, the D'Souza Declaration, and the record presented to the Court at the Interim Hearing, the terms of the DIP Financing and the terms on which the Loan Parties may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to this Interim Order and the DIP Documents are fair and reasonable, reflect the Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(v)    Absent order of the court and the provision of adequate protection, consent of the Prepetition Secured Parties is required to the Loan Parties' use of Cash Collateral and the other Prepetition Collateral.  The Prepetition Secured Parties have consented, are deemed, pursuant to that certain Intercreditor Agreement, dated as of August 4, 2014, by and among Southcross, the Prepetition Agents, and the other grantors party thereto (the "**Intercreditor Agreement**" and, together with the Prepetition Revolving Facility Documents and the Prepetition Term Facility Documents, the "**Prepetition Secured Debt Documents**"), to have consented or have not objected to the Loan Parties' use of Cash Collateral and the other Prepetition Collateral, and the Loan Parties' entry into the DIP Documents solely in accordance with and subject to the terms and conditions in this Interim Order and the DIP Documents.

Error! Unknown document property name.

(vi)     The DIP Financing and the use of the Prepetition Collateral have been negotiated in good faith and at arm's length among the Loan Parties and the DIP Secured Parties, and all of the Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Documents, including, without limitation, all "Obligations" (as defined in the DIP Documents), in each case owing to the DIP Secured Parties or any of their respective banking affiliates (collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the DIP Secured Parties and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.

(vii)    The Prepetition Secured Parties have acted in good faith regarding the DIP Financing and the Loan Parties' continued use of the Prepetition Collateral (including Cash Collateral) to fund the administration of the Loan Parties' estates and continued operation of their businesses (including the incurrence and payment of the Adequate Protection Obligations and the granting of the Adequate Protection Liens), in accordance with the terms hereof, and the Prepetition Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of sections 363(m) and 364(e), as may be applicable, of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

Error! Unknown document property name.

(viii)    The Prepetition Secured Parties are entitled to the adequate protection provided in this Interim Order as and to the extent set forth herein pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral are fair and reasonable, reflect the Loan Parties' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the use of the Prepetition Collateral; *provided* that nothing in this Interim Order or the other DIP Documents shall (a) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral other than on the terms set forth in this Interim Order and in the context of the DIP Financing authorized by this Interim Order, (b) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior), or (c) prejudice, limit, or otherwise impair the rights of any of the Prepetition Secured Parties, subject to any applicable provisions of the Intercreditor Agreement, to seek new, different, or additional adequate protection for any diminution in value of their interests in the Prepetition Collateral from and after the Petition Date or assert the interests of any of the Prepetition Secured Parties and the rights of any other party in interest to object to such relief are hereby preserved.

(ix)    Use of the DIP LC Loans, upon entry of the Interim Order, to cash collateralize all Letters of Credit (in the amount of 103% of the face amount) and use of the DIP Roll-Up Loans, upon entry of the Final Order and the funding of the Delayed Draw DIP Term Loans, to refinance and discharge the DIP Lenders' Prepetition Term Loans (in an amount equal to the DIP Term Loans and DIP LC Loans provided by such

Error! Unknown document property name.

DIP Lenders under the DIP Facility) reflects the Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties.

(x)      The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Rules.  Absent granting the relief set forth in this Interim Order, the Loan Parties' estates will be immediately and irreparably harmed.  Consummation of the DIP Financing and the use of the Prepetition Collateral (including Cash Collateral) in accordance with this Interim Order and the DIP Documents are, therefore, in the best interests of the Loan Parties' estates and consistent with the Loan Parties' exercise of their fiduciary duties.

H.      *Permitted Senior Liens; Continuation of Prepetition Liens.*  Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Senior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, or a Committee (if appointed), to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Senior Lien and/or security interests.  The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Senior Lien and is expressly subject to the DIP Liens.  The Prepetition Liens, and the DIP Liens that prime the Prepetition Liens, are continuing liens and the DIP Collateral is and will continue to be encumbered by such liens in light of the integrated nature of the DIP Facilities, the DIP Documents, and the Prepetition Secured Debt Documents.

I.      *Immediate Entry*.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).

**IT IS HEREBY ORDERED THAT:**

1.    *Interim Financing Approved.*  The interim relief requested in the Motion is granted and the use of Cash Collateral on an interim basis, the Interim Financing and the Prepetition L/C Refinancing are authorized and approved, in each case in accordance with the terms and conditions set forth in the DIP Documents, the Approved Budget (including any permitted variances) and this Interim Order.  Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.

2.    *Authorization of the DIP Financing and the DIP Documents.*

(a)    The Loan Parties are hereby authorized to execute, deliver, enter into and, as applicable, perform all of their obligations under the DIP Documents and such other and further acts as may be necessary, appropriate, or desirable in connection therewith, in each case in accordance with and subject to the terms of this Interim Order and the DIP Documents.  The Borrower is hereby authorized to borrow money and obtain letters of credit pursuant to the DIP Credit Agreement, subject to any limitations on borrowing under the DIP Documents, which shall be used for all purposes permitted under the DIP Documents, including, without limitation, to pay certain costs, fees, and expenses related to the Chapter 11 Cases, to pay the Adequate Protection Payments, to cash collateralize the Prepetition Letters of Credit (in the amount of 103% of the face amount of issued and outstanding Prepetition Letters of Credit), and to fund working capital and for general corporate purposes of the Loan Parties during the Chapter 11 Cases, in each case, subject to the Approved Budget (including any permitted variances) and in accordance with this

15

Interim Order and the DIP Documents and the Guarantors are hereby authorized to guaranty the DIP Obligations.

(b)     In furtherance of the foregoing and without further approval of the Court, each Debtor is authorized to perform all acts, to make, execute, and deliver all instruments, certificates, agreements, and documents (including, without limitation, the execution or recordation of security agreements, mortgages, and financing statements), and to pay all fees in connection with or that may be reasonably required, necessary, or desirable for the Loan Parties' performance of their obligations under or related to the DIP Financing, including, without limitation:

(i)     the execution and delivery of, and performance under, each of the DIP Documents;

(ii)     the execution and delivery of, and performance under, one or more amendments, waivers, consents, or other modifications to and under the DIP Documents, in each case, in such form as the Loan Parties, the DIP Agent and the requisite DIP Lenders and (if required under the DIP Documents) the DIP L/C Issuers may agree, it being understood that no further approval of the Court shall be required for any authorizations, amendments, waivers, consents, or other modifications to and under the DIP Documents (and any fees and other expenses, amounts, charges, costs, indemnities, and other obligations paid in connection therewith) that do not (A) shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder, (B) increase existing fees or add new fees thereunder (excluding, for the avoidance of doubt, any amendment, consent or waiver fee), or (C) shorten the

16

case milestones set forth in Section 8.23 of the DIP Credit Agreement.  The foregoing shall be without prejudice to the Loan Parties' right to seek approval from the Court of any material modification or amendment on an expedited basis;

(iii)    the non-refundable payment to the DIP Agent and/or the DIP Lenders, as the case may be, of all reasonable and documented fees (which fees shall be, and shall be deemed to have been, approved upon entry of this Interim Order and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise) and any amounts due (or that may become due) in respect of the indemnification obligations, in each case referred to in the DIP Documents (and in any separate letter agreements between any or all of the Loan Parties, on the one hand, and any of the DIP Secured Parties, on the other, in connection with the DIP Financing) and the costs and expenses as may be due from time to time, including, without limitation, reasonable and documented fees and expenses of the professionals retained by any of the DIP Agent and DIP Lenders, in each case, as provided for in the DIP Documents, whether or not such fees or expenses arose prior to or after the Petition Date without the need to file retention motions or fee applications or to provide notice to any party; and

(iv)    the performance of all other acts necessary, appropriate, or desirable under or in connection with the DIP Documents.

Error! Unknown document property name.

3.    *Prepetition Debt Refinancing*.  Upon entry of this Interim Order, in accordance with paragraph 9 below, the Debtors are hereby authorized to use the proceeds of the DIP LC Loan to cash collateralize the Prepetition Letters of Credit (in the amount of 103% of the face amount of issued and outstanding Prepetition Letters of Credit) and the Prepetition Letters of Credit will be deemed to have been cancelled and reissued as DIP Letters of Credit in their full amounts and without modification of the terms of the Prepetition Letters of Credit other than their deemed issuance as DIP Letters of Credit under the DIP L/C Sub-Facility.  Upon entry of the Final Order, the Debtors shall use the DIP Roll-Up Loans to refinance and discharge the DIP Lenders' Prepetition Term Loans (in an amount equal to the DIP Term Loans and DIP LC Loans provided and/or committed to under the DIP New Money Facility), in each case subject to the terms and conditions set forth in the DIP Documents and the reservation of rights of parties in interest in paragraph 19 below.  Upon expiration of the Challenge Period without a successful Challenge having been brought with respect thereto, the DIP Roll-Up Loans issued under this paragraph 3 shall be deemed indefeasible and the Prepetition Secured Debt refinanced thereby shall be discharged.  Notwithstanding anything to the contrary herein or in the Intercreditor Agreement (as may be amended and/or modified from time to time after the Petition Date), (x) the claims and liens in respect of the DIP Roll-Up Loans shall be subject and subordinate to the claims and liens in respect of the DIP LC Loans and the DIP Term Loans in all respects, and (y) the claims and liens in respect of the DIP Roll-Up Loans shall be *pari passu* with the Prepetition Revolving Debt in all respects such that distributions on the Prepetition Revolving Debt are pro rata with the sum of the DIP Roll-Up Loans and  the Prepetition Term Loans; *provided* that any proceeds allocated on account of the DIP Roll-Up Loans and the Prepetition

Error! Unknown document property name.

Term Loans shall be applied first to the repayment of the DIP Roll-Up Loans before any Prepetition Term Loan.

4.      *DIP Obligation*s.  Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid, binding and non-avoidable obligations of the Loan Parties, enforceable against each Loan Party thereto in accordance with the terms of the DIP Documents and this Interim Order as of the date of the entry of this Interim Order.  No obligation, payment, transfer or grant of security to the DIP Secured Parties under the DIP Documents or this Interim Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d), 544, 548, or 549 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, reduction, setoff, recoupment, claim, or counterclaim.

5.      *Carve-Out*.

(a)      As used in this Interim Order, the "**Carve-Out**" shall mean a carve-out from the DIP Superpriority Claims, the DIP Liens (other than DIP Liens in the Cash Collateral, held in the Cash Collateral Account, securing DIP Letters of Credit), the 507(b) Claims, and the Adequate Protection Liens, in an amount equal to the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the Carve-Out Trigger Notice); (ii) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code, in an aggregate amount not to exceed $50,000 (without regard to the Carve-Out Trigger Notice); (iii) to the extent allowed by the Court at any time, whether by interim order, procedural order or

otherwise, all unpaid fees and expenses (the "**Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code or by a Committee, if any, pursuant to section 328 and 1103 of the Bankruptcy Code (collectively, the "**Professional Persons**"), at any time on or before the first business day following the earlier of (a) delivery by the DIP Agent (acting upon the express prior written direction of the Required Lenders (as defined in the DIP Credit Agreement)) of a Carve-Out Trigger Notice and (b) the Maturity Date (as defined in the DIP Credit Agreement) (such day, the "**Carve-Out Trigger Date**"), whether allowed by the Court prior to or after the Carve-Out Trigger Date; and (iv) Professional Fees incurred after the Carve-Out Trigger Date in an amount not to exceed $4,000,000 (the "**Post Trigger Date Carve-Out Amount**"); *provided* that any success, completion, or similar fees payable from the Post-Trigger Date Carve-Out Amount shall be subject and subordinate, and junior in right of payment, to all other Professional Fees payable from the Post-Trigger Date Carve-Out (collectively, the "**Carve-Out Amount**"), in each case subject to the limits imposed by the DIP Orders.  For purposes of the foregoing, "**Carve-Out Trigger Notice**" shall mean a written notice delivered by email by the DIP Agent (acting upon the express prior written direction of the Required Lenders (as defined in the DIP Credit Agreement)) to the Debtors' lead restructuring counsel, the U.S. Trustee, and counsel to any  Committee, which notice may be delivered following the occurrence and during the continuation of an "Event of Default" under the DIP Documents (an "**Event of Default**"), stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

(b)     Prior to the occurrence of the Carve-Out Trigger Date, the Debtors are authorized (subject to the Approved Budget) to pay Professional Fees that are authorized

Error! Unknown document property name.

to be paid in accordance with the provisions of the Bankruptcy Code and any order entered by the Court establishing procedures for the payment of compensation to Professional Persons in these Chapter 11 Cases, as the same may be due and payable, and such payments shall not reduce the Carve-Out Amount.  Any payment or reimbursement made after the Carve-Out Trigger Date on account of Professional Fees incurred after the Carve-Out Trigger Date shall permanently reduce the Carve-Out on a dollar-for-dollar basis, *provided* that the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with the restricted uses thereof set forth in paragraph 20.

(c)     Immediately upon the Carve-Out Trigger Date, and prior to the payment of any DIP Secured Party or Prepetition Secured Party on account of adequate protection, the Debtors shall fund a reserve in an amount equal to the Carve-Out Amount (the "**Carve-Out Reserve**") from all cash on hand (including Cash Collateral, but excluding all Cash Collateral in the Cash Collateral Account that secures the DIP Letters of Credit as of such date, and, including any available cash thereafter held by any Debtor (exclusive of any cash utilized to cash collateralize the Prepetition Letters of Credit in connection with the Prepetition L/C Refinancing)).  The Carve-Out Reserve shall be held for the benefit of the Debtors in a segregated non-interest bearing account at the DIP Agent or another financial institution agreed to by the Borrower and the Required Lenders (as defined in the DIP Credit Agreement) in trust to pay the Professional Fees and other obligations benefiting from the Carve-Out and the Carve-Out Reserve shall be available only to satisfy such obligations benefiting from the Carve-Out until paid in full; *provided* that the DIP Agent shall follow the instructions of the Debtors with respect to

21

the disbursement of the Carve-Out Reserve consistent with the provisions of this Interim Order; *provided further* that the DIP Agent shall not be liable to any Professional Person or any other person or entity with respect to the Carve-Out Reserve held at the DIP Agent, and all actions (or inactions) by the DIP Agent related thereto shall be exculpated by all such parties, except in the event a court of competent jurisdiction determines that the DIP Agent breached its obligations under this Interim Order by not following an instruction of the Debtors that was consistent with the provisions of this Interim Order with respect to the Carve-Out Reserve; *provided further*, that, to the extent the Carve-Out Reserve has not been reduced to zero after the payment in full of such obligations, it shall be used to pay the DIP Agent for the benefit of the DIP Secured Parties until the DIP Obligations have been indefeasibly paid in full in cash and all DIP Commitments have been terminated.  Notwithstanding anything to the contrary herein, the Prepetition Agents and the DIP Agent, each on behalf of itself and the relevant secured parties, (y) shall not sweep or foreclose on the Carve-Out Reserve and (z) shall have a security interest upon any residual interest in the Carve-Out Reserve, available following satisfaction in cash in full of all obligations benefitting from the Carve-Out, and the priority of such lien on the residual shall be consistent with this Interim Order.  Further, notwithstanding anything to the contrary herein, (A) the failure of the Carve-Out Reserve to satisfy in full the Professional Fees shall not affect the priority of the Carve-Out and (B) in no way shall the Carve-Out, the Post-Trigger Date Carve-Out Amount, the Carve-Out Reserve, or any of the foregoing be construed as a cap or limitation on the amount of the Professional Fees due and payable by the Debtors.

Error! Unknown document property name.

(d)      Notwithstanding anything to the contrary herein or in the DIP Documents, the Carve-Out shall be senior to the DIP Obligations, the DIP Superpriority Claims, the DIP Liens (other than the DIP Liens in the Cash Collateral in the Cash Collateral Account that secures the DIP Letters of Credit), the Adequate Protection Obligations, the 507(b) Claims, the Adequate Protection Liens, and all other liens and claims granted under this Interim Order, the DIP Documents, or otherwise securing or in respect of the DIP Obligations or the Adequate Protection Obligations.

6.      *No Direct Obligation to Pay Allowed Professional Fees.*  None of the Prepetition Secured Parties or DIP Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the Prepetition Secured Parties or the DIP Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

7.      *DIP Superpriority Claims.*  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the Loan Parties (without the need to file any proof of claim) with priority over any and all claims against the Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses or other claims arising under section 105, 326, 328, 330, 331, 365, 503(b), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which

23

allowed claims (the "**DIP Superpriority Claims**") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and post-petition property of the Loan Parties and all proceeds thereof (excluding the Loan Parties' claims and causes of action under sections 502(d), 506(c), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and similar statutes or common law (collectively, the "**Avoidance Actions**"), but including, upon entry of the Final Order, any proceeds or property recovered, unencumbered or otherwise from Avoidance Actions, whether by judgment, settlement, or otherwise ("**Avoidance Proceeds**"), subject only to the liens on such property, the Carve-Out.  The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified, on appeal or otherwise.  The DIP Superpriority Claims shall be *pari passu* in right of payment with one another and senior to the Adequate Protection Claims; *provided* that the DIP Superpriority Claims in respect of the DIP Roll-Up Loans shall be subject and subordinate to the DIP Superpriority Claims in respect of the DIP Term Loans and the DIP LC Loans.

8.      *DIP Liens*.  As security for the DIP Obligations, effective and perfected upon the date of the Petition Date and without the necessity of the execution, recordation or filing of mortgages, security agreements, control agreements, pledge agreements, financing statements, notations on certificates of title for titled goods or other similar documents, or the possession or control by the DIP Agent of, or over, any DIP Collateral, the following security interests and liens are hereby granted to the DIP Agent for its own benefit and the benefit of the DIP Lenders

Error! Unknown document property name.

(all property identified in clauses (a) through (c) below being collectively referred to as the "**DIP Collateral**", subject to the Carve-Out and in each case in accordance with the priorities set forth in the table below (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Interim Order and the DIP Documents, the "**DIP Liens**"):

(a)    First Lien on Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority senior security interest in and lien upon all tangible and intangible prepetition and post-petition property of the Loan Parties, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to a valid, perfected, and non-avoidable lien (collectively, "**Unencumbered Property**"), including, without limitation, any and all unencumbered cash of the Loan Parties (whether maintained with the DIP Agent or otherwise) and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, letter-of-credit rights, investment property and support obligations, commercial tort claims, all books and records pertaining to the property described in this paragraph, all property of the Loan Parties held by any DIP Secured Party, all other goods (including but not limited to fixtures) and personal property of the Loan Parties, whether tangible or intangible and wherever located, Avoidance Proceeds (following entry of the Final Order), capital stock of subsidiaries,

25

wherever located, and, to the extent not covered by the foregoing, all other assets or property of the Debtors, whether tangible, intangible, real, personal or mixed, and the proceeds, products, rents, and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing, in each case other than the Excluded Property (as defined in the DIP Documents) and Avoidance Actions, but including any proceeds of Excluded Property that do not otherwise constitute Excluded Property.

(b)    <u>Liens Priming Prepetition Secured Parties' Liens</u>.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority priming security interest in and lien upon all Prepetition Collateral and DIP Collateral (wherever located and the proceeds, products, rents and profits thereof), subject and subordinate only to the Permitted Senior Liens, but senior in all respects to the Prepetition Liens and the Adequate Protection Liens (any such liens primed pursuant to this clause (b), the "**Primed Liens**"); *provided* that the DIP Liens in respect of the DIP Roll-Up Loans shall remain subject to the Intercreditor Agreement except that any proceeds allocated thereunder on account of the DIP Roll-Up Loans or the Prepetition Term Debt shall be applied first to the repayment in full of the DIP Roll-Up Loans before being applied to any Prepetition Term Debt.

(c)    <u>Liens Junior to Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all prepetition and post-petition property of the Loan Parties (wherever located, and the proceeds, products, rents, and profits thereof) immediately junior to (i) valid, perfected, and non-avoidable liens (other than Primed Liens) in

Error! Unknown document property name.

existence immediately prior to the Petition Date, (ii) valid non-avoidable liens (other than Primed Liens) that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code and (iii) the liens in favor of the DIP L/C Issuers in respect of the Cash Collateral Accounts, securing the Loan Parties' obligations under the DIP Letters of Credit (the liens described in the foregoing clause (i) through (iii), the "**Permitted Senior Liens**"); *provided* that nothing in this paragraph (c) shall limit the rights of the DIP Secured Parties under the DIP Documents to the extent the liens described in the foregoing clause (i) or (ii) are not permitted thereunder.

(d)     <u>Liens Senior to Certain Other Liens</u>.  The DIP Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Loan Parties and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP Documents or in this Interim Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other governmental unit (including any regulatory body), commission, board, or court for any liability of the Loan Parties, or (C) any intercompany or affiliate liens or security interests of the Loan Parties or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code granted after the date hereof.

(e)     <u>Relative Priority of DIP Liens</u>.  Notwithstanding anything to the contrary herein, the DIP Liens in respect of the DIP Roll-Up Loans shall be subject and subordinate to the DIP Liens in respect of the DIP Term Loans and the DIP LC Loans in all respects.

Error! Unknown document property name.

(f)	For the avoidance of doubt, any DIP Liens on DIP Collateral relating to real property of the Debtors granted pursuant to this paragraph 8 shall include, for the ratable benefit of the related DIP Secured Parties, in each case to the extent constituting DIP Collateral, all of each Debtor's right, title and interest now or hereafter acquired in and to all land, together with the buildings, structure, parking areas, and other improvements thereon, now or hereafter owned by any Debtor, including all easements, rights-of-way, and similar rights relating thereto and all leases, tenancies, and occupancies thereof, and (a) all goods, accounts, inventory, general intangibles, instruments, documents, contract rights and chattel paper, (b) all reserves, escrows or impounds and all deposit accounts maintained by each Debtor with respect to such real estate, (c) all leases, licenses, concessions, occupancy agreements or other agreements (written or oral, now or at any time in effect) which grant to any person a possessory interest in, or the right to use, all or any part of such real estate, together with all related security and other deposits, (d) all of the rents, revenues, royalties, income proceeds, profits, accounts receivable, security and other types of deposits, and other benefits paid or payable by parties to the leases for using, leasing, licensing possessing, operating from, residing in, selling or otherwise enjoying such real estate, (e) all other agreements, such as construction contracts, architects' agreements, engineers' contracts, utility contracts, maintenance agreements, management agreements, service contracts, listing agreements, guaranties, warranties, permits, licenses, certificates and entitlements in any way relating to the construction, use, occupancy, operation, maintenance, enjoyment or ownership of such real estate, (f) all rights, privileges, tenements, hereditaments, rights-of-way, easements, appendages, and appurtenances appertaining to the foregoing, (g) all

Error! Unknown document property name.

property tax refunds payable with respect to such real estate, (h) all accessions, replacements and substitutions for any of the foregoing and all proceeds thereof, (i) all insurance policies, unearned premiums therefor and proceeds from such policies covering any of the above property now or hereafter acquired by each Debtor as an insured party, and (j) all awards, damages, remunerations, reimbursements, settlements or compensation heretofore made or hereafter to be made to any Debtor by any governmental authority pertaining to any condemnation or other taking (or any purchase in lieu thereof) of all or any such real estate.

9.    *Establishment of Cash Collateral Accounts; Maintenance of Letters of Credit.*

(a)    In order to cash collateralize the new letters of credit issued and the Prepetition Letters of Credit deemed issued (the "**DIP Letters of Credit**") under the DIP L/C Sub-Facility, in accordance with the DIP Documents and this Interim Order, the Loan Parties shall, and are hereby authorized to, deposit as a single installment in cash into one or more non-interest-bearing cash collateral accounts established with the DIP Agent (the "**Cash Collateral Accounts**") the proceeds of the DIP LC Loans, which shall cash collateralize the DIP Letters of Credit in the amount of 103% of the face amount of issued and outstanding DIP Letters of Credit.  The amounts on deposit in the Cash Collateral Accounts shall be subject to (y) a first-priority security interest and lien in favor of the DIP Agent for the benefit of the DIP L/C Issuers, securing the obligations of the Loan Parties under the DIP Letters of Credit, and (z) subject to the Carve-Out, a second-priority security interest and lien in favor of the DIP Agent for the benefit of the DIP Secured Parties, securing the other DIP Obligations.

Error! Unknown document property name.

(b)        The Loan Parties are authorized to renew DIP Letters of Credit issued

under the DIP L/C Sub-Facility on an uninterrupted basis and to take all actions

reasonably appropriate with respect thereto on an uninterrupted basis.  Without limitation

of the foregoing, upon entry of this Interim Order, the Prepetition Letters of Credit shall

be deemed to have been cancelled and reissued as DIP Letters of Credit in their full

amounts and without modification of the terms of the Prepetition Letters of Credit other

than their deemed issuance as DIP Letters of Credit issued under the DIP L/C Sub-

Facility.  The DIP L/C Issuers shall be authorized to apply any Cash Collateral held

against the amount of any draw on any DIP Letter of Credit, and reducing the DIP L/C

Sub-Facility by such amount so applied, without notice of any kind or further order or

action by the Court and the automatic stay provisions of section 362 of the Bankruptcy

Code are hereby modified to the extent necessary to permit the DIP L/C Issuers to so

apply any such Cash Collateral in the Cash Collateral Accounts.  All issued and

outstanding DIP Letters of Credit shall be cash collateralized at 103% of the face amount

thereof and shall be deemed to be secured by  Priority DIP Financing Liens (as defined in

the Intercreditor Agreement) and the Cash Collateral advanced as DIP LC Loans under

the DIP Facility.  The DIP Letters of Credit shall remain cash collateralized as set forth

herein at all times, and except as provided below with respect to Alternate Cash

Collateral (as defined below), the Debtors shall have no right to use the Cash Collateral

Accounts securing the DIP Letters of Credit, and such cash collateralization shall not be

subject to any reduction by any chapter 11 plan, order of the Court, or otherwise;

*provided* that, subject to the terms and conditions (including in section 9.03(j) of the DIP

Credit Agreement) of the DIP Documents, the Borrower shall have the right to withdraw

proceeds on deposit in the Cash Collateral Accounts (which shall be accompanied by corresponding reduction in the DIP L/C Sub-Facility by such amount so withdrawn) in an amount up to the "Alternate Cash Collateral Amount" (as defined in the DIP Credit Agreement) to cash collateralize customer and/or supplier obligations (such cash collateral, the **Alternate Cash Collateral**") in lieu of issuing Letters of Credit.

(c)     To the extent there exists or comes to exist any cash of the Debtors' estates that is not Cash Collateral, wherever located and however held, such cash shall be deemed to have been used first by the Debtors' estates and such cash, to the extent applicable, shall be subject to the DIP Liens and DIP Superpriority Claims granted to the DIP Lenders hereunder.

10.     *Protection of DIP Lenders' Rights*.

(a)     So long as there are any DIP Obligations outstanding or the DIP Lenders have any outstanding Commitments (as defined in the DIP Documents) (the "**DIP Commitments**") under the DIP Documents, the Prepetition Secured Parties shall (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Secured Debt Documents or this Interim Order, or otherwise seek to exercise or enforce any rights or remedies against such DIP Collateral, including in connection with the Adequate Protection Liens, (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, such DIP Collateral (but not any proceeds of such transfer, disposition or sale to the extent remaining after payment in cash in full of the DIP Obligations and termination of the DIP Commitments), to the extent such transfer, disposition, sale or release is authorized under the DIP Documents, and (iii) not file any further financing statements, trademark filings,

Error! Unknown document property name.

copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in such DIP Collateral unless, solely as to this clause (iii), the DIP Agent or the DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to this Interim Order, or as may be required by applicable state law to continue the perfection of valid and non-avoidable liens or security interests as of the Petition Date.

(b)    To the extent any Prepetition Secured Party has possession of any Prepetition Collateral or DIP Collateral or has control with respect to any Prepetition Collateral or DIP Collateral that is subject to a DIP Lien, then such Prepetition Secured Party shall be deemed to maintain such possession or exercise such control as gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Secured Parties and shall comply with the instructions of the DIP Agent (acting upon the express prior written direction of the Required Lenders (as defined in the DIP Credit Agreement)) with respect to the exercise of such control.

(c)    Any proceeds of Prepetition Collateral subject to the Primed Liens received by any Prepetition Secured Parties, whether in connection with the exercise of any right or remedy (including setoff) relating to the Prepetition Collateral or otherwise received by either of the Prepetition Agents, shall be segregated and held in trust for the benefit of and forthwith paid over to the DIP Agent for the benefit of the DIP Secured Parties in the same form as received, with any necessary endorsements.  Notwithstanding the foregoing, the rights of setoff and first priority security interests of the financial institutions providing cash management services (solely to the extent related to cash

Error! Unknown document property name.

management obligations and as governed by the cash management order entered in these Chapter 11 Cases) are preserved.

(d)    The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to the extent necessary to permit the DIP Secured Parties to enforce all of their rights under the DIP Documents and (i) immediately upon the occurrence of an Event of Default, to declare (A) the termination, reduction, or restriction of any further DIP Commitment to the extent any such DIP Commitment remains and (B) all applicable DIP Obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Loan Parties, and (ii) unless the Court orders otherwise during the Remedies Notice Period, upon the occurrence of an Event of Default and the giving by the DIP Agent of five business days' prior written notice (which shall run concurrently with any notice required to be provided under the DIP Documents) (the "**Remedies Notice Period**") delivered by email to the Debtors' lead restructuring counsel (with a copy to the Committee, if any, and the U.S. Trustee), (A) to withdraw consent to the Loan Parties' continued use of any Cash Collateral or (B) to exercise all other rights and remedies provided for in the DIP Documents and under applicable law; *provided* that, during the Remedies Notice Period, the Loan Parties shall be permitted to continue to use Cash Collateral in the ordinary course of business (subject to the Approved Budget and any permitted variance) and may request an expedited hearing before the Court to determine whether an Event of Default has occurred and is continuing and/or seek nonconsensual use of Cash Collateral. Subject to entry of the Final Order, in no event shall (y) the DIP Secured Parties or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any

Error! Unknown document property name.

similar doctrine with respect to the DIP Collateral or (z) the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply with respect to the secured claims of the Prepetition Secured Parties or the Prepetition Liens.

(e)    No rights, protections, or remedies of the DIP Secured Parties granted by the provisions of this Interim Order or the DIP Documents shall be limited, modified, or impaired in any way by (i) any actual or purported withdrawal of the consent of any party to the Loan Parties' authority to continue to use Cash Collateral, (ii) any actual or purported termination of the Loan Parties' authority to continue to use Cash Collateral, or (iii) the terms of any other order or stipulation related to the Loan Parties' continued use of Cash Collateral or the provision of adequate protection to any party.

11.    *Limitation on Charging Expenses Against Collateral.*  Subject only to and effective upon entry of the Final Order, except to the extent of the Carve-Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral (including Cash Collateral) or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent (acting upon the express prior written direction of the Required Lenders (as defined in the DIP Credit Agreement)) or the applicable Prepetition Agent (acting upon the express prior written direction of the Required Lenders (as defined in the Prepetition Revolving Credit Agreement or the Prepetition Term Loan Credit Agreement, as applicable)), as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Secured Parties or the Prepetition Secured Parties, and nothing contained in this Interim Order shall be deemed to be a consent by the DIP

34

Secured Parties or the Prepetition Secured Parties to any charge, lien, assessment, or claim

against the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.

12.      *Payments Free and Clear*.  Subject to the Carve-Out, any and all payments or

proceeds remitted to the DIP Agent on behalf of the DIP Secured Parties pursuant to the

provisions of this Interim Order or the DIP Documents shall be received free and clear of any

claim, charge, assessment, or other liability, including, without limitation, and subject to entry of

the Final Order, any such claim or charge arising out of or based on, directly or indirectly,

section 506(c) of the Bankruptcy Code (whether asserted or assessed by, through, or on behalf of

the Debtors) or 552(b) of the Bankruptcy Code.

13.      *Use of Cash Collateral*.  The Debtors are hereby authorized, subject to the

Approved Budget (including any permitted variances) and the terms and conditions of this

Interim Order, to use all Cash Collateral.

14.      *Adequate Protection of Prepetition Secured Parties*.  The Prepetition Secured

Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1), and 507 of the Bankruptcy

Code, to adequate protection of their respective interests in the Prepetition Collateral, for and

equal in amount to the aggregate diminution in the value of the Prepetition Secured Parties'

prepetition security interests in the Prepetition Collateral from and after the Petition Date, if any,

for any reason provided for under the Bankruptcy Code, including, but not limited to, the

Debtors' use, sale or lease of Cash Collateral and other Prepetition Collateral, the imposition of

the automatic stay and/or the Carve-Out (the "**Adequate Protection Claims**"); *provided* that the

avoidance of any Prepetition Secured Party's interests in Prepetition Collateral shall not

constitute diminution in the value of such Prepetition Secured Party's interests in Prepetition

Error! Unknown document property name.

Collateral.  In consideration of the foregoing, the Prepetition Secured Parties are hereby granted the following (collectively, the "**Adequate Protection Obligations**"):

(a)    <u>Adequate Protection Liens</u>.  Each of the Prepetition Revolving Agent (for itself and for the benefit of the Prepetition Revolving Lenders) and the Prepetition Term Agent (for itself and for the benefit of the Prepetition Term Lenders) is hereby granted (effective and perfected upon the Petition Date and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements, or other agreements), in the amount of its respective Adequate Protection Claim, a valid, perfected replacement security interest in and lien upon (the "**Adequate Protection Liens**") the DIP Collateral (including, without limitation, upon entry of the Final Order, the Avoidance Proceeds), which Adequate Protection Liens shall secure the respective Adequate Protection Claims, and in each case shall be (i) *pari passu* with each other Adequate Protection Lien granted hereunder, subject to the Intercreditor Agreement, and (ii) subject and subordinate only to the Carve-Out, the DIP Liens, and the Permitted Senior Liens; *provided* that the DIP Roll-Up Loans shall be pari passu with the Prepetition Revolving Debt in all respects such that distributions on the Prepetition Revolving Debt are pro rata with the sum of the DIP Roll-Up Loans and the Prepetition Term Loans;  provided that any proceeds allocated on account of the DIP Roll-Up Loans and the Prepetition Term Loans (including in respect of the Adequate Protection Obligations) shall be applied first to the repayment of the DIP Roll-Up Loans before any Prepetition Term Loan.

(b)    <u>507(b) Claims</u>.  Each of the Prepetition Agents (on behalf of the applicable Prepetition Secured Parties) are hereby granted an allowed superpriority

Error! Unknown document property name.

administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of their respective Adequate Protection Claims with, except as set forth in this Interim Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**507(b) Claims**"), which 507(b) Claims (subject to DIP Liens and DIP Superpriority Claims) shall have recourse to and be payable from all of the DIP Collateral (including, without limitation, subject to entry of the Final Order, the Avoidance Proceeds).  The 507(b) Claims shall be (i) *pari passu* with each other 507(b) Claim granted hereunder, subject to the Intercreditor Agreement, and (ii) subject and subordinate only to the Carve-Out, the DIP Superpriority Claims, the DIP Liens, and the Permitted Senior Liens.  Except to the extent expressly set forth in this Interim Order or the DIP Credit Agreement, the Prepetition Secured Parties shall not receive or retain any payments, property or other amounts in respect of the 507(b) Claims unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and the DIP Superpriority Claims have indefeasibly been paid in cash in full and all DIP Commitments have been terminated.

(c)      Adequate Protection Cash Payments.  In each case subject to reallocation or recharacterization as payment of principal under section 506(a) and (b) of the Bankruptcy Code as may be ordered by the Court in connection with a timely and successful Challenge pursuant to paragraph 19 or 20 below, until the indefeasible discharge of the Prepetition Secured Debt, the Prepetition Agents, for the benefit of the applicable Prepetition Secured Parties, shall receive current payment in cash on the last business day of each month in an amount equal to the sum of all post-petition unpaid

Error! Unknown document property name.

interest accruing on all outstanding principal, interest, fees, and other amounts owing under the applicable Prepetition Secured Debt (as of the Petition Date), in each case at the applicable default rate (the payments in this subparagraph (c), the "**Adequate Protection Payments**").

(d)    Prepetition Secured Parties Fees and Expenses.  The Loan Parties shall make current cash payments of the reasonable and documented prepetition and post-petition fees and expenses incurred by the Prepetition Agents or the Ad Hoc Group in connection with the Chapter 11 Cases (limited, in the case of the advisors to the Prepetition Term Lenders that are members of the Ad Hoc Group, to Houlihan Lokey, Inc., Willkie Farr & Gallagher LLP, Young Conaway Stargatt & Taylor, LLP, and one local counsel in each material jurisdiction; in the case of the advisors to the Prepetition Revolving Agent and the Prepetition Revolving Lenders, to RPA Advisors, LLC, Vinson & Elkins LLP, and one local counsel in each material jurisdiction; and, in the case of the advisors to the Prepetition Term Agent, to Arnold & Porter Kaye Scholer LLP and one local counsel in each relevant jurisdiction) promptly upon receipt of invoices therefor, which payments (to the extent for fees, expenses, and disbursements incurred after the Petition Date) shall be made within 10 days (which time period may be extended by the applicable professional) after the receipt by the Debtors, the Committee, if any, and the U.S. Trustee (the "**Review Period**") of invoices therefor (the "**Invoiced Fees**") and without the necessity of filing formal fee applications, including such amounts arising before or after the Petition Date.  The invoices for such Invoiced Fees shall include the number of hours billed (except for financial advisors compensated on other than an hourly basis) and a summary description of services provided and the aggregate expenses

38

incurred by the applicable professional firm; *provided*, *however*, that any such invoice (i) may be limited and/or redacted to protect privileged, confidential, or proprietary information and (ii) shall not be required to contain individual time detail (*provided* that such invoice shall contain (except for financial advisors compensated on other than an hourly basis) summary data regarding hours worked by each timekeeper for the applicable professional and such timekeepers' hourly rates).  The Debtors, the Committee, if any, and the U.S. Trustee may object to any portion of the Invoiced Fees (the "**Disputed Invoiced Fees**") within the Review Period by filing with the Court a motion or other pleading, on at least ten days' prior written notice (but no more than thirty days' notice) of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees in reasonable narrative detail and the bases for such objections; *provided* that payment of any undisputed portion of Invoiced Fees shall not be delayed based on any objections thereto.

(e)     <u>Financial Reporting</u>.  The Debtors shall provide the Prepetition Agents with financial and other reporting substantially in compliance with the reports and notices provided for in the DIP Documents, in each case when and as required under the DIP Documents.

(f)     <u>DIP Roll-Up Facility</u>.  Subject to entry of a Final Order, the Debtors shall use the DIP Roll-Up Loans to refinance and discharge dollar-for-dollar Prepetition Term Loans held by the DIP Lenders in the aggregate amount equal to the DIP Term Loans and the DIP LC Loans funded under the DIP Facility.

15.     *Reservation of Rights of Prepetition Secured Parties*.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code,

Error! Unknown document property name.

including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties; *provided* that any of the Prepetition Secured Parties may request further or different adequate protection, and the Debtors or any other party may contest any such request.

16.    *Perfection of DIP Liens and Adequate Protection Liens*.

(a)    The DIP Agent, the DIP Lenders and the Prepetition Secured Parties are hereby authorized, but not required, to file or record (and to execute in the name of the Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Agent, on behalf of the DIP Secured Parties, or the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination, at the time and on the date of entry of this Interim Order.  Upon the request of the DIP Agent (acting upon the express prior written direction of the Required Lenders (as defined in the DIP Credit Agreement)), each of the Prepetition Secured Parties and the Loan Parties, without any further consent of any party, is authorized (in the case of the Loan Parties) and directed (in the case of the

40

Prepetition Secured Parties) to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Agent to further validate, perfect, preserve, and enforce the DIP Liens.  All such documents shall be deemed to have been recorded and filed as of the Petition Date.

(b)      This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, taking possession of or control over cash, deposit accounts, securities, or other assets, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to entitle the DIP Secured Parties to the priorities granted herein.  Notwithstanding the foregoing, a certified copy of this Interim Order may, in the discretion of the DIP Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Interim Order for filing and/or recording, as applicable.  The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Agent to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

Error! Unknown document property name.

17.    *Milestones*.  It is a condition to the DIP Facilities that the Debtors shall comply with the Case Milestones (as defined in the DIP Credit Agreement).  Any Case Milestone that would otherwise fall on a Saturday, Sunday or federal holiday will be treated in accordance with Bankruptcy Rule 9006.  The failure to comply with any Milestone shall constitute an Event of Default, in accordance with the terms of the DIP Credit Agreement.

18.    *Preservation of Rights Granted Under This Interim Order*.

(a)    Other than the Carve-Out, Permitted Senior Liens and other claims and liens expressly granted by this Interim Order, no claim or lien having a priority superior to or that is *pari passu* with those granted by this Interim Order to the DIP Secured Parties or the Prepetition Secured Parties, respectively, shall be permitted while any of the DIP Obligations or the Adequate Protection Obligations remain outstanding, and, except as otherwise expressly provided in this Interim Order, the DIP Liens and the Adequate Protection Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Loan Parties' estates under section 551 of the Bankruptcy Code, (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise, (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other domestic or foreign governmental unit (including any regulatory body), commission, board, or court for any liability of the Loan Parties, or (iv) subject or junior to any intercompany or affiliate liens or security interests of the Loan Parties.

Error! Unknown document property name.

(b)     Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or that otherwise is at any time entered, (i) the DIP Superpriority Claims, the 507(b) Claims, the DIP Liens, and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash (and that such DIP Superpriority Claims, 507(b) Claims, DIP Liens, and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest), (ii) the other rights granted by this Interim Order shall not be affected, and (iii) the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph 18 and otherwise in this Interim Order.

(c)     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent, the Prepetition Revolving Agent or the Prepetition Term Agent, as applicable, of the effective date of such reversal, modification, vacatur, or stay or (ii) the validity, priority, or enforceability of the DIP Liens or the Adequate Protection Liens.  Notwithstanding any such reversal, modification, vacatur, or stay of any use of Cash Collateral, any DIP Obligations or any Adequate Protection Obligations incurred by the Loan Parties to the DIP Secured Parties or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Agent, the Prepetition Revolving Agent, or the

43

Prepetition Term Agent, as applicable, of the effective date of such reversal, modification, vacatur, or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and the DIP Documents.

(d)     Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the 507(b) Claims, the Adequate Protection Liens, and the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired, or discharged by the entry of an order (i) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases, terminating the joint administration of the Chapter 11 Cases or by any other act or omission, (ii) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents), or (iii) confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Loan Parties have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Interim Order and the DIP Documents shall continue in the Chapter 11 Cases, in any successor cases if the Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the 507(b) Claims, the Adequate Protection Liens, and the Adequate Protection

Error! Unknown document property name.

Obligations and all other rights and remedies of the DIP Secured Parties and the

Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP

Documents shall continue in full force and effect until the DIP Obligations are

indefeasibly paid in full in cash, as set forth herein and in the DIP Documents, and the

Commitments have been terminated.

19.      *Effect of Stipulations on Third Parties*.

(a)      The Debtors' stipulations, admissions, agreements and releases contained

in this Interim Order shall be binding upon (i) the Debtors and their estates, in all

circumstances and for all purposes and (ii) all other parties in interest, including, without

limitation, any statutory or non-statutory committees appointed or formed in the Chapter

11 Cases (including a Committee, if any) and any other person or entity acting or seeking

to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or

examiner appointed or elected for any of the Debtors, in all circumstances and for all

purposes unless (A) such committee or any other party in interest (subject in all respects

to any agreement or applicable law that may limit or affect such entity's right or ability to

do so), in each case, with standing granted by the Court, has timely filed an adversary

proceeding or contested matter (subject to the limitations contained herein, including,

*inter alia*, in this paragraph 19) (1) objecting to or challenging the amount, validity,

perfection, enforceability, priority, or extent of the Prepetition Secured Debt or the

Prepetition Liens or (2) otherwise asserting or prosecuting any action for preferences,

fraudulent transfers or conveyances, other avoidance power claims or any other claims,

counterclaims or causes of action, objections, contests, or defenses (collectively,

a "**Challenge**") against the Prepetition Secured Parties or their respective subsidiaries,

Error! Unknown document property name.

affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and their respective successors and assigns thereof, in each case in their respective capacity as such (each, a "**Representative**" and, collectively, the "**Representatives**") in connection with matters related to any claims of the Debtors against the Prepetition Secured Parties, the Prepetition Secured Debt Documents, the Prepetition Secured Debt, the Prepetition Liens, the Prepetition Collateral, or otherwise, *provided* that all pleadings filed in connection with a Challenge shall set forth the basis for such challenge or claim, (B) such Challenge has been filed prior to the latest of (1) (Y) with respect to parties in interest with standing (other than a Committee), 75 calendar days after entry of this Interim Order and (Z) with respect to a Committee, if any, 60 calendar days after the appointment of the Committee, (2) any such later date as has been agreed to, in writing, by the Prepetition Revolving Agent or the Prepetition Term Agent (acting upon the express prior written direction of the Required Lenders (as defined in the DIP Credit Agreement)) (as applicable), and (3) any such later date as has been ordered by the Court for cause upon a motion filed and served within any applicable time period set forth in this paragraph 19 (the time period established by the foregoing clauses (1) through (3), the "**Challenge Period**") (for the avoidance of doubt, if a Committee is appointed after the period in sub-clause (1)(Y) has expired, the Challenge Period shall have expired), and (C) there is a final non-appealable order sustaining such Challenge in favor of the plaintiff in such timely filed adversary proceeding or contested matter.  Any Challenge not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released, and barred.

Error! Unknown document property name.

(b)     If no such Challenge is filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding, then (i) the Debtors' stipulations, admissions, agreements, and releases contained in this Interim Order shall be binding on all parties in interest, including, without limitation, the Committee, if any, (ii) the obligations of the Loan Parties under the Prepetition Secured Debt Documents, including the Prepetition Secured Debt, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset, or avoidance, for all purposes in the Chapter 11 Cases, and any subsequent chapter 7 case(s), (iii) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance, or other defense, (iv) the Prepetition Secured Debt and the Prepetition Liens shall not be subject to any other or further claim or challenge by a Committee, if any, any non-statutory committees appointed or formed in the Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, and (v) any defenses, claims, causes of action, counterclaims, and offsets by a Committee, if any, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives arising out of or relating to the any claims of the Debtors against the Prepetition Secured Parties, the Prepetition Secured Debt Documents or otherwise shall be deemed forever waived, released, and barred.  If any such Challenge is filed during the Challenge Period, the stipulations, admissions, agreements, and releases contained in this Interim Order shall nonetheless remain binding

47

and preclusive (as provided in this subparagraph (b)) on a Committee, if any, and on any other person or entity, except to the extent that such stipulations, admissions, agreements, and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including a Committee, if any, or any non-statutory committees appointed or formed in the Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Prepetition Secured Debt Documents, the Prepetition Secured Debt or the Prepetition Liens, or claims, counterclaims or causes of action of the Debtors against any Prepetition Secured Party.

20.      *Limitation on Use of DIP Financing Proceeds and Collateral.*  Notwithstanding anything herein or in any other order entered by the Court to the contrary, no proceeds of the DIP Facilities, DIP Collateral, Prepetition Collateral (including Cash Collateral), or the Carve-Out may be used (a) for Professional Fees incurred for (i) any litigation or threatened litigation (whether by contested matter, adversary proceeding, or otherwise, including any investigation in connection with litigation or threatened litigation) against any of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties or for the purpose of objecting to or challenging the validity, perfection, enforceability, extent, amount or priority of any claim, lien, or security interest held or asserted by any of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties or (ii) asserting any defense, claim, cause of action, counterclaim, or offset with respect to the DIP Obligations, the Prepetition Secured Debt (including, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code,

Error! Unknown document property name.

applicable non-bankruptcy law or otherwise), the DIP Liens, or the Prepetition Liens or against any of the Prepetition Secured Parties or their respective Representatives, (b) to prevent, hinder, or otherwise delay any of the DIP Agent's or the Prepetition Secured Parties' assertion, enforcement, or realization on the Prepetition Collateral or the DIP Collateral in accordance with the DIP Documents, the Prepetition Secured Debt Documents or this Interim Order other than to seek a determination that an Event of Default has not occurred or is not continuing, or in connection with a Remedies Hearing, (c) to seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties under this Interim Order or under the DIP Documents or the Prepetition Loan Documents, in each of the foregoing cases without such parties' prior written consent, which may be given or withheld by such party in the exercise of its respective sole discretion, or (d) to pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of the Court (including, without limitation, hereunder); *provided* that notwithstanding anything to the contrary herein, the Committee, if any, may use the proceeds of the DIP Facilities, DIP Collateral (including Cash Collateral), and/or the Carve-Out to investigate (but not prosecute or initiate the prosecution of, including the preparation of any complaint or motion on account of) prior to (but not after) the delivery of a Carve-Out Trigger Notice, (y) the claims and liens of the Prepetition Secured Parties, and (z) potential claims, counterclaims, causes of action, or defenses against the Prepetition Secured Parties; *provided further* that no more than an aggregate of $50,000 of the proceeds of the DIP Facilities, DIP Collateral (including Cash Collateral, but excluding all Cash Collateral in the Cash Collateral Account that secures the DIP Letters of Credit), and/or the Carve-Out may be used by the Committee, if any, in respect of the investigations set forth in the preceding proviso (the "**Investigation Budget**").

Error! Unknown document property name.

21.     *Release*.  Subject to (i) entry of a Final Order and (ii) paragraph 19 hereof, and as further set forth in the DIP Documents, the Debtors, on behalf of themselves and their estates (including any successor trustee or other estate representative in these Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases) and any party acting by, through, or under any of the Debtors or any of their estates, hereby stipulate and agree that they forever and irrevocably (a) release, discharge, waive, and acquit the current or future DIP Agent and other current or future DIP Secured Parties, the Prepetition Revolving Secured Parties, and the Prepetition Term Secured Parties, and each of their respective participants and each of their respective affiliates, and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, successors, assigns and predecessors in interest (collectively, "**Released Parties**"), from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the DIP Facilities, the DIP Documents, the Prepetition Loan Documents, or the transactions and relationships contemplated hereunder or thereunder, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code (including, without limitation, Avoidance Actions),

Error! Unknown document property name.

and (iii) any and all claims and causes of action regarding the validity, priority, perfection, or avoidability of the liens or secured claims of the DIP Agent, the other DIP Secured Parties, the Prepetition Revolving Secured Parties and the Prepetition Term Secured Parties; and (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and nonavoidability of the DIP Loans, the DIP Liens, the DIP Superpriority Claims, the Prepetition Secured Debt, the Prepetition Liens, the Adequate Protection Claims, the Adequate Protection Liens, and any adequate protection payment obligations pursuant to this Interim Order.  For the avoidance of doubt, the foregoing release shall not constitute a release of any rights arising under the DIP Documents. Notwithstanding the releases and covenants contained above in this paragraph, such releases and covenants in favor of the Released Parties shall be deemed acknowledged and reaffirmed by the Debtors each time there is an advance of funds, extension of credit, or financial accommodation under this Interim Order and the DIP Documents.

22.    *Exculpation*.  Nothing in this Interim Order, the DIP Documents or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent or any DIP Lender of any liability for any claims arising from the prepetition or post-petition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts.  So long as the DIP Agent and the DIP Lenders comply with their obligations under the DIP Documents and their obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Agent and the DIP Lenders shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral or any reserves established pursuant to this Interim Order, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the

51

value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding

agency, or other person and (b) all risk of loss, damage, or destruction of the DIP Collateral shall

be borne by the Loan Parties.

23.     *Order Governs*.  In the event of any inconsistency between the provisions of this

Interim Order, the DIP Documents, or any other order entered by the Court, the provisions of this

Interim Order shall govern.  Notwithstanding anything to the contrary in any other order entered

by the Court, any payment made, or authorization contained in, any other order entered by the

Court shall be consistent with and subject to the requirements set forth in this Interim Order and

the DIP Documents, including, without limitation, the Approved Budget (including any

permitted variances); *provided* that the Approved Budget (including any permitted variances)

shall not constitute a cap or limitation on any Professional Fees and shall not affect the Carve-

Out.

24.     *Binding Effect; Successors and Assigns*.  The DIP Documents and the provisions

of this Interim Order, including all findings herein, shall be binding upon all parties in interest in

the Chapter 11 Cases, including, without limitation, the DIP Agent, the DIP Lenders, the

Prepetition Secured Parties, the Committee, if any, any non-statutory committees appointed or

formed in the Chapter 11 Cases, the Debtors, and their respective successors and assigns

(including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of

any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or

any other fiduciary appointed as a legal representative of any of the Debtors or with respect to

the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent,

the DIP Lenders, the Prepetition Secured Parties, the Debtors, and their respective successors and

assigns; *provided* that the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall

Error! Unknown document property name.

have no obligation to permit the use of the DIP Collateral (including Cash Collateral) or to extend any financing to any chapter 7 trustee, chapter 11 trustee, or similar responsible person appointed for the estates of the Debtors.

25.    *Limitation of Liability.*  In determining to make any loan or other extension of credit under the DIP Credit Agreement, to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Agent and the DIP Lenders (and the Prepetition Secured Parties in respect of the use of Cash Collateral) shall not (a) be deemed to be in "control" of the operations of the Debtors, (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates, and (c) be deemed to be acting as a "Responsible Person," "Owner," or "Operator" with respect to the operation or management of the Debtors, so long as the DIP Agent's and the DIP Lenders' actions do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of "responsible person" or "managing agent" to exist under applicable law (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any similar federal or state statute).

26.    *Inapplicability of Bar Date; Master Proof of Claim.*  Any order entered by the Court establishing a bar date for any claims (including, without limitation, administrative claims) in any of the Chapter 11 Cases or any subsequent chapter 7 case of any of the Debtors shall not apply to any DIP Secured Party, any Prepetition Term Secured Party or any Prepetition Revolving Secured Party. The DIP Secured Parties, Prepetition Secured Parties and the Prepetition Revolving Secured Parties shall not be required to file proofs of claim or requests for

Error! Unknown document property name.

approval of administrative expenses authorized by this Interim Order in any of the Chapter 11

Cases or any subsequent chapter 7 case of any of the Debtors. The provisions of this Interim

Order, and, upon the entry thereof, the Final Order, relating to the amount and/or priority of the

DIP Loans, the Prepetition Term Debt, the Prepetition Revolving Debt, the Adequate Protection

Claims, the Adequate Protection Liens, any adequate protection payments pursuant to this

Interim Order, the Prepetition Liens, the DIP Liens and the DIP Superpriority Claims shall

constitute a sufficient and timely filed proof of claim and/or administrative expense request in

respect of such obligations and such secured status. However, in order to facilitate the processing

of claims, to ease the burden upon the Court, and to reduce an unnecessary expense to the

Debtors' estates, each of the Prepetition Revolving Agent and the Prepetition Term Agent is

authorized to file in the Debtors' lead Chapter 11 Case *In re Southcross., et al.,* Case No. 19-

10702 (MFW) , a single, master proof of claim on behalf of the Prepetition Revolving Secured

Parties and the Prepetition Term Secured Parties, as applicable, on account of any and all of their

respective claims arising under the applicable Prepetition Secured Debt Documents and

hereunder (each, a "**Master Proof of Claim**") applicable against each of the Debtors.  Upon the

filing of a Master Proof of Claim, (a) the Prepetition Revolving Agent and the Prepetition

Revolving Secured Parties and (b) the Prepetition Term Agent and the Prepetition Term Secured

Parties, as applicable, and each of their respective successors and assigns, shall be deemed to

have filed a proof of claim in the amount set forth opposite its name therein in respect of its

claims against each of the Debtors of any type or nature whatsoever with respect to the

applicable Prepetition Secured Debt Documents, and the claim of each Prepetition Secured Party

(and each of its respective successors and assigns), named in a Master Proof of Claim shall be

treated as if such entity had filed a separate proof of claim in each of the Chapter 11 Cases.  The

Error! Unknown document property name.

Master Proofs of Claim shall not be required to identify whether any Prepetition Secured Party acquired its claim from another party and the identity of any such party or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims. Nothing in this Interim Order shall waive the right of any DIP Secured Party or any Prepetition Secured Party to file its own proof of claim against any of the Debtors. The provisions of this paragraph 26 and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in the Chapter 11 Cases. The Master Proofs of Claim shall not be required to attach any instruments, agreements, or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties, which instruments, agreements, or other documents will be provided upon reasonable written request to counsel to the Prepetition Revolving Agent and Prepetition Term Agent, as applicable.

27.      *Secured Party Consents.* No approval, agreement, or consent requested of the DIP Secured Parties and/or the Prepetition Secured Parties by the Debtors pursuant to the terms of this Interim Order or otherwise shall be inferred from any action, inaction, or acquiescence of the DIP Secured Parties or the Prepetition Secured Parties, as applicable, other than a writing acceptable to the DIP Secured Parties or the Prepetition Secured Parties, as applicable, that is signed by such person(s) and expressly shows such approval, agreement or consent, without limitation. Nothing herein shall in any way affect the rights of the DIP Secured Parties or the Prepetition Secured Parties as to any non-Debtor entity, without limitation. Unless expressly required otherwise hereunder, any determination, agreement, decision, consent, election,

Error! Unknown document property name.

approval, acceptance, waiver, designation, authorization, or other similar circumstance or matter of any of the DIP Secured Parties or the Prepetition Secured Parties, as applicable, hereunder or related hereto, shall be in the such person(s)' sole and absolute discretion.

28.     *Insurance*.  To the extent that any of the Prepetition Revolving Agent or Prepetition Term Agent is listed as loss payee or additional insured under any of the Borrower's or Guarantors' insurance policies, the DIP Agent is also deemed to be the loss payee or additional insured, as applicable, under such insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, *first*, to the payment in full of the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted), and *second*, to the payment of the applicable Prepetition Secured Debt.

29.     *Effectiveness*.  This Interim Order shall constitute findings of fact and conclusions of law shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rule 4001(a)(3), 6004(h), 6006(d), 7062, or 9014, any Local Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

30.     *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

31.     *Payments Held in Trust for the DIP Agent and DIP Lenders*.  Except as expressly permitted in this Interim Order or the DIP Documents, in the event that any person or entity receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral, or receives any other payment with respect thereto

Error! Unknown document property name.

from any other source prior to indefeasible payment in full in cash of all DIP Obligations under

the DIP Documents, and termination of the Commitments in accordance with the DIP

Documents, such person, or entity shall be deemed to have received, and shall hold, such

payment or proceeds of DIP Collateral in trust for the benefit of the DIP Agent and the DIP

Lenders and shall immediately turn over such proceeds to the DIP Agent, or as otherwise

instructed by the Court, for application in accordance with the DIP Documents and this Interim

Order.

32.    *Credit Bidding*.  The DIP Secured Parties shall have the right to credit bid, in

accordance with the DIP Documents, up to the full amount of the DIP Obligations other than the

amount of the DIP Roll-Up Loans, in any sale of the DIP Collateral.  Subject to entry of a Final

order, paragraph 19 hereof, and the Intercreditor Agreement, the DIP Secured Parties shall have

the right to credit bid, in accordance with the DIP Documents, the amount of the DIP Roll-Up

Loans in any sale of the DIP Collateral.  Subject to entry of a Final order and subject to

paragraph 19 hereof, each of the Prepetition Secured Parties shall have the right to credit bid,

subject to the Intercreditor Agreement, up to the full amount of the applicable Prepetition

Secured Debt in any sale of the Prepetition Collateral, in each case pursuant to section 363(k) of

the Bankruptcy Code and subject to any successful Challenge, without the need for further Court

order authorizing the same and whether any such sale is effectuated through section 363(k) or

1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy

Code or otherwise.

33.    *Wind Down Budget*.  In the event that the Debtors pursue a "Section 363 Sale" (as

defined in the DIP Credit Agreement) of all or substantially all of the Debtors' assets, then in

connection with such Section 363 Sale, the Debtors and the Required DIP Lenders will negotiate

Error! Unknown document property name.

in good faith a reasonable wind-down budget (the "**Wind-Down Budget**") to pay all allowed (i) post-petition claims, (ii) administrative expense and priority claims and (iii) professional fees and expenses necessary to wind-down the Debtors' estates in a reasonable and appropriate timeline.  Notwithstanding anything else to the contrary in this Interim Order, subject and subordinate to the Carve Out (i) the net proceeds of any Section 363 Sale shall first satisfy the Wind-Down Budget before repayment of any DIP Obligations, Adequate Protection Obligations, 507(b) Claims, Prepetition Secured Debt or any other claims against the Debtors and (ii) any credit bid shall be subject to the Debtors having sufficient cash at the consummation of the Section 363 Sale to satisfy the Wind-Down Budget. For the avoidance of doubt, the Cash Collateral Accounts that secure the DIP Letters of Credit shall not be used as part of the Wind Down Budget or the Carve-Out.

34.      *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

35.      *Necessary Action*.  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

36.      *Retention of Jurisdiction*.  The Court shall retain jurisdiction to implement, interpret and enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

37.      *Final Hearing*.  The Final Hearing is scheduled for May 7, 2019 at 11:00 a.m. (Prevailing Eastern Time) before the Court.

Error! Unknown document property name.

38.    *Objections*.  Any party in interest objecting to the relief sought at the Final

Hearing shall file and serve written objections, which objections shall be served upon (a) counsel

to the Debtors, (i) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York

10017 (Attention: Marshall S. Huebner, Darren S. Klein, and Steven Z. Szanzer) and (ii) Morris,

Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE

19899 (Attention: Andrew R. Remming and Robert J. Dehney), (b) counsel to the DIP Agent and

DIP Lenders, (i) Arnold & Porter Kaye Scholer LLP, 70 W. Madison Street, Suite 4200,

Chicago, IL 60614 (Attention: Seth J. Kleinman and Alan Glantz) and (ii) Willkie Farr &

Gallagher LLP, 787 Seventh Avenue, New York, NY 10019-6099 (Attention: Joseph G. Minias,

Paul V. Shalhoub, and Leonard Klingbaum), and (iii) Young Conaway Stargatt & Taylor, LLP,

1000 North King Street, Wilmington, Delaware 19801 (Attention: Matthew B. Lunn),

(c) counsel to the Prepetition Revolving Agent, (i) Vinson & Elkins LLP, Trammell Crow Center

2001 Ross Ave, Suite 3900, Dallas, Texas, 75201 (Attention: Bill Wallander, Brad Foxman, and

Matt Pyeatt), (d) counsel to the Prepetition Term Agent, (i) Arnold & Porter Kaye Scholer LLP,

70 W. Madison Street, Suite 4200, Chicago, IL 60614 (Attention: Seth J. Kleinman and Alan

Glantz) and (ii) Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington,

Delaware 19801 (Attention: Matthew B. Lunn) , (e) the U.S. Trustee, 844 King Street, Suite

2207, Lockbox 35, Wilmington, DE 19801 (Attention: Richard Schepacarter), (f) counsel to the

Ad Hoc Group, (i) Willkie Farr & Gallagher LLP, (Attention: Joseph G. Minias, Paul V.

Shalhoub, and Leonard Klingbaum) and (ii) Young Conaway Stargatt & Taylor, LLP, 1000

North King Street, Wilmington, Delaware 19801 (Attention: Matthew B. Lunn), and (g) counsel

to Southcross Holdings LP and its non-Debtor subsidiaries, (i) Debevoise & Plimpton LLP, 919

Third Avenue, New York, NY 10022 (Attention: Natasha Labovitz), and (h) any other party that

Error! Unknown document property name.

has filed a request for notices with the Court, in each case to allow actual receipt by the foregoing no later than April 16, 2019 at 4:00 p.m. (prevailing Eastern Time).

39.    The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing, including, without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under sections 506(c) and 552(b) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with the Court and to the Committee after the same has been appointed, or such Committee's counsel, if the same shall have been appointed.

**Dated: April 2nd, 2019**
**Wilmington, Delaware**
Error! Unknown document property name.

60

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**