## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SOUTHCROSS ENERGY PARTNERS, L.P., *et al.*, | ) | Case No. 19-10702 (MFW) |
|  | ) |  |
| Debtors.[1] | ) | (Jointly Administered) |
|  | ) | **RE: D.I. 14 & 59** |

**FINAL ORDER, PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, AND 507, (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED SUPERPRIORITY POST-PETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of Southcross Energy Partners, L.P. ("**Southcross**" or the "**Borrower**"), Southcross Energy Partners GP, LLC ("**Southcross GP**"), and Southcross's direct and indirect subsidiaries, each of which is a debtor and debtor in possession (collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy**

---

[1] The debtors and debtors in possession in these Chapter 11 Cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Southcross Energy Partners, L.P. (5230); Southcross Energy Partners GP, LLC (5141); Southcross Energy Finance Corp. (2225); Southcross Energy Operating, LLC (9605); Southcross Energy GP LLC (4246); Southcross Energy LP LLC (4304); Southcross Gathering Ltd. (7233); Southcross CCNG Gathering Ltd. (9553); Southcross CCNG Transmission Ltd. (4531); Southcross Marketing Company Ltd. (3313); Southcross NGL Pipeline Ltd. (3214); Southcross Midstream Services, L.P. (5932); Southcross Mississippi Industrial Gas Sales, L.P. (7519); Southcross Mississippi Pipeline, L.P. (7499); Southcross Gulf Coast Transmission Ltd. (0546); Southcross Mississippi Gathering, L.P. (2994); Southcross Delta Pipeline LLC (6804); Southcross Alabama Pipeline LLC (7180); Southcross Nueces Pipelines LLC (7034); Southcross Processing LLC (0672); FL Rich Gas Services GP, LLC (5172); FL Rich Gas Services, LP (0219); FL Rich Gas Utility GP, LLC (3280); FL Rich Gas Utility, LP (3644); Southcross Transmission, LP (6432); T2 EF Cogeneration Holdings LLC (0613); and T2 EF Cogeneration LLC (4976).  The debtors' mailing address is 1717 Main Street, Suite 5300, Dallas, TX 75201.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms further below in this Final Order, the Interim Order, the DIP Documents, or the Motion, as applicable.

Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), and the Local Rules of Bankruptcy Practice and Procedure of the

United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of an

interim order and a final order (this "**Final Order**"), among other things:

(i)      authorizing the Borrower to obtain, and the Borrower's Debtor subsidiaries (collectively, in their capacity as such, the "**Guarantors**" and, together with the Borrower, the "**Loan Parties**") to guaranty, debtor-in-possession credit financing in an aggregate principal amount of up to $255 million (the "**DIP Financing**") to be funded by certain of the Prepetition Term Lenders (in their capacity as lenders under the DIP Facilities, the "**DIP Lenders**") under a secured term loan and letter of credit facility (the "**DIP Facility**"), and pursuant to the terms and conditions of the *Interim Order, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, and 507, (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Post-Petition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling Final Hearing, and (VII) Granting Related Relief* entered on April 2, 2019 [D.I. 59] (the "**Interim Order**"), consisting of (A) new money term loans (the "**DIP Term Loans**")) in an aggregate principal amount of up to $72.5 million, (B) letter of credit term loans (the "**DIP LC Loans**") in an aggregate principal amount of up to $55 million, the proceeds of which were all used to cash collateralize letters issued (or deemed issued) under a letter of credit sub-facility in an aggregate principal amount of up to $55 million (the "**DIP L/C Sub-Facility**"), and (C) roll-up term loans (the "**DIP Roll-Up Loans**" and, together with the DIP Term Loans and the DIP LC Loans, the "**DIP Loans**"), which shall be subject and subordinate to the DIP Term Loans and DIP LC Loans, to refinance dollar-for-dollar Prepetition Term Loans held by the DIP Lenders in the aggregate amount of $127.5 million;

(ii)     authorizing the Loan Parties, in connection with the DIP Facility, to (A) execute and enter into the Superpriority Secured Debtor-in-Possession Credit Agreement, among the Loan Parties, the DIP Lenders, certain Prepetition Revolving Lenders, as issuers of DIP Letters of Credit (the "**DIP L/C Issuers**"), and Wilmington Trust, National Association, as administrative and collateral agent (collectively, solely in such capacities, the "**DIP Agent**" and, together with the DIP Lenders, the "**DIP Secured Parties**"), substantially in the form attached as <u>Exhibit A</u> to the Interim Order (as amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP Credit Agreement**" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments, and amendments executed

and delivered in connection therewith, including the Approved Budget (including any permitted variances), the "**DIP Documents**") and (B) to perform all such other and further acts as may be required in connection with the DIP Documents;

(iii)  granting to the DIP Agent, for the benefit of the DIP Lenders, valid, enforceable, non-avoidable, and automatically and fully perfected liens and security interests, subject only to the Carve-Out and the Permitted Senior Liens, to secure the DIP Obligations, which liens and security interests shall have the rankings and priorities set forth herein;

(iv)  granting superpriority administrative claims to the DIP Secured Parties payable from, and having recourse to, all prepetition and post-petition property of the Loan Parties' estates and all proceeds thereof (other than Avoidance Actions, but including Avoidance Proceeds), subject to the Carve-Out and the Permitted Senior Liens;

(v)  authorizing the Loan Parties (A) upon entry of the Interim Order, to incur in a single draw on the Closing Date, DIP Term Loans in an aggregate principal amount of up to $30 million (the "**Initial DIP Term  Loans**") and DIP LC Loans in an aggregate principal amount of up to $55 million (the incurrence of such loans upon entry of the Interim Order, the "**Interim Financing**") and (B) to incur in a single draw on or within 30 days after the entry of this Final Order, DIP Term Loans in an aggregate principal amount of $42.5 million (the "**Delayed Draw DIP Loans**"), in each case subject to the terms and conditions set forth in the DIP Documents, the Interim Order, and this Final Order;

(vi)  authorizing the Debtors (A) upon entry of the Interim Order, to use proceeds of the DIP LC Loans to cash collateralize (in the amount of 103% of the face amount) the DIP Letters of Credit and to deem the Prepetition  Letters of Credit to be cancelled and reissued under the DIP L/C Sub-Facility (the "**Prepetition L/C Refinancing**") and (B) to use the DIP Roll-Up Loans to refinance and discharge dollar-for-dollar Prepetition Term Loans held by the DIP Lenders in the aggregate amount of $127.5 million (the "**Prepetition Term Loan Refinancing**" and, together with the Prepetition L/C Refinancing, the "**Prepetition Debt Refinancing**"), in each case subject to the terms and conditions set forth in the DIP Documents, the Interim Order, and this Final Order;

(vii)  authorizing the Debtors' use of the proceeds of the DIP Facility pursuant to the DIP Credit Agreement and other the DIP Documents, including the Approved Budget (subject to permitted variances);

(viii)  authorizing the Debtors to continue to use the Cash Collateral (subject to the Approved Budget and permitted variances thereunder) and all other Prepetition Collateral, and the granting of the Adequate Protection

3

#91937572v14

Obligations to the Prepetition Secured Parties with respect to, *inter alia*, such use of their Cash Collateral to the extent of diminution in the value of the Prepetition Collateral (including Cash Collateral);

(ix)    approving certain stipulations by the Debtors with respect to the Prepetition Loan Documents and the Prepetition Collateral as set forth in the Interim Order and herein;

(x)    modifying the automatic stay as set forth in the Interim Order, herein, and in the DIP Documents, to the extent necessary, to implement and effectuate the foregoing and the other terms and provisions of the DIP Documents, the Interim Order, and this Final Order; and

the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion and opportunity for a hearing on the Motion having been given to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion, the D'Souza Declaration, and the Howe Declaration; and the Court having held an interim hearing on the Motion on April 2, 2019 (the "**Interim Hearing**") and a final hearing on the Motion having been scheduled and noticed for May 7, 2019 (the "**Final Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion, the D'Souza Declaration, and the Howe Declaration and at the Interim Hearing and Final Hearing establish just cause for the relief granted herein; and all objections, if any, to the relief requested in the Motion for the entry of this Final Order having been withdrawn, resolved, or overruled by the Court; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their creditors,

4

their estates, and all other parties in interest; and the Court having determined that the relief requested in the Motion is necessary to avoid irreparable harm to the Debtors and their estates; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    *Petition Date*.  On April 1, 2019 (the "**Petition Date**"), each of the Debtors filed a separate voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "**Court**") commencing the Chapter 11 Cases.

B.    *Debtors in Possession*.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.    *Joint Administration*. The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [D.I. 48] entered by the Court on April 2, 2019, in each of the Chapter 11 Cases.

D.    *Interim Order*. On April 2, 2019, the Court entered the Interim Order [D.I. 59].

E.    *Committee Formation*.  As of the date hereof, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") has not appointed an official committee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (if appointed, a "**Committee**").

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

#91937572v14

F.      *Jurisdiction and Venue*.  The Court has core jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue of the Chapter 11 Cases and related proceedings is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

G.      *Notice*.  The Final Hearing was scheduled and noticed pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  Adequate and sufficient notice of the Motion has been provided in accordance with the Interim Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and under the circumstances, no other or further notice of the Motion or the entry of this Final Order shall be required.  The interim relief granted pursuant to the Interim Order was necessary to avoid immediate and irreparable harm to the Debtors and their estates and the final relief granted pursuant to this Final Order is necessary to avoid significant and irreparable harm to the Debtors and their estates.

H.      *Debtors' Stipulations*.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of a Committee or any other party in interest (subject to the limitations thereon contained in paragraphs 19 and 20 below), the Debtors acknowledge, admit, stipulate, and agree that:

(i)      Prepetition Revolving Credit Facility.  Pursuant to that certain Third Amended & Restated Revolving Credit Agreement, dated as of August 4, 2014 and

amended six times through August 10, 2018 (as amended, supplemented, or otherwise modified from time to time in accordance with the terms thereof, the "**Prepetition Revolving Credit Agreement**" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments, and amendments executed and delivered in connection therewith, the "**Prepetition Revolving Facility Documents**"), among Southcross, as borrower, Wells Fargo Bank, National Association, as administrative agent (in such capacity, the "**Prepetition Revolving Agent**"), and the lenders party thereto (the "**Prepetition Revolving Lenders**" and, together with the Prepetition Revolving Agent, the "**Prepetition Revolving Secured Parties**"), the Prepetition Revolving Lenders provided revolving credit and other financial accommodations to, and issued letters of credit for the account of, Southcross (the "**Prepetition Revolving Facility**"), which Prepetition Revolving Facility has been guaranteed on a joint and several basis by each of the Guarantors.

(ii)    <u>Prepetition Revolving Debt</u>.  As of the Petition Date, the Borrower and the Guarantors were justly and lawfully indebted and liable to the Prepetition Revolving Secured Parties, without defense, counterclaim, or offset of any kind, in respect of (a) outstanding loans in the aggregate principal amount of not less than $81.1 million, (b) undrawn Letters of Credit (as defined in the Prepetition Revolving Credit Agreement) (the "**Prepetition Letters of Credit**") in the amount of not less than $25.9 million, and (c) three Secured Hedging Agreements (as defined in the Prepetition Revolving Credit Agreement) with a notional value of not less than $275 million, pursuant to and in accordance with the terms of, the Prepetition Revolving Facility Documents (collectively, such indebtedness together with accrued and unpaid interest thereon and fees, expenses,

7

charges, indemnities, and other obligations incurred in connection therewith as provided in the Prepetition Revolving Facility Documents, the "**Prepetition Revolving Debt**").

(iii)    <u>Prepetition Term Facility</u>.  Pursuant to that certain Term Loan Credit Agreement, dated as of August 4, 2014 (as amended, supplemented, or otherwise modified from time to time in accordance with the terms thereof, the "**Prepetition Term Loan Credit Agreement**" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments, and amendments executed and delivered in connection therewith, the "**Prepetition Term Facility Documents**"), among Southcross, as borrower, Wilmington Trust, N.A., as successor administrative agent (in such capacity, the "**Prepetition Term Agent**" and, together with the Prepetition Revolving Agent, the "**Prepetition Agents**"), and the lenders party thereto (the "**Prepetition Term Lenders**" and, together with the Prepetition Term Agent, the "**Prepetition Term Secured Parties**" and, together with the Prepetition Revolving Secured Parties, the "**Prepetition Secured Parties**"), the Prepetition Term Lenders provided term loans to Southcross (the "**Prepetition Term Facility**" and, together with the Prepetition Revolving Facility, the "**Prepetition Secured Credit Facilities**"), which Prepetition Term Facility has been guaranteed on a joint and several basis by each of the Guarantors.

(iv)    <u>Prepetition Term Debt</u>.  As of the Petition Date, the Borrower and the Guarantors were justly and lawfully indebted and liable to the Prepetition Term Secured Parties, without defense, counterclaim, or offset of any kind, in respect of loans (the "**Prepetition Term Loans**") in the aggregate principal amount of not less than $429,140,515.29, pursuant to and in accordance with the terms of the Prepetition Term Facility Documents (collectively, such indebtedness together with accrued and unpaid

interest thereon and fees, expenses, charges, indemnities, and other obligations incurred in connection therewith as provided therein, the "**Prepetition Term Debt**" and, together with the Prepetition Revolving Debt, the "**Prepetition Secured Debt**").

(v)  Validity of Prepetition Secured Debt.  (a) The Prepetition Secured Debt constitutes legal, valid, binding, and non-avoidable obligations of the Borrower and the Guarantors, enforceable in accordance with the terms of the Prepetition Secured Debt Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code) and (b) no portion of the Prepetition Secured Debt, or any payments made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Prepetition Secured Debt Documents prior to the Petition Date, is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law.

(vi)  Prepetition Liens.  The liens and security interests granted to the Prepetition Secured Parties (the "**Prepetition Liens**"), pursuant to and in connection with the Prepetition Secured Debt Documents, are (a) valid, binding, perfected, enforceable liens and security interests in the Shared Collateral (as defined in the Intercreditor Agreement) (the "**Prepetition Collateral**"), (b) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense, or claim under the Bankruptcy Code or applicable non-bankruptcy law, and (c) as of the Petition Date, subject only to Permitted Senior Liens permitted under the Prepetition Secured Debt Documents.

#91937572v14

(vii)    <u>No Control</u>.  None of the Prepetition Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted, or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Prepetition Secured Debt Documents.

(viii)    <u>No Claims or Causes of Action</u>.  No claims, counterclaims, or causes of action of any kind or nature exist against, or with respect to, the Prepetition Secured Parties under any agreements by and among the Debtors and any such party that is in existence as of the Petition Date, whether related to the Prepetition Secured Debt Documents, any other agreement, the Debtors, or otherwise.

I.    *Findings Regarding the DIP Financing and Use of Cash Collateral.*

(i)    Good and sufficient cause has been shown for the entry of this Final Order.

(ii)    The Loan Parties have a critical need for the DIP Financing and to continue to use the Prepetition Collateral (including "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code ("**Cash Collateral**")) in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers, and customers, to make payroll, to make capital expenditures, to administer the Chapter 11 Cases, to cash collateralize the Prepetition Letters of Credit (in the amount of 103% of the face amount of issued and outstanding Prepetition Letters of Credit), and to satisfy other working capital and operational needs.  The access of the Loan Parties to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral, incurrence of

#91937572v14

new indebtedness under the DIP Documents, and other financial accommodations provided under the DIP Documents are necessary and vital to the preservation and maintenance of the going concern values of the Loan Parties and to a successful reorganization of the Loan Parties.

(iii)     The Loan Parties are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Loan Parties are also unable to obtain secured credit allowable under section 364(c)(1), 364(c)(2), or 364(c)(3) of the Bankruptcy Code without (A) granting to the DIP Secured Parties the DIP Liens and the DIP Superpriority Claims and (B) incurring the Adequate Protection Obligations, in each case subject to the Carve-Out and the terms and conditions set forth in the Interim Order, this Final Order, and in the DIP Documents.

(iv)     Based on the Motion, the Howe Declaration, the D'Souza Declaration, and the record presented to the Court at the Interim Hearing and the Final Hearing, the terms of the DIP Financing and the terms on which the Loan Parties may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to the Interim Order, this Final Order, and the DIP Documents are fair and reasonable, reflect the Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration.

(v)     Absent order of the Court and the provision of adequate protection, consent of the Prepetition Secured Parties is required for the Loan Parties' use of Cash Collateral and the other Prepetition Collateral.  The Prepetition Secured Parties have

11

consented, are deemed, pursuant to that certain Intercreditor Agreement, dated as of August 4, 2014, by and among Southcross, the Prepetition Agents, and the other grantors party thereto (the "**Intercreditor Agreement**" and, together with the Prepetition Revolving Facility Documents and the Prepetition Term Facility Documents, the "**Prepetition Secured Debt Documents**"), to have consented, or have not objected to the Loan Parties' use of Cash Collateral and the other Prepetition Collateral, and the Loan Parties' entry into the DIP Documents solely in accordance with and subject to the terms and conditions in the Interim Order, this Final Order, and the DIP Documents.

(vi)     The DIP Financing and the use of the Prepetition Collateral have been negotiated in good faith and at arm's length among the Loan Parties and the DIP Secured Parties, and all of the Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Documents, including, without limitation, all "Obligations" (as defined in the DIP Documents), in each case owing to the DIP Secured Parties or any of their respective banking affiliates (collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the DIP Secured Parties and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any other order (including, without limitation, the Interim Order) or any provision hereof or thereof is vacated, reversed, or modified on appeal or otherwise.

#91937572v14

(vii)    The Prepetition Secured Parties have acted in good faith regarding the DIP Financing and the Loan Parties' continued use of the Prepetition Collateral (including Cash Collateral) to fund the administration of the Loan Parties' estates and continued operation of their businesses (including the incurrence and payment of the Adequate Protection Obligations and the granting of the Adequate Protection Liens), in accordance with the terms hereof, and the Prepetition Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of sections 363(m) and 364(e) of the Bankruptcy Code, as may be applicable, in the event that this Final Order or any order (including, without limitation, the Interim Order) or any provision hereof or thereof is vacated, reversed, or modified on appeal or otherwise.

(viii)    The Prepetition Secured Parties are entitled to the adequate protection provided in the Interim Order and this Final Order as and to the extent set forth herein and therein pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court in connection with the Motion, the Interim Order, and this Final Order, the terms of the proposed adequate protection arrangements and the use of the Prepetition Collateral are fair and reasonable, reflect the Loan Parties' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the use of the Prepetition Collateral; *provided* that nothing in the Interim Order, this Final Order, or the other DIP Documents shall (a) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral other than on the terms set forth in the Interim Order and this Final Order and in the context of the DIP Financing authorized by the Interim Order and this Final Order, (b) be construed as a consent by any party to the terms of any other

#91937572v14

financing or any other lien encumbering the Prepetition Collateral (whether senior or junior), or (c) prejudice, limit, or otherwise impair the rights of any of the Prepetition Secured Parties, subject to any applicable provisions of the Intercreditor Agreement, to seek new, different, or additional adequate protection for any diminution in value of their interests in the Prepetition Collateral from and after the Petition Date or assert the interests of any of the Prepetition Secured Parties and the rights of any other party in interest to object to such relief are hereby preserved.

(ix)    Use of the DIP LC Loans, upon entry of the Interim Order, to cash collateralize all Letters of Credit (in the amount of 103% of the face amount) and use of the DIP Roll-Up Loans, upon the funding of the Delayed Draw DIP Term Loans, to refinance and discharge the DIP Lenders' Prepetition Term Loans (in an amount equal to the DIP Term Loans and DIP LC Loans provided by such DIP Lenders under the DIP Facility) reflects the Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties.

(x)    Absent granting the relief set forth in this Final Order, the Loan Parties' estates will be significantly and irreparably harmed.  Consummation of the DIP Financing and the use of the Prepetition Collateral (including Cash Collateral) in accordance with the Interim Order, this Final Order, and the DIP Documents are, therefore, in the best interests of the Loan Parties' estates and consistent with the Loan Parties' exercise of their fiduciary duties.

J.    *Permitted Senior Liens; Continuation of Prepetition Liens.*  Nothing in the Interim Order or this Final Order shall constitute a finding or ruling by this Court that any alleged Permitted Senior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.

14

Notwithstanding anything contained herein or in the Interim Order, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, or a Committee (if appointed), to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Senior Lien and/or security interests.  The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Senior Lien and is expressly subject to the DIP Liens.  The Prepetition Liens, and the DIP Liens that prime the Prepetition Liens, are continuing liens and the DIP Collateral is and will continue to be encumbered by such liens in light of the integrated nature of the DIP Facilities, the DIP Documents, and the Prepetition Secured Debt Documents.

**IT IS HEREBY ORDERED THAT:**

1.      *Financing Approved.*  The relief requested in the Motion is granted and the use of Cash Collateral on a final basis, the Delayed Draw DIP Loans and the Prepetition Term Loan Refinancing (in addition to the Interim Financing and the Prepetition L/C Refinancing authorized by the Interim Order) are authorized and approved, in each case in accordance with the terms and conditions set forth in the DIP Documents, the Approved Budget (including any permitted variances), the Interim Order, and this Final Order.  Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.

2.      *Authorization of the DIP Financing and the DIP Documents.*

(a)      The Loan Parties are hereby authorized to execute, deliver, enter into, and, as applicable, perform all of their obligations under the DIP Documents and such other and further acts as may be necessary, appropriate, or desirable in connection therewith, in

15

each case in accordance with and subject to the terms of the Interim Order, this Final Order, and the DIP Documents.  The Borrower is hereby authorized to borrow money and obtain letters of credit pursuant to the DIP Credit Agreement, subject to any limitations on borrowing under the DIP Documents, which shall be used for all purposes permitted under the DIP Documents, including, without limitation, to pay certain costs, fees, and expenses related to the Chapter 11 Cases, to pay the Adequate Protection Payments, to cash collateralize the Prepetition Letters of Credit (in the amount of 103% of the face amount of issued and outstanding Prepetition Letters of Credit), and to fund working capital and for general corporate purposes of the Loan Parties during the Chapter 11 Cases, in each case, subject to the Approved Budget (including any permitted variances) and in accordance with the Interim Order, this Final Order, and the DIP Documents, and the Guarantors are hereby authorized to guaranty the DIP Obligations.

(b)     In furtherance of the foregoing and without further approval of the Court, each Debtor in accordance with the Interim Order and this Final Order, is authorized to perform all acts, to make, execute, and deliver all instruments, certificates, agreements, and documents (including, without limitation, the execution or recordation of security agreements, mortgages, and financing statements), and to pay all fees in connection with or that may be reasonably required, necessary, or desirable for the Loan Parties' performance of their obligations under or related to the DIP Financing, including, without limitation:

(i)     the execution and delivery of, and performance under, each of the DIP Documents;

16

(ii)    the execution and delivery of, and performance under, one or more amendments, waivers, consents, or other modifications to and under the DIP Documents, in each case, in such form as the Loan Parties, the DIP Agent, the requisite DIP Lenders, and (if required under the DIP Documents) the DIP L/C Issuers may agree, it being understood that no further approval of the Court shall be required for any authorizations, amendments, waivers, consents, or other modifications to and under the DIP Documents (and any fees and other expenses, amounts, charges, costs, indemnities, and other obligations paid in connection therewith) that do not (A) shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder, (B) increase existing fees or add new fees thereunder (excluding, for the avoidance of doubt, any amendment, consent, or waiver fee), or (C) shorten the case milestones set forth in Section 8.23 of the DIP Credit Agreement.  The foregoing shall be without prejudice to the Loan Parties' right to seek approval from the Court of any material modification or amendment on an expedited basis;

(iii)    the non-refundable payment to the DIP Agent and/or the DIP Lenders, as the case may be, of all reasonable and documented fees (which fees have been and are deemed to have been approved upon entry of the Interim Order and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise) and any amounts due (or that may become due) in respect of the

17

indemnification obligations, in each case referred to in the DIP Documents (and in any separate letter agreements between any or all of the Loan Parties, on the one hand, and any of the DIP Secured Parties, on the other, in connection with the DIP Financing), and the costs and expenses as may be due from time to time, including, without limitation, reasonable and documented fees and expenses of the professionals retained by any of the DIP Agent and DIP Lenders, in each case, as provided for in the DIP Documents, whether or not such fees or expenses arose prior to or after the Petition Date without the need to file retention motions or fee applications or to provide notice to any party; and

(iv)    the performance of all other acts necessary, appropriate, or desirable under or in connection with the DIP Documents.

3.    *Prepetition Debt Refinancing*.  Pursuant to the terms and conditions of the Interim Order and this Final Order, and in accordance with paragraph 9 below, the Debtors are hereby authorized to use the proceeds of the DIP LC Loan to cash collateralize the Prepetition Letters of Credit (in the amount of 103% of the face amount of issued and outstanding Prepetition Letters of Credit) and the Prepetition Letters of Credit will be deemed to have been cancelled and reissued as DIP Letters of Credit in their full amounts and without modification of the terms of the Prepetition Letters of Credit other than their deemed issuance as DIP Letters of Credit under the DIP L/C Sub-Facility.  The Debtors shall use the DIP Roll-Up Loans to refinance and discharge the DIP Lenders' Prepetition Term Loans (in an amount equal to the DIP Term Loans and DIP LC Loans provided and/or committed to under the DIP New Money Facility), in each case subject to the terms and conditions set forth in the DIP Documents and the reservation of rights of parties in interest in paragraph 19 below.  Upon expiration of the Challenge Period

#91937572v14

without a successful Challenge having been brought with respect thereto, the DIP Roll-Up Loans issued under this paragraph 3 shall be deemed indefeasible and the Prepetition Secured Debt refinanced thereby shall be discharged.  Notwithstanding anything to the contrary in the Interim Order, this Final Order, or in the Intercreditor Agreement (as may be amended and/or modified from time to time after the Petition Date), (a) the claims and liens in respect of the DIP Roll-Up Loans shall be subject and subordinate to the claims and liens in respect of the DIP LC Loans and the DIP Term Loans in all respects and (b) the claims and liens in respect of the DIP Roll-Up Loans shall be *pari passu* with the Prepetition Revolving Debt in all respects such that distributions on the Prepetition Revolving Debt are pro rata with the sum of the DIP Roll-Up Loans and the Prepetition Term Loans; *provided* that any proceeds allocated on account of the DIP Roll-Up Loans and the Prepetition Term Loans shall be applied first to the repayment of the DIP Roll-Up Loans before any Prepetition Term Loan.

4.       *DIP Obligation*s.  Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid, binding, and non-avoidable obligations of the Loan Parties enforceable against each Loan Party thereto in accordance with the terms of the DIP Documents, the Interim Order, and this Final Order as of the date of the entry of the Interim Order.  No obligation, payment, transfer, or grant of security to the DIP Secured Parties under the DIP Documents, the Interim Order, or this Final Order shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d), 544, 548, or 549 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, reduction, setoff, recoupment, claim, or counterclaim.

#91937572v14

5.       *Carve-Out.*

(a)       As used in this Final Order, the "**Carve-Out**" shall mean a carve-out from the DIP Superpriority Claims, the DIP Liens (other than DIP Liens in the Cash Collateral, held in the Cash Collateral Account, securing DIP Letters of Credit), the 507(b) Claims, and the Adequate Protection Liens, in an amount equal to the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the Carve-Out Trigger Notice), (ii) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an aggregate amount not to exceed $50,000 (without regard to the Carve-Out Trigger Notice), (iii) to the extent allowed by the Court at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "**Professional Fees**") incurred by persons or firms retained by the Debtors, pursuant to section 327, 328, or 363 of the Bankruptcy Code, or by a Committee, if any, pursuant to section 328 and 1103 of the Bankruptcy Code (collectively, the "**Professional Persons**"), at any time on or before the first business day following the earlier of (A) delivery by the DIP Agent (acting upon the express prior written direction of the Required Lenders (as defined in the DIP Credit Agreement)) of a Carve-Out Trigger Notice and (B) the Maturity Date (as defined in the DIP Credit Agreement) (such day, the "**Carve-Out Trigger Date**"), whether allowed by the Court prior to or after the Carve-Out Trigger Date, and (iv) Professional Fees incurred after the Carve-Out Trigger Date in an amount not to exceed $4,000,000 (the "**Post Trigger Date Carve-Out Amount**"); *provided* that any success, completion, or similar fees payable from the Post-Trigger Date Carve-Out Amount shall be subject and subordinate, and

#91937572v14

junior in right of payment, to all other Professional Fees payable from the Post-Trigger Date Carve-Out (collectively, the "**Carve-Out Amount**"), in each case subject to the limits imposed by the Interim Order or this Final Order.  For purposes of the foregoing, "**Carve-Out Trigger Notice**" shall mean a written notice delivered by email by the DIP Agent (acting upon the express prior written direction of the Required Lenders (as defined in the DIP Credit Agreement)) to the Debtors' lead restructuring counsel, the U.S. Trustee, and counsel to a Committee, if any, which notice may be delivered following the occurrence and during the continuation of an "Event of Default" under the DIP Documents (an "**Event of Default**"), stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

(b)      Prior to the occurrence of the Carve-Out Trigger Date, the Debtors are authorized (subject to the Approved Budget) to pay Professional Fees that are authorized to be paid in accordance with the provisions of the Bankruptcy Code and any order entered by the Court establishing procedures for the payment of compensation to Professional Persons in the Chapter 11 Cases, as the same may be due and payable, and such payments shall not reduce the Carve-Out Amount.  Any payment or reimbursement made after the Carve-Out Trigger Date on account of Professional Fees incurred after the Carve-Out Trigger Date shall permanently reduce the Carve-Out on a dollar-for-dollar basis, *provided* that the Carve-Out shall not include, apply to, or be available for any fees or expenses incurred by any party in connection with the restricted uses thereof set forth in paragraph 20.

(c)      Immediately upon the Carve-Out Trigger Date, and prior to the payment of any DIP Secured Party or Prepetition Secured Party on account of adequate protection,

21

the Debtors shall fund a reserve in an amount equal to the Carve-Out Amount (the

"**Carve-Out Reserve**") from all cash on hand (including Cash Collateral, but excluding

all Cash Collateral in the Cash Collateral Account that secures the DIP Letters of Credit

as of such date, and, including any available cash thereafter held by any Debtor

(exclusive of any cash utilized to cash collateralize the Prepetition Letters of Credit in

connection with the Prepetition L/C Refinancing)).  The Carve-Out Reserve shall be held

for the benefit of the Debtors in a segregated non-interest bearing account at the DIP

Agent or another financial institution agreed to by the Borrower and the Required

Lenders (as defined in the DIP Credit Agreement) in trust to pay the Professional Fees

and other obligations benefiting from the Carve-Out and the Carve-Out Reserve shall be

available only to satisfy such obligations benefiting from the Carve-Out until paid in full;

*provided* that the DIP Agent shall follow the instructions of the Debtors with respect to

the disbursement of the Carve-Out Reserve consistent with the provisions of this Final

Order; *provided further* that the DIP Agent shall not be liable to any Professional Person

or any other person or entity with respect to the Carve-Out Reserve held at the DIP

Agent, and all actions (or inactions) by the DIP Agent related thereto shall be exculpated

by all such parties, except in the event a court of competent jurisdiction determines that

the DIP Agent breached its obligations under this Final Order by not following an

instruction of the Debtors that was consistent with the provisions of this Final Order with

respect to the Carve-Out Reserve; *provided further* that, to the extent the Carve-Out

Reserve has not been reduced to zero after the payment in full of such obligations, it shall

be used to pay the DIP Agent for the benefit of the DIP Secured Parties until the DIP

Obligations have been indefeasibly paid in full in cash and all DIP Commitments have

been terminated.  Notwithstanding anything to the contrary herein, the Prepetition Agents and the DIP Agent, each on behalf of itself and the relevant secured parties, (i) shall not sweep or foreclose on the Carve-Out Reserve and (ii) shall have a security interest upon any residual interest in the Carve-Out Reserve, available following satisfaction in cash in full of all obligations benefitting from the Carve-Out, and the priority of such lien on the residual shall be consistent with this Final Order.  Further, notwithstanding anything to the contrary herein, (i) the failure of the Carve-Out Reserve to satisfy in full the Professional Fees shall not affect the priority of the Carve-Out and (ii) in no way shall the Carve-Out, the Post-Trigger Date Carve-Out Amount, the Carve-Out Reserve, or any of the foregoing be construed as a cap or limitation on the amount of the Professional Fees due and payable by the Debtors.

(d)     Notwithstanding anything to the contrary herein or in the DIP Documents, the Carve-Out shall be senior to the DIP Obligations, the DIP Superpriority Claims, the DIP Liens (other than the DIP Liens in the Cash Collateral in the Cash Collateral Account that secures the DIP Letters of Credit), the Adequate Protection Obligations, the 507(b) Claims, the Adequate Protection Liens, and all other liens and claims granted under the Interim Order, this Final Order, the DIP Documents, or otherwise securing or in respect of the DIP Obligations or the Adequate Protection Obligations.

6.     *No Direct Obligation to Pay Allowed Professional Fees*.  None of the Prepetition Secured Parties or DIP Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in the Interim Order, this Final Order, or otherwise shall be construed to obligate the Prepetition Secured

23

Parties or the DIP Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

7.     *DIP Superpriority Claims.*  Pursuant to section 364(c)(1) of the Bankruptcy Code, and effective as of the Petition Date, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the Loan Parties (without the need to file any proof of claim) with priority over any and all claims against the Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses or other claims arising under section 105, 326, 328, 330, 331, 365, 503(b), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed claims (the "**DIP Superpriority Claims**") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and post-petition property of the Loan Parties and all proceeds thereof (excluding the Loan Parties' claims and causes of action under sections 502(d), 506(c), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and similar statutes or common law (collectively, the "**Avoidance Actions**"), but including any proceeds or property recovered, unencumbered or otherwise from Avoidance Actions, whether by judgment, settlement, or otherwise ("**Avoidance Proceeds**"), subject only to the liens on such property and the Carve-Out.  The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the

Bankruptcy Code in the event that the Interim Order, this Final Order, or any provision hereof or thereof is vacated, reversed, or modified on appeal or otherwise.  The DIP Superpriority Claims shall be *pari passu* in right of payment with one another and senior to the Adequate Protection Claims; *provided* that the DIP Superpriority Claims in respect of the DIP Roll-Up Loans shall be subject and subordinate to the DIP Superpriority Claims in respect of the DIP Term Loans and the DIP LC Loans.

8.    *DIP Liens*.  As security for the DIP Obligations, effective and perfected upon the Petition Date and without the necessity of the execution, recordation, or filing of mortgages, security agreements, control agreements, pledge agreements, financing statements, notations on certificates of title for titled goods or other similar documents, or the possession or control by the DIP Agent of, or over, any DIP Collateral, the following security interests and liens are hereby granted to the DIP Agent for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a) through (c) below being collectively referred to as the "**DIP Collateral**", subject to the Carve-Out and in each case in accordance with the priorities set forth below (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to the Interim Order, this Final Order, and the DIP Documents, the "**DIP Liens**"):

(a)    First Lien on Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority senior security interest in and lien upon all tangible and intangible prepetition and post-petition property of the Loan Parties, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to a valid, perfected, and non-avoidable lien (collectively, "**Unencumbered Property**"), including, without

limitation, any and all unencumbered cash of the Loan Parties (whether maintained with the DIP Agent or otherwise) and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, letter-of-credit rights, investment property and support obligations, commercial tort claims, all books and records pertaining to the property described in this paragraph, all property of the Loan Parties held by any DIP Secured Party, all other goods (including but not limited to fixtures) and personal property of the Loan Parties, whether tangible or intangible and wherever located, Avoidance Proceeds, capital stock of subsidiaries, wherever located, and, to the extent not covered by the foregoing, all other assets or property of the Debtors, whether tangible, intangible, real, personal or mixed, and the proceeds, products, rents, and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing, in each case other than the Excluded Property (as defined in the DIP Documents) and Avoidance Actions, but including any proceeds of Excluded Property that do not otherwise constitute Excluded Property.

(b)     <u>Liens Priming Prepetition Secured Parties' Liens</u>.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority priming security interest in and lien upon all Prepetition Collateral and DIP Collateral (wherever located and the proceeds, products, rents and profits thereof), subject and subordinate only to the Permitted Senior Liens, but senior in all

#91937572v14

respects to the Prepetition Liens and the Adequate Protection Liens (any such liens primed pursuant to this clause (b), the "**Primed Liens**"); *provided* that the DIP Liens in respect of the DIP Roll-Up Loans shall remain subject to the Intercreditor Agreement except that any proceeds allocated thereunder on account of the DIP Roll-Up Loans or the Prepetition Term Debt shall be applied first to the repayment in full of the DIP Roll-Up Loans before being applied to any Prepetition Term Debt.

(c)     Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all prepetition and post-petition property of the Loan Parties (wherever located, and the proceeds, products, rents, and profits thereof) immediately junior to (i) valid, perfected, and non-avoidable liens (other than Primed Liens) in existence immediately prior to the Petition Date, (ii) valid non-avoidable liens (other than Primed Liens) that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, and (iii) the liens in favor of the DIP L/C Issuers in respect of the Cash Collateral Accounts, securing the Loan Parties' obligations under the DIP Letters of Credit (the liens described in the foregoing clause (i) through (iii), the "**Permitted Senior Liens**"); *provided* that nothing in this paragraph (c) shall limit the rights of the DIP Secured Parties under the DIP Documents to the extent the liens described in the foregoing clause (i) or (ii) are not permitted thereunder.

(d)     Liens Senior to Certain Other Liens.  The DIP Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Loan Parties and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP Documents, in the Interim Order or

27

this Final Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other governmental unit (including any regulatory body), commission, board, or court for any liability of the Loan Parties, or (C) any intercompany or affiliate liens or security interests of the Loan Parties or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code granted after the date hereof.

(e)     <u>Relative Priority of DIP Liens</u>.  Notwithstanding anything to the contrary in the Interim Order or this Final Order, the DIP Liens in respect of the DIP Roll-Up Loans shall be subject and subordinate to the DIP Liens in respect of the DIP Term Loans and the DIP LC Loans in all respects.

(f)     <u>Local Texas Tax Authorities</u>. Notwithstanding any provision of this Final Order, any valid, perfected, and unavoidable statutory liens held by Local Texas Tax Authorities[4] that are senior to the Prepetition Liens held by the Prepetition Secured Parties shall neither be primed by nor subordinated to any liens granted pursuant to this Final Order.  Furthermore, the claims and liens of the Local Texas Tax Authorities shall remain subject to any objections any party would otherwise be entitled to raise as to the priority, validity, or extent of such liens.

(g)     For the avoidance of doubt, any DIP Liens on DIP Collateral relating to real property of the Debtors granted pursuant to this paragraph 8 shall include, for the ratable benefit of the related DIP Secured Parties, in each case to the extent constituting DIP Collateral, all of each Debtor's right, title, and interest now or hereafter acquired in

---

[4] For purposes of this Final Order, the term "**Local Texas Tax Authorities**" shall refer to local governmental entities that are (a) authorized by the State of Texas to assess and collect taxes and (b) represented by either the law firms of Linebarger Goggan Blair & Sampson, LLP or McCreary, Veselka, Bragg & Allen, P.C.

and to all land, together with the buildings, structure, parking areas, and other improvements thereon, now or hereafter owned by any Debtor, including all easements, rights-of-way, and similar rights relating thereto and all leases, tenancies, and occupancies thereof, and (a) all goods, accounts, inventory, general intangibles, instruments, documents, contract rights, and chattel paper, (b) all reserves, escrows, or impounds and all deposit accounts maintained by each Debtor with respect to such real estate, (c) all leases, licenses, concessions, occupancy agreements, or other agreements (written or oral, now or at any time in effect) which grant to any person a possessory interest in, or the right to use, all or any part of such real estate, together with all related security and other deposits, (d) all of the rents, revenues, royalties, income proceeds, profits, accounts receivable, security and other types of deposits, and other benefits paid or payable by parties to the leases for using, leasing, licensing, possessing, operating from, residing in, selling or otherwise enjoying such real estate, (e) all other agreements, such as construction contracts, architects' agreements, engineers' contracts, utility contracts, maintenance agreements, management agreements, service contracts, listing agreements, guaranties, warranties, permits, licenses, certificates and entitlements in any way relating to the construction, use, occupancy, operation, maintenance, enjoyment, or ownership of such real estate, (f) all rights, privileges, tenements, hereditaments, rights-of-way, easements, appendages, and appurtenances appertaining to the foregoing, (g) all property tax refunds payable with respect to such real estate, (h) all accessions, replacements, and substitutions for any of the foregoing and all proceeds thereof, (i) all insurance policies, unearned premiums therefor, and proceeds from such policies covering any of the above property now or hereafter acquired by each Debtor as an

#91937572v14

insured party, and (j) all awards, damages, remunerations, reimbursements, settlements, or compensation heretofore made or hereafter to be made to any Debtor by any governmental authority pertaining to any condemnation or other taking (or any purchase in lieu thereof) of all or any such real estate.

9.    *Establishment of Cash Collateral Accounts; Maintenance of Letters of Credit*.

(a)    In order to cash collateralize the new letters of credit issued and the Prepetition Letters of Credit deemed issued (the "**DIP Letters of Credit**") under the DIP L/C Sub-Facility, in accordance with the DIP Documents, and pursuant to the terms and conditions  of the Interim Order and this Final Order, the Loan Parties shall (to the extent not done heretofore pursuant to the Interim Order), and are hereby authorized to, deposit as a single installment in cash into one or more non-interest-bearing cash collateral accounts established with the DIP Agent (the "**Cash Collateral Accounts**") the proceeds of the DIP LC Loans, which shall cash collateralize the DIP Letters of Credit in the amount of 103% of the face amount of issued and outstanding DIP Letters of Credit.  The amounts on deposit in the Cash Collateral Accounts shall be subject to (i) a first-priority security interest and lien in favor of the DIP Agent for the benefit of the DIP L/C Issuers, securing the obligations of the Loan Parties under the DIP Letters of Credit, and (ii) subject to the Carve-Out, a second-priority security interest and lien in favor of the DIP Agent for the benefit of the DIP Secured Parties, securing the other DIP Obligations.

(b)    Pursuant to the terms and conditions of the Interim Order and this Final Order (to the extent not done heretofore pursuant to the Interim Order), the Loan Parties are authorized to renew DIP Letters of Credit issued under the DIP L/C Sub-Facility on an uninterrupted basis and to take all actions reasonably appropriate with respect thereto

on an uninterrupted basis.  Without limitation of the foregoing, upon entry of the Interim

Order, the Prepetition Letters of Credit were deemed to have been cancelled and reissued

as DIP Letters of Credit in their full amounts and without modification of the terms of the

Prepetition Letters of Credit other than their deemed issuance as DIP Letters of Credit

issued under the DIP L/C Sub-Facility.  The DIP L/C Issuers shall be authorized to apply

any Cash Collateral held against the amount of any draw on any DIP Letter of Credit, and

reducing the DIP L/C Sub-Facility by such amount so applied, without notice of any kind

or further order or action by the Court and the automatic stay provisions of section 362 of

the Bankruptcy Code are hereby modified to the extent necessary to permit the DIP L/C

Issuers to so apply any such Cash Collateral in the Cash Collateral Accounts.  All issued

and outstanding DIP Letters of Credit shall be cash collateralized at 103% of the face

amount thereof and shall be deemed to be secured by  Priority DIP Financing Liens (as

defined in the Intercreditor Agreement) and the Cash Collateral advanced as DIP LC

Loans under the DIP Facility.  The DIP Letters of Credit shall remain cash collateralized

as set forth in the Interim Order and herein at all times, and except as provided below

with respect to Alternate Cash Collateral (as defined below), the Debtors shall have no

right to use the Cash Collateral Accounts securing the DIP Letters of Credit, and such

cash collateralization shall not be subject to any reduction by any chapter 11 plan, order

of the Court, or otherwise; *provided* that, subject to the terms and conditions (including in

section 9.03(j) of the DIP Credit Agreement) of the DIP Documents, the Borrower shall

have the right to withdraw proceeds on deposit in the Cash Collateral Accounts (which

shall be accompanied by corresponding reduction in the DIP L/C Sub-Facility by such

amount so withdrawn) in an amount up to the "Alternate Cash Collateral Amount" (as

31

defined in the DIP Credit Agreement) to cash collateralize customer and/or supplier obligations (such cash collateral, the "**Alternate Cash Collateral**") in lieu of issuing Letters of Credit.

(c)     To the extent there exists or comes to exist any cash of the Debtors' estates that is not Cash Collateral, wherever located and however held, such cash shall be deemed to have been used first by the Debtors' estates and such cash, to the extent applicable, shall be subject to the DIP Liens and DIP Superiority Claims granted to the DIP Lenders under the Interim Order and this Final Order.

10.     *Protection of DIP Lenders' Rights*.

(a)     So long as there are any DIP Obligations outstanding or the DIP Lenders have any outstanding Commitments (as defined in the DIP Documents) (the "**DIP Commitments**") under the DIP Documents, the Prepetition Secured Parties shall (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Secured Debt Documents, the Interim Order, or this Final Order, or otherwise seek to exercise or enforce any rights or remedies against such DIP Collateral, including in connection with the Adequate Protection Liens, (ii) be deemed to have consented to any transfer, disposition, or sale of, or release of liens on, such DIP Collateral (but not any proceeds of such transfer, disposition, or sale to the extent remaining after payment in cash in full of the DIP Obligations and termination of the DIP Commitments), to the extent such transfer, disposition, sale, or release is authorized under the DIP Documents, and (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in such DIP Collateral unless,

solely as to this clause (iii), the DIP Agent or the DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to the Interim Order or this Final Order, or as may be required by applicable state law to continue the perfection of valid and non-avoidable liens or security interests as of the Petition Date.

(b)    To the extent any Prepetition Secured Party has possession of any Prepetition Collateral or DIP Collateral, or has control with respect to any Prepetition Collateral or DIP Collateral that is subject to a DIP Lien, then such Prepetition Secured Party shall be deemed to maintain such possession or exercise such control as gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Secured Parties and shall comply with the instructions of the DIP Agent (acting upon the express prior written direction of the Required Lenders (as defined in the DIP Credit Agreement)) with respect to the exercise of such control.

(c)    Any proceeds of Prepetition Collateral subject to the Primed Liens received by any Prepetition Secured Parties, whether in connection with the exercise of any right or remedy (including setoff) relating to the Prepetition Collateral or otherwise received by either of the Prepetition Agents, shall be segregated and held in trust for the benefit of and forthwith paid over to the DIP Agent for the benefit of the DIP Secured Parties in the same form as received, with any necessary endorsements; *provided* that, as part of any sale of all or substantially all of the Prepetition Collateral (i) located in a Local Texas Tax Authority's jurisdiction and (ii) subject to the Primed Liens and the liens of such Local Texas Tax Authority, the Debtors shall deposit into a segregated account held by the Debtors as adequate protection for the secured claims of the Local Texas Tax Authorities an amount either (i) agreed to by the DIP Secured Parties, the

33

Local Texas Tax Authorities, and the Debtors or (ii) as otherwise determined by the Court. The DIP Liens, the Prepetition Liens, and any valid, senior, perfected, and unavoidable liens (if any) of the Local Texas Tax Authorities shall attach to these segregated proceeds to the same extent and with the same priority as such liens are now held against the property of the Debtors. These segregated funds shall neither constitute the allowance of the claims of the Local Texas Tax Authorities nor a cap on the amounts that they may be entitled to receive. Furthermore, the claims and liens of the Local Texas Tax Authorities shall remain subject to any objections any party would otherwise be entitled to raise as to the priority, validity, or extent of such liens. These segregated funds may be distributed upon agreement between the Local Texas Tax Authorities, the DIP Secured Parties, and the Debtors or by subsequent order of the Court (duly noticed to the Local Texas Tax Authorities). Notwithstanding the foregoing, the rights of setoff and first priority security interests of the financial institutions providing cash management services (solely to the extent related to cash management obligations and as governed by the cash management order entered in these Chapter 11 Cases) are preserved.

(d)    The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to the extent necessary to permit the DIP Secured Parties to enforce all of their rights under the DIP Documents and (i) immediately upon the occurrence of an Event of Default, to declare (A) the termination, reduction, or restriction of any further DIP Commitment to the extent any such DIP Commitment remains and (B) all applicable DIP Obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Loan Parties, and (ii) unless the Court orders otherwise during the Remedies Notice Period,

34

upon the occurrence of an Event of Default and the giving by the DIP Agent of five

business days' prior written notice (which shall run concurrently with any notice required

to be provided under the DIP Documents) (the "**Remedies Notice Period**") delivered by

email to the Debtors' lead restructuring counsel (with a copy to the Committee, if any,

and the U.S. Trustee), (A) to withdraw consent to the Loan Parties' continued use of any

Cash Collateral or (B) to exercise all other rights and remedies provided for in the DIP

Documents and under applicable law; *provided* that, during the Remedies Notice Period,

the Loan Parties shall be permitted to continue to use Cash Collateral in the ordinary

course of business (subject to the Approved Budget and any permitted variance) and may

request an expedited hearing before the Court to determine whether an Event of Default

has occurred and is continuing and/or seek nonconsensual use of Cash Collateral.  In no

event shall (i) the DIP Secured Parties or the Prepetition Secured Parties be subject to the

equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP

Collateral or (ii) the "equities of the case" exception in section 552(b) of the Bankruptcy

Code apply with respect to the secured claims of the Prepetition Secured Parties or the

Prepetition Liens.

(e)       No rights, protections, or remedies of the DIP Secured Parties granted by

the provisions of the Interim Order, this Final Order, or the DIP Documents shall be

limited, modified, or impaired in any way by (i) any actual or purported withdrawal of

the consent of any party to the Loan Parties' authority to continue to use Cash Collateral,

(ii) any actual or purported termination of the Loan Parties' authority to continue to use

Cash Collateral, or (iii) the terms of any other order or stipulation related to the Loan

#91937572v14

Parties' continued use of Cash Collateral or the provision of adequate protection to any party.

11.     *Limitation on Charging Expenses Against Collateral.*  Upon entry of this Final Order, except to the extent of the Carve-Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral (including Cash Collateral) or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent (acting upon the express prior written direction of the Required Lenders (as defined in the DIP Credit Agreement)) or the applicable Prepetition Agent (acting upon the express prior written direction of the Required Lenders (as defined in the Prepetition Revolving Credit Agreement or the Prepetition Term Loan Credit Agreement, as applicable)), as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Secured Parties or the Prepetition Secured Parties, and nothing contained in the Interim Order or this Final Order shall be deemed to be a consent by the DIP Secured Parties or the Prepetition Secured Parties to any charge, lien, assessment, or claim against the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.

12.     *Payments Free and Clear.*  Subject to the Carve-Out, any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Secured Parties pursuant to the provisions of the Interim Order, this Final Order, or the DIP Documents shall be received free and clear of any claim, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the

Bankruptcy Code (whether asserted or assessed by, through, or on behalf of the Debtors) or section 552(b) of the Bankruptcy Code.

13.     *Use of Cash Collateral*.  The Debtors are hereby authorized, subject to the Approved Budget (including any permitted variances) and the terms and conditions of this Final Order, to use all Cash Collateral.

14.     *Adequate Protection of Prepetition Secured Parties*.  The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1), and 507 of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, for and equal in amount to the aggregate diminution in the value of the Prepetition Secured Parties' prepetition security interests in the Prepetition Collateral from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, but not limited to, the Debtors' use, sale, or lease of Cash Collateral and other Prepetition Collateral, the imposition of the automatic stay, and/or the Carve-Out (the "**Adequate Protection Claims**"); *provided* that the avoidance of any Prepetition Secured Party's interests in Prepetition Collateral shall not constitute diminution in the value of such Prepetition Secured Party's interests in Prepetition Collateral.  In consideration of the foregoing, the Prepetition Secured Parties are hereby granted the following (collectively, the "**Adequate Protection Obligations**"):

(a)     <u>Adequate Protection Liens</u>.  Each of the Prepetition Revolving Agent (for itself and for the benefit of the Prepetition Revolving Lenders) and the Prepetition Term Agent (for itself and for the benefit of the Prepetition Term Lenders) is hereby granted (effective and perfected upon the Petition Date and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements, or other agreements), in the amount of its respective Adequate Protection Claim, a valid,

#91937572v14

perfected replacement security interest in and lien upon (the "**Adequate Protection Liens**") the DIP Collateral (including, without limitation, the Avoidance Proceeds), which Adequate Protection Liens shall secure the respective Adequate Protection Claims, and in each case shall be (i) *pari passu* with each other Adequate Protection Lien granted hereunder, subject to the Intercreditor Agreement, and (ii) subject and subordinate only to the Carve-Out, the DIP Liens, and the Permitted Senior Liens; *provided* that the DIP Roll-Up Loans shall be *pari passu* with the Prepetition Revolving Debt in all respects such that distributions on the Prepetition Revolving Debt are pro rata with the sum of the DIP Roll-Up Loans and the Prepetition Term Loans; *provided further* that any proceeds allocated on account of the DIP Roll-Up Loans and the Prepetition Term Loans (including in respect of the Adequate Protection Obligations) shall be applied first to the repayment of the DIP Roll-Up Loans before any Prepetition Term Loan.

(b)      507(b) Claims.  Each of the Prepetition Agents (on behalf of the applicable Prepetition Secured Parties) are granted, as of the Petition Date, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of their respective Adequate Protection Claims with, except as set forth in the Interim Order or this Final Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**507(b) Claims**"), which 507(b) Claims (subject to DIP Liens and DIP Superpriority Claims) shall have recourse to and be payable from all of the DIP Collateral (including, without limitation, the Avoidance Proceeds).  The 507(b) Claims shall be (i) *pari passu* with each other 507(b) Claim granted hereunder, subject to the Intercreditor Agreement, and (ii) subject and subordinate only to the Carve-Out, the

38

DIP Superpriority Claims, the DIP Liens, and the Permitted Senior Liens.  Except to the extent expressly set forth in the Interim Order, this Final Order, or the DIP Credit Agreement, the Prepetition Secured Parties shall not receive or retain any payments, property, or other amounts in respect of the 507(b) Claims unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and the DIP Superpriority Claims have indefeasibly been paid in cash in full and all DIP Commitments have been terminated.

(c)    Adequate Protection Cash Payments.  In each case subject to reallocation or recharacterization as payment of principal under section 506(a) and (b) of the Bankruptcy Code as may be ordered by the Court in connection with a timely and successful Challenge pursuant to paragraph 19 or 20 below, until the indefeasible discharge of the Prepetition Secured Debt, the Prepetition Agents, for the benefit of the applicable Prepetition Secured Parties, shall receive current payment in cash on the last business day of each month in an amount equal to the sum of all post-petition unpaid interest accruing on all outstanding principal, interest, fees, and other amounts owing under the applicable Prepetition Secured Debt (as of the Petition Date), in each case at the applicable default rate (the payments in this subparagraph (c), the "**Adequate Protection Payments**"). For the avoidance of doubt, participation fees accrued under the Prepetition Revolving Facility Documents with respect to the Prepetition Letters of Credit outstanding as of the Petition Date and unpaid as of the Petition Date shall (i) be due and owing by the Debtors and (ii) be paid by the Debtors in accordance with the Prepetition Revolving Facility Documents in the ordinary course of business from cash of the Debtors other than the cash collateral in the Cash Collateral Accounts.

#91937572v14

(d)    <u>Prepetition Secured Parties Fees and Expenses</u>.  The Loan Parties shall make current cash payments of the reasonable and documented prepetition and post-petition fees and expenses incurred by the Prepetition Agents or the Ad Hoc Group in connection with the Chapter 11 Cases (limited, in the case of the advisors to the Prepetition Term Lenders that are members of the Ad Hoc Group, to Houlihan Lokey, Inc., Willkie Farr & Gallagher LLP, Young Conaway Stargatt & Taylor, LLP, and one local counsel in each material jurisdiction; in the case of the advisors to the Prepetition Revolving Agent and the Prepetition Revolving Lenders, to RPA Advisors, LLC, Vinson & Elkins LLP, and one local counsel in each material jurisdiction; and, in the case of the advisors to the Prepetition Term Agent, to Arnold & Porter Kaye Scholer LLP and one local counsel in each relevant jurisdiction), promptly upon receipt of invoices therefor, which payments (to the extent for fees, expenses, and disbursements incurred after the Petition Date) shall be made within ten days (which time period may be extended by the applicable professional) after the receipt by the Debtors, the Committee, if any, and the U.S. Trustee (the "**Review Period**") of invoices therefor (the "**Invoiced Fees**") and without the necessity of filing formal fee applications, including such amounts arising before or after the Petition Date.  The invoices for such Invoiced Fees shall include the number of hours billed (except for financial advisors compensated on other than an hourly basis) and a summary description of services provided and the aggregate expenses incurred by the applicable professional firm; *provided*, *however*, that any such invoice (i) may be limited and/or redacted to protect privileged, confidential, or proprietary information and (ii) shall not be required to contain individual time detail (*provided* that such invoice shall contain (except for financial advisors compensated on other than an

hourly basis) summary data regarding hours worked by each timekeeper for the applicable professional and such timekeepers' hourly rates).  The Debtors, the Committee, if any, and the U.S. Trustee may object to any portion of the Invoiced Fees (the "**Disputed Invoiced Fees**") within the Review Period by filing with the Court a motion or other pleading, on at least ten days' prior written notice (but no more than 30 days' notice) of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees in reasonable narrative detail and the bases for such objections; *provided* that payment of any undisputed portion of Invoiced Fees shall not be delayed based on any objections thereto.

(e)     Financial Reporting.  The Debtors shall provide the Prepetition Agents with financial and other reporting substantially in compliance with the reports and notices provided for in the DIP Documents, in each case when and as required under the DIP Documents.

(f)     DIP Roll-Up Facility.  The Debtors shall use the DIP Roll-Up Loans to refinance and discharge dollar-for-dollar Prepetition Term Loans held by the DIP Lenders in the aggregate amount equal to the DIP Term Loans and the DIP LC Loans funded under the DIP Facility.

15.     *Reservation of Rights of Prepetition Secured Parties*.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided in the Interim Order and herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties; *provided* that any of the Prepetition Secured Parties may request further or different adequate protection, and the Debtors or any other party may contest any such request.

#91937572v14

16.    *Perfection of DIP Liens and Adequate Protection Liens*.

(a)    The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties are hereby authorized, but not required, to file or record (and to execute in the name of the Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien, or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Agent, on behalf of the DIP Secured Parties, or the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien, or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination, from April 2, 2019.  Upon the request of the DIP Agent (acting upon the express prior written direction of the Required Lenders (as defined in the DIP Credit Agreement)), each of the Prepetition Secured Parties and the Loan Parties, without any further consent of any party, is authorized (in the case of the Loan Parties) and directed (in the case of the Prepetition Secured Parties) to take, execute, deliver, and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Agent to further validate, perfect, preserve, and enforce the DIP Liens.  All such documents shall be deemed to have been recorded and filed as of the Petition Date.

42

(b)    The Interim Order and this Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted in such orders, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments in any jurisdiction, taking possession of or control over cash, deposit accounts, securities, or other assets, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, customs broker agreement, or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to entitle the DIP Secured Parties to the priorities granted herein.  Notwithstanding the foregoing, certified copies of the Interim Order and this Final Order may, in the discretion of the DIP Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copies of the Interim Order and this Final Order for filing and/or recording, as applicable.  The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Agent to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

17.    *Milestones*.  It is a condition to the DIP Facilities that the Debtors shall comply with the Case Milestones (as defined in the DIP Credit Agreement).  Any Case Milestone that would otherwise fall on a Saturday, Sunday, or federal holiday will be treated in accordance with

Bankruptcy Rule 9006.  The failure to comply with any Milestone shall constitute an Event of Default in accordance with the terms of the DIP Credit Agreement.

18.    *Preservation of Rights Granted Under the Interim Order and this Final Order.*

(a)    Other than the Carve-Out, Permitted Senior Liens, and other claims and liens expressly granted by the Interim Order and this Final Order, no claim or lien having a priority superior to or that is *pari passu* with those granted by the Interim Order or this Final Order to the DIP Secured Parties or the Prepetition Secured Parties, respectively, shall be permitted while any of the DIP Obligations or the Adequate Protection Obligations remain outstanding, and, except as otherwise expressly provided in the Interim Order or this Final Order, the DIP Liens and the Adequate Protection Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Loan Parties' estates under section 551 of the Bankruptcy Code, (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise, (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other domestic or foreign governmental unit (including any regulatory body), commission, board, or court for any liability of the Loan Parties, or (iv) subject or junior to any intercompany or affiliate liens or security interests of the Loan Parties.

(b)    Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or that otherwise is at any time entered, (i) the DIP Superpriority Claims, the 507(b) Claims, the DIP Liens, and the Adequate Protection Liens shall continue in full force and effect and shall maintain their

priorities as provided in the Interim Order or this Final Order until all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash (and that such DIP Superpriority Claims, 507(b) Claims, DIP Liens, and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest), (ii) the other rights granted by the Interim Order or this Final Order shall not be affected, and (iii) the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in this paragraph 18 and otherwise in the Interim Order or this Final Order.

(c)     If any or all of the provisions of the Interim Order (except such provisions of the Interim Order modified by this Final Order) or this Final Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacatur, or stay shall not affect (i) the validity, priority, or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent, the Prepetition Revolving Agent, or the Prepetition Term Agent, as applicable, of the effective date of such reversal, modification, vacatur, or stay or (ii) the validity, priority, or enforceability of the DIP Liens or the Adequate Protection Liens. Notwithstanding any such reversal, modification, vacatur, or stay of any use of Cash Collateral, any DIP Obligations or any Adequate Protection Obligations incurred by the Loan Parties to the DIP Secured Parties or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Agent, the Prepetition Revolving Agent, or the Prepetition Term Agent, as applicable, of the effective date of such reversal, modification, vacatur, or stay shall be governed in all respects by the original provisions of the Interim Order or this Final Order, and the DIP Secured Parties

#91937572v14

and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits granted in section 364(e) of the Bankruptcy Code, the Interim Order, this Final Order, and the DIP Documents.

(d)     Except as expressly provided in the Interim Order, this Final Order, or in the DIP Documents, (i) the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the 507(b) Claims, the Adequate Protection Liens, and the Adequate Protection Obligations, and all other rights and remedies of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties granted by the provisions of the Interim Order, this Final Order, and the DIP Documents shall survive, and shall not be modified, impaired, or discharged by the entry of an order (A) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases, terminating the joint administration of the Chapter 11 Cases, or by any other act or omission, (B) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents), or (C) confirming a chapter 11 plan in any of the Chapter 11 Cases, and (ii) pursuant to section 1141(d)(4) of the Bankruptcy Code, the Loan Parties have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of the Interim Order, this Final Order, and the DIP Documents shall continue in the Chapter 11 Cases, in any successor cases if the Chapter 11 Cases cease to be jointly administered, and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the 507(b) Claims, the Adequate Protection Liens, the Adequate Protection Obligations, and all other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted by the

46

provisions of the Interim Order, this Final Order, and the DIP Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full in cash, as set forth herein and in the DIP Documents, and the Commitments have been terminated.

19.    *Effect of Stipulations on Third Parties*.

(a)    The Debtors' stipulations, admissions, agreements, and releases contained in the Interim Order and this Final Order shall be binding upon (i) the Debtors and their estates, in all circumstances and for all purposes and (ii) all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless (A) such committee or any other party in interest (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), in each case, with standing granted by the Court, has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph 19) (1) objecting to or challenging the amount, validity, perfection, enforceability, priority, or extent of the Prepetition Secured Debt or the Prepetition Liens or (2) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims, or any other claims, counterclaims or causes of action, objections, contests, or defenses (collectively, a "**Challenge**") against the Prepetition Secured Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other

47

professionals and their respective successors and assigns thereof, in each case in their respective capacity as such (each, a "**Representative**" and, collectively, the "**Representatives**") in connection with matters related to any claims of the Debtors against the Prepetition Secured Parties, the Prepetition Secured Debt Documents, the Prepetition Secured Debt, the Prepetition Liens, the Prepetition Collateral, or otherwise, *provided* that all pleadings filed in connection with a Challenge shall set forth the basis for such challenge or claim, (B) such Challenge has been filed prior to the latest of (1) (Y) with respect to parties in interest with standing (other than a Committee), June 17, 2019 and (Z) with respect to a Committee, if any, 60 calendar days after the appointment of the Committee, (2) any such later date as has been agreed to, in writing, by the Prepetition Revolving Agent or the Prepetition Term Agent (acting upon the express prior written direction of the Required Lenders (as defined in the DIP Credit Agreement)) (as applicable), and (3) any such later date as has been ordered by the Court for cause upon a motion filed and served within any applicable time period set forth in this paragraph 19 (the time period established by the foregoing clauses (1) through (3), the "**Challenge Period**") (for the avoidance of doubt, if a Committee is appointed after June 17, 2019, the Challenge Period shall have expired), and (C) there is a final non-appealable order sustaining such Challenge in favor of the plaintiff in such timely filed adversary proceeding or contested matter.  Any Challenge not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released, and barred.

(b)      If no such Challenge is filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding, then (i) the Debtors' stipulations, admissions, agreements, and releases contained in the Interim Order and this Final Order

shall be binding on all parties in interest, including, without limitation, a Committee, if any, (ii) the obligations of the Loan Parties under the Prepetition Secured Debt Documents, including the Prepetition Secured Debt, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset, or avoidance, for all purposes in the Chapter 11 Cases, and any subsequent chapter 7 case(s), (iii) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance, or other defense, (iv) the Prepetition Secured Debt and the Prepetition Liens shall not be subject to any other or further claim or challenge by any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, and (v) any defenses, claims, causes of action, counterclaims, and offsets by any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives arising out of or relating to the any claims of the Debtors against the Prepetition Secured Parties, the Prepetition Secured Debt Documents, or otherwise shall be deemed forever waived, released, and barred.  If any such Challenge is filed during the Challenge Period, the stipulations, admissions, agreements, and releases contained in the Interim Order and this Final Order shall nonetheless remain binding and preclusive (as provided in this subparagraph (b)) on any statutory or non-statutory committee appointed or formed in the Chapter 11 Cases, and on any other person or entity, except to the extent that such stipulations, admissions,

#91937572v14

agreements, and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in the Interim Order or this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Prepetition Secured Debt Documents, the Prepetition Secured Debt, or the Prepetition Liens, or claims, counterclaims, or causes of action of the Debtors against any Prepetition Secured Party.

20.     *Limitation on Use of DIP Financing Proceeds and Collateral*.  Notwithstanding anything herein, in the Interim Order, or in any other order entered by the Court to the contrary, no proceeds of the DIP Facilities, DIP Collateral, Prepetition Collateral (including Cash Collateral), or the Carve-Out may be used (a) for Professional Fees incurred for (i) any litigation or threatened litigation (whether by contested matter, adversary proceeding, or otherwise, including any investigation in connection with litigation or threatened litigation) against any of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties or for the purpose of objecting to or challenging the validity, perfection, enforceability, extent, amount or priority of any claim, lien, or security interest held or asserted by any of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties or (ii) asserting any defense, claim, cause of action, counterclaim, or offset with respect to the DIP Obligations, the Prepetition Secured Debt (including, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise), the DIP Liens, or the Prepetition Liens or against any of the Prepetition Secured Parties or their respective

50

Representatives, (b) to prevent, hinder, or otherwise delay any of the DIP Agent's or the

Prepetition Secured Parties' assertion, enforcement, or realization on the Prepetition Collateral or

the DIP Collateral in accordance with the DIP Documents, the Prepetition Secured Debt

Documents, the Interim Order, or this Final Order other than to seek a determination that an

Event of Default has not occurred or is not continuing, or in connection with a Remedies

Hearing, (c) to seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, or the

Prepetition Secured Parties under the Interim Order, this Final Order, or under the DIP

Documents or the Prepetition Loan Documents, in each of the foregoing cases without such

parties' prior written consent, which may be given or withheld by such party in the exercise of its

respective sole discretion, or (d) to pay any amount on account of any claims arising prior to the

Petition Date unless such payments are approved by an order of the Court (including, without

limitation, hereunder); *provided* that, notwithstanding anything to the contrary in the Interim

Order or this Final Order, the Committee, if any, may use the proceeds of the DIP Facilities, DIP

Collateral (including Cash Collateral), and/or the Carve-Out to investigate (but not prosecute or

initiate the prosecution of, including the preparation of any complaint or motion on account of)

prior to (but not after) the delivery of a Carve-Out Trigger Notice, (i) the claims and liens of the

Prepetition Secured Parties and (ii) potential claims, counterclaims, causes of action, or defenses

against the Prepetition Secured Parties; *provided further* that no more than an aggregate of

$50,000 of the proceeds of the DIP Facilities, DIP Collateral (including Cash Collateral, but

excluding all Cash Collateral in the Cash Collateral Account that secures the DIP Letters of

Credit), and/or the Carve-Out may be used by the Committee, if any, in respect of the

investigations set forth in the preceding proviso (the "**Investigation Budget**").

21.    *Release*.  Subject to paragraph 19 hereof, and as further set forth in the DIP

Documents, the Debtors, on behalf of themselves and their estates (including any successor

trustee or other estate representative in the Chapter 11 Cases or any case under chapter 7 of the

Bankruptcy Code upon the conversion of any of the Cases) and any party acting by, through, or

under any of the Debtors or any of their estates, hereby stipulate and agree that they forever and

irrevocably (a) release, discharge, waive, and acquit the current or future DIP Agent and other

current or future DIP Secured Parties, the Prepetition Revolving Secured Parties, and the

Prepetition Term Secured Parties, and each of their respective participants and each of their

respective affiliates, and each of their respective former, current, or future officers, employees,

directors, agents, representatives, owners, members, partners, financial advisors, legal advisors,

shareholders, managers, consultants, accountants, attorneys, affiliates, successors, assigns, and

predecessors in interest (collectively, "**Released Parties**"), from any and all claims, demands,

liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, obligations, rights,

assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries,

attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted,

unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or

threatened, including, without limitation, all legal and equitable theories of recovery, arising

under common law, statute, or regulation or by contract, of every nature and description, arising

out of, in connection with, or relating to the DIP Facilities, the DIP Documents, the Prepetition

Loan Documents, or the transactions and relationships contemplated hereunder or thereunder,

including, without limitation, (i) any so-called "lender liability" or equitable subordination

claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy

Code (including, without limitation, Avoidance Actions), and (iii) any and all claims and causes

#91937572v14

of action regarding the validity, priority, perfection, or avoidability of the liens or secured claims of the DIP Agent, the other DIP Secured Parties, the Prepetition Revolving Secured Parties, and the Prepetition Term Secured Parties, and (b) waive any and all defenses (including, without limitation, offsets, and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and nonavoidability of the DIP Loans, the DIP Liens, the DIP Superpriority Claims, the Prepetition Secured Debt, the Prepetition Liens, the Adequate Protection Claims, the Adequate Protection Liens, and any adequate protection payment obligations pursuant to the Interim Order or this Final Order.  For the avoidance of doubt, the foregoing release shall not constitute a release of any rights arising under the DIP Documents. Notwithstanding the releases and covenants contained above in this paragraph, such releases and covenants in favor of the Released Parties shall be deemed acknowledged and reaffirmed by the Debtors each time there is an advance of funds, extension of credit, or financial accommodation under the Interim Order, this Final Order and the DIP Documents.

22.    *Exculpation*.  Nothing in the Interim Order, this Final Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent or any DIP Lender of any liability for any claims arising from the prepetition or post-petition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts.  So long as the DIP Agent and the DIP Lenders comply with their obligations under the DIP Documents and their obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Agent and the DIP Lenders shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral or any reserves established pursuant to the Interim Order or this Final Order, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause,

(iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person and (b) all risk of loss, damage, or destruction of the DIP Collateral shall be borne by the Loan Parties.

23.    *Final Order Governs.*  In the event of any inconsistency between the provisions of this Final Order, the Interim Order, the DIP Documents, or any other order entered by the Court, the provisions of this Final Order shall govern.  Notwithstanding anything to the contrary in any other order entered by the Court, any payment made, or authorization contained in, any other order entered by the Court shall be consistent with and subject to the requirements set forth in this Final Order and the DIP Documents, including, without limitation, the Approved Budget (including any permitted variances); *provided* that the Approved Budget (including any permitted variances) shall not constitute a cap or limitation on any Professional Fees and shall not affect the Carve-Out.

24.    *Binding Effect; Successors and Assigns.*  The DIP Documents and the provisions of the Interim Order and this Final Order, including all findings therein and herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Committee, if any, any non-statutory committees appointed or formed in the Chapter 11 Cases, the Debtors, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns; *provided* that the DIP Agent, the DIP

54

Lenders, and the Prepetition Secured Parties shall have no obligation to permit the use of the DIP Collateral (including Cash Collateral) or to extend any financing to any chapter 7 trustee, chapter 11 trustee, or similar responsible person appointed for the estates of the Debtors.

25.    *Limitation of Liability.*  In determining to make any loan or other extension of credit under the DIP Credit Agreement, to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to the Interim Order, this Final Order, or the DIP Documents, the DIP Agent and the DIP Lenders (and the Prepetition Secured Parties in respect of the use of Cash Collateral) shall not (a) be deemed to be in "control" of the operations of the Debtors, (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates, or (c) be deemed to be acting as a "Responsible Person," "Owner," or "Operator" with respect to the operation or management of the Debtors, so long as the DIP Agent's and the DIP Lenders' actions do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of "responsible person" or "managing agent" to exist under applicable law (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any similar federal or state statute).

26.    *Inapplicability of Bar Date; Master Proof of Claim.*  Any order entered by the Court establishing a bar date for any claims (including, without limitation, administrative claims) in any of the Chapter 11 Cases or any subsequent chapter 7 case of any of the Debtors shall not apply to any DIP Secured Party, any Prepetition Term Secured Party, or any Prepetition Revolving Secured Party.  The DIP Secured Parties, Prepetition Secured Parties, and the

#91937572v14

Prepetition Revolving Secured Parties shall not be required to file proofs of claim or requests for approval of administrative expenses authorized by the Interim Order or this Final Order in any of the Chapter 11 Cases or any subsequent chapter 7 case of any of the Debtors.  The provisions of the Interim Order and this Final Order relating to the amount and/or priority of the DIP Loans, the Prepetition Term Debt, the Prepetition Revolving Debt, the Adequate Protection Claims, the Adequate Protection Liens, any adequate protection payments pursuant to the Interim Order or this Final Order, the Prepetition Liens, the DIP Liens, and the DIP Superpriority Claims shall constitute a sufficient and timely filed proof of claim and/or administrative expense request in respect of such obligations and such secured status.  However, in order to facilitate the processing of claims, to ease the burden upon the Court, and to reduce an unnecessary expense to the Debtors' estates, each of the Prepetition Revolving Agent and the Prepetition Term Agent is authorized to file in the Debtors' lead Chapter 11 Case *In re Southcross., et al.,* Case No. 19-10702 (MFW), a single, master proof of claim on behalf of the Prepetition Revolving Secured Parties the Prepetition Term Secured Parties, as applicable, on account of any and all of their respective claims arising under the applicable Prepetition Secured Debt Documents and hereunder (each, a "**Master Proof of Claim**") applicable against each of the Debtors.  Upon the filing of a Master Proof of Claim, (a) the Prepetition Revolving Agent and the Prepetition Revolving Secured Parties and (b) the Prepetition Term Agent and the Prepetition Term Secured Parties, as applicable, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors of any type or nature whatsoever with respect to the applicable Prepetition Secured Debt Documents, and the claim of each Prepetition Secured Party (and each of its respective successors and assigns), named in a Master Proof of Claim shall be

treated as if such entity had filed a separate proof of claim in each of the Chapter 11 Cases.  The

Master Proofs of Claim shall not be required to identify whether any Prepetition Secured Party

acquired its claim from another party and the identity of any such party or to be amended to

reflect a change in the holders of the claims set forth therein or a reallocation among such

holders of the claims asserted therein resulting from the transfer of all or any portion of such

claims.  Nothing in the Interim Order or this Final Order shall waive the right of any DIP

Secured Party or any Prepetition Secured Party to file its own proof of claim against any of the

Debtors.  The provisions of this paragraph 26 and each Master Proof of Claim are intended

solely for the purpose of administrative convenience and shall not affect the right of each

Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed

in the Chapter 11 Cases.  The Master Proofs of Claim shall not be required to attach any

instruments, agreements, or other documents evidencing the obligations owing by each of the

Debtors to the applicable Prepetition Secured Parties, which instruments, agreements, or other

documents will be provided upon reasonable written request to counsel to the Prepetition

Revolving Agent and Prepetition Term Agent, as applicable.

27.     *Secured Party Consents.* No approval, agreement, or consent requested of the DIP

Secured Parties and/or the Prepetition Secured Parties by the Debtors pursuant to the terms of the

Interim Order, this Final Order, or otherwise shall be inferred from any action, inaction, or

acquiescence of the DIP Secured Parties or the Prepetition Secured Parties, as applicable, other

than a writing acceptable to the DIP Secured Parties or the Prepetition Secured Parties, as

applicable, that is signed by such person(s) and expressly shows such approval, agreement, or

consent, without limitation.  Nothing in the Interim Order or herein shall in any way affect the

rights of the DIP Secured Parties or the Prepetition Secured Parties as to any non-Debtor entity,

#91937572v14

without limitation.  Unless expressly required otherwise hereunder, any determination, agreement, decision, consent, election, approval, acceptance, waiver, designation, authorization, or other similar circumstance or matter of any of the DIP Secured Parties or the Prepetition Secured Parties, as applicable, hereunder or related hereto, shall be in the such person(s)' sole and absolute discretion.

28.    *Insurance*.  To the extent that any of the Prepetition Revolving Agent or Prepetition Term Agent is listed as loss payee or additional insured under any of the Borrower's or Guarantors' insurance policies, the DIP Agent is also deemed to be the loss payee or additional insured, as applicable, under such insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, *first*, to the payment in full of the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted), and *second*, to the payment of the applicable Prepetition Secured Debt.

29.    *Effectiveness*.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rule 4001(a)(3), 6004(h), 7062, or 9014, any Local Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

30.    *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

31.    *Payments Held in Trust for the DIP Agent and DIP Lenders*.  Except as expressly permitted in the Interim Order, this Final Order, or the DIP Documents, in the event that any

58

person or entity receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral, or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Documents, and termination of the Commitments in accordance with the DIP Documents, such person or entity shall be deemed to have received, and shall hold, such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Agent and the DIP Lenders and shall immediately turn over such proceeds to the DIP Agent, or as otherwise instructed by the Court, for application in accordance with the DIP Documents and this Final Order.

32.    *Credit Bidding*.  The DIP Secured Parties shall have the right to credit bid, in accordance with the DIP Documents, up to the full amount of the DIP Obligations other than the amount of the DIP Roll-Up Loans, in any sale of the DIP Collateral.  Subject to paragraph 19 hereof and the Intercreditor Agreement, the DIP Secured Parties shall have the right to credit bid, in accordance with the DIP Documents, the amount of the DIP Roll-Up Loans in any sale of the DIP Collateral.  Subject to paragraph 19 hereof, each of the Prepetition Secured Parties shall have the right to credit bid, subject to the Intercreditor Agreement, up to the full amount of the applicable Prepetition Secured Debt in any sale of the Prepetition Collateral, in each case pursuant to section 363(k) of the Bankruptcy Code and subject to any successful Challenge, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

33.    *Wind Down Budget*.  In the event that the Debtors pursue a "Section 363 Sale" (as defined in the DIP Credit Agreement) of all or substantially all of the Debtors' assets, then in

#91937572v14

connection with such Section 363 Sale, the Debtors and the Required DIP Lenders will negotiate in good faith a reasonable wind-down budget (the "**Wind-Down Budget**") to pay all allowed (a) post-petition claims, (b) administrative expense and priority claims, and (c) professional fees and expenses necessary to wind-down the Debtors' estates in a reasonable and appropriate timeline. Notwithstanding anything else to the contrary in the Interim Order or this Final Order, subject and subordinate to the Carve Out (y) the net proceeds of any Section 363 Sale shall first satisfy the Wind-Down Budget before repayment of any DIP Obligations, Adequate Protection Obligations, 507(b) Claims, Prepetition Secured Debt, or any other claims against the Debtors and (z) any credit bid shall be subject to the Debtors having sufficient cash at the consummation of the Section 363 Sale to satisfy the Wind-Down Budget.  For the avoidance of doubt, the Cash Collateral Accounts that secure the DIP Letters of Credit shall not be used as part of the Wind Down Budget or the Carve-Out.

34.     *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

35.     *Necessary Action*.  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Final Order.

36.     *Retention of Jurisdiction.*  The Court shall retain jurisdiction to implement, interpret, and enforce the provisions of this Final Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

37.     The Debtors shall promptly serve copies of this Final Order on the parties having been given notice of the Final Hearing and on any party that has filed a request for notices with the Court in accordance with Bankruptcy Rule 2002.

**Dated: May 7th, 2019**
**Wilmington, Delaware**

61

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**

#91937572v14