## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| SOUTHCROSS ENERGY PARTNERS, L.P., | ) | Case No. 19-10702 (MFW) |
| *et al.*, | ) | |
| | ) | (Jointly Administered) |
| Debtors.[1] | ) | |
| | ) | **Re: D.I. 225, 323** |
| | ) | |

**ORDER (I) APPROVING BIDDING PROCEDURES FOR SALE OF DEBTORS' ASSETS, (II) AUTHORIZING THE SELECTION OF A STALKING HORSE BIDDER, (III) APPROVING BID PROTECTIONS, (IV) SCHEDULING AUCTION FOR, AND HEARING TO APPROVE, SALE OF DEBTORS' ASSETS, (V) APPROVING FORM AND MANNER OF NOTICES OF SALE, AUCTION AND SALE HEARING, (VI) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of Southcross Energy Partners, L.P. ("**Southcross**"),

Southcross Energy Partners GP, LLC, and Southcross's wholly owned direct and indirect

subsidiaries, each of which is a debtor and debtor in possession in the Chapter 11 Cases

(collectively, the "**Debtors**"), for entry of an order, pursuant to sections 105(a), 363, 365, 503,

and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014 and Local Rules

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Southcross Energy Partners, L.P. (5230); Southcross Energy Partners GP, LLC (5141); Southcross Energy Finance Corp. (2225); Southcross Energy Operating, LLC (9605); Southcross Energy GP LLC (4246); Southcross Energy LP LLC (4304); Southcross Gathering Ltd. (7233); Southcross CCNG Gathering Ltd. (9553); Southcross CCNG Transmission Ltd. (4531); Southcross Marketing Company Ltd. (3313); Southcross NGL Pipeline Ltd. (3214); Southcross Midstream Services, L.P. (5932); Southcross Mississippi Industrial Gas Sales, L.P. (7519); Southcross Mississippi Pipeline, L.P. (7499); Southcross Gulf Coast Transmission Ltd. (0546); Southcross Mississippi Gathering, L.P. (2994); Southcross Delta Pipeline LLC (6804); Southcross Alabama Pipeline LLC (7180); Southcross Nueces Pipelines LLC (7034); Southcross Processing LLC (0672); FL Rich Gas Services GP, LLC (5172); FL Rich Gas Services, LP (0219); FL Rich Gas Utility GP, LLC (3280); FL Rich Gas Utility, LP (3644); Southcross Transmission, LP (6432); T2 EF Cogeneration Holdings LLC (0613); and T2 EF Cogeneration LLC (4976). The debtors' mailing address is 1717 Main Street, Suite 5300, Dallas, TX 75201.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures or, if not defined therein, in the Motion.

2002-1, 6004-1 and 9006-1, (i)(a) approving Bidding Procedures for the sale of the Debtors'

assets, (b) authorizing the selection of a Stalking Horse Bidder, (c) approving Bid Protections,

(d) scheduling an Auction for, and a hearing to approve, the sale of the Debtors' assets,

(e) approving the Noticing Procedures, (f) approving Assumption and Assignment Procedures,

and (g) granting related relief, and (ii)(a) approving the sale of the Debtors' assets free and clear

of liens, claims, interests, and encumbrances, (b) authorizing the assumption and assignment of

Contracts and Leases, and (c) granting related relief, in each case, as more fully described in the

Motion; and the Court having jurisdiction to consider the matters raised in the Motion pursuant

to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States

District Court for the District of Delaware*, dated February 29, 2012; and the Court having

authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the

Motion and the requested relief being a core proceeding that the Court can determine pursuant to

28 U.S.C. § 157(b)(2); and due and proper notice of the Motion and opportunity for a hearing on

the Motion having been given to the parties listed therein, and it appearing that no other or

further notice need be provided; and the Court having reviewed and considered the Motion and

the Hannan Declaration; and the Court having held a hearing on the Motion (the "**Bidding

Procedures Hearing**"); and upon all of the proceedings had before the Court; and after due

deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

       A.     The findings and conclusions set forth herein constitute the Court's findings of

fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this

proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings

of fact constitute conclusions of law, and to the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     The Debtors' proposed notice of the Motion, the Bidding Procedures, the Bidding Procedures Hearing, and the proposed entry of the Bidding Procedures Order (this "**Order**") is (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (iii) adequate and sufficient under the circumstances of the Chapter 11 Cases, and no other or further notice is required.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion (including, without limitation, with respect to the Bidding Procedures and Bid Protections) has been afforded to all interested persons and entities, including, but not limited to, the Notice Parties.

C.     The Bidding Procedures in the form attached hereto as <u>Exhibit 1</u> are fair, reasonable, and appropriate, are designed to maximize recoveries from a sale of the Bid Assets, and permit the Debtors to comply with their obligations under the DIP Credit Agreement and DIP Order (as each is defined in the Motion).

D.     The Debtors have demonstrated a compelling and sound business justification for the Court to enter this Order and, thereby, (i) approve the Bidding Procedures, (ii) authorize the selection of a Stalking Horse Bidder (if any), under the terms and conditions set forth in the Bidding Procedures, (iii) authorize the Bid Protections, under the terms and conditions set forth in the Bidding Procedures and subject to the entry of the Stalking Horse Order (as defined below), (iv) set the dates of the Bid Deadline, Auction (if needed), Sale Hearing, and other deadlines set forth in the Bidding Procedures, (v) approve the Noticing Procedures and the forms of notice, and (vi) approve the Assumption and Assignment Procedures (as defined below) and

the forms of relevant notice.  Such compelling and sound business justification, which was set forth in the Motion and on the record at the Bidding Procedures Hearing, are incorporated herein by reference and, among other things, forms the basis for the findings of fact and conclusions of law set forth herein.

E.    The Bid Protections, as approved by this Order, are fair and reasonable and provide a benefit to the Debtors' estates and stakeholders.

F.    The payment of the Break-Up Fee and Expense Reimbursement, which constitute the Bid Protections, upon the terms and conditions set forth in the Bidding Procedures, and pursuant to the terms of a definitive agreement between the Debtors and such Stalking Horse Bidder reflective of the terms set forth in the Bidding Procedures (for the avoidance of doubt, subject to the entry of a Stalking Horse Order and final Court approval at the Sale Hearing), are (i) an actual and necessary cost of preserving the Debtors' estates, within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code, (ii) reasonably tailored to encourage, rather than hamper, bidding for the Bid Assets, by providing a baseline of value, increasing the likelihood of competitive bidding at the Auction, and facilitating participation of other bidders in the sale process, thereby increasing the likelihood that the Debtors will receive the best possible price and terms for the Bid Assets, (iii) of substantial benefit to the Debtors' estates and stakeholders and all parties in interest herein, (iv) reasonable and appropriate, (v) a material inducement for, and condition necessary to, the successful selection of, the reaching of a definitive agreement with, a Stalking Horse Bidder (if any) who will pursue its purchase of the Bid Assets, and (vi) reasonable in relation to the magnitude of effort that will be required of such Stalking Horse Bidder, the magnitude of the Sale Transaction, and the loss of opportunities such Stalking Horse Bidder would suffer as a result of the time spent pursuing the Sale Transaction.  Without the Bid

Protections, no Qualified Bidder would agree to become a Stalking Horse Bidder and remain obligated to consummate the Sale Transaction (including, without limitation, the obligation to maintain its committed offer while such offer is subject to higher or better offers, as contemplated by the Bidding Procedures).

G.     The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Order is in the best interests of the Debtors and their estates, creditors, interest holders, and all other parties in interest herein.

H.     The form and manner of notice to be delivered pursuant to the Noticing Procedures and the Assumption and Assignment Procedures (including the Sale Notice attached hereto as Exhibit 2, the Potential Assumption and Assignment Notice attached hereto as Exhibit 3, and the Proposed Assumption and Assignment Notice attached hereto as Exhibit 4) are reasonably calculated to provide each Counterparty to the Potential Assumed Contracts and the Proposed Assumed Contracts with (i) proper notice of the potential assumption and assignment of such Potential Assumed Contracts and Proposed Assumed Contracts by the Successful Bidder(s) (including the Stalking Horse Bidder, if any) or any of their known proposed assignees (if different from the Successful Bidder), and (ii) sufficient information to assert any objection to the proposed Cure Costs as of the Petition Date or otherwise be barred from asserting claims arising from events occurring prior to the Petition Date.

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.     The relief requested in the Motion is hereby granted as set forth herein.

2.     Any objections to the Motion or the relief requested therein that have not been adjourned, withdrawn, or resolved are overruled in all respects on the merits.

3.      The Bidding Procedures, in substantially the form attached hereto as Exhibit 1, are approved and fully incorporated into this Order and the Debtors are authorized, but not directed, to act in accordance therewith.  The failure to specifically include a reference to any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision.

4.      Nothing herein shall prejudice the rights of the Debtors to seek by separate motion, in the exercise of their sound business judgment and fiduciary duties (in consultation with the DIP Secured Parties, each of the Prepetition Agents (each as defined in the DIP Order), and Southcross Holdings LP (together with its non-Debtor subsidiaries, "**Holdings**")), the authority to sell assets of the Debtors' estates (that do not constitute all or substantially all of the Debtors' assets) pursuant to section 363 of the Bankruptcy Code.  For the avoidance of doubt, the sale of the Bid Assets pursuant to multiple Partial Bids, that in the aggregate result in a sale of all or substantially all of the Bid Assets, meets the definition of "Section 363 Sale" set forth in the DIP Credit Agreement.

5.      Subject to the entry of a Stalking Horse Order and final Court approval at the Sale Hearing, the Debtors are authorized, but not obligated, in an exercise of their business judgment (in consultation with the DIP Secured Parties, each of the Prepetition Agents, and Holdings (collectively, the "**Consulting Parties**")), to agree with any Qualified Bidder(s) that such Qualified Bidder(s) shall be the Stalking Horse Bidder(s) and that the Debtors will enter into a definitive agreement with such Stalking Horse Bidder(s) in accordance with the terms and conditions set forth in the Bidding Procedures.

6.      Subject to the entry of a Stalking Horse Order and final Court approval at the Sale Hearing, the Debtors are authorized to enter into a definitive agreement with the Stalking Horse Bidder for the Sale Transaction.

7.      <u>Bid Deadline</u>.  As further described in the Bidding Procedures, the Bid Deadline shall be at **6:00 p.m. (prevailing Eastern Time) on July 24, 2019**.

8.      <u>Auction</u>.  In the event the Debtors receive, on or before the Bid Deadline, one or more Qualified Bids (whether or not any Stalking Horse Bidder is selected), an Auction shall be conducted at the offices of Davis Polk & Wardwell LLP, 450 Lexington Ave., New York, New York 10017 at **10:00 a.m. (prevailing Eastern Time) on September 3, 2019,** or such later time on such day or such other place as the Debtors shall notify all Participating Parties.  The Debtors are authorized to conduct the Auction in accordance with the Bidding Procedures.

9.      If (a) no Qualified Bids are submitted by the Bid Deadline other than a Stalking Horse Bid, (b) only one Qualified Bid which is not a Stalking Horse Bid is submitted by the Bid Deadline, or (c) only one or more Partial Bids are submitted by the Bid Deadline for non-overlapping lots of the Bid Assets, the Debtors may in their discretion (in consultation with the Consulting Parties) elect to cancel the Auction, seek approval of the transactions contemplated in the Stalking Horse Bid, the Qualified Bid which is not a Stalking Horse Bid, or the transactions in respect of such Partial Bids at the Sale Hearing.

10.     The form of Sale Notice attached hereto as <u>Exhibit 2</u> is hereby approved.

11.     As soon as reasonably practicable after entry of this Order, the Debtors shall serve the Sale Notice by first class or overnight mail upon the following:  (a) the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (b) counsel to any official committee appointed in the Chapter 11 Cases; (c) counsel to each of the DIP Secured Parties;

(d) counsel to each of the Prepetition Secured Parties; (e) Counterparties to Contracts and Leases; (f) the Internal Revenue Service; (g) all applicable state and local taxing authorities; (h) the Securities & Exchange Commission; (i) the U.S. Environmental Protection Agency; (j) the United States Attorney's Office for the District of Delaware; (k) the United States Attorney General/Antitrust Division of the Department of Justice; (l) the offices of the attorneys general for the states in which the Debtors operate; (m) all potential buyers previously identified or solicited by the Debtors or their advisors and any additional parties who have previously expressed an interest to the Debtors or their advisors in potentially acquiring the Debtors' assets; (n) all such other entities as may be required by applicable Bankruptcy Rules or Local Rules; (o) counsel to Holdings; and (p) all other known parties with any interest in the Bid Assets (collectively, the "**Sale Notice Parties**").  On or about the same date, the Debtors will publish the Sale Notice once in *The Wall Street Journal* national edition.

12.     Service of the Sale Notice on the Sale Notice Parties in the manner described in this Order constitutes good and sufficient notice of the Auction and the Sale Hearing.  No other or further notice is required.

13.     Promptly after the conclusion of the Auction and the selection of the Successful Bid(s) and Alternate Bid(s), the Debtors shall file and post on the Case Information Website a notice identifying such Successful Bid(s) and Alternate Bid(s) with the Court.

14.     <u>Sale Objections</u>.  Objections to the relief sought in the Sale Order must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof, (d) be filed with the Court no later than **4:00 p.m. (prevailing Eastern Time) on September 10, 2019,** and (e) be served on (1) counsel to the Debtors, (x) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017,

Attn: Marshall S. Huebner, Darren S. Klein,  Steven Z. Szanzer, and Benjamin M. Schak and

(y) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box

1347, Wilmington, Delaware 19899-1347, Attn: Robert J. Dehney, Andrew R. Remming, Joseph

C. Barsalona II, and Eric W. Moats; (2) counsel to Wells Fargo Bank, N.A., the administrative

agent under Southcross's prepetition secured revolving credit facility, Vinson & Elkins LLP,

Trammell Crow Center, 2001 Ross Avenue, Suite 3900, Dallas, TX 75201-2975, Attn: William

Wallander, Bradley Foxman, and Matthew Pyeatt; (3) counsel to Wilmington Trust, N.A., the

administrative agent under Southcross's prepetition secured term loan facility and post-petition

credit facility (x) Arnold & Porter Kaye Scholer LLP, 250 West 55th Street New York, NY

10019-9710, Attn: Alan Glantz and Arnold & Porter Kaye Scholer LLP 70 West Madison Street

Suite 4200 Chicago, Illinois 60602-4231, Attn: Seth J. Kleinman and (y) Duane Morris LLP, 222

Delaware Avenue, Suite 1600, Wilmington, Delaware 19801-1659, Attn: Christopher M. Winter;

(4) counsel to the post-petition lenders and an ad hoc group of prepetition lenders, (x) Willkie

Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019-6099, Attn: Joseph G.

Minias, Paul V. Shalhoub, and Debra C. McElligott and (y) Young Conaway Stargatt & Taylor

LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Edmon L.

Morton and Matthew B. Lunn; (5) counsel to any official committee appointed in the Chapter 11

Cases; (6) counsel to Holdings, Debevoise & Plimpton LLP, 919 Third Avenue, New York, New

York 10022, Attn: M. Natasha Labovitz, Jasmine Ball, and Daniel E. Stroik; and (7) the U.S.

Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801 (collectively,

the "**Objection Notice Parties**").

15.    <u>Sale Hearing</u>.  The Sale Hearing shall be held in the United States Bankruptcy

Court for the District of Delaware, Wilmington, Delaware 19801, on **September 18, 2019 at**

**10:30 a.m. (prevailing Eastern Time)** or such other date and time that the Court may later direct; provided, however, that the Sale Hearing may be adjourned by the Debtors (with the consent of the Required Lenders (as defined in the DIP Credit Agreement)) by announcement of the adjournment in open court or on the Court's docket.

16.    As soon as reasonably practicable after the completion of the Auction, the Debtors shall file a final form of order approving the Sale Transaction(s) as agreed upon between the Debtors (in consultation with the Consulting Parties) and the Successful Bidder(s).

17.    Bid Protections.  In accordance with the Bidding Procedures, the Debtors may enter into a definitive agreement with any Qualified Bidder to designate such Qualified Bidder as a Stalking Horse Bidder, subject to higher or otherwise better offers at the Auction.  Pursuant to sections 105, 363, 364, 503, and 507 of the Bankruptcy Code, the Debtors are authorized to offer and pay the Break-Up Fee and Expense Reimbursement to a Stalking Horse Bidder (if any) in accordance with the terms and conditions set forth in the Bidding Procedures and a definitive agreement reached between the Debtors and such Stalking Horse Bidder consistent therewith; *provided* that (a) the amount of such Bid Protections shall not exceed, in the aggregate, three percent of the proposed purchase price for the Bid Assets (or lot thereof) set forth in such Stalking Horse Bid *plus* an amount up to $1,000,000 for reasonable and documented fees and expenses and (b) the approval of such Bid Protections shall be subject to the entry of a Stalking Horse Order and the Sale Order.

18.    If the Debtors exercise their business judgment and determine (in consultation with the Consulting Parties) to enter into a definitive agreement with a Stalking Horse Bidder providing for Bid Protections in accordance with the terms and conditions set forth in the Bidding Procedures, the Debtors shall file a motion with the Court (the "**Stalking Horse**

Motion"), with no less than five calendar days' notice of the objection deadline (the "**Stalking Horse Objection Deadline**") to the U.S. Trustee, the DIP Secured Parties, each of the Prepetition Agents, Holdings, counsel to any official committee appointed in the Chapter 11 Cases, and those parties who have filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the Chapter 11 Cases, seeking entry of an order (the "**Stalking Horse Order**") granting final approval of such Bid Protections to such Stalking Horse Bidder.  If no party in interest objects to the Stalking Horse Motion prior to the Stalking Horse Objection Deadline, then the Debtors may file with the Court the proposed Stalking Horse Order under certification of counsel.  The Court may schedule an expedited hearing to consider the relief sought in the Stalking Horse Motion.

19.     If the Court enters a Stalking Horse Order, the Debtors shall promptly serve it on each Potential Bidder.  Further, until paid, any Break-Up Fee or Expense Reimbursement provided pursuant to the Stalking Horse Order shall constitute allowed superpriority administrative expense claims arising in the Chapter 11 Cases under sections 503(b), 507(a)(2), and 507(b) of the Bankruptcy Code; *provided*, *however*, that such superpriority claims shall be subject to the Carve-Out (as defined in the DIP Order) and the Wind-Down Budget (as defined below), and shall in no circumstance be *pari passu* or senior to the claims granted to the DIP Secured Parties or the Prepetition Secured Parties.

20.     To ensure the funding of the Chapter 11 cases, each bid (including a credit bid) shall be subject to (a) the Debtors having sufficient cash at the consummation of any sale of Bid Assets to satisfy the reasonable wind-down budget negotiated in good faith (the "**Wind-Down Budget**") to pay all allowed (i) post-petition claims, (ii) administrative expense and priority claims, and (iii) professional fees and expenses necessary to wind-down the Debtors' estates in a

reasonable and appropriate timeline, and (b) the requirement that the net proceeds of any sale

pursuant to the Bidding Procedures shall first satisfy the Wind-Down Budget before repayment

from such proceeds of any DIP Obligations, Adequate Protection Obligations, 507(b) Claims,

Prepetition Secured Debt, or any other claims against the Debtors.  At the closing of each Sale

Transaction for Bid Assets, the Debtors shall deposit the sale proceeds from such Sale

Transaction into a segregated account held by the Debtors pending the ultimate resolution (either

by agreement or Court determination) and funding of the appropriate amount of the Wind-Down

Budget; *provided, however*, that the Debtors shall be authorized to use a portion of such sale

proceeds to pay, in accordance with the Approved Budget (as defined in the DIP Credit

Agreement), all allowed (i) post-petition claims, (ii) administrative expense and priority claims,

and (iii) professional fees and expenses necessary to administer the Debtors' estates accrued

through the closing of the final Sale Transaction in an amount either (y) agreed to by the

Required Lenders and the Debtors or (z) as otherwise determined by the Court.  The Debtors

shall not distribute any proceeds of any Sale Transaction prior to the funding of the Wind-Down

Budget.

21.     <u>Assumption and Assignment Procedures</u>.  The assumption and assignment

procedures set forth in the Motion, to the extent modified herein (the "**Assumption and

Assignment Procedures**"), are hereby approved.

22.     As soon as reasonably practicable following entry of this Order, the Debtors shall

file with the Court, and cause to be published on the Case Information Website, the Potential

Assumption and Assignment Notice and a list of the Potential Assumed Contracts (the

"**Potential Assumed Contracts Schedule**") that specifies (a) each of the Contracts and Leases

that potentially could be assumed and assigned in connection with the sale of the Bid Assets,

including the name of each Counterparty and (b) the proposed outstanding Cure Cost as of the

Petition Date with respect to each Potential Assumed Contract.

23.    <u>Potential Assumption and Assignment Notice</u>. The Debtors shall, as soon as

reasonably practicable after entry of this Order (but in any event, so as to provide sufficient

notice such that any required responses from any Counterparties are due prior to the scheduled

date of the Auction as specified in the Bidding Procedures), serve on each relevant Counterparty

the Potential Assumption and Assignment Notice, which shall (a) identify the Potential Assumed

Contracts, (b) list the Debtors' outstanding Cure Costs calculated in good faith as of the Petition

Date with respect to the Potential Assumed Contracts identified on the Potential Assumption and

Assignment Notice, (c) expressly state that assumption or assignment of an Assumed Contract or

Assumed Lease is not guaranteed and is subject to Court approval, (d) prominently display the

deadline to file an Assumption and Assignment Objection (as defined below), and

(e) prominently display the date, time, and location of the Sale Hearing.  The Debtors shall serve

on all parties requesting notice pursuant to Bankruptcy Rule 2002, via first class mail, a modified

version of the Potential Assumption and Assignment Notice, without the Potential Assumed

Contracts Schedule, which will include instructions regarding how to view the Potential

Assumed Contracts Schedule on the Case Information Website.

24.    <u>Proposed Assumption and Assignment Notice</u>. The Debtors shall, in conjunction

with the filing of the Notice of Auction Results, file and serve on each relevant Counterparty the

Proposed Assumption and Assignment Notice, which shall (a) identify the Proposed Assumed

Contracts, (b) expressly state that assumption or assignment of an Assumed Contract or Assumed

Lease is not guaranteed and is subject to Court approval, (c) prominently display the deadline to

file an Assumption and Assignment Objection, and (d) prominently display the date, time, and

location of the Sale Hearing.  The Debtors shall serve on all parties requesting notice pursuant to

Bankruptcy Rule 2002, via first class mail, a modified version of the Proposed Assumption and

Assignment Notice, without the schedule of Proposed Assumed Contracts (the "**Proposed**

**Assumed Contracts Schedule**"), which will include instructions regarding how to view the

Proposed Assumed Contracts Schedule on the Case Information Website.

25.     <u>Objection Deadlines</u>.  Any Counterparty may object to the potential or proposed

assumption or assignment of its Assumed Contract or Assumed Lease, the Debtors' proposed

Cure Costs, if any, or the ability of a Successful Bidder to provide adequate assurance of future

performance (an "**Assumption and Assignment Objection**").  All Assumption and Assignment

Objections must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and

Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if

applicable, the Cure Costs the Counterparty believes is required to cure defaults under the

relevant Assumed Contract or Assumed Lease, (d) (1) for objections relating to proposed Cure

Costs, be filed with the Court no later than **July 11, 2019 at 4:00 p.m. (prevailing Eastern**

**Time)** (the "**Cure Objection Deadline**") and (2) for all other objections, **September 10, 2019 at**

**4:00 p.m. (prevailing Eastern Time**) (the "**Assumption and Assignment Objection**

**Deadline**"), and (e) be served on the Objection Notice Parties.

26.     <u>Resolution of Assumption and Assignment Objections</u>. If a Counterparty files a

timely Assumption and Assignment Objection, such objection shall be heard at the Sale Hearing

or such later date that the Debtors, in consultation with the Successful Bidder, shall determine in

their discretion (subject to the Court's calendar).  If such objection has not been resolved prior to

the closing of the Sale Transaction (whether by an order of the Court or by agreement with the

Counterparty), the Successful Bidder(s) may elect, in their sole and absolute discretion, one of

the following options:  (a) treat such Counterparty's contract or lease as property excluded from the Bid Assets (an "**Excluded Contract**" or "**Excluded Lease**", respectively); or (b) temporarily treat the Proposed Assumed Contract as an Excluded Contract or Excluded Lease, as applicable (a "**Designated Agreement**"), proceed to the closing of the Sale Transaction with respect to all other Bid Assets, and determine whether to treat the Designated Agreement as an Assumed Contract or Assumed Lease, as applicable, or an Excluded Contract or Excluded Lease, as applicable, within ten business days after resolution of such objection (whether by the Court's order or by agreement of the Counterparty, the Debtors, and the Successful Bidder).

27.    <u>Failure To File Timely Assumption and Assignment Objection</u>.  If a Counterparty fails to file with the Court and serve on the Assumption and Assignment Objection Notice Parties a timely Assumption and Assignment Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the assumption or assignment of its Assumed Contract or Assumed Lease.  Notwithstanding anything to the contrary in the Assumed Contract or Assumed Lease, or any other document, the Cure Costs set forth in the Potential Assumption and Assignment Notice or the Supplemental Assumption and Assignment Notice (as defined below) shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Assumed Contract or Assumed Lease under section 365(b) of the Bankruptcy Code as of the Petition Date, whether known or unknown, due or to become due, accrued, absolute, contingent, or otherwise, and the Counterparty shall be forever barred from asserting any additional cure or other amounts with respect to such Assumed Contract or Assumed Lease against the Debtors, the Successful Bidder, or the property of any of them.

28.    <u>Modification of Potential Assumed Contracts Schedule or Proposed Assumed Contracts Schedule</u>.  In addition to a Successful Bidder's rights described above with respect to

an Assumption and Assignment Objection, at or prior to the closing of the Sale Transaction, a

Successful Bidder may elect, in its sole and absolute discretion, to (a) exclude any contract or

lease on the Potential Assumed Contracts Schedule as an Assumed Contract or Assumed Lease,

as applicable (in which case it shall become an Excluded Contract or Excluded Lease, as

applicable), or (b) include on the Proposed Assumed Contracts Schedule any contract or lease

listed on the Potential Assumed Contracts Schedule, by providing to the Debtors written notice

of its election to exclude or include such contract or lease, as applicable.

29.    If the Debtors or any Successful Bidder identify during the pendency of the

Chapter 11 Cases (before or after the closing of the Sale Transaction) any contract or lease that is

not listed on the Proposed Assumed Contracts Schedule, and such contract or lease has not been

rejected by the Debtors, the Successful Bidder may in its sole and absolute discretion elect by

written notice to the Debtors to treat such contract or lease as an Assumed Contract or Assumed

Lease, as applicable, and the Debtors shall seek to add such Assumed Contract or Assumed

Lease to the Potential Assumed Contracts Schedule or Proposed Assumed Contracts Schedule, as

applicable, in accordance with Paragraph 31.

30.    Following the conclusion of the Auction, if any, and the selection of the

Successful Bidder(s), the Debtors reserve the right, but only in accordance with the applicable

Asset Purchase Agreement, or as otherwise agreed by the Debtors and the Successful Bidder(s),

at any time before the closing of the Sale Transaction, to modify the previously-stated Cure

Costs associated with any Proposed Assumed Contract.

31.    In the event that any contract or lease is added to the Potential Assumed Contracts

Schedule or Proposed Assumed Contracts Schedule or previously-stated Cure Costs are modified,

in accordance with the applicable Asset Purchase Agreement, or the procedures set forth in this

Motion, the Debtors will promptly serve a supplemental assumption and assignment notice, by first class mail, on the applicable Counterparty (each, a "**Supplemental Assumption and Assignment Notice**").  Each Supplemental Assumption and Assignment Notice will include the same information with respect to the applicable Assumed Contract or Assumed Lease as is required to be included in the Potential Assumption and Assignment Notice.

32.     Any Counterparty listed on a Supplemental Assumption and Assignment Notice whose contract or lease is proposed to be assumed and assigned may object to the proposed assumption or assignment of its Assumed Contract or Assumed Lease, the Debtors' proposed Cure Costs (to the extent modified from the previously-stated amount), or the ability of a Successful Bidder to provide adequate assurance of future performance (a "**Supplemental Assumption and Assignment Objection**").  All Supplemental Assumption and Assignment Objections must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Costs the Counterparty believes is required to cure defaults under the relevant Assumed Contract or Assumed Lease, and (d) no later than **14 days from the date of service of such Supplemental Assumption and Assignment Notice**, (i) be filed with the Court and (ii) be served on the Assumption and Assignment Objection Notice Parties.  Each Supplemental Assumption and Assignment Objection, if any, shall be resolved in the same manner as an Assumption and Assignment Objection.

33.     <u>Reservation of Rights</u>.  The inclusion of an Assumed Contract, Assumed Lease, or Cure Costs with respect thereto on a Potential Assumption and Assignment Notice, a Proposed Assumption and Assignment Notice, the Potential Assumed Contracts Schedule, the Proposed Assumed Contracts Schedule, or a Supplemental Assumption and Assignment Notice

shall not constitute or be deemed a determination or admission by the Debtors, the Successful Bidder(s), or any other party in interest that such contract or lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code. The Debtors reserve all of their rights, claims, and causes of action with respect to each Assumed Contract and Assumed Lease listed on a Potential Assumption and Assignment Notice, Proposed Assumption and Assignment Notice, Supplemental Assumption and Assignment Notice, the Potential Assumed Contracts Schedule, and the Proposed Assumed Contracts Schedule. The Debtors' inclusion of any Assumed Contract or Assumed Lease on the Potential Assumption and Assignment Notice, Proposed Assumption and Assignment Notice, Supplemental Assumption and Assignment Notice, Potential Assumed Contracts Schedule, and/or Proposed Assumed Contracts Schedule shall not be a guarantee that such Assumed Contract or Assumed Lease ultimately will be assumed or assumed and assigned.

34. Notwithstanding anything in this Order to the contrary, unless Cigna (as defined in the *Objection of Cigna Entities to Motion of Debtors for Entry of Orders (i)(a) Approving Bidding Procedures for Sale of Debtors' Assets, (b) Authorizing the Selection of a Stalking Horse Bidder, (c) Approving Bid Protections, (d) Scheduling Auction for, and Hearing To Approve, Sale of Debtors' Assets, (e) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, (f) Approving Assumption and Assignment Procedures, and (g) Granting Related Relief and (ii)(a) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (b) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (c) Granting Related Relief* [D.I. 238] (the "**Cigna Objection**")) and the Debtors agree otherwise, in the event that any of the Employee Benefit Agreements (as defined in the Cigna Objection) are listed in the Proposed Assumption and

Assignment Notice, or in a Supplemental Assumption and Assignment Notice, filed and served in accordance with the Bidding Procedures, the Debtors shall provide to Cigna, through its counsel of record, (a) as soon as reasonably practicable after the filing of such notice, (i) a copy of the evidence in the Debtors' possession material to the Successful Bidder's ability to comply with section 365 of the Bankruptcy Code, including such information demonstrating the Successful Bidder's ability to perform under the applicable Employee Benefit Agreement(s) and (ii) a good faith estimate as to the number of the Debtors' employees who will become employees of the Successful Bidder and (b) within three business days of filing such notice, written notice of the Debtors' and the Successful Bidder's irrevocable decision as to whether or not the Debtors shall assume and assign to the Successful Bidder the applicable Employee Benefit Agreements as part of the Sale Transaction (to the extent such Sale Transaction closes); *provided, however*, that Cigna shall not assert any Cure Costs other than the outstanding amounts, if any, accrued on and after May 31, 2019, under the applicable Employee Benefit Agreements.

35.    The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

36.    This Order shall be binding on the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

37.    Any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(a), 6004(h), 6006(d), or 9014) or Local Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

38.    The requirements of Bankruptcy Rule 6003 are satisfied by the contents of the Motion.

39.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

40.     Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with and satisfaction of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and no other or further notice of the Motion or the entry of this Order shall be required.

41.     To the extent any provisions of this Order shall be inconsistent with the Motion, the terms of this Order shall control.

42.     The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or relating to the implementation, interpretation, or enforcement of this Order.

**Dated: June 13th, 2019**
**Wilmington, Delaware**

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**