**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| _____ ) | Chapter 11 |
| In re: ) | |
| ) | Case No. 19-10702 (MFW) |
| SOUTHCROSS ENERGY PARTNERS, L.P., ) | |
| *et al*, ) | Jointly Administered |
| ) | |
| Debtors.[1] ) | **Hearing Date: Aug. 30, 2019 at 10:30 a.m. (ET)** |
| _____ ) | **Objection Deadline: Aug. 28, 2019 at 4:00 p.m. (ET)** |

**MOTION OF DEBTORS FOR ENTRY OF AN**
**ORDER (I) DESIGNATING STALKING HORSE BIDDER IN CONNECTION WITH**
**THE MISSISSIPPI AND ALABAMA ASSETS, (II) APPROVING EXPENSE**
**REIMBURSEMENT, AND (III) GRANTING RELATED RELIEF**

Southcross Energy Partners, L.P. ("**Southcross**"), Southcross Energy Partners GP, LLC,

(the "**Southcross GP**"), and Southcross's wholly owned direct and indirect subsidiaries, each of

which is a debtor and debtor in possession (collectively, the "**Debtors**") in the above-captioned

chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this *Motion of Debtors For Entry of*

*an Order (I) Designating Stalking Horse Bidder in Connection with the Mississippi and Alabama*

*Assets, (II) Approving Expense Reimbursement, and (III) Granting Related Relief* (this

"**Motion**").[2]  This Motion is supported by (i) the Hannan Declaration attached to the Bidding

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Southcross Energy Partners, L.P. (5230); Southcross Energy Partners GP, LLC (5141); Southcross Energy Finance Corp. (2225); Southcross Energy Operating, LLC (9605); Southcross Energy GP LLC (4246); Southcross Energy LP LLC (4304); Southcross Gathering Ltd. (7233); Southcross CCNG Gathering Ltd. (9553); Southcross CCNG Transmission Ltd. (4531); Southcross Marketing Company Ltd. (3313); Southcross NGL Pipeline Ltd. (3214); Southcross Midstream Services, L.P. (5932); Southcross Mississippi Industrial Gas Sales, L.P. (7519); Southcross Mississippi Pipeline, L.P. (7499); Southcross Gulf Coast Transmission Ltd. (0546); Southcross Mississippi Gathering, L.P. (2994); Southcross Delta Pipeline LLC (6804); Southcross Alabama Pipeline LLC (7180); Southcross Nueces Pipelines LLC (7034); Southcross Processing LLC (0672); FL Rich Gas Services GP, LLC (5172); FL Rich Gas Services, LP (0219); FL Rich Gas Utility GP, LLC (3280); FL Rich Gas Utility, LP (3644); Southcross Transmission, LP (6432); T2 EF Cogeneration Holdings LLC (0613); and T2 EF Cogeneration LLC (4976). The debtors' mailing address is 1717 Main Street, Suite 5300, Dallas, TX 75201.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Bidding Procedures Order (as defined herein).

Procedures Motion as Exhibit A thereto [D.I. 225-2] and incorporated herein by reference, and

(ii) the entire record of the Chapter 11 Cases. In further support of this Motion, the Debtors

respectfully state as follows:

## Relief Requested

1.      By this Motion, and pursuant to sections 105(a), 363, 503, and 507 of title 11 of

the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, and 9014 of the Federal

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules

of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "**Local Rules**"), the Debtors seek entry of an Order, substantially in the form

attached hereto as Exhibit B (the "**Proposed Order**" and, if entered, the "**Order**"), authorizing

the Debtors, among other things, to designate Magnolia Infrastructure Holdings, LLC as the

stalking horse bidder (the "**Stalking Horse Bidder**") for those Mississippi and Alabama assets

(collectively, the "**MS/AL Assets**") identified in the form of asset purchase agreement attached

hereto as Exhibit A (the "**Stalking Horse Agreement**")[3] and to provide the Stalking Horse

Bidder with bid protection in the form of Expense Reimbursement, subject to the terms and

conditions set forth in the Stalking Horse Agreement.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Delaware (the "**Court**")

has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

*Standing Order of Reference from the United States District Court for the District of Delaware*,

dated February 29, 2012.

---

[3] The parties are working to finalize the Stalking Horse Agreement. Certain material terms, such as the Purchase Price and Expense Reimbursement (each as defined in the Stalking Horse Agreement) are not subject to change. The Debtors will file an executed Stalking Horse Agreement once finalized.

3.       This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4.       Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

5.       On April 1, 2019 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.       No request has been made for the appointment of a trustee or examiner, and no official committee has been appointed in the Chapter 11 Cases.

7.       Additional information about the Debtors' businesses and affairs, capital structure and prepetition indebtedness, and the events leading up to the Petition Date, can be found in the *Declaration of Michael B. Howe in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings* [D.I. 2], which is incorporated herein by reference.

8.       The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [D.I. 48] entered by the Court on April 2, 2019, in each of the Chapter 11 Cases.

9.       On March 12, 2019, Southcross formally retained Evercore Group L.L.C. ("**Evercore**") to serve as an investment banker and to run an extensive marketing process for all

or substantially all of the Debtors' assets (collectively, the "**Bid Assets**").  After being retained, Evercore began reaching out to potential purchasers to explore a sale of the Bid Assets.  Over the course of the months that followed, Evercore contacted at least 67 potential purchasers, and the Debtors executed non-disclosure agreements with at least 36 of such parties with respect to a sale of all or some of the Bid Assets.  Evercore provided additional details to these parties, including access to confidential diligence materials.

10.      In May 2019, the Debtors received, in accordance with the case milestones set forth in that certain Senior Secured Superpriority Priming Debtor-In-Possession Credit Agreement, dated as of April 3, 2019 (as may be amended, supplemented, or otherwise modified form time to time, the "**DIP Credit Agreement**"), non-binding indications of interest from at least 21 parties for all or some of the Bid Assets.  After evaluating the non-binding indications of interest with Evercore and their other advisors, the Debtors and the Required Lenders (as defined in the DIP Credit Agreement) determined that the continuation of the marketing and sale process would maximize the realizable value of the Bid Assets and recoveries for the benefit of the Debtors' estates and stakeholders.  In doing so, the Debtors and Evercore arranged for such parties to meet with management and provided such parties with additional data room access and opportunities to make diligence requests

11.      On May 22, 2019, the Debtors filed the *Motion of Debtors for Entry of Orders (i)(a) Approving Bidding Procedures for Sale of Debtors' Assets, (b) Authorizing the Selection of a Stalking Horse Bidder, (c) Approving Bid Protections, (d) Scheduling Auction for, and Hearing To Approve, Sale Of Debtors' Assets, (e) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, (f) Approving Assumption and Assignment Procedures, and (g) Granting Related Relief and (ii)(a) Approving Sale Of Debtors' Assets Free and Clear of Liens,*

*Claims, Interests, and Encumbrances, (b) Authorizing Assumption and Assignment of Executory*

*Contracts and Unexpired Leases, and (c) Granting Related Relief* [D.I. 225] (the "**Bidding**

**Procedures Motion**").

12.      On June 13, 2019, the Court entered the order approving the Bidding Procedures

Motion [D.I. 324] (the "**Bidding Procedures Order**").

13.      In support of the Motion, the Debtors rely upon and incorporate by reference the

Bidding Procedures Motion and the Bidding Procedures Order.

14.      The Bidding Procedures Order, among other things, authorizes the Debtors, in the

exercise of their business judgement (in consultation with the Consulting Parties), to (a) agree

with any Qualified Bidder that such Qualified Bidder shall be the stalking horse bidder (with

respect to the Bid Assets or lot thereof) and (b) enter into a definitive agreement (such as the

Stalking Horse Agreement) with such stalking horse bidder subject to the terms and conditions

set forth in the Bidding Procedures Order, entry of a "Stalking Horse Order" (such as the

Proposed Order), and final approval at the Sale Hearing.  *See* Bidding Procedures Order,  ¶¶ 5-6.

15.      In addition, the Bidding Procedures Order authorizes the Debtors to offer bid

protections consisting of a Break-Up Fee[4] and Expense Reimbursement to a stalking horse

bidder in accordance with the terms and conditions set forth therein; *provided* that (a) the amount

of such bid protections shall not exceed, in the aggregate, three percent of the proposed purchase

price for the Bid Assets (or lot thereof) set forth in the "Stalking Horse Bid," *plus* an amount up

to $1,000,000 for reasonable and documented fees and expenses and (b) the approval of such bid

protections shall be subject to the entry of a "Stalking Horse Order" and the Sale Order.  *See id*.,

¶ 17.

---

[4] For the avoidance of doubt, the Debtors do not seek approval of a Break-Up Fee in this Motion.

16.     In addition, procedurally, the Bidding Procedures Order provides that if the Debtors exercise their business judgment and determine (in consultation with the Consulting Parties) to enter into a definitive agreement with a stalking horse bidder, the Debtors shall file a "Stalking Horse Motion" (such as this Motion), with no less than five calendar days' notice of the objection deadline (as set forth in the caption hereto, the "**Stalking Horse Objection Deadline**") to the U.S. Trustee, the DIP Secured Parties, each of the Prepetition Agents, Holdings, counsel to any official committee appointed in the Chapter 11 Cases, and those parties who have filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the Chapter 11 Cases, seeking entry of an order granting final approval of the bid protections to the stalking horse bidder.  *See id.*, ¶ 18.  If no party in interest objects to this Motion prior to the Stalking Horse Objection Deadline, the Debtors intend to file, in accordance with the Bidding Procedures Order, the Proposed Order with the Court under certification of counsel. *See id.*, ¶ 18.

17.     Finally, the Debtors submit that, until paid, any Expense Reimbursement approved pursuant to the Proposed Order shall constitute an allowed administrative expense claim arising in the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code; *provided*, *however*, to the extent that the Expense Reimbursement becomes payable to the Buyer pursuant to the Stalking Horse Agreement and there is a consummated Superior Proposal (as defined in the Stalking Horse Agreement), the Expense Reimbursement shall be payable from the first proceeds received by the Debtors from any such Superior Proposal upon consummation of such Superior Proposal, in priority to any other payments from the proceeds of the Superior Proposal.

**The Stalking Horse Agreement**

18.      As authorized by the Bidding Procedures Order, the Debtors have exercised their

business judgment and determined (in consultation with the Consulting Parties) to enter into the

Stalking Horse Agreement with the Stalking Horse Bidder, thereby designating Magnolia

Infrastructure Holdings, LLC as the Stalking Horse Bidder with respect to the sale of the MS/AL

Assets.  In agreeing to enter into the Stalking Horse Agreement, the Stalking Horse Bidder relied

upon the Debtors' ability, pursuant to the Bidding Procedures Order, to exercise their business

judgment (in consultation with the Consulting Parties) to offer bid protections up to the amounts

prescribed in the Bidding Procedures Order.  Accordingly, and as highlighted in more detail

below pursuant to Local Rule 6004-1, the Debtors and the Stalking Horse Bidder agreed to the

following bid protection:

- Reimbursement of reasonable documented fees and expenses of the Stalking Horse Bidder up to $500,000, which amount is within the $1,000,000 limit set forth in the Bidding Procedures Order.

19.      The Debtors and the Stalking Horse Bidder negotiated the Stalking Horse

Agreement in good faith and at arm's length.  For the reasons sets forth herein and in the Bidding

Procedures Motion, the Debtors, in the exercise of their business judgment (in consultation with

the Consulting Parties), believe that the Expense Reimbursement is a necessary inducement for

the Stalking Horse Bidder to agree to act as a stalking horse bidder in the Auction for the MS/AL

Assets.  By establishing a minimum acceptable bid, the Stalking Horse Agreement promotes

competitive bidding under the Bidding Procedures and will allow the Debtors to maximize the

value received through the sale of the MS/AL Assets.

**Provisions to be Highlighted Under Local Rule 6004-1**

20.      In accordance with Local Rule 6004-1, the Debtors respectfully highlight the

following provisions of the Stalking Horse Agreement:

(a)        Expense Reimbursement:  Reimbursement of reasonable
           documented fees and expenses of the Stalking Horse Bidder up to
           $500,000.

(b)        Administrative Expense: Until paid, any Expense Reimbursement
           approved pursuant to the Proposed Order shall constitute an
           allowed administrative expense claim arising in the Chapter 11
           Cases under sections 503(b) and 507(a)(2) of the Bankruptcy
           Code; *provided*, *however*, to the extent that the Expense
           Reimbursement becomes payable to the Buyer pursuant to the
           Stalking Horse Agreement and there is a consummated Superior
           Proposal, the Expense Reimbursement shall be payable from the
           first proceeds received by the Debtors from any such Superior
           Proposal upon consummation of such Superior Proposal, in
           priority to any other payments from the proceeds of the Superior
           Proposal.

*See* Stalking Horse Agreement, §§ 1.01; 12.02(b).

21.    In addition, in accordance with the Bidding Procedures, the Debtors

request that the Court establish a Minimum Overbid, such that upon entry of the Proposed Order,

the consideration provided by any Qualified Bid for the MS/AL Assets must be equal to at least

(a) the consideration set forth in the Stalking Horse Agreement; *plus* (b) the amount of the

Expense Reimbursement;  *plus* (c) a Minimum Overbid of $250,000.

**Basis For Relief Requested**

22.    The Bidding Procedures Motion provides a thorough discussion of the standard

courts have employed to determine the appropriateness of bid protections in circumstances

similar to the instant case.  *See* Bidding Procedures Motion, ¶¶ 31-37.  The Debtors hereby rely

on, and incorporate herein by reference, such discussion in the Bidding Procedures Motion.

23.    The Debtors believe that the Expense Reimbursement satisfies the standards set

out in *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d

527 (3d Cir. 1999).  In particular, *O'Brien* noted that an important factor considered by courts in

determining whether bid protections are appropriate is whether such bid protections are

supported by the Debtors' creditors. *See O'Brien* at 535-36. Here, the provision of the Expense Reimbursement to the Stalking Horse Bidder under the terms and conditions set forth in the Stalking Horse Agreement is supported by each of the Consulting Parties, including Holdings, the Debtors' majority equity holder and the largest residual claimant of the Debtors' estates. The Debtors submit that the reason for this support is that by establishing a minimum acceptable bid, the Stalking Horse Bid embodied in the Stalking Horse Agreement promotes competitive bidding that will allow the Debtors to maximize the value received by the sale of the MS/AL Assets.

24. Furthermore, the Consulting Parties' support of the relief requested herein is evidence that the Debtors negotiated the Expense Reimbursement in good faith and on an arm's length basis, and that the amount of the Expense Reimbursement is reasonable and appropriate in light of the size and nature of the transaction at issue and the efforts that have been and will be expended by the Stalking Horse Bidder. Moreover, the Expense Reimbursement was necessary to secure the Stalking Horse Bidder's commitment to enter into the Stalking Horse Agreement.

25. Approval of the Expense Reimbursement will enable the Debtors to secure an adequate floor for the MS/AL Assets and insist that competing bids be materially higher or otherwise better than the Stalking Horse Bid—a clear benefit to the Debtors' estates. Moreover, it is likely that no prospective stalking horse bidder would agree to act as a stalking horse bidder without some form of bid protection—possibly including a break-up fee in addition to reimbursement of expenses. Accordingly, if the Court does not authorize the Debtors to offer the Expense Reimbursement, the Debtors may lose the opportunity to obtain the highest or otherwise best offer for the MS/AL Assets and would certainly lose the downside protection that would be afforded by the existence of a stalking horse bidder.

26.     The Debtors submit that the Expense Reimbursement is fair and reasonable and will not chill the bidding for the MS/AL Assets.  In addition, payment of the Expense Reimbursement will not diminish the Debtors' estates because the Debtors will incur the obligation to pay the Expense Reimbursement only if they receive a higher or better offer from a third party for the MS/AL Assets, which exceeds the Purchase Price under the Stalking Horse Agreement by at least the aggregate of the Expense Reimbursement and the Minimum Overbid. Moreover, the Debtors believe, in the exercise of their business judgment (in consultation with the Consulting Parties), that offering the Expense Reimbursement will enhance the ultimate recovery to be received by all stakeholders.

27.     Finally, as noted in the Bidding Procedures Motion, after considering the reasonableness of bidding incentives, the Court has approved protections similar to the Expense Reimbursement (often in addition to a break-up fee) as reasonable, and consistent with the type and range of bid protections typically approved, and also has granted administrative expense status (including superpriority administrative expense status) to such fees that become due under the terms of a stalking horse purchase agreement.  *See* Bidding Procedures Motion,  ¶ 36. Accordingly, the Debtors believe that the Expense Reimbursement, and other terms and conditions set forth herein, are customary and reasonable in light of the circumstances of the Chapter 11 Cases and are similar—if not less burdensome to the Debtors' estates—than bid protections previously approved by this Court and others.

## Notice

28.     Pursuant to the Bidding Procedures Order, notice of this Motion will be given to the following parties: (a) the U.S. Trustee; (b) the DIP Secured Parties; (c) each of the Prepetition Agents; (d) Holdings; and (e) those parties who have filed the appropriate notice

pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the Chapter 11

Cases.  A copy of this Motion and any order approving it will also be made available on the

Debtors' case information website located at http://www.kccllc.net/southcrossenergy.  The

Debtors respectfully submit that no further notice is required.

### No Prior Request

29.      The Debtors have not previously sought the relief requested herein from the Court

or from any other court.

*[The Remainder of This Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request entry of the Proposed Order,

substantially in the form attached hereto as Exhibit B, granting the relief requested herein and

such other and further relief as the Court deems just and proper.

Dated: August 23, 2019
       Wilmington, Delaware

                                        Respectfully submitted,

                                        MORRIS, NICHOLS ARSHT & TUNNELL LLP

                                        /s/ Joseph C. Barsalona II
                                        Robert J. Dehney (No. 3578)
                                        Andrew R. Remming (No. 5120)
                                        Joseph C. Barsalona II (No. 6102)
                                        Eric W. Moats (No. 6441)
                                        1201 North Market Street, 16th Floor
                                        P.O. Box 1347
                                        Wilmington, Delaware 19899-1347
                                        Tel.: (302) 658-9200
                                        Fax: (302) 658-3989
                                        rdehney@mnat.com
                                        aremming@mnat.com
                                        jbarsalona@mnat.com
                                        emoats@mnat.com

                                        -and-

                                        DAVIS POLK & WARDWELL LLP

                                        Marshall S. Huebner (admitted pro hac vice)
                                        Darren S. Klein (admitted pro hac vice)
                                        Steven Z. Szanzer (admitted pro hac vice)
                                        450 Lexington Avenue
                                        New York, New York 10017
                                        Tel.: (212) 450-4000
                                        Fax: (212) 701-5800
                                        marshall.huebner@davispolk.com
                                        darren.klein@davispolk.com
                                        steven.szanzer@davispolk.com

                                        Counsel to the Debtors and Debtors in Possession