**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 ) |
| SOUTHCROSS ENERGY PARTNERS, L.P., *et al*, | ) Case No. 19-10702 (MFW) ) ) Jointly Administered |
| Debtors.[1] | ) **Hearing Date: Aug. 30, 2019 at 10:30 a.m. (ET)** ) **Objection Deadline: Aug. 29, 2019 at 4:00 p.m. (ET)** |

**MOTION OF DEBTORS FOR ENTRY OF AN
ORDER (I) DESIGNATING STALKING HORSE BIDDER IN CONNECTION WITH
THE CORPUS CHRISTI PIPELINE NETWORK ASSETS, (II) APPROVING BID
PROTECTIONS, AND (III) GRANTING RELATED RELIEF**

Southcross Energy Partners, L.P. ("**Southcross**"), Southcross Energy Partners GP, LLC, (the "**Southcross GP**"), and Southcross's wholly owned direct and indirect subsidiaries, each of which is a debtor and debtor in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby submit this *Motion of Debtors For Entry of an Order (I) Designating Stalking Horse Bidder in Connection with the Corpus Christi Pipeline Network Assets, (II) Approving Bid Protections, and (III) Granting Related Relief* (this "**Motion**").[2] This Motion is supported by (i) the Hannan Declaration attached to the Bidding

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Southcross Energy Partners, L.P. (5230); Southcross Energy Partners GP, LLC (5141); Southcross Energy Finance Corp. (2225); Southcross Energy Operating, LLC (9605); Southcross Energy GP LLC (4246); Southcross Energy LP LLC (4304); Southcross Gathering Ltd. (7233); Southcross CCNG Gathering Ltd. (9553); Southcross CCNG Transmission Ltd. (4531); Southcross Marketing Company Ltd. (3313); Southcross NGL Pipeline Ltd. (3214); Southcross Midstream Services, L.P. (5932); Southcross Mississippi Industrial Gas Sales, L.P. (7519); Southcross Mississippi Pipeline, L.P. (7499); Southcross Gulf Coast Transmission Ltd. (0546); Southcross Mississippi Gathering, L.P. (2994); Southcross Delta Pipeline LLC (6804); Southcross Alabama Pipeline LLC (7180); Southcross Nueces Pipelines LLC (7034); Southcross Processing LLC (0672); FL Rich Gas Services GP, LLC (5172); FL Rich Gas Services, LP (0219); FL Rich Gas Utility GP, LLC (3280); FL Rich Gas Utility, LP (3644); Southcross Transmission, LP (6432); T2 EF Cogeneration Holdings LLC (0613); and T2 EF Cogeneration LLC (4976). The debtors' mailing address is 1717 Main Street, Suite 5300, Dallas, TX 75201.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Bidding Procedures Order (as defined herein).

Procedures Motion as Exhibit A thereto [D.I. 225-2] and incorporated herein by reference, and (ii) the entire record of the Chapter 11 Cases. In further support of this Motion, the Debtors respectfully state as follows:

### Relief Requested

1. By this Motion, and pursuant to sections 105(a), 363, 503, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors seek entry of an Order, substantially in the form attached hereto as Exhibit B (the "**Proposed Order**" and, if entered, the "**Order**"), authorizing the Debtors, among other things, to designate Kinder Morgan Tejas Pipeline LLC as the stalking horse bidder (the "**Stalking Horse Bidder**") for those Corpus Christi pipeline network assets (collectively, the "**CCPN Assets**") identified in the form of asset purchase agreement attached hereto as Exhibit A (the "**Stalking Horse Agreement**") and to provide the Stalking Horse Bidder with the Bid Protections (as defined below) set forth in the Stalking Horse Agreement.

### Jurisdiction and Venue

2. The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

3. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court,

absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4. Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

5. On April 1, 2019 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. No request has been made for the appointment of a trustee or examiner, and no official committee has been appointed in the Chapter 11 Cases.

7. Additional information about the Debtors' businesses and affairs, capital structure and prepetition indebtedness, and the events leading up to the Petition Date, can be found in the *Declaration of Michael B. Howe in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings* [D.I. 2], which is incorporated herein by reference.

8. The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [D.I. 48] entered by the Court on April 2, 2019, in each of the Chapter 11 Cases.

9. On March 12, 2019, Southcross formally retained Evercore Group L.L.C. ("**Evercore**") to serve as an investment banker and to run an extensive marketing process for all or substantially all of the Debtors' assets (collectively, the "**Bid Assets**"). After being retained, Evercore began reaching out to potential purchasers to explore a sale of the Bid Assets. Over the course of the months that followed, Evercore contacted at least 67 potential purchasers, and the

Debtors executed non-disclosure agreements with at least 36 of such parties with respect to a sale of all or some of the Bid Assets. Evercore provided additional details to these parties, including access to confidential diligence materials.

10. In May 2019, the Debtors received, in accordance with the case milestones set forth in that certain Senior Secured Superpriority Priming Debtor-In-Possession Credit Agreement, dated as of April 3, 2019 (as may be amended, supplemented, or otherwise modified form time to time, the "**DIP Credit Agreement**"), non-binding indications of interest from at least 21 parties for all or some of the Bid Assets. After evaluating the non-binding indications of interest with Evercore and their other advisors, the Debtors and the Required Lenders (as defined in the DIP Credit Agreement) determined that the continuation of the marketing and sale process would maximize the realizable value of the Bid Assets and recoveries for the benefit of the Debtors' estates and stakeholders. In doing so, the Debtors and Evercore arranged for such parties to meet with management and provided such parties with additional data room access and opportunities to make diligence requests

11. On May 22, 2019, the Debtors filed the *Motion of Debtors for Entry of Orders (i)(a) Approving Bidding Procedures for Sale of Debtors' Assets, (b) Authorizing the Selection of a Stalking Horse Bidder, (c) Approving Bid Protections, (d) Scheduling Auction for, and Hearing To Approve, Sale Of Debtors' Assets, (e) Approving Form and Manner of Notices of Sale, Auction, and Sale Hearing, (f) Approving Assumption and Assignment Procedures, and (g) Granting Related Relief and (ii)(a) Approving Sale Of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (b) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (c) Granting Related Relief* [D.I. 225] (the "**Bidding Procedures Motion**").

12. On June 13, 2019, the Court entered the order approving the Bidding Procedures Motion [D.I. 324] (the "**Bidding Procedures Order**").

13. In support of the Motion, the Debtors rely upon and incorporate by reference the Bidding Procedures Motion and the Bidding Procedures Order.

14. The Bidding Procedures Order, among other things, authorizes the Debtors, in the exercise of their business judgement (in consultation with the Consulting Parties), to (a) agree with any Qualified Bidder that such Qualified Bidder shall be the stalking horse bidder (with respect to the Bid Assets or lot thereof) and (b) enter into a definitive agreement (such as the Stalking Horse Agreement) with such stalking horse bidder subject to the terms and conditions set forth in the Bidding Procedures Order, entry of a "Stalking Horse Order" (such as the Proposed Order), and final approval at the Sale Hearing. *See* Bidding Procedures Order, ¶¶ 5-6.

15. In addition, the Bidding Procedures Order authorizes the Debtors to offer bid protections consisting of a Break-Up Fee and Expense Reimbursement (collectively, the "**Bid Protections**") to a stalking horse bidder in accordance with the terms and conditions set forth therein; *provided* that (a) the amount of such Bid Protections shall not exceed, in the aggregate, three percent of the proposed purchase price for the Bid Assets (or lot thereof) set forth in the "Stalking Horse Bid," *plus* an amount up to $1,000,000 for reasonable and documented fees and expenses and (b) the approval of such Bid Protections shall be subject to the entry of a "Stalking Horse Order" and the Sale Order. *See id.*, ¶ 17.

16. In addition, procedurally, the Bidding Procedures Order provides that if the Debtors exercise their business judgment and determine (in consultation with the Consulting Parties) to enter into a definitive agreement with a stalking horse bidder, the Debtors shall file a "Stalking Horse Motion" (such as this Motion), with no less than five calendar days' notice of

the objection deadline (as set forth in the caption hereto, the "**Stalking Horse Objection Deadline**") to the U.S. Trustee, the DIP Secured Parties, each of the Prepetition Agents, Holdings, counsel to any official committee appointed in the Chapter 11 Cases, and those parties who have filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the Chapter 11 Cases, seeking entry of an order granting final approval of the Bid Protections to the stalking horse bidder. *See id.*, ¶ 18. If no party in interest objects to this Motion prior to the Stalking Horse Objection Deadline, the Debtors intend to file, in accordance with the Bidding Procedures Order, the Proposed Order with the Court under certification of counsel. *See id.*, ¶ 18.

17.     Finally, the Debtors submit that, until paid, any Break-Up Fee or Expense Reimbursement approved pursuant to the Proposed Order shall constitute an allowed administrative expense claim arising in the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code; *provided*, *however*, to the extent that the Bid Protections become payable to the Buyer pursuant to the Stalking Horse Agreement and there is a consummated Superior Proposal (as defined in the Stalking Horse Agreement), the Bid Protections shall be payable from the first proceeds received by the Debtors from any such Superior Proposal upon consummation of such Superior Proposal, in priority to any other payments from the proceeds of the Superior Proposal.

## The Stalking Horse Agreement

18.     As authorized by the Bidding Procedures Order, the Debtors have exercised their business judgment and determined (in consultation with the Consulting Parties) to enter into the Stalking Horse Agreement with the Stalking Horse Bidder, thereby designating Kinder Morgan Tejas Pipeline LLC as the Stalking Horse Bidder with respect to the sale of the CCPN Assets. In agreeing to enter into the Stalking Horse Agreement, the Stalking Horse Bidder relied upon the

Debtors' ability, pursuant to the Bidding Procedures Order, to exercise their business judgment (in consultation with the Consulting Parties) to offer bid protections up to the amounts prescribed in the Bidding Procedures Order. Accordingly, and as highlighted in more detail below pursuant to Local Rule 6004-1, the Debtors and the Stalking Horse Bidder agreed to the following Bid Protections:

- A Break-Up Fee of $2,280,000 (three percent of the Cash Purchase Price under the Stalking Horse Agreement); and
- Reimbursement of reasonable documented fees and expenses of the Stalking Horse Bidder up to $250,000.

Each of the foregoing Bid Protections are within the prescribed amounts set forth in the Bidding Procedures Order.

19.     The Debtors and the Stalking Horse Bidder negotiated the Stalking Horse Agreement in good faith and at arm's length. For the reasons sets forth herein and in the Bidding Procedures Motion, the Debtors, in the exercise of their business judgment (in consultation with the Consulting Parties), believe that the Bid Protections are a necessary inducement for the Stalking Horse Bidder to agree to act as a stalking horse bidder in the Auction for the CCPN Assets. By establishing a minimum acceptable bid, the Stalking Horse Agreement promotes competitive bidding under the Bidding Procedures and will allow the Debtors to maximize the value received through the sale of the CCPN Assets.

**Provisions to be Highlighted Under Local Rule 6004-1**

20.     In accordance with Local Rule 6004-1, the Debtors respectfully highlight the following provisions of the Stalking Horse Agreement:

    (a)    <u>Break-Up Fee</u>:  The Bid Protections provide for payment of a Break-Up Fee of $2,280,000 (three percent of the Cash Purchase Price under the Stalking Horse Agreement), payable to the Stalking Horse Bidder upon the consummation of a transaction with a Successful Bidder including the CCPN Assets (if the Successful

7

    (b) Expense Reimbursement:  Reimbursement of reasonable documented fees and expenses of the Stalking Horse Bidder up to $250,000.

    (c) Administrative Expense: Until paid, any Break-Up Fee or Expense Reimbursement approved pursuant to the Proposed Order shall constitute an allowed administrative expense claim arising in the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code; *provided*, *however*, to the extent that the Bid Protections become payable to the Buyer pursuant to the Stalking Horse Agreement and there is a consummated Superior Proposal, the Bid Protections shall be payable from the first proceeds received by the Debtors from any such Superior Proposal upon consummation of such Superior Proposal, in priority to any other payments from the proceeds of the Superior Proposal.

Bidder is not the Stalking Horse Bidder), without further order of the Court.

*See* Stalking Horse Agreement, §§ 1.01; 13.07.

  21. In addition, in accordance with the Bidding Procedures, the Debtors request that the Court establish a Minimum Overbid, such that upon entry of the Proposed Order, the consideration provided by any Qualified Bid for the CCPN Assets must be equal to at least (i) the consideration set forth in the Stalking Horse Agreement; *plus* (ii) the aggregate amount of any approved Bid Protections; *plus* (iii) a Minimum Overbid of $250,000.

## Basis For Relief Requested

  22. The Bidding Procedures Motion provides a thorough discussion of the standard courts have employed to determine the appropriateness of bid protections in circumstances similar to the instant case.  *See* Bidding Procedures Motion, ¶¶ 31-37.  The Debtors hereby rely on, and incorporate herein by reference, such discussion in the Bidding Procedures Motion.

  23. The Debtors believe that the Bid Protections satisfy the standards set out in *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527 (3d Cir. 1999).  In particular, *O'Brien* noted that an important factor considered by courts in

determining whether bid protections are appropriate is whether such bid protections are supported by the Debtors' creditors. *See O'Brien* at 535-36. Here, the provision of the Bid Protections to the Stalking Horse Bidder under the terms and conditions set forth in the Stalking Horse Agreement is supported by each of the Consulting Parties, including Holdings, the Debtors' majority equity holder and the largest residual claimant of the Debtors' estates. The Debtors submit that the reason for this support is that by establishing a minimum acceptable bid, the Stalking Horse Bid embodied in the Stalking Horse Agreement promotes competitive bidding that will allow the Debtors to maximize the value received by the sale of the CCPN Assets.

24. Furthermore, the Consulting Parties' support of the relief requested herein is evidence that the Debtors negotiated the Bid Protections in good faith and on an arm's length basis, and that the aggregate amount of the Bid Protections is reasonable and appropriate in light of the size and nature of the transaction at issue and the efforts that have been and will be expended by the Stalking Horse Bidder. Moreover, the Bid Protections were necessary to secure the Stalking Horse Bidder's commitment to enter into the Stalking Horse Agreement.

25. Approval of the Bid Protections will enable the Debtors to secure an adequate floor for the CCPN Assets and insist that competing bids be materially higher or otherwise better than the Stalking Horse Bid—a clear benefit to the Debtors' estates. Moreover, it is likely that no prospective stalking horse bidder would agree to act as a stalking horse bidder without bid protections. Accordingly, if the Court does not authorize the Debtors to offer the Bid Protections, the Debtors may lose the opportunity to obtain the highest or otherwise best offer for the CCPN Assets and would certainly lose the downside protection that would be afforded by the existence of a stalking horse bidder.

26. The Debtors submit that the Bid Protections are fair and reasonable and will not chill the bidding for the CCPN Assets. In addition, payment of the Bid Protections will not diminish the Debtors' estates because the Debtors will incur the obligation to pay the Bid Protections only if they receive a higher or better offer from a third party for the CCPN Assets, which exceeds the Purchase Price under the Stalking Horse Agreement by at least the aggregate of the Bid Protections and the Minimum Overbid. Moreover, the Debtors believe, in the exercise of their business judgment (in consultation with the Consulting Parties), that offering the Bid Protections will enhance the ultimate recovery to be received by all stakeholders.

27. Finally, as noted in the Bidding Procedures Motion, after considering the reasonableness of bidding incentives, the Court has approved protections similar to the Bid Protections as reasonable, and consistent with the type and range of bid protections typically approved, and also has granted administrative expense status (including superpriority administrative expense status) to bid protections that become due under the terms of a stalking horse purchase agreement. *See* Bidding Procedures Motion, ¶ 36. Accordingly, the Debtors believe that the Bid Protections, and other terms and conditions set forth herein, are customary and reasonable in light of the circumstances of the Chapter 11 Cases and are similar to bid protections previously approved by this Court and others.

## Notice

28. Pursuant to the Bidding Procedures Order, notice of this Motion will be given to the following parties: (a) the U.S. Trustee; (b) the DIP Secured Parties; (c) each of the Prepetition Agents; (d) Holdings; and (e) those parties who have filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the Chapter 11 Cases. A copy of this Motion and any order approving it will also be made available on the

Debtors' case information website located at http://www.kccllc.net/southcrossenergy.  The Debtors respectfully submit that no further notice is required.

## **No Prior Request**

29. The Debtors have not previously sought the relief requested herein from the Court or from any other court.

*[The Remainder of This Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request entry of the Proposed Order, substantially in the form attached hereto as <u>Exhibit B</u>, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: August 24, 2019
      Wilmington, Delaware

                              Respectfully submitted,
                              MORRIS, NICHOLS ARSHT & TUNNELL LLP

<u>/s/ Joseph C. Barsalona II</u>
Robert J. Dehney (No. 3578)
Andrew R. Remming (No. 5120)
Joseph C. Barsalona II (No. 6102)
Eric W. Moats (No. 6441)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Tel.: (302) 658-9200
Fax: (302) 658-3989
rdehney@mnat.com
aremming@mnat.com
jbarsalona@mnat.com
emoats@mnat.com

-and-

DAVIS POLK & WARDWELL LLP

Marshall S. Huebner (*admitted pro hac vice*)
Darren S. Klein (*admitted pro hac vice*)
Steven Z. Szanzer (*admitted pro hac vice*)
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Fax: (212) 701-5800
marshall.huebner@davispolk.com
darren.klein@davispolk.com
steven.szanzer@davispolk.com

*Counsel to the Debtors and Debtors in Possession*