# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>SOUTHCROSS ENERGY PARTNERS, L.P., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-10702 (MFW)<br>(Jointly Administered)<br><br>Hearing Date: October 28, 2019 at 10:30 a.m.<br>Objections Due: October 21, 2019 at 4:00 p.m.<br><br>D.I. 521 (519 & 520) |

**THE UNITED STATES TRUSTEE'S OBJECTION TO THE MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) ESTABLISHING PROCEDURES FOR THE SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE PLAN, (III) APPROVING THE FORM OF BALLOT AND SOLICITATION MATERIALS, (IV) ESTABLISHING THE VOTING RECORD DATE, (V) FIXING THE DATE, TIME, AND PLACE FOR THE CONFIRMATION HEARING AND THE DEADLINE FOR FILING OBJECTIONS THERETO, AND (VI) APPROVING RELATED NOTICE PROCEDURES**

Andrew R. Vara, the Acting United States Trustee for Region 3 ("U.S. Trustee"), by and

through his undersigned attorney, hereby submits this Objection to the Motion of Debtors for

Entry of an Order (I) Approving the Disclosure Statement, (II) Establishing Procedures for the

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Southcross Energy Partners, L.P. (5230); Southcross Energy Partners GP, LLC (5141); Southcross Energy Finance Corp. (2225); Southcross Energy Operating, LLC (9605); Southcross Energy GP LLC (4246); Southcross Energy LP LLC (4304); Southcross Gathering Ltd. (7233); Southcross CCNG Gathering Ltd. (9553); Southcross CCNG Transmission Ltd. (4531); Southcross Marketing Company Ltd. (3313); Southcross NGL Pipeline Ltd. (3214); Southcross Midstream Services, L.P. (5932); Southcross Mississippi Industrial Gas Sales, L.P. (7519); Southcross Mississippi Pipeline, L.P. (7499); Southcross Gulf Coast Transmission Ltd. (0546); Southcross Mississippi Gathering, L.P. (2994); Southcross Delta Pipeline LLC (6804); Southcross Alabama Pipeline LLC (7180); Southcross Nueces Pipelines LLC (7034); Southcross Processing LLC (0672); FL Rich Gas Services GP, LLC (5172); FL Rich Gas Services, LP (0219); FL Rich Gas Utility GP, LLC (3280); FL Rich Gas Utility, LP (3644); Southcross Transmission, LP (6432); T2 EF Cogeneration Holdings, LLC (0613); and T2 EF Cogeneration LLC (4976). The debtors' mailing address is 1717 Main Street, Suite 5300, Dallas, TX 75201.

Solicitation and Tabulation of Votes to Accept or Reject the Plan, (III) Approving the Form of Ballot and Solicitation Materials, (IV) Establishing the Voting Record Date, (V) Fixing the Date, Time, and Place for the Confirmation Hearing and the Deadline for Filing Objections Thereto, and (VI) Approving Related Notice Procedures (D.I. 521) (the "Motion"), and in support of that Objection states as follows:

## I. PRELIMINARY STATEMENT

1.  The Debtors have proposed a plan whereby the general unsecured creditors and other subordinate creditors and interest holders (Classes 5 through 8 in the Plan) will receive no distribution under the plan and are therefore deemed to reject the plan. Despite such treatment, the Debtors seek Court approval of a process whereby the Debtors will require these creditors and parties to file a written objection by the voting deadline for such creditors and interest holders to avoid granting third party releases without consideration.

2.  This Court, in *In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011), ruled that "any third party release is effective only with respect to those who *affirmatively consent* to it by voting in favor of the Plan and not opting out of the third party releases." *Id.* at 355 (emphasis added). The Court clarified that an "opt out mechanism is not sufficient to support the third party releases . . . particularly with respect to parties who do not return a ballot (*or are not entitled to vote in the first place*). Failing to return a ballot is not a sufficient manifestation of consent to a third party release." *Id.* (emphasis added), citing *In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999).

3.  The situation here is made even more egregious because the affected creditor or party has to obtain a copy of the Plan, review the Plan, and then retain counsel in order file a

written objection to the release, exculpation, discharge and injunction provisions. Affirmative consent is especially important here, because the releases being sought are from parties who are receiving nothing under the plan. But despite receiving no consideration such creditors and interest holders are compelled to grant releases to the Debtors and a number of non-debtors.

4. The Debtors have the ability at this stage of the proceedings to change the process and provide the affected creditors an "opt-in" form, thereby ensuring that only the affected creditors and parties who actually received such form, and truly consent to give third party releases, will be deemed to provide the same. This is especially important because the creditors and interest holders are receiving no distribution under the plan, and therefore no consideration for giving any release.

5. Ordinarily, the propriety of third party releases is a confirmation issue. However, by the Motion, the Debtors presently seek Court approval of a procedure that will adversely and deleteriously affect these parties. Therefore this objection is proper and timely.

6. The U.S. Trustee objects to deeming those holders of claims in Classes 5 through 8 who do not object to the Plan as consenting to grant third party releases. However, that issue, along with others related to, *inter alia*, the release and discharge provisions, is a confirmation issue that can be addressed at the confirmation hearing. The U.S. Trustee reserves the right to raise all confirmation issues, including exculpation[2], by the confirmation objection deadline.

7. For these reasons, as set forth in greater detail below, that portion of the Motion

---

[2] See ¶¶ 29-35, *infra*.

which seeks the Court's approval of the procedure concerning approval of the Disclosure Statement and Plan confirmation affecting the Debtors' creditors and interest holders should be denied.[3]

## II. JURISDICTION

8. Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine this objection.

9. Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the U. S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc.* (*In re Columbia Gas Systems, Inc.*), 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc.* (*In re Revco D.S., Inc.*), 898 F.2d 498, 500 (6th Cir. 1990) (describing the "U.S. Trustee as a "watchdog").

10. Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to, *inter alia*, monitor plans and disclosure statements filed in Chapter 11 cases and to comment such plans and disclosure statements.

11. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on this

---

[3] The U.S. Trustee's counsel believes he has reached an agreement with the Debtors' counsel as to modifications to be made to the form of proposed order on the Motion, the ballot and related notices, other than those addressed in this Objection. The U.S. Trustee reserves the right to supplement this Objection, or to assert additional objections at the hearing on the Motion, if such modifications are not made.

Objection.

### III. RELEVANT FACTS AND PROCEDURAL HISTORY

12. On April 1, 2019 (the "Petition Date"), the Debtors commenced these Chapter 11 cases.

13. No Official Committee of Unsecured Creditors has been appointed in these cases.

14. On October 4, 2019, the Debtors filed this Motion and their Plan and Disclosure Statement (D. I. 519-521).

15. The Plan (and Disclosure Statement) provides for two voting classes, namely the Prepetition Term Loan Claims (Class 3) and the Prepetition Revolving Credit Facility Claims (Class Four).[4]

16. The Plan and Disclosure Statement also includes four classes namely General Unsecured Claims (Class 5), Sponsor Note Claims (Class 6), Subordinated Claims (Class 7) and Existing Interests (Class 8) which are all impaired and deemed to have rejected the Plan and, therefore, are not entitled to vote on the Plan. These classes are deemed to reject because the members of those classes are receiving no distribution.

17. The Motion attaches various forms of notices, including, as Exhibit C, a Notice of Non-Voting Status to be served on these creditor and interest holders. This Notice does not provide or append any type of opt-out or opt-in form but states, among other things, that these non-voting creditors and interest holders:

---

[4] The Prepetition Term Loan Claims are any claims arising under the Prepetition Term Loan and the Prepetition Term Loan Agreement and have been deemed Allowed Claims under the Plan. The Prepetition Revolving Credit Facility Claims are any claims arising under the Prepetition Revolving Credit Facility and the Prepetition Revolving Credit Facility Agreement. (See sections 1.114 and 1.120 of the Plan).

5

- will not be served with a copy of the Order, the Disclosure Statement, or the Plan;

- that upon Plan confirmation, any non-voting party will be deemed to have granted the releases and consented to the exculpation and injunction provisions set forth in Article 14 of the Plan (the Plan that they are not served with) unless such party objects to the plan by the Objection Deadline;

- if they wish to challenge the Debtors' classification of their claim, they must file a motion, pursuant to Bankruptcy Rule 3018(a) (a "Rule 3018 Motion") and serve such motion on the Debtors so that it is received by 4:00 p.m. (prevailing Eastern Time) on the fifth day after the later of (i) service of the Confirmation Notice and (ii) service of notice of an objection, if any, to such Claim;

- that the Court will hold a hearing to consider confirmation of the Plan (the "Confirmation Hearing") on December 5, 2019 at 10:30 a.m., and;

- lastly that objections to confirmation of the Plan, if any, must (a) be in writing and (b) be filed with the Court and served on (i) both counsel to the Debtors, (ii) counsel to the post-petition lenders and an ad hoc group of prepetition lenders, (iii) counsel to the administrative agent under Southcross's prepetition secured revolving credit facility, prepetition secured term loan facility, and the post-petition credit facility, (iv) the Office of the U.S. Trustee for the District of Delaware, (v) and counsel to Southcross Holdings LP and its non-Debtor subsidiaries, so that they are received no later than the Confirmation Objection Deadline.

See Motion – Ex. C (D.I. 521-4).

18.     Set forth below are the Plan provisions that are relevant to the solicitation and objection procedures which the Debtors seek the Court to approve at this time.

19.     The **third party release** is set forth in Article 14.6(b) of the Plan and provides as follows:

> Releases by the Holders of Claims and Interests. Except as otherwise specifically provided in this Plan or the Confirmation Order, on and after the Effective Date, for good and valuable consideration, including the obligations of the Debtors under this Plan, the Plan Consideration and other contracts, instruments, releases, agreements or documents executed and delivered in connection with this Plan, each ***Releasing Party*** shall be deemed to have consented to this Plan and the restructuring embodied herein for all purposes, and shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged the ***Released Parties*** from any and all

> Claims, Interests, obligations, debts, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity or otherwise, whether for tort, fraud, contract, violations of federal or state laws or otherwise, including Avoidance Actions, those Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability or otherwise that such *Releasing Party* would have been legally entitled to assert (whether individually or collectively), based on, relating to or in any manner arising from, in whole or in part, the Debtors, the Estates, the Plan Administrator, the liquidation, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any *Releasing Party* excluding any assumed executory contract or lease, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the Plan Administrator Agreement, the DIP Credit Agreement, the Prepetition Revolving Credit Facility, the Prepetition Term Loan Agreement, or this Plan or the Disclosure Statement, or, in each case, related agreements, instruments or other documents, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a *Released Party* that is determined in a Final Order to have constituted willful misconduct (including, without limitation, actual fraud) or gross negligence; provided that any holder of a Claim or Interest that elects to opt out of the releases contained in the Plan shall not receive the benefit of the releases set forth in the Plan (even if for any reason otherwise entitled). Notwithstanding anything contained herein to the contrary, the foregoing release shall not release any obligation of any party under the Plan or any document, instrument or agreement executed to implement the Plan.

Article 14.6 (b) of the Plan (emphasis added).

20.     The parties providing the third party releases are termed the "**Releasing Parties,**" and are defined as follows:

> *Releasing Parties* means collectively, (a) each Released Party described in clauses (a), (d), (e), and (f) thereof, (b) each holder of a Claim that (i) votes to accept the Plan, (ii) is conclusively deemed to have accepted the Plan, (iii) receives a Ballot but abstains from voting on the Plan and does not check the appropriate box on such holder's timely submitted Ballot to indicate that such holder elects to opt out of the release contained in the Plan and/or (iv) votes to reject the Plan and does not elect (as permitted on the Ballots) to opt out of the releases contained in the Plan, *(c) each holder of a Claim in Classes 5, 6, 7, and 8 that does not object to the Plan,* and (d) as to each of the foregoing Entities in clauses (a), (b), and (c) each such Entity's predecessors, successors and

7

assigns, subsidiaries, affiliates, managed accounts or funds and their current and former officers, directors, managers, partners, principals, shareholders, members, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals (in each case as to the foregoing Entities in clauses (a), (b) and (c), solely in their capacity as such).

Article 1.131 of the Plan (emphasis added).

21. The beneficiaries of the third party releases are the "**Released Parties,**" who are defined as follows:

> ***Released Parties*** means each of the following in their capacity as such: (a) each member of the Ad Hoc Group; (b) the Prepetition Term Loan Lenders; (c) the Prepetition Revolving Credit Facility Lenders; (d) the Prepetition Term Loan Agent; (e) the Prepetition Revolving Credit Facility Agent; (f) the Debtors (for the avoidance of doubt, including the Liquidating Debtors and the Reorganized Debtors, as applicable); (g) the DIP Agent and DIP Lenders; and (h) with respect to each of the foregoing Entities in clauses (a) through (g), such party's current and former affiliates and subsidiaries, and such Entities' and their current and former affiliates' and subsidiaries' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; provided, that no Person shall be a Released Party if it (a) opts out of the releases provided for in Article XIV hereof through a timely submitted ballot or (b) ***objects to the Plan.***

Article 1.130 of the Plan (emphasis added).

## IV. LAW AND ANALYSIS

### A. The Proposed Objection Procedure is Impermissible under Applicable Law

22.     The procedure set forth in the Motion whereby the Debtors' non-voting general unsecured claimants and other creditors and interest holders shall be deemed to consent to give third party releases for no consideration, under a plan they are deemed to reject, unless they object to confirmation of the Plan and object to the releases, exculpations and plan injunction is contrary to the standards set forth by this Court in *Washington Mutual*, 442 B.R. 314 (Bankr. D. Del. 2011), and other cases in this District, as well as by the Court of Appeals for the Third Circuit in *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203 (3d Cir. 2000).

### B. Consent to Third Party Releases Requires an Affirmative Act

23.     As set forth in the above, the third party releases in the Plan will be given not only by those creditors who voted to accept the plan, and those several unimpaired classes who are deemed to accept the plan all of whom will receive no distribution under the plan, have no right to vote on the Plan, and are deemed to reject the same. The only way that a creditor or interest holder can avoid being deemed to give the third party releases is to file and serve a written objection to the Plan's release, exculpation and plan injunction provisions by the voting deadline.

24.     Some Courts in this District have determined that third-party releases of non-debtors should be allowed only to the extent the releasing parties have given affirmative consent. *See In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011). In *Washington Mutual* the Court held that "any third party release is effective only with respect to those who

*affirmatively consent* to it by voting in favor of the Plan and not opting out of the third party releases." *Id.* at 355 (emphasis added). The Court clarified that merely having an opt out mechanism is not enough, holding that an "opt out mechanism is not sufficient to support the third party releases . . . particularly with respect to parties who do not return a ballot (*or are not entitled to vote in the first place*)." *Id.* (emphasis added). *Failing to return a ballot is not a sufficient manifestation of consent to a third party release.*" *Id.* (emphasis added), citing *In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999).

25. Other decisions from Courts in this District are in accord with *Washington Mutual*. *See In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004) (holding that the "Trustee (and the Court) do not have the power to grant a release of the Noteholders on behalf of third parties," and that such release must be based on consent of the releasing party); *In re Exide Technologies*, 303 B.R. 48, 74 (Bankr. D. Del. 2003) (approving releases which were binding only on those creditors and equity holders who accepted the terms of the plan); *In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999) (release provision had to be modified to permit third parties' release of non-debtors only for those creditors who voted in favor of the plan).

26. While the Court in *In re Indianapolis Downs, LLC*, 486 B. R. 286 (Bankr. D. Del. 2013) reached a different conclusion concerning the need for affirmative consent to third party releases, the plan in that case did not propose, as the present Plan does, that third party releases be given by parties who are deemed to reject the plan. *See id.* at 304-05. The Court in *In re Spansion, Inc.*, 426 B.R. 114 (Bankr. D. Del 2010), also reached a different conclusion with respect to affirmative consent, but only as to releases given by unimpaired classes, who were

"being paid in full." *Id.* at 144.  In fact, as discussed in more detail below, in *Spansion,* the Court determined that non-consensual releases being deemed to be given by parties who were not receiving any distribution under the plan did not pass muster under applicable law.  *See id*. at 145.

27.  Under the holding of *Washington Mutual*, and the other cases cited above, the Debtor' proposed procedure where the affected parties must file written objections in order to opt-out of the release, exculpation and injunctive plan provisions must be rejected.  The shareholders "are not entitled to vote in the first place" (*Washington Mutual, Inc.*, 442 B.R. at 355), because they are deemed to reject the plan.   And if "[f]ailing to return a ballot is not a sufficient manifestation of consent to a third party release" (*id.*), then failing to return an opt-out form cannot be a manifestation of such consent.  Thus, the third party releases the Debtors seek to impose on the affected creditors and interest holders are not consensual.

28.  There is no prejudice to the Debtors or to the Released Parties in requiring an affirmative expression of consent from creditors and interest holders before such parties are deemed to give releases.  Such procedure helps to ensure that there is true consent, rather than consent assumed by silence, which could be caused by factors such as the Notice merely being wrongly addressed, misdelivered, other mail failures or delays or the party not being able to comply with the onerous and costly procedures that the Debtors seek to impose upon the affected parties.

C. **Estate Fiduciaries Who Receive Exculpations Are Not Also Entitled to Releases**

29.  Certain of the parties who will benefit from the releases are estate fiduciaries who will receive exculpations from all holders of claims and interests.  The parties to be released

11

consist of the Debtors' professionals who have been employed since the Petition Date, the Debtors' officers and directors serving after the Petition Date, and the Plan Administrator[5] and a plethora of other persons and their professionals. These same parties are entitled to exculpation under Article 14.8 of the Plan.

30.  This Court, as well as the Court of Appeals for the Third Circuit, has rejected estate fiduciaries' attempts to get releases in addition to exculpations, especially where there is an issue concerning consent. In *Continental Airlines*, 203 F.3d 203 (3d Cir. 2000), the Court of Appeals held that the Debtors' directors and officers were not entitled to non-consensual third-party releases. The Court stated that, "we have found no evidence that the non-debtor D & Os provided a critical financial contribution[6] to the Continental Debtors' plan that was necessary to make the plan feasible in exchange for receiving a release of liability." 203 F.3d at 215.

31.  Similarly, in *Washington Mutual*, this Court held that, "there is no basis for granting third party releases of the Debtors' officers and directors, . . . .[as] [t]he only 'contribution' made by them was in the negotiation of the Global Settlement and the Plan,

---

[5] It is doubtful that the Plan Administrator is an estate fiduciary entitled to exculpation under the Plan and the U.S. Trustee reserves the right to, among other things, object to the exculpation provisions and the parties who seek to benefit from such provisions.

[6] Because the Third Circuit in *Continental* determined that the non-consensual third party releases at issue there would not be acceptable under circumstances, the Court stated that it "need not speculate on whether there are circumstances under which we might validate a non-consensual release that is both necessary and given in exchange for *fair consideration*." *Id.* at 214, n. 11 (emphasis added).[6] However, the Court did describe the "hallmarks of permissible non-consensual releases" to be "fairness, necessity to the reorganization, and special factual findings to support these conclusions." *Id.* at 214.

[which] activities are nothing more than what is required of directors and officers of debtors in possession (for which they have received compensation *and will be exculpated*); they are insufficient to warrant such broad releases of any claims third parties may have against them. . . . ."). 442 B.R. at 354 (emphasis added). The Court also disallowed the third party release of the creditors' committee and its members on the same basis, indicating that, rather than getting a release, the committee and its members could receive an exculpation, as long as there was an exception for willful misconduct or gross negligence. *Id.* at 348.

32.  *Spansion,* 426 B.R. 114 (Bankr. D. Del 2010), also involved facts similar to the present case. There, an ad hoc committee of convertible noteholders, the U.S. Trustee and other parties objected to third party releases to be given to each entity holding a claim or interest in the cases, in favor of the Debtors' current directors, officers, employees, professionals, and others. *See id.* at 143 and 142. The debtors in *Spansion* argued that the third party releases were critical to the success of the reorganized debtors, to prevent management from being disturbed from running the debtors' operations. The debtors also asserted that all the parties to be released provided contributions to the debtors' plan by working long hours without additional pay. The debtors further argued that certain classes, including unsecured creditors, were receiving significant value under the plan. *Id.* at 145.

33.  In *Spansion,* this Court rejected the debtors' arguments, finding that the contributions to the plan cited by the debtors did not "rise to the level of the critical financial contributions contemplated in *Continental* and *Genesis* that is needed to obtain approval of non-consensual releases." *Id.* (*citing, inter alia, In re Genesis Health Ventures, Inc.*, 266 B.R. 581 (Bankr. D. Del. 2001)). The Court also remarked that the objecting parties ***were not receiving***

*any distribution under the plan*, and for these reasons, "the proposed nonconsensual Third Party Release does not pass muster under *Continental*." *Id.* (emphasis added). Such is the case here.

34. The Court in *In re Genesis Health Ventures, Inc.*, 266 B.R. 581 (Bankr. D. Del. 2001) also addressed the release of the Debtors' officers, directors, employees and professionals. Although the releases addressed by the Court's decision in that case were being given by the debtors, the Court's ruling remains instructive:

> [T]he release of the debtors' pre-petition claims against the officers, directors, employees and professionals of the debtors is beyond the *post-petition focus* of the *PWS Holding Corporation* [228 F.3d 224 (3d Cir. 2000)] release clause. . . . As in *Zenith*, the officers and directors of the debtors no doubt made meaningful contribution to the reorganization by designing and implementing the operational restructuring of the companies, and negotiating the financial restructuring with parties in interest. However, the officers, directors and employees have been otherwise compensated for their contributions, and the management functions they performed do not constitute contributions of "assets" to the reorganization.

*Genesis Health,* 266 B.R. at 606–07 (emphasis added).

35. For the same reasons as those recognized by this Court and the Court of Appeals for the Third Circuit, the estate fiduciaries are not entitled to releases in addition to exculpations. This is especially true given the lack of any consideration from the fiduciaries for such releases, and the fact that the non-voting creditors and interest holders will receive no distribution under the plan.

## V. RESERVATION OF RIGHTS

36. The U.S. Trustee leaves the Debtors to their burden of proof and reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or

modify this objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery. The U.S. Trustee further reserves all objection to confirmation of the Plan, including but not limited to objections related to the Plan's release, exculpation, discharge and injunction provisions.

WHEREFORE, the U.S. Trustee respectfully requests that this Court issue an order denying the Motion to the extent it seeks approval of procedures for the Class 5-8 creditors and interest holders to object to the Plan and the release, exculpation, discharge and injunction provisions and/or granting such other relief as this Court deems appropriate, fair and just.

| | |
|---|---|
| Dated: October 21, 2019<br>Wilmington, Delaware | Respectfully submitted,<br><br>**ANDREW R. VARA**<br>**ACTING UNITED STATES TRUSTEE**<br>**REGION 3**<br><br>By: */s/Richard L. Schepacarter*<br>Richard L. Schepacarter, Esquire<br>Trial Attorney<br>United States Department of Justice<br>Office of the United States Trustee<br>J. Caleb Boggs Federal Building<br>844 N. King Street, Room 2207, Lockbox 35<br>Wilmington, DE 19801<br>(302) 573-6491<br>(302) 573-6497 (Fax)<br>Email: Richard.Schepacarter@usdoj.gov |