## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SOUTHCROSS ENERGY PARTNERS, L.P., *et al.*, | ) ) ) | Case No. 19-10702 (MFW) |
|  | ) | Jointly Administered |
| Debtors.[1] | ) ) | **Re: D.I.  324, 439, 454 & 470** |
|  | ) |  |

### ORDER (A) APPROVING SALE OF DEBTORS' MISSISSIPPI AND ALABAMA ASSETS FREE AND CLEAR OF LIENS, CLAIMS,  INTERESTS, AND ENCUMBRANCES, (B) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Southcross Energy Partners, L.P.

("**Southcross**"), Southcross Energy Partners GP, LLC, and certain of Southcross's

wholly owned direct and indirect subsidiaries, each of which is a debtor and debtor in

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Southcross Energy Partners, L.P. (5230); Southcross Energy Partners GP, LLC (5141); Southcross Energy Finance Corp. (2225); Southcross Energy Operating, LLC (9605); Southcross Energy GP LLC (4246); Southcross Energy LP LLC (4304); Southcross Gathering Ltd. (7233); Southcross CCNG Gathering Ltd. (9553); Southcross CCNG Transmission Ltd. (4531); Southcross Marketing Company Ltd. (3313); Southcross NGL Pipeline Ltd. (3214); Southcross Midstream Services, L.P. (5932); Southcross Mississippi Industrial Gas Sales, L.P. (7519); Southcross Mississippi Pipeline, L.P. (7499); Southcross Gulf Coast Transmission Ltd. (0546); Southcross Mississippi Gathering, L.P. (2994); Southcross Delta Pipeline LLC (6804); Southcross Alabama Pipeline LLC (7180); Southcross Nueces Pipelines LLC (7034); Southcross Processing LLC (0672); FL Rich Gas Services GP, LLC (5172); FL Rich Gas Services, LP (0219); FL Rich Gas Utility GP, LLC (3280); FL Rich Gas Utility, LP (3644); Southcross Transmission, LP (6432); T2 EF Cogeneration Holdings LLC (0613); and T2 EF Cogeneration LLC (4976). The debtors' mailing address is 1717 Main Street, Suite 5300, Dallas, TX 75201.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in that certain Asset Purchase Agreement, dated September 10, 2019, between the Debtors and Magnolia Infrastructure Holdings, LLC (the "**Buyer**") (the "**Purchase Agreement**"), a copy of which is attached as <u>Exhibit A</u> to the *Notice of Revised Asset Purchase Agreement* [D.I. 470], the Motion, or the Bidding Procedures Order (as defined herein), as applicable; *provided*, that in the event of any conflict between defined terms in the Purchase Agreement, on the one hand, and the Motion or Bidding Procedures Order, on the other hand, the Purchase Agreement shall control; *provided further*, that in the event of any conflict between defined terms in any of the foregoing and this Order, this Order shall control.

possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the

"**Chapter 11 Cases**"), for, *inter alia*, entry of an order, pursuant to sections 105(a), 363,

and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and

Rules 2002-1, 6004-1, and 9006-1 of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local**

**Rules**") (a) approving the sale of certain Mississippi and Alabama MS/AL assets (the

"**MS/AL Assets**") described more particularly in the Purchase Agreement free and clear

of liens, claims, interests, and encumbrances (other than Permitted Encumbrances and

Assumed Liabilities), (b) authorizing the assumption and assignment to the Buyer of the

Proposed Assumed Contracts, and (c) granting related relief, as more fully described in

the Motion; and the Court having jurisdiction to consider the matters raised in the Motion

pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the*

*United States District Court for the District of Delaware*, dated February 29, 2012; and

the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C.

§ 157; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409;

and consideration of the Motion and the requested relief being a core proceeding that the

Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the

Motion and opportunity for a hearing on the Motion having been given to the parties

listed therein, and it appearing that no other or further notice need be provided; and the

Court having reviewed and considered the Motion, the Hannan Declaration, the

*Supplemental Declaration of Stephen Hannan in Support of (A) Sale of Debtors' Assets*

*Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing*

*Assumption and Assignment of Executory Contracts and Unexpired Leases, and*

*(C) Granting Related Relief* [D.I. 589] (the *"***Supplemental Hannan Declaration***"*), and the *Declaration of John F. Erhard of in Support of Sale of Mississippi and Alabama Assets* [D.I. 561] (the "**Erhard Declaration**", and together with the Hannan Declaration and the Supplemental Hannan Declaration, the "**Declarations***"*); and the Court having held a hearing to consider the Motion on October 22, 2019 (the "**Hearing**"), at which time all interested parties were offered an opportunity to be heard regarding the Motion, the Purchase Agreement and the Sale Transaction contemplated by the Purchase Agreement; and the Court having found that the relief requested in the Motion being in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and the Court having reviewed and considered any objections to the Motion (collectively, the "**Objections**"); and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

<u>Background</u>

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, and to the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      On April 1, 2019 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "**Court**") commencing the Chapter 11 Cases.

C.      The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [D.I. 48] entered by the Court on April 2, 2019, in each of the Chapter 11 Cases.

D.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

E.      As of the date hereof, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") has not appointed an official committee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

F.      As part of the Debtors' efforts to realize the highest and best value for their businesses, on June 13, 2019, the Debtors obtained an order of the Court [D.I. 324] (the "**Bidding Procedures Order**") that established bidding procedures for a sale or other transaction involving the Debtors' businesses and scheduled various dates relating to the Auction.  Specifically, the Bidding Procedures Order set July 1, 2019 as the deadline for interested parties to furnish information to be considered a Potential Bidder (as defined in the Bidding Procedures Order), July 24, 2019 as the deadline for the submission of initial bids by interested bidders (the "**Bid Deadline**"), September 3, 2019 as the date for the Auction (if any), and September 18, 2019 as the date on which the Court would hold the Hearing to approve the successful bidder selected at the Auction (the "**Successful Bidder**").  The Auction was subsequently adjourned to October 17, 2019, and the Hearing was adjourned to October 22, 2019.  *See* D.I. 493.

**Compliance with Bidding Procedures and Bidding Procedures Order**

G.      As demonstrated by the Declarations, the evidence proffered or adduced at the Hearing, and the arguments of counsel made on the record at the Hearing, the

4

Debtors' marketing and sales process with respect to the MS/AL Assets afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the MS/AL Assets.  The Debtors and their professionals conducted a marketing and sale process with respect to the MS/AL Assets in a fair, good faith, and non-collusive manner in accordance with, and have otherwise complied in all respects with, the Bidding Procedures and the Bidding Procedures Order.

   H. As demonstrated by the Declarations, the evidence proffered or adduced at the Hearing, and the arguments of counsel made on the record at the Hearing, the Successful Bid, which is memorialized in the Purchase Agreement, constitutes the highest or otherwise best offer for the MS/AL Assets, and the Debtors' determination that the Purchase Agreement maximizes value for the benefit of the Debtors' estates and constitutes the highest or otherwise best offer for the MS/AL Assets constitutes a valid and sound exercise of the Debtors' business judgment (exercised in consultation with the DIP Secured Parties, each of the Prepetition Agents, and Southcross Holdings LP (together with its non-debtor subsidiaries, "**Holdings**," and together with the DIP Secured Parties and each of the Prepetition Agents, the "**Consulting Parties**"), and is in accordance and compliance with the Bidding Procedures and the Bidding Procedures Order.  The Purchase Agreement provides fair and reasonable terms for the purchase of the MS/AL Assets, and reasonable notice and opportunity has been given to any interested party to make a higher or otherwise better offer for the MS/AL Assets. Approval of the Motion and the Purchase Agreement, and the prompt consummation of the Sale Transaction contemplated thereby, will maximize the value of each of the

Debtors' estates and is in the best interests of the Debtors, their chapter 11 estates, their creditors, and other parties in interest.

**The Stalking Horse Bidder**

I.      Pursuant to the Bidding Procedures Order, the Debtors were authorized (but not obligated) to exercise their business judgment (in consultation with the Consulting Parties) to select a Stalking Horse Bidder, subject to entry of a Stalking Horse Order (as defined below).  The Buyer was one of the parties to be designated a Potential Bidder under the Bidding Procedures.  After extensive, arm's length, good faith negotiations among the Debtors, the Buyer, and their respective advisors, on September 10, 2019, the Debtors and the Buyer finalized the Purchase Agreement wherein the Debtors and the Buyer agreed that the Buyer would serve as the Stalking Horse Bidder for the MS/AL Assets, and the Sale Transaction contemplated by the Purchase Agreement would serve as the Stalking Horse Bid, subject to entry of a Stalking Horse Order (as defined below).

J.      On August 23, 2019, the Debtors filed a motion with the Court [D.I. 439] (the "**Stalking Horse Motion**"), with five calendar days' notice of the objection deadline (the "**Stalking Horse Objection Deadline**") to the U.S. Trustee, the DIP Secured Parties, each of the Prepetition Agents, Holdings, and those parties who have filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the Chapter 11 Cases, seeking entry of an order (the "**Stalking Horse Order**") granting final approval of Bid Protections (as such term is defined in the Stalking Horse Order) to the Buyer in its capacity as the Stalking Horse Bidder and the Debtors' entry into the Purchase Agreement with the Buyer.

K.      The Debtors did not receive any objections to the Stalking Horse Motion by the Stalking Horse Objection Deadline and submitted the Stalking Horse Order to the Court under certification of counsel.

L.      On August 30, 2019, the Court entered the Stalking Horse Order [D.I. 454] approving, among other things, the Debtors (i) entry into the Purchase Agreement with the Buyer, (ii) designating the Buyer as the Stalking Horse Bidder for the MS/AL Assets, and (iii) providing the Bid Protections to the Buyer.

**The Auction**

M.      On October 17, 2019, the Auction for the MS/AL Assets was cancelled given that the Debtors did not receive any Qualified Bids for the MS/AL Assets other than the Stalking Horse Bid.  As a result, the Debtors have determined that the Buyer is the Successful Bidder for the MS/AL Assets in accordance with the Bidding Procedures Order.  The Debtors' determination (in consultation with the Consulting Parties) that the offer reflected in the Purchase Agreement constitutes the highest or otherwise best offer for the MS/AL Assets is a valid and sound exercise of the Debtors' business judgment (exercised in consultation with the Consulting Parties).  The Buyer has complied in all respects with the Bidding Procedures Order and all other applicable orders of the Court in negotiating and entering into the Purchase Agreement.

**Sale Hearing**

N.      The Court conducted the Hearing on October 22, 2019 at which time the Court considered (i) the Motion, the evidence and testimony presented, and the statements and argument of counsel in support of granting the relief requested in the Motion and (ii) approval of the Purchase Agreement and the Sale Transaction contemplated by the Purchase Agreement.

O.      Any objections to the Motion or the relief requested therein that have not been adjourned, withdrawn, or resolved are overruled in all respects on the merits.

### Sound Business Purpose

P.      The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for consummation of the Sale Transaction contemplated by the Purchase Agreement in accordance with the requirements of section 363(b) of the Bankruptcy Code.  The value of the Debtors' estates will be maximized through a sale of the MS/AL Assets on a going concern basis.

Q.      A sale pursuant to sections 105(a) and 363(b) of the Bankruptcy Code also may prevent the continued accrual of post-petition administrative expense obligations under various unexpired leases and executory contracts that are not proposed to be acquired by the Buyer under the Purchase Agreement.

R.      Approval of the Purchase Agreement pursuant to sections 105(a) and 363 of the Bankruptcy Code is necessary to maximize the value of the Debtors' estates.  The Debtors have determined, in their reasonable business judgment (in consultation with the Consulting Parties), that the MS/AL Assets will have the greatest value if promptly sold. In substantial part, this is because the Sale Transaction contemplated by the Purchase Agreement sells the MS/AL Assets as part of a going concern business and, in so doing, allows the Debtor to realize the continuity and remaining goodwill value associated with the MS/AL Assets.

S.      As a result, a sale of the MS/AL Assets, pursuant to sections 105(a) and 363 of the Bankruptcy Code, on the terms and conditions set forth in the Purchase Agreement, is the best alternative available to the Debtors for maximizing the value of the Debtors' estates.

T.      Neither the Purchase Agreement nor the Sale Transaction contemplated thereunder constitute a *sub rosa* chapter 11 plan.  The Purchase Agreement does not specify the terms of, or any distributions under, any subsequent chapter 11 plan by the Debtors (other than provisions that are consistent with the sale of MS/AL Assets under the Purchase Agreement and the relief granted hereunder).

### Fair Purchase Price

U.      The total consideration to be provided by the Buyer under the Purchase Agreement is the highest or otherwise best offer received by the Debtors and constitutes (i) fair value, (ii) fair, full, and adequate consideration, (iii) reasonably equivalent value, and (iv) reasonable market value for the MS/AL Assets for purposes of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transaction Act, and any other applicable laws of the United States, any state, territory, or possession thereof or the District of Columbia.

V.      The terms of the Purchase Agreement and the Sale Transaction contemplated therein are fair and reasonable under the circumstances of the Debtors' businesses and the Chapter 11 Cases.

### Notice of the Motion

W.      As evidenced by the affidavits of service and publication previously filed with this Court [D.I. 232, 338, 339, 340, 353, 355, 373, 399, 435, 437, 442, 458, 462, 501, and 506]  and based upon representations of counsel at the Hearing, the notice of the Motion, the Bidding Procedures Order, the Auction, the  Hearing, the Purchase Agreement, this Order, and the Sale Transaction (the "**Notice**") was adequate and sufficient under the circumstances and provided sufficient notice of each of such matters and events.  The Notice was provided in accordance with sections 102(1) and 363 of the

9

Bankruptcy Code, Bankruptcy Rules 2002, 9007, 9008, and 9014, and Local Rules 2002-1 and 6004-1.  The Debtors have complied with all obligations to provide notice of the Motion, the Bidding Procedures Order, the Auction, the Hearing, the Purchase Agreement, this Order, and the Sale Transaction as required by the Bidding Procedures Order.  The aforementioned notices are good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Bidding Procedures Order, the Auction, the Hearing, the Purchase Agreement, this Order, or the Sale Transaction is or shall be required.

### **Good Faith of the Buyer**

X.      The Buyer is purchasing the MS/AL Assets and has entered into the Purchase Agreement at arm's length and in good faith.  Accordingly, the Buyer is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and the Buyer is, therefore, entitled to the protections of such provision.  The good faith of the Buyer is evidenced by, among other things, the following facts:

     i.      The sale process conducted by the Debtors, was at arm's length, non-collusive, in good faith, and substantively and procedurally fair to all parties.  The Debtors offered other parties the opportunity to top the Stalking Horse Bid, and all other bidders or potential bidders declined to do so.  The Debtors evaluated each bid received prior to selecting the Buyer as the Successful Bidder;

    ii.      All payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Purchase Agreement have been disclosed.

iii.      The Buyer has not violated the provisions of section 363(n) of the Bankruptcy Code by any action or inaction.

iv.      The Buyer is a third party purchaser and is unrelated to any of the Debtors.  Neither the Buyer, nor any of its Affiliates, subsidiaries, officers, directors, members, partners, principals, or any of their respective representatives, successors, or assigns is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

v.      The Debtors and the Buyer have engaged in substantial arm's length negotiations, in good faith.  The Purchase Agreement is the product of this bargaining among the parties.

Y.      The sale of the MS/AL Assets pursuant to the Purchase Agreement, all covenants in and conditions thereto, and all relief requested in the Motion are an integrated transaction, meaning that each component is an essential part of every other component and that the entire transaction can be consummated only if all of its components are consummated.  Accordingly, the entire transaction is subject to, and is protected by, the provisions of section 363(m) of the Bankruptcy Code.

## Sale Free and Clear

Z.      After the Closing, no entity shall have any Encumbrance (as defined in the Purchase Agreement) or claim in or against the MS/AL Assets other than the Assumed Liabilities and the Permitted Encumbrances (as defined in the Purchase Agreement).

AA.      All other liens and claims that existed against the MS/AL Assets prior to the Closing, including, without limitation, the DIP Liens, the Permitted Senior Liens,

Prepetition Liens, Adequate Protection Liens (each as defined in the DIP Order[3]), and the

liens held by local tax authorities (the "**Local Tax Authorities**") shall attach to the sale

proceeds the Debtors receive under the Sale Transaction (subject to the terms and

conditions set forth in the DIP Order, Bidding Procedures Order, and this Order,

including without limitation, the Carve-Out and Wind-Down Budget).  Those liens and

claims will attach to the proceeds of the Sale Transaction in the same order of relative

priority and with the same validity, force, and effect that the holder of such lien or claim

had against the MS/AL Assets prior to Closing (including, for the avoidance of doubt, as

set forth in the DIP Order), and will be subject to any claims and defenses the Debtors

may possess with respect thereto.  The interests of the holders of such liens or claims

(including, for the avoidance of doubt, the right of the DIP Lenders to be repaid in full in

cash within 30 days of the entry of this Order) are being adequately protected pursuant to

the provisions of this Order.

BB.    Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession

is authorized to sell property of its estate free and clear of any liens, claims, interests, and

encumbrances if any of the following requirements is satisfied: (i) applicable non-

bankruptcy law permits the sale of such property free and clear of such interest (section

363(f)(1) of the Bankruptcy Code); (ii) the entity holding the alleged lien, claim, interest,

or encumbrance consents (section 363(f)(2) of the Bankruptcy Code); (iii) such interest is

a lien, and the price at which such property is to be sold is greater than the aggregate

value of all liens on such property (section 363(f)(3) of the Bankruptcy Code); (iv) such

---

[3] *See Final Order, Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, 364, 503, 506, and 507, (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Post-Petition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [D.I. 200] (the "**DIP Order**").

lien, claim, interest, or encumbrance is subject to a *bona fide* dispute (section 363(f)(4) of the Bankruptcy Code); or (v) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such lien, claim, interest, or encumbrance (section 363(f)(5) of the Bankruptcy Code).

CC.    For the following reasons, the provisions of section 363(f) of the Bankruptcy Code have been satisfied:

    i.    All alleged holders of liens or claims who did not object or withdrew their objections to the Sale Transaction contemplated by the Purchase Agreement are deemed to have consented.  Alleged holders of liens or claims who did object either had their objections overruled or resolved or otherwise fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code, including those referenced below.

    ii.    The Debtors are not aware of any remaining interests in the MS/AL Assets, and, if any such interests exist, they are in *bona fide* dispute as to the extent, validity, perfection, and viability of those interests (*see* Bankruptcy Code section 363(f)(4)).

    iii.    Other parties (if any) could be compelled to accept a money satisfaction of their liens, claims, interests, or encumbrances (*see* Bankruptcy Code section 363(f)(5)).

DD.    Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, to the fullest extent permitted under applicable law, the MS/AL Assets will be transferred to the Buyer free and clear of all (i) claims (as defined in section 101(5) of the Bankruptcy

Code), liabilities, obligations, demands, guaranties, options in favor of third parties, rights, contractual commitments, restrictions, interests of any kind or nature (including, without limitation, any restriction of use, transfer, receipt of income or other exercise of attributes of ownership, and interests purporting to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, or termination of, any applicable MS/AL Assets or the Debtors' or Buyer's interests therein), profit sharing interests, rights of first refusal, consent rights or requirements, preferential purchase rights, preemptive rights, purchase or repurchase rights or options, or any similar rights (collectively, as defined in this clause (i), "**Claims**"); and (ii) Encumbrances, other than the Permitted Encumbrances and the Assumed Liabilities, with all other applicable liens and claims to attach to the proceeds of the sale of the MS/AL Assets in the order of their priority, with the validity, force, and effect that they now have as against the MS/AL Assets (for the avoidance of doubt, subject to the Carve-Out and Wind-Down Budget), subject to the rights, claims, defenses, and objections, if any, of the Debtors and all interested parties with respect to such liens and claims and with the net proceeds from the sale of the MS/AL Assets to be available for the benefit of the Debtors' estates.

EE.    Accordingly, the Debtors have satisfied the standard set forth in section 363(f) of the Bankruptcy Code for selling the MS/AL Assets free and clear of all Claims and Encumbrances (other than the Permitted Encumbrances and the Assumed Liabilities).

FF.    For the avoidance of doubt, parties that hold Claims or Encumbrances (other than Permitted Encumbrances), including any parties that own oil, gas or other hydrocarbons or interests in a real property or other surface right providing for consent

14

rights, rights of first refusal or similar preferential purchase rights with respect to the

MS/AL Assets, are, with respect to the Sale Transaction, deemed to have consented to the

Sale Transaction and/or waived such Claims and/or Encumbrances (other than Permitted

Encumbrances), as applicable, and their ability (if any) to exercise any preferential

purchase right or consent right with respect to the Sale Transaction.

### Sale Free and Clear Required by the Buyer

GG.     In connection with the Purchase Agreement, the Buyer expressly

negotiated for the protection of obtaining the MS/AL Assets free and clear of all Claims

and Encumbrances (other than the Permitted Encumbrances and Assumed Liabilities).

The Buyer would have paid substantially less consideration for the MS/AL Assets or not

purchased the MS/AL Assets if the Buyer were not buying the MS/AL Assets free and

clear of any Claims and Encumbrances (other than the Permitted Encumbrances and

Assumed Liabilities).

### No Successor Liability

HH.     Neither the Buyer nor its affiliates, officers, directors, members, partners,

and principals or any of their respective representatives, successors, or assigns shall be

deemed, as a result of the consummation of the Sale Transaction contemplated by the

Purchase Agreement or otherwise, to (i) be a legal successor, or otherwise be deemed a

successor, to the Debtors or the Debtors' estates, (ii) have, de facto or otherwise, merged

or consolidated with or into any of the Debtors or any of the Debtors' estates, (iii) be an

alter ego, a continuation, or substantial continuation of any of the Debtors or any

enterprise of any of the Debtors, or (iv) be liable for any claim based on successor

liability, transferee liability, derivative liability, vicarious liability, or any similar theories

under applicable state or federal law, or otherwise.  Except as expressly set forth in the

Purchase Agreement with respect to the Assumed Liabilities and Permitted

Encumbrances, the Buyer shall have no liability or obligation of any of the Debtors

and/or their respective estates and the Buyer is not expressly or impliedly agreeing under

the terms and conditions of the Purchase Agreement to assume any of the Indebtedness

(as defined in the Purchase Agreement) of the Debtors.  Any so-called "bulk sales," "bulk

transfer," or other similar laws are not applicable, and compliance with such any such

laws in all necessary jurisdictions is not required, including those relating to taxes.

II.    The Buyer and the Debtors are not entering into the Purchase Agreement

fraudulently or in order to escape liability for the Debtors' obligations.

### Assumption and Assignment of the Assigned Contracts

JJ.    Section 365(a) of the Bankruptcy Code provides that "the [debtor in

possession], subject to the court's approval, may assume or reject any executory contract

or unexpired lease of the debtor."  As set forth in the Motion and the Declarations, and as

more fully demonstrated at the Hearing, it is in the best interests of the Debtors and their

respective estates to assume and assign the Assigned Contracts (as defined in the

Purchase Agreement) to the Buyer on the effective date of the assumption and

assignment of such Assigned Contracts ("**Assumption and Assignment Effective**

**Date**") in accordance with the terms and conditions of the Purchase Agreement, the

Bidding Procedures Order, and this Order.  The Debtors' assumption and assignment of

the Assigned Contracts to the Buyer meets the business judgment standard and satisfies

the requirements of section 365 of the Bankruptcy Code.  The Sale Transaction

contemplated by the Purchase Agreement provides significant benefits to the Debtors'

estates.  The Debtors cannot obtain these benefits without the assumption and assignment

of the Assigned Contracts, which are a material part of the MS/AL Assets and the Sale

16

Transaction contemplated by the Purchase Agreement.  Accordingly, the assumption and assignment of the Assigned Contracts constitutes an exercise of the Debtors' sound business judgment.

KK.    The Buyer has (i) cured, or has provided adequate assurance of cure, upon or following Closing, of any default existing prior to the date of Closing under any of the Assigned Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, by payment of the amounts set forth on Exhibit A hereto (except with respect to amounts related to agreements subject to an objection that has been adjourned), and (ii) provided compensation, or adequate assurance of compensation, to any party for any actual pecuniary loss to such party resulting from a default prior to the date of Closing under any of the Assigned Contracts within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.  The Buyer has provided, or will provide, adequate assurance of future performance of and under the 365 Contracts (as defined in the Purchase Agreement), all of which are listed on Exhibit A hereto, within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.

LL.    Pursuant to section 365(f) of the Bankruptcy Code, notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, a debtor in possession may assign such contract or lease if such contract or lease is assumed by the debtor in possession in accordance with section 365 of the Bankruptcy Code, and the proposed assignee provides "adequate assurance of future performance" of the obligations arising under such contract or lease from and after the date of the assignment.  The Debtors have satisfied the requirements necessary to assume the Assigned Contracts.  In addition, the

17

Buyer, as assignee, has demonstrated that it has the resources to perform the obligations under such Assigned Contracts.  Accordingly, the requirements for assignment of such contracts and leases to the Buyer under section 365(f) of the Bankruptcy Code have been satisfied.  To the extent that any party's consent to assumption or assignment of any Assigned Contract is required by the Bankruptcy Code and applicable non-bankruptcy law, such party is deemed to have consented by not timely objecting to the Motion.

MM.    In accordance with the Bidding Procedures Order, and as evidenced by the Notice, due and proper notice of the proposed assumption and assignment of the Assigned Contracts to the Buyer was provided to the non-Debtor counterparties listed on the Proposed Assumed Contracts Schedule.

## No Fraudulent Intent

NN.    The Purchase Agreement was not entered into, and the Sale Transaction contemplated by the Purchase Agreement will not be consummated, for the purpose of hindering, delaying, or defrauding the Debtors' present or future creditors for purposes of the Bankruptcy Code, any other applicable laws of the United States, and any applicable laws of any state, territory, or possession thereof, or the District of Columbia.  Neither the Debtors nor the Buyer is entering into the Purchase Agreement or consummating the Sale Transaction contemplated by the Purchase Agreement with any fraudulent or otherwise improper purpose.

## MS/AL Assets

OO.    The MS/AL Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The Debtors have all title, interest, and/or rights in the MS/AL Assets

required to transfer and to convey the MS/AL Assets to the Buyer, as required by the

Purchase Agreement.

### Corporate or Limited Liability Company Authority

PP.    The Debtors have (i) full power and authority to perform all of their

obligations under the Purchase Agreement and the Debtors' prior execution and delivery

of, and performance of obligations under, the Purchase Agreement is hereby ratified,

(ii) all of the power and authority necessary to consummate the Sale Transaction

contemplated by the Purchase Agreement, and (iii) taken all actions necessary to

authorize, approve, execute, and deliver the Purchase Agreement and to consummate the

Sale Transaction contemplated by the Purchase Agreement.

### Prompt Consummation

QQ.    To maximize the value of the MS/AL Assets, it is essential that the Sale

Transaction occur within the timeframe set forth in the Purchase Agreement.  Time is of

the essence in consummating the Sale Transaction contemplated by the Purchase

Agreement.  The Debtors have demonstrated compelling circumstances and a good,

sufficient, and sound business purpose and justification for the immediate approval and

consummation of the transactions contemplated by the Purchase Agreement, including,

without limitation, the Sale Transaction and the assumption and assignment of the

Assigned Contracts prior to, and outside of, a chapter 11 plan.  Accordingly,

notwithstanding the provisions of Bankruptcy Rules 6004 and 6006, this Order shall not

be stayed for 14 days after the entry hereof, but shall be effective and enforceable

immediately upon entry, and the 14-day stay provided in such rules is hereby expressly

waived and shall not apply.

## Statutory Predicates

RR.      The statutory authorization for the relief granted herein is found in

sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004,

6006, and 9014, and Local Bankruptcy Rules 2002-1, 6004-1, and 6006-1.

## Section 363 Sale

SS.      The proposed sale of the MS/AL Assets to the Buyer pursuant to the

Purchase Agreement constitutes a sale of property of the Debtors' respective estates

outside the ordinary course of business within the meaning of section 363(b) of the

Bankruptcy Code.

TT.      For good and valid reasons, the Court may authorize and approve a sale of

MS/AL Assets of a chapter 11 debtor pursuant to section 363(b) of the Bankruptcy Code

without the necessity of following the procedures and making the findings required for

the confirmation of a chapter 11 plan.  Such legitimate and compelling reasons exist in

this case.  Under the circumstances of the Chapter 11 Cases, the sale of the MS/AL

Assets to the Buyer pursuant to sections 105(a) and 363(b) and (f) of the Bankruptcy

Code is both justified and appropriate.

UU.      The sale of the MS/AL Assets to the Buyer free and clear of any and all

Claims and Encumbrances upon the terms and conditions set forth in the Purchase

Agreement is in the best interests of the Debtors and their respective estates.

VV.      Given the circumstances of the Chapter 11 Cases, including, without

limitation, the adequate exposure of the Debtors' businesses to the marketplace, the

reasonable opportunity afforded other parties to make competing bids or offers for all or a

portion of the Debtors' businesses, and the adequacy and fair value of the consideration

being paid by the Buyer under the Purchase Agreement, the proposed sale of the MS/AL

Assets to the Buyer constitutes a reasonable and sound exercise of the Debtors' business

judgment and is hereby approved in all respects.

## Retention of Jurisdiction

WW.   It is necessary and appropriate for the Court to retain jurisdiction to, *inter
alia*, interpret and enforce the terms and provisions of this Order and the Purchase

Agreement, and to adjudicate, if necessary, any and all disputes concerning the

assumption and assignment of the Assigned Contracts and any alleged right, title, or

property interest, including ownership claims, relating to the MS/AL Assets and the

proceeds thereof, as well as the extent, validity, perfection, and priority of any alleged

lien or claim relating to the Debtors and/or the MS/AL Assets.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

## General Provisions

1.    The relief requested in the Motion is granted and approved in all respects

as set forth in this Order.

2.    The Sale Transaction contemplated by the Purchase Agreement (including

any amendments, supplements, and modifications thereto, and all of the terms and

conditions therein) is hereby approved in all respects as set forth in this Order.  All

objections to the Motion or the relief requested therein that have not been adjourned,

withdrawn, waived, or settled, and all reservations of rights included therein, are

overruled on the merits and denied with prejudice.

## Approval of the Sale of the MS/AL Assets

3.    The Debtors are hereby authorized and directed to sell the MS/AL Assets

to the Buyer upon and subject to the terms and conditions set forth in the Purchase

Agreement, the provisions of which are incorporated herein by reference as if set forth in full herein.

4.      Each of the Debtors is hereby authorized and directed to perform, consummate, and implement the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement, and to take any and all further actions as may be necessary or appropriate to the performance of its obligations as contemplated by the Purchase Agreement or this Order, including paying, whether before or after the Closing, any expenses or costs that are required to be paid in order to consummate the Sale Transaction contemplated by the Purchase Agreement or to perform its obligations under the Purchase Agreement or any related agreements.

5.      Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing, the MS/AL Assets shall be transferred, sold, and delivered to the Buyer free and clear of all Claims and Encumbrances (other than the Permitted Encumbrances and the Assumed Liabilities).  All other liens and claims that existed against the MS/AL Assets prior to the Closing, including, without limitation, the DIP Liens, the Permitted Senior Liens, Prepetition Liens, Adequate Protection Liens, and the liens held by the Local Tax Authorities, shall attach to the sale proceeds the Debtors receive under the Sale Transaction (subject to the terms and conditions set forth in the DIP Order, Bidding Procedures Order, and this Order, including without limitation, the Carve-Out and Wind-Down Budget).  Those liens and claims will attach to the proceeds of the Sale Transaction in the same order of relative priority and with the same validity, force, and effect that the holder of such lien or claim had against the MS/AL Assets prior to Closing

22

(including, for the avoidance of doubt, as set forth in the DIP Order), and will be subject to any claims and defenses the Debtors may possess with respect thereto. The interests of the holders of such liens or claims (including, for the avoidance of doubt, the right of the DIP Lenders to be repaid in full in cash within 30 days of the entry of this Order) are being adequately protected pursuant to the provisions of this Order by having their liens or claims, if any, in each instance against the Debtors, their estates, or any of the MS/AL Assets, attach to the proceeds of the Sale Transaction ultimately attributable to the MS/AL Assets in which such creditor or interest holder alleges an interest, in the same order of priority and with the same validity, force, and effect that such creditor or interest holder had prior to the Sale Transaction, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

6. Subject to paragraph 42, notwithstanding anything contained herein or in any other document, in accordance with the Purchase Agreement, all fee interests, rights-of-way, easements, real property interests, real rights, licenses, servitudes, permits, privileges, and leases (surface and subsurface) owned or held by the Debtors, or hereinafter acquired by the Debtors prior to the Closing, in each case, in connection with the MS/AL Assets, constitute real property or a real property interest, and together with the rights, tenements, appurtenant rights and privileges related thereto (collectively, the "**Real Property Interests**"), shall, in accordance with the Purchase Agreement, be transferred to the Buyer at the Closing notwithstanding any consent rights, anti-assignment provisions, or any other provisions purporting to prohibit or condition the transfer or assignment of such Real Property Interests contained in such Real Property Interests, or in any other document, and all such rights, provisions, prohibitions, and

23

conditions shall be void and of no force and effect with respect to the Sale Transaction; *provided*, *however*, that, for the purposes of section 365(d)(4) of the Bankruptcy Code, any Real Property Interest that constitutes, or may be deemed to constitute, an unexpired lease of non-residential real property shall be deemed assumed by the Debtors as of the date hereof and assigned to the Buyer on the Assumption and Assignment Effective Date.

## No Successor Liability

7.      As a result of the Sale Transaction contemplated by the Purchase Agreement, the Buyer will not be a successor to any of the Debtors by reason of any theory of law or equity.

8.      Without limiting the generality of the immediately preceding paragraph, and except as otherwise expressly provided in the Purchase Agreement with respect to the Permitted Encumbrances and the Assumed Liabilities, the Buyer is not, pursuant to the Purchase Agreement or otherwise, assuming, nor shall it in any way whatsoever be liable or responsible, as a successor or otherwise, for any of the following Claims or Encumbrances: any Claims or Encumbrances of the Debtors or any Claims or Encumbrances in any way whatsoever relating to or arising from the MS/AL Assets or the Debtors' operations or use of the MS/AL Assets, including, without limitation, Claims or Encumbrances under the Assigned Contracts arising prior to the Closing or the applicable Assumption and Assignment Effective Date, or any liabilities calculable by reference to the Debtors or their assets or operations or relating to continuing conditions existing at or prior to the Closing or the applicable Assumption and Assignment Effective Date, as applicable, which Claims or Encumbrances, as against the Buyer, are hereby

extinguished, without regard to whether the claimant asserting any such Claims or

Encumbrances has delivered to the Buyer a release thereof.

9.     Without limiting the generality of the foregoing, and except as otherwise

expressly provided in the Purchase Agreement with respect to the Permitted

Encumbrances and the Assumed Liabilities, the Buyer shall not be liable or responsible,

as a successor or otherwise, for the Debtors' Claims or Encumbrances, whether

calculable by reference to the Debtors or their operations or under or in connection with

(a) any employment or labor agreements, (b) any pension, welfare, compensation, fringe

benefit, or other employee benefit plans, trust arrangements, agreements, practices, and

programs, including, without limitation, any pension plan of the Debtors, any medical,

welfare, and pension benefits payable after retirement or other termination of

employment, or any responsibility as a fiduciary, plan sponsor, or otherwise for making

any contribution to, or in respect of the funding, investment, or administration of, any

employee benefit plan, arrangement, or agreement (including, without limitation, pension

plans) or the termination of or withdrawal from any such plan, arrangement, or

agreement, (c) the cessation of the Debtors' operations, dismissal of employees, or

termination of employment or labor agreements or pension, welfare, compensation or

other employee benefit plans, agreements, practices and programs, obligations that might

otherwise arise or pursuant to (i) the Employee Retirement Income Security Act of 1974,

as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of

1964, (iv) the Age Discrimination and Employment Act of 1967, (v) the Federal

Rehabilitation Act of 1973, (vi) the National Labor Relations Act, or (vii) the

Consolidated Omnibus Budget Reconciliation Act of 1985, (d) worker's compensation,

occupational disease, or unemployment or temporary disability insurance claims,

(e) environmental Claims or Encumbrances arising from conditions first existing on or

prior to the Closing (including, without limitation, the presence of hazardous, toxic,

polluting, or contaminating substances or waste) that may be asserted on any basis,

including, without limitation, under the Comprehensive Environmental Response

Compensation and Liability Act, 42 U.S.C. § 9601 et seq., (f) any bulk sales or similar

law, (g) any tax statutes or ordinances, including, without limitation, the Internal Revenue

Code of 1986, as amended, (h) any litigation, and (i) any products liability, product

warranty liability, or similar claims, whether pursuant to any state or federal laws or

otherwise.[4]

10.     Except as expressly provided in the Purchase Agreement with respect to

the Permitted Encumbrances and the Assumed Liabilities, no person or entity, including,

without limitation, any federal, state, or local governmental agency, department, or

instrumentality, shall assert by suit or otherwise against the Buyer or its successors in

interest any Claim or Encumbrance that they had, have, or may have against the Debtors,

or any Claim or Encumbrance relating to or arising from the MS/AL Assets or the

Debtors' operations or use of the MS/AL Assets.

11.     The Buyer has given substantial consideration under the Purchase

Agreement, which consideration shall constitute valid and valuable consideration for the

release of any potential claims of successor liability against the Buyer and which shall be

deemed to have been given in favor of the Buyer by the Debtors and all holders of Claims

---

[4] The recitation in this paragraph 9 of any specific agreements, plans, laws, ordinances or statutes is not intended, and shall not be construed, to limit the generality of the categories of liabilities, debts, or obligations referred to herein.

or Encumbrances (except for the Assumed Liabilities) in or against the Debtors or the Purchased MS/AL Assets.  Upon consummation of the Sale Transaction, the Buyer shall not be deemed to (a) have, *de facto* or otherwise, merged with or into the Debtors; (b) be a mere continuation, alter ego, or substantial continuation of the Debtors; or (c) be liable under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation or doctrine.

12.    The terms and provisions of the Purchase Agreement and all related documents necessary to consummate the Sale Transaction, together with the terms and provisions of this Order, shall be binding in all respects upon the Debtors, their estates, their creditors, and all parties in interest, including any and all successors and assigns (including, without limitation, any trustee appointed under the Bankruptcy Code).

13.    Except as expressly provided in the Purchase Agreement with respect to the Permitted Encumbrances and the Assumed Liabilities, all entities holding Claims or Encumbrances against the MS/AL Assets be, and they hereby are, barred from asserting such Claims or Encumbrances against the Buyer and/or the MS/AL Assets and all entities holding such Claims or Encumbrances shall be deemed to have released the MS/AL Assets to the Buyer and to have limited the assertion of their Claims or Encumbrances against the MS/AL Assets to the sale proceeds the Debtors receive for the sale of the MS/AL Assets (subject, in all cases, to the priority set forth in the DIP Order, the Carveout, and the Wind-Down Budget) and any other available property of the Debtors' respective estates that does not constitute the MS/AL Assets.  For the purposes of paragraphs 7 through 13 of this Order, all references to the Buyer shall include its affiliates, subsidiaries, and shareholders.

**Deposit of Sale Proceeds**

14.     At the Closing, the Debtors shall deposit the sale proceeds from the Sale

Transaction into a segregated account held by the Debtors pending the ultimate resolution

(either as agreed to by the Required Lenders and the Debtors or as otherwise determined

by the Court) and funding of the Wind-Down Budget; *provided, however*, that the

Debtors shall be authorized to use a portion of such sale proceeds to pay, in accordance

with the Approved Budget (as defined in the DIP Credit Agreement (as defined in the

DIP Order)), all allowed (a) post-petition claims, (b) administrative expense and priority

claims, and (c) professional fees and expenses necessary to administer the Debtors'

estates accrued through the closing of the final Sale Transaction in an amount either

(i) agreed to by the Required Lenders and the Debtors or (ii) as otherwise determined by

the Court.  The Debtors shall not distribute any proceeds of the Sale Transaction prior to

the funding of the Wind-Down Budget.  Upon funding of the Wind-Down Budget, the

remaining proceeds shall be applied in accordance with the DIP Order and section 3.04(c)

of the DIP Credit Agreement.

**Release of Claims and Encumbrances**

15.     This Order shall be binding upon and govern the acts of all entities,

including, without limitation, all filing agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents,

trademarks or other intellectual property, administrative agencies, governmental

departments, secretaries of state, federal and local officials, and all other persons and

entities who may be required by operation of law, the duties of their office, or contract to

accept, file, register, or otherwise record or release any documents or instruments, or who

may be required to report or insure any title or state of title in or to any of the MS/AL

Assets.

16.     All Claims and Encumbrances of record against the MS/AL Assets, other

than the Permitted Encumbrances and Assumed Liabilities, shall, upon Closing, be

terminated as against the MS/AL Assets, and all the entities described in the immediately

preceding paragraph of this Order are authorized and directed to (a) terminate all

recorded liens and claims against the MS/AL Assets from their records, official and

otherwise, in each case solely with respect to the MS/AL Assets, and (b) accept for filing

or recording all instruments made or delivered by or to any of the Debtors, and all deeds

or other documents relating to the conveyance of the MS/AL Assets to the Buyer.

17.     If any person or entity that has filed statements, documents or agreements

evidencing Claims or Encumbrances on or in the MS/AL Assets shall not have delivered

to the Debtors prior to Closing, in proper form for filing and executed by the appropriate

parties, termination statements, instruments of satisfaction, releases of liens and

easements, and any other documents necessary for the purpose of documenting the

release of all liens or claims that the person or entity has or may assert with respect to the

MS/AL Assets, the Buyer is hereby authorized to execute and file such statements,

instruments, releases, and other documents on behalf of the person or entity with respect

to the MS/AL Assets.

18.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and

subject to and conditioned upon the Closing and the resolution of all timely filed

Assumption and Assignment Objections, as applicable, the Debtors' assumption and

assignment to the Buyer, and the Buyer's assumption, of the Assigned Contracts, on the

terms set forth in the Purchase Agreement, is hereby approved and the requirements of

section 365(b)(1) with respect thereto are hereby found and deemed to be satisfied.

### Assumption and Assignment of the Assigned Contracts

19.    The Debtors are hereby authorized and, unless the Debtors and the Buyer

otherwise agree, directed in accordance with sections 105(a), 363, and 365 of the

Bankruptcy Code to (a) assume and assign to the Buyer, effective upon the Assumption

and Assignment Effective Date, the Assigned Contracts free and clear of all Claims and

Encumbrances (other than the Permitted Encumbrances and the Assumed Liabilities) and

(b) execute and deliver to the Buyer such documents or other instruments as Buyer deems

may be necessary to assign and transfer the Assigned Contracts to the Buyer; *provided*,

*however*, that, for the purposes of section 365(d)(4) of the Bankruptcy Code, any

Assigned Contract that constitutes, or may be deemed to constitute, an unexpired lease of

non-residential real property shall be deemed assumed by the Debtors as of the date

hereof and assigned to the Buyer on the Assumption and Assignment Effective Date.

20.    Subject to the terms and conditions set forth in the Bidding Procedures

Order and this Order, (a) to the extent provided in section 365 of the Bankruptcy Code,

any provisions in any of the Assigned Contracts that prohibit or condition the assignment

of such Assigned Contracts or allow the party to such Assigned Contracts to terminate,

recapture, impose any penalty, condition renewal or extension, or modify any term or

condition upon the assignment of such of the Assigned Contracts, constitute

unenforceable anti-assignment provisions which are void and of no force and effect,

(b) all other requirements and conditions under sections 363 and 365 of the Bankruptcy

Code for the assumption by the Debtors and assignment to the Buyer of each of the

Assigned Contracts have been satisfied, and (c) effective upon the Closing, the Assigned

Contracts shall be transferred and assigned to, and from and following the Closing remain

in full force and effect for the benefit of, the Buyer, notwithstanding any provision in any

of the Assigned Contracts that prohibits, restricts, or conditions such assignment or

transfer;  *provided*, *however*, that, for the purposes of section 365(d)(4) of the Bankruptcy

Code, any Assigned Contract that constitutes, or may be deemed to constitute, an

unexpired lease of non-residential real property shall be deemed assumed by the Debtors

as of the date hereof and assigned to the Buyer on the Assumption and Assignment

Effective Date.

21.     All defaults or other obligations of the Debtors under the Assigned

Contracts, arising or accruing prior to the Closing, or required to be paid pursuant to

section 365 of the Bankruptcy Code in connection with the assumption and assignment of

the Assigned Contracts, shall be cured by the Debtors, to the extent set forth in the

Purchase Agreement and this Order.  The Cure Costs (as defined in the Purchase

Agreement) set forth on Exhibit A are the sole amounts necessary to be paid by the

Debtors upon assumption of the Assigned Contracts under sections 365(b)(1)(A) and (B)

and 365(f)(2)(A) of the Bankruptcy Code, and the payment of the applicable Cure Costs

shall, subject to the terms of the Purchase Agreement, (a) effect a cure of all defaults

existing under the Assigned Contracts as of and including the Closing Date, and

(b) compensate the Counterparties to the Assigned Contracts for any actual pecuniary

loss resulting from all defaults existing under the Assigned Contracts as of and including

the Closing Date.

22.    Upon payment of the Cure Costs pursuant to the terms of this Order, no default or other obligations arising or accruing prior to the Closing Date shall exist under any Assigned Contracts, and each Counterparty is forever barred, estopped, and permanently enjoined from (a) declaring a default by the Debtors or the Buyer under any such Assigned Contract based on acts or occurrences arising prior to or existing as of the Petition Date, (b) raising or asserting against the Debtors or the Buyer, or the property of either of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to any of the Assigned Contracts based on acts or occurrences arising prior to or existing as of the Closing Date, or (c) taking any other action against the Buyer as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assigned Contracts based on acts or occurrences arising prior to or existing as of the Closing Date.  Each Counterparty hereby is also forever barred, estopped, and permanently enjoined from (y) asserting against the Debtors or the Buyer, or the property of any of them, any default or claim arising out of any indemnity or other obligation or warranties for acts or occurrences arising prior to or existing as of the Closing Date and (z) imposing or charging against Buyer or its affiliates any rent accelerations, assignment fees, increases, or any other fees as a result of the  Debtors' assumption and assignment to Buyer of the Assigned Contracts.

23.    Subject to the terms and conditions of the Purchase Agreement, and upon the Closing, the Buyer shall be deemed to have (a) to the extent necessary, cured or provided adequate assurance of cure of, any default existing prior to the Closing under the Assigned Contracts within the meaning of sections 365(b)(l)(A) and 365(f)(2)(A) of

the Bankruptcy Code and (b) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the Closing under the Assigned Contracts within the meaning of sections 365(b)(l)(B) and 365(f)(2)(B) of the Bankruptcy Code.  The Debtors' obligation to pay the Cure Costs under the Purchase Agreement, and the Buyer's agreement to perform the obligations under the Assigned Contracts in accordance with the terms of the Purchase Agreement, shall constitute adequate assurance of future performance within the meaning of sections 365(b)(l)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the applicable Counterparty.

24.     To the furthest extent permitted by law, any party that may have had the right to consent to the assumption or assignment of any of the Assigned Contracts is deemed to have consented to such assumption and assignment for purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code if such party failed to timely object to the assumption or assignment of such Assigned Contracts in accordance with the Bidding Procedures Order, and the Buyer shall be deemed to have demonstrated adequate assurance of future performance with respect to such Assigned Contracts pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  Any Counterparty to any of the Assigned Contracts designated to be assumed and assigned to the Buyer who has not timely filed and served an objection in accordance with the Bidding Procedures Order shall be barred from objecting, or asserting monetary or non-monetary defaults, with respect to any such Assigned Contracts, and such Assigned Contracts shall be

deemed assumed by the Debtors and assigned to the Buyer on the Assumption and Assignment Effective Date.

25.     To the extent a Counterparty fails to timely object to the Cure Costs for any Assigned Contract in accordance with the Bidding Procedures Order, such Cure Costs shall be deemed to be finally determined and any such Counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Costs at any time; and such Cure Costs, when paid, shall completely cure and remedy any breach or default with respect to such Assigned Contracts.

26.     Upon and as of the Closing, the Buyer shall be deemed to be substituted for the applicable Debtor as a party to the applicable Assigned Contract, and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contract except as provided in the Purchase Agreement.

27.     The Counterparties shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyer, any instruments, applications, consents, or other documents that may be required or requested by any public authority or other party or entity to effectuate the applicable transfers in connection with the Sale Transaction.

28.     From the date of the entry of this Order, the Debtors may, in their sole discretion, settle objections to assumption and assignment of any Assigned Contract, including to proposed Cure Costs, without any further notice to or action by any party or order of the Court (including by paying any agreed Cure Costs); *provided* that notice to and consent of the Buyer shall be required to the extent the Buyer is liable for such Cure Costs pursuant to the Purchase Agreement as modified by this Order.  Unless the Court orders otherwise and subject to paragraph 32 hereof, contemporaneously with the

resolution of any such objection, the executory contract or unexpired lease underlying

such objection shall be deemed an Assigned Contract assumed by the Debtors and

assigned to the Buyer without the necessity of obtaining any further order of the Court.

29.     Notwithstanding anything to the contrary herein, in the Bidding

Procedures, or in the Bidding Procedures Order, no executory contract or unexpired lease

as to which a Counterparty timely files and serves an objection in accordance with the

Assumption and Assignment Procedures shall be considered assumed by the Debtors and

assigned to the Buyer under this Order unless and until any timely objection to the

assumption and assignment of such executory contract or unexpired lease has been

resolved or overruled.

30.     Nothing in this Order, the Motion, the Bidding Procedures Order, the

Potential Assumption and Assignment Notice, Proposed Assumption and Assignment

Notice, or Supplemental Assumption and Assignment Notice, as applicable , or any other

notice or any other document is or shall be deemed an admission by the Debtors that any

contract is an executory contract or must be assumed and assigned pursuant to the

Purchase Agreement or in order to consummate the Sale Transaction.

31.     All requirements and conditions under sections 363 and 365 of the

Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the

Assigned Contracts have been satisfied.  Each of the Assigned Contracts shall be deemed

to be valid, binding, and in full force and effect and enforceable in accordance with their

terms as of the Closing, subject to any amendments or modifications agreed to between a

Counterparty and the Buyer.  Upon the Closing, in accordance with sections 363 and 365

of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right,

title, and interest of the Debtors in and under the Assigned Contracts, and each of the

Assigned Contracts shall be fully enforceable by the Buyer in accordance with its

respective terms and conditions, except as limited or modified by this Order, the Bidding

Procedures Order, or other order of the Court.  To the extent provided in the Purchase

Agreement, the Debtors shall cooperate with, and take all actions reasonably requested

by, the Buyer to effectuate the foregoing.

      32.     The assumption and assignment of the Assumed Contracts and the

Assumed Leases will not be effectuated if the Closing does not occur and the Purchase

Agreement is terminated.

      33.     Within ten Business Days after the Closing, the Debtors shall file with the

Court a list of Assigned Contracts, Excluded Contracts, and Designated Agreements (as

defined in the Bidding Procedures Order) and shall serve a copy of such list upon each

non-Debtor Counterparty on the list, and such list shall be updated or supplemented from

time to time as necessary or at the request of the Buyer, provided that any updated or

supplemental list need only be served upon those non-Debtor Counterparties to such

contracts or leases directly affected by such updated or supplemental list.

      34.     Each non-Debtor counterparty to an Assigned Contract shall be forever

barred, estopped, and permanently enjoined from asserting against the Buyer or its

property (including, without limitation, the MS/AL Assets), any fee, acceleration, default,

breach, claim (including any counterclaim, defense, or setoff capable of being asserted

against the Debtors), pecuniary loss, or condition to assignment existing or on account of

any facts occurring (a) prior to the Petition Date or (b) as a result of the Petition Date.

**Additional Provisions**

35.     The Debtors are hereby authorized to (a) take such corporate action as may be necessary to implement the provisions of the Purchase Agreement and any other document executed by the Debtors in connection therewith and (b) execute and file any necessary document with any appropriate secretary of state.  This Order shall constitute all approvals and consents, if any, required by the laws of any state necessary to file, record, and accept such documents.

36.     To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the MS/AL Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Buyer as of the Closing.

37.     Any resolution of claims against the Debtors related to alleged business license fees or taxes, including, without limitation, any claims asserted by Avenu Insights & Analytics on behalf of municipalities in Alabama, shall be without prejudice to the Buyer, which shall have no liability for such claims and shall retain all defenses to future assertions of such claims.  Additionally, the Buyer shall have standing and the right, but no obligation, to object to any such claims and to object to any proposed resolution that may affect the Buyer's rights.

38.     The Purchase Agreement has been negotiated and executed, and the Sale Transaction contemplated by the Purchase Agreement are and have been undertaken, by Debtors, the Buyer, and their respective representatives at arm's length, without collusion and in "good faith," as that term is defined in section 363(m) of the Bankruptcy Code.

Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction or any term of the Purchase Agreement, and shall not permit the unwinding of the Sale Transaction.  The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

39.    None of the Debtors nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement or the Sale Transaction to be avoided, or damages or costs to be imposed, under section 363(n) of the Bankruptcy Code.  The consideration provided by the Buyer for the MS/AL Assets under the Purchase Agreement is fair and reasonable, and the Sale Transaction may not be avoided under section 363(n) of the Bankruptcy Code.

40.    Nothing contained in any plan of reorganization (or liquidation) confirmed in the Chapter 11 Cases, any order confirming any plan of reorganization (or liquidation), or any other order of any type or kind entered in the Chapter 11 Cases or any related proceeding, including any subsequent chapter 7 case, shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order.

41.    The Debtors are authorized to execute, acknowledge, and deliver such deeds, assignments, conveyances, and other assurances, documents, and instruments of transfer, and to take such other actions as may be reasonably necessary to perform the terms and provisions of the Purchase Agreement and all other agreements related thereto (including any documents relating to the repayment of the DIP Loans (as such term is defined in the DIP Order)), and the Debtors are authorized to take any other action that

reasonably may be requested by the Buyer for the purpose of assigning, transferring, granting, and conveying any or all of the MS/AL Assets, or by the DIP Secured Parties in connection with evidencing the repayment of the DIP Obligations or the release of any DIP Liens.

42.     Notwithstanding any provision in the Motion, this Order, or any implementing sale documents, nothing shall (1) authorize the assumption, sale, assignment or other transfer to the Buyer of any easements, rights of way, licenses, instruments, contracts, leases, agreements or other interests of the federal government, (collectively, "**Federal Interests**") without compliance with all terms of the Federal Interests and all applicable legal requirements and approvals under non-bankruptcy law; (2) authorize the transfer or assignment of any governmental license, permit, registration, authorization, or approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law; (3) be interpreted to set cure amounts or require the government to novate, approve or otherwise consent to the assumption, sale, assignment or other transfer of any Federal Interests; (4) subject to section 553 of the Bankruptcy Code, affect the government's rights to assert setoff or recoup any amounts due under, or relating to, the Federal Interests; (5) release or affect any deed restriction or easement in favor of a governmental unit; (6) release, nullify, preclude or enjoin the enforcement of any police or regulatory liability to a governmental unit (including, but not limited to, the Texas Commission on Environmental Quality) that any entity would be subject to as the post-sale owner or operator of property upon the Closing Date; or (7) divest any tribunal of any jurisdiction it may have with respect to the Federal Interests, or under police or

regulatory law, to interpret this Order or to adjudicate any defense asserted under this

Order.

43.     Notwithstanding Bankruptcy Rules 6004, 6006, and 7062 and any other

applicable Bankruptcy Rules or applicable Local Rules to the contrary, this Order shall be

effective immediately upon entry and shall not be subject to any stay in the

implementation, enforcement, or realization of the relief granted herein.

44.     The Court retains jurisdiction, even after the closing of the Chapter 11

Cases, to do the following:

      (a)     interpret, implement, and enforce the terms and provisions of this

Order, the Purchase Agreement, and any other agreement executed

in connection therewith;

      (b)     protect the Buyer, or any of the MS/AL Assets, against any Claims

or Encumbrances, other than the Permitted Encumbrances and the

Assumed Liabilities;

      (c)     resolve any disputes arising under or related to the Purchase

Agreement, the Sale Transaction, or the Buyer's peaceful use and

enjoyment of the MS/AL Assets, whether or not a plan of

reorganization (or liquidation) has been confirmed in the Chapter

11 Cases and irrespective of the provisions of any such plan or

order confirming any such plan;

      (d)     adjudicate all issues concerning all Claims and Encumbrances in

and to the MS/AL Assets, including the extent, validity,

enforceability, priority, and nature of all such Claims and

Encumbrances;

(e)    adjudicate any and all issues and/or disputes relating to the

Debtors' right, title, or interest in the MS/AL Assets and the

proceeds thereof, the Motion, and the Purchase Agreement; and

(f)    adjudicate any and all remaining issues concerning the Debtors'

right and authority to assume and assign the Assigned Contracts to

the Buyer and resolve any objections to Cure Costs or any other

objections by non-Debtor counterparties to any additional contracts

or leases that the Buyer may elect, in accordance with the Purchase

Agreement and the Bidding Procedures Order, to become Assigned

Contracts and determine the Buyer's rights and obligations with

respect to such assignment and the existence of any default under

any Assigned Contract.

45.    No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale Transaction contemplated by the Purchase Agreement.

46.    The Purchase Agreement and any related agreements, documents, or instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof, without further order of the Court, so long as any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

47.    The failure specifically to include any particular provisions of the Purchase Agreement in this Order shall not diminish or impair the efficacy of such

provision, it being the intent of the Court that the Purchase Agreement and each and every provision, term, and condition thereof be authorized and approved in its entirety.

48.    Notwithstanding anything in this Order, any Notice related thereto, or the Purchase Agreement to the contrary, and for the avoidance of doubt, the Employee Benefits Agreements, as identified in the Cigna Objection [D.I. 443] shall not be deemed Assigned Contracts for purposes of this Order, and shall not be assumed and assigned as part of the Sale Transaction.

49.    If there is any direct conflict between the Purchase Agreement and this Order, the terms of this Order shall control.

**Dated: October 22nd, 2019**
**Wilmington, Delaware**

42

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**