**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SOUTHCROSS ENERGY PARTNERS, L.P., | ) | Case No. 19-10702 (MFW) |
| *et al.*, | ) | |
| | ) | Jointly Administered |
| Debtors.[1] | ) | |
| | ) | **Hearing Date: November 13, 2019 at 10:30 a.m. (ET)** |
| | ) | **Obj. Deadline: November 6, 2019 at 4:00 p.m. (ET)** |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER FURTHER
EXTENDING THE EXCLUSIVE PERIODS WITHIN WHICH TO FILE A
CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

Southcross Energy Partners, L.P. ("**Southcross**"), Southcross Energy Partners GP, LLC, and Southcross's wholly owned direct and indirect subsidiaries, each of which is a debtor and debtor in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this *Motion of Debtors for Entry of an Order Further Extending the Exclusive Periods Within Which To File a Chapter 11 Plan and Solicit Acceptances Thereof* (this "**Motion**"). In support of this Motion, the Debtors respectfully state as follows:

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Southcross Energy Partners, L.P. (5230); Southcross Energy Partners GP, LLC (5141); Southcross Energy Finance Corp. (2225); Southcross Energy Operating, LLC (9605); Southcross Energy GP LLC (4246); Southcross Energy LP LLC (4304); Southcross Gathering Ltd. (7233); Southcross CCNG Gathering Ltd. (9553); Southcross CCNG Transmission Ltd. (4531); Southcross Marketing Company Ltd. (3313); Southcross NGL Pipeline Ltd. (3214); Southcross Midstream Services, L.P. (5932); Southcross Mississippi Industrial Gas Sales, L.P. (7519); Southcross Mississippi Pipeline, L.P. (7499); Southcross Gulf Coast Transmission Ltd. (0546); Southcross Mississippi Gathering, L.P. (2994); Southcross Delta Pipeline LLC (6804); Southcross Alabama Pipeline LLC (7180); Southcross Nueces Pipelines LLC (7034); Southcross Processing LLC (0672); FL Rich Gas Services GP, LLC (5172); FL Rich Gas Services, LP (0219); FL Rich Gas Utility GP, LLC (3280); FL Rich Gas Utility, LP (3644); Southcross Transmission, LP (6432); T2 EF Cogeneration Holdings LLC (0613); and T2 EF Cogeneration LLC (4976). The debtors' mailing address is 1717 Main Street, Suite 5300, Dallas, TX 75201.

**Relief Requested**

1.      By this Motion, and pursuant to section 1121(d) of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors seek entry of an order, substantially in the form attached hereto as <u>Exhibit A</u> (the "**Proposed Order**" and, if entered, the "**Order**"), extending the Debtors' exclusive periods to (a) file a chapter 11 plan (the "**Exclusive Filing Period**") by 91 days through and including January 27, 2020 and (b) solicit votes thereon (the "**Exclusive Solicitation Period**" and, together with the Exclusive Filing Period, the "**Exclusive Periods**") by 90 days through and including March 26, 2020. The current Exclusive Filing Period and Exclusive Solicitation Period are set to expire on October 28, 2019 and December 27, 2019, respectively.  The requested extension would be without prejudice to the rights of the Debtors to seek further extensions of the Exclusive Periods.

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

3.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2

4. Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**General Background**

5. On April 1, 2019 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. No request has been made for the appointment of a trustee or examiner, and no official committee has been appointed in the Chapter 11 Cases.

7. Additional information about the Debtors' businesses and affairs, capital structure, and prepetition indebtedness, and the events leading up to the Petition Date, can be found in the *Declaration of Michael B. Howe in Support of Debtors' Chapter 11 Proceedings and First Day Pleadings* [D.I. 2] (the "**Howe Declaration**"), which is incorporated herein by reference.

8. The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [D.I. 48] entered by the Court on April 2, 2019 in each of the Chapter 11 Cases.

9. On July 15, 2019, the Court entered the *Order Extending The Exclusive Periods Within Which To File a Chapter 11 Plan and Solicit Acceptances Thereof* [D.I. 374] (the "**First Extension Order**").  Pursuant to the First Extension Order, the current Exclusive Filing Period and Exclusive Solicitation Period were extended through and including October 28, 2019 and December 27, 2019, respectively.

3

## The Marketing Process

10.     On March 12, 2019, prior to the April 1, 2019 Petition Date, the Debtors

retained Evercore Group L.L.C. ("**Evercore**") to serve as an investment banker and to run,

among other things, an extensive marketing process (the "**Marketing Process**") for a potential

sale of all or substantially all of the Debtors' assets (the "**Bid Assets**").  On June 13, 2019, as

part of the Debtors' efforts to realize the highest and best value from a sale of the Bid Assets, the

Debtors obtained the entry of an order [D.I. 324]  (the "**Bidding Procedures Order**" ),[2] which

among other things, approved Bidding Procedures and a timeline for an auction based sale

process.  After obtaining entry of the Bidding Procedures Order, the Debtors, with the assistance

of their advisors, continued to market the Bid Assets.

11.     The Bidding Procedures Order also granted authority to the Debtors to

designate Stalking Horse Bidders (subject to Court approval and satisfaction of the terms and

conditions set forth therein).  The Debtors perceived, based on the bids and indications of interest

they received, in the exercise of their considered business judgment (in consultation with the

Consulting Parties), that it would benefit their estates and all parties in interest to designate

Stalking Horse Bidders for certain lots of their assets.

12.     Accordingly, on August 23, 2019, in accordance with the Bidding

Procedures Order, the Debtors filed a motion [D.I. 439] (the "**MS/AL Stalking Horse Motion**")

seeking entry of an order, among other things, approving (a) the designation of Magnolia

Infrastructure Holdings, LLC ("**Magnolia**") as the Stalking Horse Bidder with respect to the sale

of the MS/AL Assets (as defined therein) and (b) the Expense Reimbursement (as defined

therein).  On August 30, 2019, the Court entered an order [D.I. 454] approving the MS/AL

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order (as defined below).

Stalking Horse Motion.  On September 13, 2019, the Debtors filed a *Notice of Revised Asset Purchase Agreement* with respect to the MS/AL Assets [D.I. 470], which attached thereto as Exhibit A the executed asset purchase agreement (including a Proposed Assumed Contracts Schedule) that served as the Stalking Horse Bid for the MS/AL Assets (the "**Magnolia Stalking Horse Bid**").

13.    On August 24, 2019, in accordance with the Bidding Procedures Order, the Debtors filed a motion [D.I. 440] (the "**CCPN Stalking Horse Motion**") seeking entry of an order, among other things, approving (a) the designation of Kinder Morgan Tejas Pipeline LLC ("**Kinder Morgan**") as the Stalking Horse Bidder with respect to the sale of the CCPN Assets (as defined therein) and (b) the Bid Protections (as defined therein).  On August 30, 2019, the Court entered an order [D.I. 455] approving the CCPN Stalking Horse Motion.  On September 13, 2019, the Debtors filed a *Notice of Revised Asset Purchase Agreement* with respect to the CCPN Assets [D.I. 471], which attached thereto as Exhibit A the executed asset purchase agreement (including a Proposed Assumed Contracts Schedule) that served as the Stalking Horse Bid for the CCPN Assets (the "**Kinder Morgan Stalking Horse Bid**").

**Adversary Proceedings and Settlement with Southcross Holdings Entities**

14.    On August 9 and 12, 2019, the Debtors commenced two actions in this Court under adversary proceeding nos. 19-50283 (MFW) and 19-50286-(MFW) (the "**Adversary Proceedings**").  In the Adversary Proceedings, Debtor FL Rich Gas Services, LP asserted claims against the Debtors ultimate parent, non-Debtor Southcross Holdings Borrower, LP ("**Holdings**"), and certain non-Debtor subsidiaries of Holdings (such subsidiaries collectively with Holdings, the "**Southcross Holdings Entities**") (and one of their former subsidiaries) alleging actual and constructive fraudulent transfers under the Texas Uniform Fraudulent Transfer Act, based on various transactions occurring between FL Services and the Southcross

Holdings Entities since 2015, *see* Adv. No. 19-50283 (MFW) (Bankr. D. Del.), and, in a separate

action, sought a declaratory judgment against non-Debtor Frio LaSalle Pipeline, LP for breach of

contract and the implied duty of good faith and fair dealing under Texas law related to that

certain Gas Gathering and Processing Agreement, dated August 1, 2014, pursuant to which FL

Services provides processing and transportation services for rich natural gas (*i.e.*, natural gas

with high concentrations of methane and ethane) delivered from Holdings' Lancaster and Valley

Wells systems.  *See* Adv. No. 19-50286 (MFW).

   15. The Debtors and Evercore received feedback from a number of Potential

Bidders that these Adversary Proceedings—and before the Adversary Proceedings were filed, the

prospect that they would be filed—cast a pall over the Marketing Process.  The Debtors

determined, in the exercise of their business judgment, that in order to obtain the highest and best

recovery for the Bid Assets, it was advisable to resolve the Adversary Proceedings prior to the

Auction.  Accordingly, and in keeping with the authority granted  by the Bidding Procedures

Order, the Debtors postponed the Auction originally scheduled for September 3, 2019 in order to

negotiate a settlement (the "**Settlement**") with the Southcross Holdings Entities.  On September

17, 2019, the Debtors filed the *Motion of Debtors For Entry of An Order (I) Approving the*

*Settlement by and Among Debtors and Southcross Holdings Entities and (II) Granting Related*

*Relief*  [D.I.485], which was approved by the Court pursuant to an order entered on September

25, 2019 [D.I. 503].  The closing of the transactions contemplated by the Settlement occurred as

of October 1, 2019.

   16. Following the Settlement with the Southcross Holdings Entities, on

September 19, 2019, the Debtors filed the *Notice of Revised Timeline* [D.I. 493] setting a revised

Auction schedule whereby the Auction was to be conducted on (a) Wednesday, October 16, 2019

at 9:00 a.m. (prevailing Eastern Time), with respect to the G&P Assets,[3] (b) Thursday, October 17, 2019 at 9:00 a.m. (prevailing Eastern Time), with respect to the MS/AL Assets, and (c) Thursday, October 17, 2019 at 2:00 p.m. (prevailing Eastern Time), with respect to the CCPN Assets (or such later times on such days or such other place as the Debtors were to notify all Participating Parties).

## Auction

17.    The Debtors did not receive any Qualified Bids for the MS/AL Assets or the CCPN Assets other than the Magnolia Stalking Horse Bid and the Kinder Morgan Stalking Horse Bid, respectively.  As a result, and in accordance with the Bidding Procedures Order, the Debtors cancelled the Auction for the MS/AL Assets and the CCPN Assets and determined that Magnolia was the Successful Bidder for the MS/AL Assets and Kinder Morgan was the Successful Bidder for the CCPN Assets.  On October 22, 2019, the Court approved the sale of the MS/AL Assets to Magnolia, s*ee Order (A) Approving Sale of Debtors' Mississippi and Alabama Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [D.I. 595], and the sale of the CCPN Assets to Kinder Morgan.  *See Order (A) Approving Sale of Debtors' Corpus Christi Pipeline Network Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [D.I. 596].

18.    Notwithstanding the Settlement with the Southcross Holdings Entities, the Debtors did not receive any Qualified Bids for the G&P Assets.  As a result, and in accordance with the Bidding Procedures Order, on October 15, 2019, the Debtors cancelled the Auction for the G&P Assets and determined to reorganize the Debtors' businesses around the G&P Assets as

---

[3] The "**G&P Assets**" include all of the Debtors' assets other than the CCPN Assets and the MS/AL Assets.

contemplated by the Debtors' *Chapter 11 Plan for Southcross Energy Partners, L.P. and its Affiliated Debtors* [D.I. 519], as amended, (the "**Plan**") filed on October 4, 2019. Contemporaneously with filing the Plan, the Debtors also filed the *Disclosure Statement for Chapter 11 Plan for Southcross Energy Partners, L.P. and Its Affiliated Debtors* [D.I. 520], as amended, (the "**Disclosure Statement**").

19.     The Debtors intend to file amended versions of the Plan and the Disclosure Statement, which, among other things, will address formal and informal comments and objections received by the Debtors.

### Basis for Relief

**I.     Section 1121(d) Permits the Court To Extend the Exclusive Periods for "Cause"**

20.     Section 1121(b) of the Bankruptcy Code provides debtors with the exclusive right to file a chapter 11 plan during the first 120 days after the commencement of a chapter 11 case.  If a debtor files a plan during this period, section 1121(c)(3) of the Bankruptcy Code provides the debtor with an initial period of 180 days as of the commencement of the chapter 11 case to solicit acceptance of such plan.  Section 1121(d) of the Bankruptcy Code permits a court to extend a debtor's exclusive period to file a plan and solicit acceptances thereof upon demonstration of "cause."  *See* 11 U.S.C. § 1121(d) ("[O]n request of a party in interest and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.").  For the reasons described in this Motion, the Debtors respectfully submit that "cause" exists to extend the Exclusive Periods.

21.     It is well established that the decision to extend the Exclusive Periods is left to the sound discretion of the Court and should be based upon the facts and circumstances of

the particular case.[4]  *See, e.g., First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64

B.R. 963, 965 (D. Del. 1986).  Although the Bankruptcy Code does not define "cause," a number

of courts have construed the term in consideration of the Bankruptcy Code's underlying

legislative history.  *See, e.g., In re Burns & Roe Enters., Inc.*, No. 00-41610 RG, 2005 WL

6289213, at *4 (D.N.J. Nov. 2, 2005) (quoting H.R. Rep. No. 103-835, at 36 (1994), as reprinted

in 1994 U.S.C.C.A.N. 3340, 3344) (noting that the exclusive periods under section 1121 of the

Bankruptcy Code are intended "to promote an environment in which the debtor's business may

be rehabilitated and a consensual plan may be negotiated").  This time of exclusivity affords a

debtor an opportunity to propose a chapter 11 plan and solicit acceptances thereof without the

potential value deterioration and disruption to business operations that would ensue from the

filing and solicitation of competing plans by non-debtor parties.  Further, the legislative history

indicates that "cause" should be interpreted in such a way "to allow the debtor to reach an

agreement."  H.R. Rep. No. 95-595 at 231, 232 (1978), as reprinted in 1978 U.S.C.C.A.N. 5963,

6191.  The opportunity for a debtor to negotiate a plan unimpaired by competition is intended to

allow a debtor time to satisfy its creditors, win support for its plan, and ultimately its survival as

a business. *See Geriatrics Nursing Home v. First Fidelity Bank, N.A.*, 187 B.R. 128, 133 (D.

N.J. 1995).

      22.    In determining whether cause exists to extend a debtor's exclusive

periods, courts consider a variety of factors, including:

a.    the size and complexity of the case;
b.    the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;
c.    the existence of good faith progress toward reorganization;

---

[4] Although the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("**BAPCPA**") amended section 1121(d) by prohibiting extensions of exclusive filing and solicitation periods beyond 18 and 20 months of the petition date, respectively, there was no revision to the standards for obtaining interim extensions. Accordingly, pre-BAPCPA case law continues to apply and must be examined in the context of these cases.

d.      the fact that the debtor is paying its bills as they come due;

e.      whether the debtor has demonstrated reasonable prospects for filing a viable plan;

f.      whether the debtor has made progress in its negotiations with creditors;

g.      the amount of time that has elapsed in the case;

h.      whether creditors are prejudiced by the extension;

i.      whether the debtor is not seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands; and

j.      the existence of an unresolved contingency.

*See In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 183 (Bankr. D.N.J. 2002); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); *see also In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997) (identifying the above factors and noting that courts generally rely on the same factors to determine whether exclusivity should be extended); *In re Friedman's Inc.*, 336 B.R. 884, 888 (Bankr. D. Ga. 2005) (same).  Any one of these factors may constitute sufficient grounds for extending a debtor's exclusive periods.  *See In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996).

23.      Not all of the above factors, however, are relevant to every case and courts may consider the relevant subset of factors to determine whether cause exists to grant an exclusivity extension in a particular chapter 11 case.  *See, e.g., id. at* 100-01 (identifying four of the factors as relevant in determining whether "cause" exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that the debtor showed "cause" to extend exclusivity based upon three of the factors); *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (relying on two factors in holding that cause existed to extend exclusivity).

## II.      Cause Exists for an Extension of the Exclusive Periods

24.      The Debtors respectfully submit that the application of the factors above to the facts and circumstances of the Chapter 11 Cases demonstrates that the requested extension of the Exclusive Periods is both appropriate and necessary.

     *a.  The  Chapter 11 Cases are Large and Complex, and the Marketing Process and Settlement Only Recently Resolved Two Major Contingencies*

     25.     Courts have regularly extended the exclusive periods under section 1121(d) of the Bankruptcy Code in large, complex chapter 11 cases so as to afford the debtor time to stabilize its business and lay the groundwork for an effective chapter 11 plan before beginning the formal plan formulation, negotiation, filing, and solicitation process.  *See, e.g., In re Crescent Mfg. Co.*, 122 B.R. 979, 982 (Bankr. N.D. Ohio 1990) (stating that "cause" can include an "unusually large case") (citation omitted); *In re Texaco, Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods."); *see also* H.R. Rep No. 95-595, at 231–32 (1978); *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191 ("[I]f an unusually large company were to seek reorganization under Chapter 11, the Court would probably need to extend the time in order to allow the debtor to reach an agreement.").  Indeed, the size and complexity of the case, by itself, can support a determination that cause exists for an extension of exclusivity.  *See In re Express One Int'l*, 194 B.R. at 100 (noting that two previous extensions of exclusivity had been granted based on the size and complexity of the case alone); *In re Texaco, Inc.*, 76 B.R. 322 at 325–27 (cause existed to warrant extension of exclusivity based on the size and complexity of the case alone).

     26.     Here, the size and complexity of the Chapter 11 Cases warrant extension of the Exclusive Periods.  As detailed in the Howe Declaration, the Chapter 11 Cases involve 27 Debtors that (a) provide midstream services to natural gas producers and customers, including natural gas gathering, processing, treatment, and compression and access to natural gas liquid ("**NGL**") fractionation and transportation services and (b) purchase and sell natural gas and

NGLs.  The Debtors also estimate that, on a consolidated basis, they own $500 million to $1 billion in assets, owe $500 million to $1 billion in liabilities, and have thousands of creditors. *See Petitions* [D.I. 1].  As such, the Chapter 11 Cases constitute a "mega" bankruptcy case.

27.    In addition to the size, scope, and multifaceted nature of the Debtors' assets and business operations, the Debtors have a complicated corporate structure.  *See* Howe Decl., Ex. A.  The complexity of the Debtors' corporate structure was compounded by the Debtors' relationship (both business and corporate) with the Southcross Holdings Entities.  *See, e.g.*, Howe Decl. ¶¶ 13-14, 72.  This dynamic ultimately culminated with the Debtors commencing and, after extensive negotiations, settling, the Adversary Proceedings in an efficient and value maximizing manner.

28.    Finally, the negotiation of the Settlement with the Southcross Holdings Entities necessarily delayed the Marketing Process, the outcome of which was a key factor in determining the direction of the Chapter 11 Cases.  In the end, the Debtors were able to sell the MS/AL Assets and the CCPN Assets at attractive prices that provide the Debtors with a path forward to a successful reorganization around the G&P Assets.  However, the complexities related to the Debtors' businesses, the Settlement with the Southcross Holdings Entities, and the Marketing Process has required a prolonged timeline and an enormous amount of time and energy from the Debtors and their advisors.  As a result, the Debtors require additional time for the Exclusive Periods to enjoy the fruits of their labor and to solicit and confirm a plan of reorganization.  In sum, the Debtors need to extend the Exclusive Periods to accommodate the timeline necessitated by the Marketing Process and the Settlement with the Southcross Holdings Entities, thereby allowing the Debtors to maximize distributable value for the benefit of the Debtors' estates and stakeholders pursuant to a chapter 11 plan of reorganization.

b. *The Debtors' Good Faith Progress in Their Negotiations with Creditors Toward Filing a Viable Chapter 11 Plan*

29.     The Debtors filed the Chapter 11 Cases approximately seven months ago. Since the Petition Date, the Debtors have focused their efforts on stabilizing their businesses, finalizing post-petition financing, maintaining active lines of communication with their employees, commercial counterparties, lenders, and other stakeholders, negotiating limited stay relief with certain litigation adversaries, pursuing the Marketing Process, prosecuting and resolving the Adversary Proceedings, and negotiating, drafting, and filing the Plan and the Disclosure Statement.

30.     Moreover, throughout the Chapter 11 Cases, the Debtors have worked constructively with their stakeholders to forge a path towards successful sales and a chapter 11 plan of reorganization.  Indeed, the Debtors have paid nearly all of the unsecured claims of their prepetition trade creditors in accordance with the orders entered by the Court and have worked productively with their secured prepetition and post-petition lenders throughout the Chapter 11 Cases to generate the greatest amount of value to be distributed among the Debtors' stakeholders via the Marketing Process, the Settlement with the Southcross Holdings Entities, and the formulation of the Plan.  In fact, the Debtors' prepetition and post-petition lenders support the relief requested herein.  Given the size and complexity of the Chapter 11 Cases, this collaborative progress is a significant factor in determining whether the Debtors have demonstrated progress in formulating a viable chapter 11 plan.  *See Quality Inns Int'l, Inc. v. L.B.H. Assoc. Ltd. P'ship*, 1990 WL 116761, at \*2 (4th Cir. July 26, 1990), *cert. denied*, 498 U.S. 1083 (1991).

31.     Indeed, courts have found that good faith progress toward reorganization was made and cause existed to warrant an extension of the exclusivity periods where the debtor

had already filed a plan and/or a disclosure statement.  *See, e.g.*, *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 410 (E.D.N.Y. 1989) (upholding the bankruptcy court's reliance upon the "Debtor's proposed plans and its continued attempts to negotiate with the creditor's committee" as cause for extending the exclusivity periods); *In re Perkins*, 71 B.R. 294, 300 (W.D. Tenn. 1987) ("[T]he bankruptcy court's grants of enlargements of the exclusivity period were not erroneous . . . . The debtor has shown diligence in filing and soliciting acceptances of his plan . . . ."); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) ("The Debtor in this major and complex case has shown extraordinary diligence, speed and skill, in the face of major obstacles, in progressing to the point where, less than a year after the filing of the petition, a plan and disclosure statement have already been filed . . . .").

32.     As noted above, the Debtors have already filed an original and amended Plan and Disclosure Statement.  Following the conclusion of the Marketing Process, the Debtors now endeavor to pursue the original Plan's toggle to a reorganization of their businesses.  Given this recent clarity as to the direction of the Chapter 11 Cases, the Debtors believe that it is reasonable to request a brief extension of the Exclusive Periods to allow them to pursue the Plan. Granting the requested extensions will afford the Debtors a full and fair opportunity to devote their efforts to their plan solicitation and confirmation process without the distraction, cost, and delay of a competing plan process.  *See In re Energy Conversion Devices, Inc.*, 474 B.R. 503, 507 (Bankr. E.D. Mich. 2012) (citation and internal quotation marks omitted) ("In enacting 11 U.S.C. § 1121, Congress intended to allow the Debtor a reasonable time to obtain confirmation of a plan without the threat of a competing plan.  It was intended that . . . a debtor should be given the unqualified opportunity to negotiate a settlement and propose a plan of reorganization

without interference from creditors and other interests.").  Accordingly, this factor weighs in favor of the Court granting the relief sought herein.

   c.  *The Debtors Pay Their Bills as they Come Due*

      33.    The Debtors continue to make timely payments on account of their undisputed post-petition obligations.  As such, this factor also weighs in favor of allowing the Debtors to extend the Exclusive Periods.

   d.  *A Short Amount of Time has Elapsed in the Chapter 11 Cases*

      34.    Only seven months have elapsed in the Chapter 11 Cases, and this is the Debtors' second request for an extension of the Exclusive Periods.  This amount of time is not very long for cases of this size and complexity, especially given the Settlement with the Southcross Holdings Entities and the possible permutations of the Marketing Process.  Further, this Court routinely has granted requests by debtors to extend their exclusive periods where a similar or greater amount of time had elapsed since the chapter 11 case was commenced.  *See, e.g.*, *In re Se. Grocers, LLC*, No. 18-10700 (MFW) (Bankr. D. Del. Apr. 11, 2019) [D.I. 873] (extending exclusive periods a third time more than 12 months after the petition date); *In re Woodbridge Grp. of Cos.*, No. 17-12560 (KJC) (Bankr. D. Del. Nov. 14, 2018) [D.I. 2985] (extending exclusive periods a third time more than 11 months after the petition date); *In re Bon-Ton Stores, Inc.*, No. 18-10248 (MFW) (Bankr. D. Del. Oct. 22, 2018) [D.I. 1177] (extending exclusive periods a second time more than 8 months after the petition date); *In re Dex Liquidating Co.*, No. 17-12913 (KJC) (Bankr. D. Del. Oct. 9, 2018) [D.I. 488] (extending exclusive periods a third time more than 9 months after the petition date); *In re Golfsmith Int'l Holdings, Inc.*, No. 16-12033 (LSS) (Bankr. D. Del. Jan. 25, 2018) [D.I. 1252] (extending exclusive periods a fourth time more than 28 months after the petition date).  Accordingly, an extension of the Exclusive Periods is appropriate.

      *e.   The Debtors are not Seeking To Extend Exclusivity To Pressure Creditors To Accede to the Debtors' Demands and Creditors are not Prejudiced by the Extension*

      35.    As described above, the Debtors have the support of their secured prepetition and post-petition lenders—the primary creditor constituents in the Chapter 11 Cases—for the relief requested herein.  Moreover, failure to extend the Exclusive Periods would harm the creditors, as termination of the Exclusive Periods would adversely impact the Debtors' efforts to preserve and maximize the value of their estates and the progress of the Chapter 11 Cases.  The possibility of the proposal of a competing plan would create turmoil in the Chapter 11 Cases and be inequitable to the Debtors now that they have settled the Adversary Proceedings and concluded the Marketing Process.  Given that the Court approved the Marketing Process and the associate timelines, the Debtors should be able to earnestly pursue the final chapter of these proceedings—*i.e.*, confirmation of a plan of reorganization.  Further, the solicitation of any competing plan could greatly complicate and increase the cost of administering the Chapter 11 Cases to the detriment to creditors.  Accordingly, this factor also weighs in favor of the relief requested herein.

      36.    Finally, courts in this jurisdiction have granted relief similar to that requested herein.  *See, e.g.*, *In re Zohar III Corp.*, No. 18-10512 (CSS) (Bankr. D. Del. Jan. 8, 2019) [D.I. 616] (granting additional extension of 224 days to file and 228 days to solicit); *In re Se. Grocers, LLC*, No. 18-10700 (MFW) (Bankr. D. Del. Dec. 10, 2018) [D.I. 799] (granting additional extension of 120 days to file and 120 days to solicit); *In re Bon-Ton Stores, Inc.*, No. 18-10248 (MFW) (Bankr. D. Del. Oct. 22, 2018) [D.I. 1177] (granting additional extension of 120 days to file and 120 days to solicit); *In re Gen. Wireless Operations Inc.*, No. 17-10506 (BLS) (Bankr. D. Del. Sept. 19, 2017) [D.I. 973] (granting additional extension of 90 days to file

and 92 days to solicit); *In re TSAWD Holdings, Inc.*, No. 16-10527 (MFW) (Bankr. D. Del. Oct. 11, 2016), [D.I. 3060] (granting additional extension of 90 days to file and 90 days to solicit).

37.    In sum, (a) maximizing value of the Debtors' estates for the benefit of their stakeholders requires an extension of the Exclusive Periods, (b) the Debtors' prepetition and post-petition lenders support the relief sought herein, and (c) the factors identified above support the Court granting the Motion.  Thus, the Debtors respectfully submit that cause exists to extend the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.

## Automatic Extension under Local Rule 9006-2

38.    Pursuant to Local Rule 9006-2, the Exclusive Filing Periods shall automatically be extended until the Court acts on this Motion, without the necessity for the entry of a bridge order.

## Notice

39.    Notice of this Motion will be provided to the following parties or, in lieu thereof, their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; (b) each of the Debtors' 20 largest unsecured creditors on a consolidated basis; (c) (i) Arnold & Porter Kaye Scholer LLP and (ii) Duane Morris LLP, as counsel to Wilmington Trust, N.A., the administrative agent under Southcross's prepetition secured revolving credit facility, prepetition secured term loan facility, and post-petition credit facility; (d) (i) Willkie Farr & Gallagher LLP and (ii) Young Conaway Stargatt & Taylor, LLP, as counsel to the post-petition lenders and an ad hoc group of prepetition lenders; (e) Debevoise & Plimpton LLP, as counsel to Holdings; and (f) those parties who have filed the appropriate notice pursuant to Bankruptcy Rule 2002 requesting notice of all pleadings filed in the Chapter 11 Cases.  A copy of this Motion and any order approving it will also be made available on the Debtors' case information

website located at *http://www.kccllc.net/southcrossenergy*.  The Debtors respectfully submit that no further notice is required.

## **No Prior Request**

40.     The Debtors have not previously sought the relief requested herein from the Court or any other court.

WHEREFORE, the Debtors respectfully request entry of the Proposed Order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and such other and further relief as the Court deems just and proper.

*(Remainder of Page Intentionally Left Blank)*

Dated:    October 28, 2019
          Wilmington, Delaware

Respectfully submitted,
MORRIS, NICHOLS ARSHT & TUNNELL LLP

*/s/ Eric W. Moats*
Robert J. Dehney (No. 3578)
Andrew R. Remming (No. 5120)
Joseph C. Barsalona II (No. 6102)
Eric W. Moats (No. 6441)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Tel.: (302) 658-9200
Fax: (302) 658-3989
rdehney@mnat.com
aremming@mnat.com
jbarsalona@mnat.com
emoats@mnat.com

-and-

DAVIS POLK & WARDWELL LLP
Marshall S. Huebner (admitted *pro hac vice*)
Darren S. Klein (admitted *pro hac vice*)
Steven Z. Szanzer (admitted *pro hac vice*)
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
Fax: (212) 701-5800
marshall.huebner@davispolk.com
darren.klein@davispolk.com
steven.szanzer@davispolk.com
benjamin.schak@davispolk.com

*Counsel to the Debtors and Debtors in Possession*