## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SOUTHCROSS ENERGY PARTNERS, L.P.,<br>*et al*.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-10702 (MFW)<br><br>(Jointly Administered) |

## FIRST AMENDED CHAPTER 11 PLAN FOR
## SOUTHCROSS ENERGY PARTNERS, L.P. AND ITS AFFILIATED DEBTORS

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 701-5800
Marshall S. Huebner
Darren S. Klein
Steven Z. Szanzer
(each admitted *pro hac vice*)

*Counsel to the Debtors and Debtors in Possession*

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Robert J. Dehney (No. 3578)
Andrew R. Remming (No. 5120)
Joseph C. Barsalona II (No. 6102)
Eric W. Moats (No. 6441)

*Local Counsel to the Debtors and
Debtors in Possession*

Dated: January 24, 2020
Wilmington, Delaware

---

[1]      The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Southcross Energy Partners, L.P. (5230); Southcross Energy Partners GP, LLC (5141); Southcross Energy Finance Corp. (2225); Southcross Energy Operating, LLC (9605); Southcross Energy GP LLC (4246); Southcross Energy LP LLC (4304); Southcross Gathering Ltd. (7233); Southcross CCNG Gathering Ltd. (9553); Southcross CCNG Transmission Ltd. (4531); Southcross Marketing Company Ltd. (3313); Southcross NGL Pipeline Ltd. (3214); Southcross Midstream Services, L.P. (5932); Southcross Mississippi Industrial Gas Sales, L.P. (7519); Southcross Mississippi Pipeline, L.P. (7499); Southcross Gulf Coast Transmission Ltd. (0546); Southcross Mississippi Gathering, L.P. (2994); Southcross Delta Pipeline LLC (6804); Southcross Alabama Pipeline LLC (7180); Southcross Nueces Pipelines LLC (7034); Southcross Processing LLC (0672); FL Rich Gas Services GP, LLC (5172); FL Rich Gas Services, LP (0219); FL Rich Gas Utility GP, LLC (3280); FL Rich Gas Utility, LP (3644); Southcross Transmission, LP (6432); T2 EF Cogeneration Holdings LLC (0613); and T2 EF Cogeneration LLC (4976). The debtors' mailing address is 1717 Main Street, Suite 5300, Dallas, TX 75201.

# TABLE OF CONTENTS

**Page**

ARTICLE I.
   DEFINITIONS AND INTERPRETATION .........................................................1

ARTICLE II.
   CERTAIN INTER-CREDITOR AND INTER-DEBTOR ISSUES .................17

 **2.1.**  **[Deleted]** ........................................................................................17

 **2.2.**  ***Formation of Debtor Groups for Convenience Purposes.*** ..................17

 **2.3.**  ***Intercompany Claims and Intercompany Interests.*** ...........................18

ARTICLE III.
   DIP CLAIMS, ADMINISTRATIVE EXPENSE CLAIMS,
   PROFESSIONAL FEE CLAIMS, U.S. TRUSTEE FEES AND
   PRIORITY TAX CLAIMS.........................................................................18

 **3.1.**  ***DIP Claims.*** .....................................................................................19

 **3.2.**  ***Administrative Expense Claims.*** .......................................................19

 **3.3.**  ***Professional Fee Claims.*** .................................................................20

 **3.4.**  ***U.S. Trustee Fees.*** ...........................................................................21

 **3.5.**  ***Priority Tax Claims.*** ........................................................................22

ARTICLE IV.
   CLASSIFICATION OF CLAIMS AND INTERESTS ....................................22

 **4.1.**  ***Classification of Claims and Interests.*** ...........................................22

 **4.2.**  ***Unimpaired Classes of Claims.*** .......................................................23

 **4.3.**  ***Impaired Classes of Claims.*** ...........................................................23

 **4.4.**  ***Separate Classification of Other Secured Claims.*** ...........................23

ARTICLE V.
   TREATMENT OF CLAIMS AND INTERESTS ............................................24

 **5.1.**  ***Priority Non-Tax Claims (Class 1).*** .................................................24

 **5.2.**  ***Other Secured Claims (Class 2).*** .....................................................24

 **5.3.**  ***Prepetition Revolving Credit Facility Claims (Class 3).*** ...................25

 **5.4.**  ***Prepetition Term Loan Claims (Class 4).*** .........................................25

 **5.5.**  ***General Unsecured Claims (Class 5).*** ...............................................25

 **5.6.**  ***Sponsor Note Claims (Class 6).*** .......................................................26

**5.7.** *Subordinated Claims (Class 7).* ..............................................................26

**5.8.** *Existing Interests (Class 8).* ..................................................................26

ARTICLE VI.

ACCEPTANCE OR REJECTION OF
THE PLAN; EFFECT OF REJECTION BY ONE
OR MORE CLASSES OF CLAIMS OR INTERESTS ....................................26

**6.1.** *Class Acceptance Requirement.* ............................................................26

**6.2.** *Tabulation of Votes on a Non-Consolidated Basis.* ...............................27

**6.3.** *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown."* ........................................................................................27

**6.4.** *Elimination of Vacant Classes.* .............................................................27

**6.5.** *Voting Classes; Deemed Acceptance by Non-Voting Classes.* ...............27

**6.6.** *Confirmation of All Cases.* ....................................................................27

ARTICLE VII.

MEANS FOR IMPLEMENTATION ..................................................28

**7.1.** *Continued Existence and Vesting of Assets.* ...........................................28

**7.2.** *Employee Protection Plan and STIP* .....................................................29

**7.3.** *Creation of NewCo and Credit Bid Transaction* ...................................29

**7.4.** *Issuance of New Common Units and New Preferred Units* ..................30

**7.5.** *Plan Value of New Common Units and New Preferred Units* ..............30

**7.6.** *Exemption from Registration* ................................................................31

**7.7.** *Exit Credit Facility* ................................................................................31

**7.8.** *Cancellation of Existing Securities and Agreements.* ............................32

**7.9.** *Boards of Directors.* ..............................................................................32

**7.10.** *Corporate and Other Action.* ................................................................33

**7.11.** *Comprehensive Settlement of Claims and Controversies.* .....................33

**7.12.** *Ad Hoc Group Fee Claim.* ....................................................................34

**7.14.** *Transactions Authorized under Plan* ....................................................34

**7.15.** *Approval of Plan Documents* .................................................................34

ARTICLE VIII.

DISTRIBUTIONS .................................................................34

**8.1.** *Distributions.* .........................................................................................34

**8.2.** *No Postpetition Interest on Claims.* .......................................................34

**8.3.** *Date of Distributions.* ............................................................................35

**8.4.**    *Distribution Record Date.* ............................................................35

**8.5.**    *Disbursing Agent.* ...................................................................35

**8.6.**    *Delivery of Distribution.* .........................................................36

**8.7.**    *Unclaimed Property.* ...............................................................36

**8.8.**    *Unclaimed New Common Units and/or New Preferred Units* ...........37

**8.9.**    *Satisfaction of Claims.* ............................................................37

**8.10.**    *Manner of Payment Under Plan.* ..............................................37

**8.11.**    *De Minimis Cash Distributions.* ...............................................37

**8.12.**    *Fractional New Common Units or New Preferred Units* ................37

**8.13.**    *Distributions on Account of Allowed Claims Only.* ......................38

**8.14.**    *No Distribution in Excess of Amount of Allowed Claim.* ...............38

**8.15.**    *Exemption from Securities Laws.* ..............................................38

**8.16.**    *Setoffs and Recoupments.* .......................................................38

**8.17.**    *Withholding and Reporting Requirements.* .................................39

ARTICLE IX.

      PROCEDURES FOR RESOLVING CLAIMS ...............................39

**9.1.**    *Objections to Claims.* ..............................................................39

**9.2.**    *Amendment to Claims.* .............................................................40

**9.3.**    *Disputed Claims.* ....................................................................40

**9.4.**    *Estimation of Claims* ...............................................................40

**9.5.**    *Reserves.* ..............................................................................40

**9.6.**    *Expenses Incurred on or After the Effective Date.* ......................41

ARTICLE X.

      EXECUTORY CONTRACTS AND UNEXPIRED LEASES...........41

**10.1.**    *General Treatment.* .................................................................41

**10.2.**    *Claims Based on Rejection of Executory Contracts or Unexpired Leases.* ........42

**10.3.**    *Cure of Defaults for Assumed or Assumed and Assigned Executory Contracts and Unexpired Leases.* ...............................................43

**10.4.**    *Effect of Confirmation Order on Assumption, Assumption and Assignment, and Rejection.* ......................................................44

**10.5.**    *Compensation and Benefit Programs.* .........................................45

**10.6.**    *Assumption of Directors and Officers Insurance Policies* ...............45

**10.7.**    *Assumption of Certain Indemnification Obligations* .....................46

ARTICLE XI.
      CONDITIONS PRECEDENT TO
      CONSUMMATION OF THE PLAN ....................................................47

11.1. *Conditions Precedent to the Effective Date.* .........................................47

11.2. *Satisfaction and Waiver of Conditions Precedent.* .................................48

11.3. *Effect of Failure of Conditions Precedent to the Effective Date.* ......................48

ARTICLE XII.
      EFFECT OF CONFIRMATION ........................................................49

12.1. *Binding Effect.* ..........................................................................49

12.2. *Discharge of Claims Against and Interests in the Debtors.* .................49

12.3. *Term of Pre-Confirmation Injunctions or Stays.* .................................49

12.4. *Injunction Against Interference with Plan.* ..........................................49

12.5. *Injunction.* ................................................................................50

12.6. *Releases.* ..................................................................................51

12.7. *Exculpation and Limitation of Liability.* ............................................53

12.8. *Injunction Related to Releases and Exculpation.* ................................54

12.9. *Retention of Causes of Action/Reservation of Rights.* .........................54

ARTICLE XIII.
      RETENTION OF JURISDICTION ...................................................54

ARTICLE XIV.
      MISCELLANEOUS PROVISIONS...................................................56

14.1. *Exemption from Certain Transfer Taxes.* ...........................................56

14.2. *Termination of Professionals.* ........................................................57

14.3. *Amendments.* .............................................................................57

14.4. *Revocation or Withdrawal of this Plan.* ............................................57

14.5. *Allocation of Plan Distributions Between Principal and Interest.*....................58

14.6. *Severability.* ..............................................................................58

14.7. *Governing Law.* ..........................................................................58

14.8. *Section 1125(e) of the Bankruptcy Code.* ..........................................58

14.9. *Inconsistency.* ............................................................................59

14.10. *Time.* .......................................................................................59

14.11. *Exhibits.*...................................................................................59

14.12. *Notices.* ...................................................................................59

**14.13.  *Filing of Additional Documents.*** ...........................................................................60

**14.14.  *Reservation of Rights.*** ..........................................................................................60

## INTRODUCTION[2]

The Debtors, as defined herein, propose the following chapter 11 plan under section 1121(c) of the Bankruptcy Code for the resolution of the outstanding claims against, and equity interests in, the Debtors. Capitalized terms used in this Plan and not otherwise defined shall have the meanings ascribed to such terms in Article I of this Plan.

## ARTICLE I.
## DEFINITIONS AND INTERPRETATION

### A.    Definitions.

The following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural):

**1.1**    *Ad Hoc Group* means that certain ad hoc group of lenders represented by Willkie Farr & Gallagher LLP and Young Conaway Stargatt & Taylor, LLP, and currently comprised of: Arbour Lane Fund II GP, LLC; Avenue Capital Management II, L.P.; Bank of America, N.A., solely in respect of its Global Credit and Special Situations group and not any other unit, group, division or affiliate thereof; Columbia Management Investment Advisors, LLC; Cove Key Management; HSBC Bank plc; Invesco Senior Secured Management, Inc.; Investcorp Credit Management US LLC; J.H. Lane Partners; Logan Circle Partners, L.P.; MetLife Investment Advisors, LLC; Octagon Credit Investors, LLC; Solus Alternative Asset Management LP; and Sound Point Capital Management, L.P.

**1.2**    *Ad Hoc Group Fee Claim* means any Claim, to the extent not previously paid, for the reasonable and documented out-of-pocket fees, expenses, costs and other charges incurred prior to the Effective Date by the Ad Hoc Group (including those of Willkie Farr & Gallagher LLP, Young Conaway Stargatt & Taylor, LLP and Houlihan Lokey, Inc.), to the extent the Debtors' payment of which is provided for in the Final DIP Order or this Plan, which Claim shall be Allowed on the Effective Date.

**1.3**    *Administrative Bar Date* has the meaning set forth in Section 3.2(a) of this Plan.

**1.4**    *Administrative Expense Claim* means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases of the kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code (other than a DIP Claim, Professional Fee Claim, Ad Hoc Group Fee Claim or U.S. Trustee Fees) incurred during the period from the Petition Date to the Effective Date, including: (a) any actual and necessary costs and expenses of preserving the Estates, any actual and necessary costs and expenses of operating the Debtors' business, and any indebtedness or obligations incurred or assumed by any of the Debtors during the Chapter 11 Cases; and (b) any payment to be made under this Plan to cure a default under an assumed, or assumed and assigned, executory contract or unexpired lease.

---

[2]     All capitalized terms used but not defined herein have the meanings set forth in Article I.

**1.5**    ***Allowed*** means, with respect to a Claim or Interest under this Plan, a Claim or Interest that is an Allowed Claim or an Allowed _____ Claim or an Allowed Interest.

**1.6**    ***Allowed Claim or Allowed _____ Claim*** (with respect to a specific type of Claim, if specified) means: (a) any Claim (or a portion thereof) as to which no action to dispute, disallow, deny or otherwise limit recovery with respect thereto, or alter the priority thereof (including a claim objection), has been timely commenced within the applicable period of limitation fixed by this Plan or applicable law, or, if an action to dispute, disallow, deny, equitably subordinate or otherwise limit recovery with respect thereto, or alter priority thereof, has been timely commenced, to the extent such Claim has been allowed (whether in whole or in part) by a Final Order of a court of competent jurisdiction with respect to the subject matter; or (b) any Claim or portion thereof that is allowed (i) in any contract, instrument, or other agreement entered into in connection with the Plan, (ii) pursuant to the terms of the Plan, (iii) by Final Order of the Bankruptcy Court, or (iv) with respect to an Administrative Expense Claim only (x) that was incurred by a Debtor in the ordinary course of business during the Chapter 11 Cases to the extent due and owing without defense, offset, recoupment or counterclaim of any kind, and (y) that is not otherwise disputed.

**1.7**    ***Amended Constituent Documents*** means, on or after the Effective Date, collectively, the amended and restated by-laws or similar governing document and the amended and restated certificate of incorporation or other formation document of each Debtor, each in form and substance reasonably acceptable to the Debtors and the Majority Ad Hoc Group.  Forms of the Amended Constituent Documents will be filed as part of the Plan Supplement.

**1.8**    ***Applicable Credit Agreements*** has the meaning set forth in Section 9.6.

**1.9**    ***Avoidance Actions*** means any and all avoidance, recovery, subordination or other claims, actions or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, 547 through and including 553 and 724(a) of the Bankruptcy Code.

**1.10**    ***Ballot*** means the form approved by the Bankruptcy Court and distributed to holders of impaired Claims entitled to vote on the Plan to be used to indicate (i) their acceptance or rejection of the Plan, and (ii) their acceptance or rejection of the releases under the Plan pursuant to Section 12.6 of this Plan.

**1.11**    ***Bankruptcy Code*** means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

**1.12**    ***Bankruptcy Court*** means the United States Bankruptcy Court for the District of Delaware, or any other court exercising competent jurisdiction over the Chapter 11 Cases or any proceeding therein.

**1.13**    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court of the United States under section 2075 of title 28 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases, and any local rules of the Bankruptcy Court.

**1.14**    ***Bar Date*** means any deadline for filing proofs of Claim, including Claims arising prior to the Petition Date and Administrative Expense Claims, as established by an order of the Bankruptcy Court or under the Plan.

**1.15**    ***Bidding Procedures Order*** means the *Order (I) Approving Bidding Procedures for Sale of Debtors' Assets, (II) Authorizing the Selection of a Stalking Horse Bidder, (III) Approving Bid Protections, (IV) Scheduling Auction for, and Hearing to Approve, Sale of Debtors' Assets, (V) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing, (VI) Approving Assumption and Assignment Procedures, and (VII) Granting Related Relief* [Docket No. 324].

**1.16**    ***Business Day*** means any day other than a Saturday, Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

**1.17**    ***Carve-Out*** has the meaning set forth in the Final DIP Order.

**1.18**    ***Cash*** means the legal currency of the United States and equivalents thereof.

**1.19**    ***Causes of Action*** means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise.  Causes of Action also include: (i) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (ii) the right to object to or otherwise contest Claims or equity interests; (iii) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (iv) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

**1.20**    ***CCPN Sale*** means a sale of the Debtors' Corpus Christi pipeline network assets to Kinder Morgan Tejas Pipeline LLC in accordance with the CCPN Sale Order.

**1.21**    ***CCPN Sale Order*** means the *Order (A) Approving Sale of Debtors' Corpus Christi Pipeline Network Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 596].

**1.22**    ***Chapter 11 Cases*** means the jointly-administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the Petition Date in the Bankruptcy Court and captioned *In re Southcross Energy Partners, L.P., et al*, Case No. 19-10702 (MFW) (Jointly Administered).

**1.23**    ***Claim*** means any "claim" as defined in section 101(5) of the Bankruptcy Code against any Debtor or property of any Debtor, including any Claim arising after the Petition Date.

**1.24**   ***Claims Agent*** means Kurtzman Carson Consultants LLC, or any other entity approved by the Bankruptcy Court to act as the Debtors' claims and noticing agent pursuant to 28 U.S.C. §156(c).

**1.25**   ***Claims Objection Deadline*** means 11:59 p.m. (prevailing Eastern Time) on the 365th calendar day after the Effective Date, subject to further extensions and/or exceptions as may be ordered by the Bankruptcy Court.

**1.26**   ***Class*** means each category of Claims or Interests established under Article IV of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**1.27**   ***Collateral*** means any property or interest in property of the Estates subject to a Lien to secure the payment or performance of a Claim, which Lien has not been avoided or is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.28**   ***Confirmation Date*** means the date on which the Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

**1.29**   ***Confirmation Hearing*** means a hearing to be held by the Bankruptcy Court regarding confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**1.30**   ***Confirmation Order*** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code which shall be in form and substance reasonably acceptable to the Debtors and the Majority Ad Hoc Group.

**1.31**   ***Credit Bid Consideration*** means, if the Credit Bid Transaction is implemented, the Roll-Up DIP Claims, Prepetition Revolving Credit Facility Claims, and Prepetition Term Loan Claims, which the Credit Bid Required Lenders shall have directed the DIP Agent and Prepetition Agents, as applicable, to credit bid in exchange for the transfer of all or substantially all of the Debtors' assets to NewCo.

**1.32**   ***Credit Bid Parties*** means the Credit Bid Required Lenders, the DIP Agent, and the Prepetition Agents.

**1.33**   ***Credit Bid Required Lenders*** means the "Required Lenders" under and as defined in the DIP Credit Agreement, the "Required Lenders" under and as defined in the Prepetition Revolving Credit Facility Agreement, and the "Required Lenders" under and as defined in the Prepetition Term Loan Agreement.

**1.34**   ***Credit Bid Transaction*** means a transfer of all or substantially all of the Debtors' assets to NewCo, in accordance with Section 7.3 herein, pursuant to the Credit Bid Transaction Agreement in exchange for the Credit Bid Consideration and as approved by the Confirmation Order.

**1.35**   ***Credit Bid Transaction Agreement*** means that certain transaction agreement by and among the Debtors and NewCo, which shall be filed prior to the commencement of the Confirmation Hearing if the Credit Bid Transaction is implemented.

**1.36**    *Cure Amount* has the meaning set forth in Section 10.3(a) of this Plan.

**1.37**    *Cure Dispute* has the meaning set forth in Section 10.3(c) of this Plan.

**1.38**    *Cure Notice* means the Potential Assumption and Assignment Notice, the Supplemental Assumption and Assignment Notice, the Second Supplemental Notice, and the Third Supplemental Notice, individually or collectively as the context requires (including any amendment or update to each of the foregoing).

**1.39**    *Cure Schedule* has the meaning set forth in Section 10.3(b) of this Plan.

**1.40**    *D&O Liability Insurance Policies* means all insurance policies for directors', managers' and officers' liability (including employment practices liability and fiduciary liability) maintained by the Debtors prior to the Effective Date, including as such policies may extend to employees, and any such policies that are "tail" policies.

**1.41**    *Debtor(s)* means, individually or collectively, as the context requires, (a) prior to the Effective Date, Southcross Energy Partners, L.P., and each of its affiliated debtors and debtors in possession in the Chapter 11 Cases listed on Exhibit A hereto, and (b) on and following the Effective Date, the Reorganized Debtors, including after giving effect to the Credit Bid Transaction, if implemented.

**1.42**    *Debtors' Case Information Website* has the meaning set forth in Article I, Section C.

**1.43**    *DIP Agent* means Wilmington Trust, National Association, solely in its capacity as administrative and collateral agent in connection with the DIP Facility.

**1.44**    *DIP Agent Fee Claim* means any Claim, to the extent not previously paid, for fees, expenses, costs and other charges incurred prior to the Effective Date of the DIP Agent to the extent payable under the Final DIP Order, the DIP Credit Agreement or this Plan, including, without limitation, reasonable and documented fees and expenses of the professionals retained by the DIP Agent, which Claims shall be Allowed on the Effective Date.

**1.45**    *DIP Borrower* means Southcross Energy Partners, L.P. as debtor and debtor-in-possession.

**1.46**    *DIP Claim* means all Claims of the DIP Agent and/or the DIP Lenders related to, arising under, or in connection with the Final DIP Order and the DIP Credit Agreement, including any DIP Agent Fee Claim, the New Money DIP Claims and the Roll-Up DIP Claims.

**1.47**    *DIP Credit Agreement* means the Senior Secured Superpriority Priming Debtor-in-Possession Credit Agreement dated as of April 3, 2019, among the DIP Borrower, the DIP Lenders, the letters of credit issuing banks party thereto, and the DIP Agent, as the same has been or may be modified and amended from time to time, in accordance with the terms thereof.

**1.48**    *DIP Facility* means the debtor-in-possession credit facility provided to the Debtors by the DIP Lenders pursuant to the DIP Credit Agreement, including the DIP LC Loans, the DIP Roll-Up Loans, and the DIP Term Loans.

**1.49**   ***DIP LC Loans*** means the letter of credit term loans in the original aggregate principal amount of up to $55 million, the proceeds of which were used to cash collateralize letters of credit issued (or deemed issued) under the letter of credit sub-facility in an aggregate amount of up to approximately $53.4 million pursuant to the DIP Credit Agreement.

**1.50**   ***DIP Lenders*** means those certain lenders party from time to time to the DIP Credit Agreement.

**1.51**   ***DIP Roll-Up Loans*** means the roll-up term loans in the original aggregate principal amount of $127.5 million used to refinance dollar-for-dollar the Prepetition Term Loans held by the DIP Lenders or their affiliates pursuant to the DIP Credit Agreement.

**1.52**   ***DIP Term Loans*** means the new money term loans in the original aggregate principal amount of $72.5 million pursuant to the DIP Credit Agreement.

**1.53**   ***Disallowed*** means a finding or conclusion of law of the Bankruptcy Court in a Final Order, or provision in this Plan or the Confirmation Order, disallowing a Claim.

**1.54**   ***Disbursing Agent*** means, as applicable, the Debtors or the entity designated by the Debtors to distribute the Plan Consideration.

**1.55**   ***Disclosure Statement*** means the *Disclosure Statement for Chapter 11 Plan for Southcross Energy Partners L.P. and its Affiliated Debtors [D.I. 677],* as supplemented by the *Disclosure Statement Supplement for First Amended Chapter 11 Plan for Southcross Energy Partners L.P. and its Affiliated Debtors* approved by the Bankruptcy Court pursuant to the *Order (I) Approving the Debtors' Continued Solicitation of the Amended Chapter 11 Plan, (II) Approving the Adequacy of the Disclosure Statement Supplement in Connection With the Amended Chapter 11 Plan, (III) Establishing Certain Deadlines and Procedures in Connection With Confirmation of the Amended Chapter 11 Plan, and (IV) Granting Related Relief* [D.I. 814], including all exhibits and schedules annexed thereto or referred to therein (in each case, as it or they may be amended, modified, or supplemented from time to time).

**1.56**   ***Disclosure Statement Hearing*** means a hearing held by the Bankruptcy Court to consider approval of the Disclosure Statement as containing adequate information as required by section 1125 of the Bankruptcy Code, as the same may be adjourned or continued from time to time.

**1.57**   ***Disclosure Statement Order*** means an order of the Bankruptcy Court approving the Disclosure Statement as having adequate information in accordance with section 1125 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the Debtors and the Majority Ad Hoc Group.

**1.58**   ***Disputed*** means, with respect to a Claim or Interest, that portion (including, when appropriate, the whole) of such Claim or Interest that: (a) (i) has not been scheduled by the Debtors in their Schedules, or has been scheduled in a lesser amount or different priority than the amount or priority asserted by the holder of such Claim or Interest, or (ii) has been scheduled as contingent, unliquidated or disputed and for which no proof of claim has been timely filed; (b) is the subject of an objection or request for estimation filed in the Bankruptcy Court which has not been withdrawn or overruled by a Final Order; and/or (c) is otherwise disputed by any of the

Debtors in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled by Final Order.

**1.59**    ***Distribution Date*** means the Effective Date or as soon as reasonably practicable thereafter.

**1.60**    ***Distribution Record Date*** means, with respect to all Classes for which Plan Distributions are to be made, the Confirmation Date.

**1.61**    ***Effective Date*** means the date specified by the Debtors in a notice filed with the Bankruptcy Court as the date on which the Plan shall take effect, which date shall be the first Business Day on which all of the conditions set forth in Section 11.1 of this Plan have been satisfied or waived in accordance with the terms hereof and no stay of the Confirmation Order is in effect.

**1.62**    ***Employee Protection Plan*** means that certain severance plan maintained by the Debtors, for the benefit of, and with respect to, all of their employees adopted by the Debtors on March 1, 2017 (as may be amended, restated, supplemented, or modified from time to time prior to the Effective Date with the consent of the Majority Ad Hoc Group (it being understood that the Majority Ad Hoc Group has consented to the payments disclosed to the Ad Hoc Group prior to the date hereof under the Employee Protection Plan to those eligible employees of the Debtors working at the Debtors' Dallas location)).

**1.63**    ***Entity*** shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

**1.64**    ***Estate*** means each estate created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

**1.65**    ***Estimation Order*** means an order or orders of the Bankruptcy Court estimating for voting and/or distribution purposes (under section 502(c) of the Bankruptcy Code) the allowed amount of any Claim.  The defined term Estimation Order includes the Confirmation Order if the Confirmation Order grants the same relief that would have been granted in a separate Estimation Order.

**1.66**    ***Exculpated Parties*** means, collectively, solely in their capacity as such, the Debtors, and their respective subsidiaries, affiliates, current and former officers and directors, principals, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and all other retained Professional Persons.

**1.67**    ***Exit Financing Motion*** means the Debtors' *Motion For Entry of an Order (I) Authorizing Entry Into the Exit Financing Commitment Letter, (II) Approving Alternate Transaction Fee, and (III) Granting Related Relief* [D.I. 769], including all exhibits and schedules annexed thereto or referred to therein (in each case, as it or they may be amended, modified, or supplemented from time to time).

**1.68**    ***Existing Interests*** means all existing Interests (other than Intercompany Interests) that are outstanding immediately prior to the Effective Date.

**1.69**    ***Exit Credit Facility*** means up to $65,000,000 in first lien secured credit facilities with a sublimit of up to $35,000,000 for letters of credit made pursuant to the Exit Credit Facility Agreement, or such other amounts as agreed to by the Debtors and the Majority Ad Hoc Group.

**1.70**    ***Exit Credit Facility Agent*** means the entity that serves as the administrative, collateral, and/or other agent under the Exit Credit Facility.

**1.71**    ***Exit Credit Facility Agreement*** means that certain revolving credit agreement (as amended, modified or supplemented from time to time) in respect of the Exit Credit Facility, among Reorganized Southcross as borrower, and the other Debtors except Southcross Energy Partners, GP, LLC, as guarantors, the Exit Credit Facility Agent and the lenders party thereto.

**1.72**    ***Exit Credit Facility Documents*** means the Exit Credit Facility Agreement and all other related agreements, notes, certificates, documents, and instruments, and all exhibits, schedules, and annexes thereto entered into in connection with the Exit Credit Facility Agreement to be executed or delivered in connection therewith, with terms and conditions reasonably acceptable to the Debtors and the Majority Ad Hoc Group (in each case, as amended, modified, or supplemented from time to time).

**1.73**    ***Fee Escrow Account*** means an interest-bearing account in an amount equal to the total estimated amount of unpaid Professional Fee Claims and funded by the Debtors on the Effective Date.

**1.74**    ***Final DIP Order*** means that *Final Order, Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, 364, 503, 506, and 507, (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Post-Petition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [Docket No. 200], entered by the Bankruptcy Court on May 7, 2019.

**1.75**    ***Final Order*** means an order, ruling or judgment of the Bankruptcy Court or in the applicable court of competent jurisdiction that has been entered on the docket in the Chapter 11 Cases, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing shall then be pending or (ii) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided, that no order or judgment shall fail to be a Final Order solely because of the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure has been or may be filed with respect to such order or judgment; provided, further, that no order or judgment shall fail to be a Final Order solely because of the susceptibility of a Claim to a challenge under section 502(j) of the Bankruptcy Code.

**1.76**   ***General Unsecured Claim*** means any Claim other than: (a) a DIP Claim; (b) an Ad Hoc Group Fee Claim; (c) a Prepetition Lender Fee Claim; (d) a Prepetition Agent Fee Claim; (e) a Professional Fee Claim; (f) U.S. Trustee Fees; (g) a Priority Tax Claim; (h) a Prepetition Revolving Credit Facility Claim; (i) a Prepetition Term Loan Claim; (j) an Other Secured Claim; (k) an Administrative Expense Claim; (l) an Intercompany Claim; (m) a Priority Non-Tax Claim; (n) a Sponsor Note Claim; and (o) a Subordinated Claim.

**1.77**   ***Governmental Unit*** means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

**1.78**   ***Impaired*** means, when used in reference to a Class, any Class that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.79**   ***Implementation Memorandum*** means the memorandum describing the sequencing of the actions, transfers and other corporate and other transactions making up, or otherwise to be effectuated pursuant to, the Plan and the Plan Documents.  A substantially final form of the Implementation Memorandum, in form and substance reasonably acceptable to the Debtors and the Majority Ad Hoc Group, will be contained in the Plan Supplement.

**1.80**   ***Indemnification Obligations*** means any obligation of any Debtor to indemnify directors, officers or employees of any of the Debtors who served in such capacity and were employed on or after January 1, 2019 with respect to or based upon any act or omission taken or omitted in any of such capacities, or for or on behalf of any Debtor, whether pursuant to agreement, the Debtors' respective articles or certificates of incorporation, corporate charters, bylaws, operating agreements, limited liability company agreements, or similar corporate or other documents or other applicable contract or law in effect as of the Effective Date*.*

**1.81**   ***Intercompany Claim*** means any Claim, Cause of Action, or remedy held by or asserted against a Debtor or a non-Debtor direct or indirect subsidiary of a Debtor by (a) another Debtor, or (b) a non-Debtor direct or indirect subsidiary of a Debtor.

**1.82**   ***Intercompany Interest*** means any Interest held by a Debtor or a non-Debtor direct or indirect subsidiary of a Debtor in another Debtor or a non-Debtor direct or indirect subsidiary of a Debtor, other than an Existing Interest.

**1.83**   ***Interest*** means the interest (whether legal, equitable, contractual or otherwise) of any holders of any class of equity securities of any of the Debtors, represented by shares of common or preferred stock, limited partnership interests or other instruments evidencing an ownership interest in any of the Debtors, whether or not certificated, transferable, voting or denominated "stock" or a similar security, or any option, warrant or right, contractual or otherwise, to acquire any such interest.

**1.84**   ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

**1.85**   ***Majority Ad Hoc Group*** means members of the Ad Hoc Group holding at least a majority in principal amount of the aggregate of New Money DIP Claims, Roll-Up DIP Claims, Prepetition Term Loan Claims, and Prepetition Revolving Credit Facility Claims that are held by members of the Ad Hoc Group.

**1.86**    *MS/AL Sale* means the sale of the Debtors' assets in Mississippi and Alabama to Magnolia Infrastructure Holdings, LLC in accordance with the MS/AL Sale Order.

**1.87**    *MS/AL Sale Order* means the *Order (A) Approving Sale of Debtors' Mississippi and Alabama Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 595].

**1.88**    *New Board* means either (a) if the Credit Bid Transaction is not implemented, the board of managers (or similar governing body) of Reorganized Southcross appointed pursuant to Section 7.9 of this Plan, or (b) if the Credit Bid Transaction is implemented, the board of managers (or similar governing body) of NewCo.

**1.89**    *NewCo* means, if the Credit Bid Transaction is implemented, one or more Delaware limited liability companies formed or caused to be formed by the Credit Bid Parties prior to the Effective Date.

**1.90**    *New Common Units* means either (a) if the Credit Bid Transaction is not implemented, new limited liability company interests in Reorganized Southcross, or (b) if the Credit Bid Transaction is implemented, new limited liability company interests in NewCo.

**1.91**    *New Common Units Plan Value* means the value of New Common Units as of the Effective Date of $1.00[3] per share (or such other value as agreed to by the Debtors and the Majority Ad Hoc Group).

**1.92**    *New LLC Agreement* means the limited liability company agreement of (a) if the Credit Bid Transaction is not implemented, Reorganized Southcross (including all exhibits, schedules, and annexes thereto), which shall be substantially in the form to be included in the Plan Supplement, or (b) if the Credit Bid Transaction is implemented, NewCo.

**1.93**    *New Money DIP Claim* means a Claim of the DIP Lenders in respect of the obligations of the Debtors arising under or relating to the DIP Term Loans and the DIP LC Loans pursuant to the DIP Credit Agreement.

**1.94**    *New Preferred Units* means the New Series A Preferred Units and New Series B Preferred Units.

**1.95**    *New Series A Preferred Units* means either (a) if the Credit Bid Transaction is not implemented, new limited liability company interests in Reorganized Southcross having an aggregate initial liquidation preference of approximately $152,658,325, or (b) if the Credit Bid Transaction is implemented, new limited liability company interests in NewCo having an aggregate initial liquidation preference equal to $152,658,325 and, in each case, designated as "Series A Preferred Units" under the New LLC Agreement.

---

[3] This value is based on the issuance of 22,278,242 New Common Units and an Oversubscription Payment (as defined below) of $28.5 million (in the form of New Series B Preferred Units).

**1.96**    *New Series B Preferred Units* means either (a) if the Credit Bid Transaction is not implemented, new limited liability company interests in Reorganized Southcross having an aggregate initial liquidation preference to be determined in accordance with the terms of the Exit Credit Facility, or (b) if the Credit Bid Transaction is implemented, new limited liability company interests in NewCo having an aggregate initial liquidation preference to be determined in accordance with the terms of the Exit Credit Facility, which, in each case, shall be distributed to those lenders under the Exit Credit Facility who are entitled to an Upfront Payment, Oversubscription Payment, or Alternate Transaction Fee (each such term as defined in the term sheet attached as Exhibit A to the Exit Financing Motion and designated as "Series B Preferred Units" under the New LLC Agreement).

**1.97**    *New Preferred Units Plan Value* means the per share initial liquidation preference (or such other value as agreed to by the Debtors and the Majority Ad Hoc Group) of New Series A Preferred Units or New Series B Preferred Units, as applicable, as of the Effective Date.

**1.98**    *Other Secured Claim* means any Secured Claim against a Debtor other than a DIP Claim, a Prepetition Term Loan Claim and Prepetition Revolving Credit Facility Claim.

**1.99**    *Person* means any individual, corporation, partnership, association, indenture trustee, limited liability company, cooperative, organization, joint stock company, joint venture, estate, fund, trust, unincorporated organization, Governmental Unit or any political subdivision thereof, or any other entity or organization of whatever nature.

**1.100**    *Petition Date* means April 1, 2019.

**1.101**    *Plan* means this joint chapter 11 plan proposed by the Debtors, including the Plan Supplement, all applicable exhibits, supplements, appendices and schedules hereto and to the Plan Supplement, either in its present form or as the same may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the terms hereof.

**1.102**    *Plan Consideration* means, with respect to any Class of Claims entitled to distributions under this Plan, one or more of Cash, New Common Units, or New Preferred Units.

**1.103**    *Plan Distribution* means the distribution of Plan Consideration under the Plan.

**1.104**    *Plan Documents* means the applicable documents, other than the Plan, to be executed, delivered, assumed, and/or performed in connection with the consummation of the Plan, including the Exit Credit Facility Documents, New Common Units, New Preferred Units, the Credit Bid Transaction Agreement (if applicable), the documents to be included in the Plan Supplement and any and all exhibits to the Plan and the Disclosure Statement, each of which shall be in form and substance reasonably acceptable to the Debtors and the Majority Ad Hoc Group.

**1.105**    *Plan Supplement* means the supplemental appendix to this Plan (as may be amended, modified and/or supplemented) which the Debtors shall file by January 9, 2020 (provided that the Debtors may amend, supplement, or otherwise modify the Plan Supplement prior to the Confirmation Hearing and/or in accordance with the Plan), which may contain, among other

things, draft forms, signed copies, or summaries of material terms, as the case may be, of the following: (a) Amended Constituent Documents; (b) the list of proposed officers and directors of the Reorganized Debtors (or NewCo, in the event the Credit Bid Transaction is implemented); (c) the Schedule of Rejected Contracts and Leases; (d) the Exit Credit Facility Agreement; (e) a list containing the compensation arrangement for any insider of the Debtors who will be an officer of a Reorganized Debtor (or NewCo, in the event the Credit Bid Transaction is implemented); (f) the Implementation Memorandum; (g) the New LLC Agreement; and (h) any additional documents filed with the Bankruptcy Court before the Effective Date as additional Plan Documents and/or amendments to the Plan Supplement, each of which shall be in form and substance reasonably acceptable to the Debtors and the Majority Ad Hoc Group; *provided*, *however*, that the Schedule of Rejected Contracts and Leases shall be filed no later than five business days prior to the objection deadline with respect to confirmation of the Plan and shall be subject to the terms and conditions set forth in Section 10.1 of the Plan.

**1.106** *Potential Assumption and Assignment Notice* has the meaning set forth in the Second Supplemental Notice.

**1.107** *Prepetition Agent Fee Claim* means any Claim, to the extent not previously paid, for fees, expenses, costs and other charges, incurred prior to the Effective Date, of the Prepetition Term Loan Agent or the Prepetition Revolving Credit Facility Agent (limited, in the case of the advisors to the Prepetition Term Loan Agent, Arnold & Porter Kaye Scholer LLP, and in the case of the Prepetition Revolving Credit Facility Agent, to Arnold & Porter Kaye Scholer LLP) to the extent payable under the Final DIP Order, the DIP Credit Agreement or this Plan, which Claims shall be Allowed on the Effective Date.

**1.108** *Prepetition Agents* means the Prepetition Revolving Credit Facility Agent and the Prepetition Term Loan Agent.

**1.109** *Prepetition Lender Fee Claim* means any Claim, to the extent not previously paid, for fees, expenses, costs and other charges, incurred prior to the Effective Date of the Prepetition Term Loan Lenders, the Prepetition Term Loan Agent, the Prepetition Revolving Credit Facility Lenders, and the Prepetition Revolving Credit Facility Agent to the extent payable under the Final DIP Order, the DIP Credit Agreement or this Plan, which Claim shall be Allowed on the Effective Date.

**1.110** *Prepetition Revolving Credit Facility* means the $115,000,000.00 credit facility with a sublimit of $50,000,000.00 for letters of credit made pursuant to the Prepetition Revolving Credit Facility Agreement.

**1.111** *Prepetition Revolving Credit Facility Agent* means Wilmington Trust, National Association, or its successors and assigns, in its capacity as administrative agent for the Prepetition Revolving Credit Facility under the Prepetition Revolving Credit Facility Agreement.

**1.112** *Prepetition Revolving Credit Facility Agreement* means the Third Amended and Restated Revolving Credit Agreement dated as of August 4, 2014 (as amended, modified or supplemented from time to time), among Southcross Energy Partners, L.P., as borrower, and the other Debtors except Southcross Energy Partners, G.P., as guarantors, the Prepetition Revolving

Credit Facility Agent and the Prepetition Revolving Credit Facility Lenders, including all agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith (in each case, as amended, modified or supplemented from time to time).

**1.113** ***Prepetition Revolving Credit Facility Claim*** means any Claim arising under the Prepetition Revolving Credit Facility and the Prepetition Revolving Credit Facility Agreement.

**1.114** ***Prepetition Revolving Credit Facility Lender*** means any lender and any Participant (as defined in the Prepetition Revolving Credit Facility) under the Prepetition Revolving Credit Facility pursuant to the Prepetition Revolving Credit Facility Agreement, and its successors and assigns.

**1.115** ***Prepetition Revolving Credit Facility New Common Units Distribution*** means 15.6% of the New Common Units, subject to dilution in connection with any management incentive plan that may be adopted by the New Board in accordance with Section 7.4 of this Plan.

**1.116** ***Prepetition Revolving Credit Facility New Preferred Units Distribution*** means 15.6% of the New Series A Preferred Units.

**1.117** ***Prepetition Term Loan*** means the term loan in the original aggregate principal amount of $429,140,515.29 made pursuant to the Prepetition Term Loan Agreement.

**1.118** ***Prepetition Term Loan Agent*** means Wilmington Trust, National Association, or its successors and assigns, in its capacity as administrative agent for the Prepetition Term Loan Lenders under the Prepetition Term Loan Agreement.

**1.119** ***Prepetition Term Loan Agreement*** means the Term Loan Agreement, dated as of August 4, 2014 (as amended, modified or supplemented from time to time), among Southcross Energy Partners, L.P., as borrower, and the other Debtors except Southcross Energy Partners, G.P., as guarantors, the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders, including all agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith (in each case, as amended, modified or supplemented from time to time).

**1.120** ***Prepetition Term Loan Claim*** means any Claim arising under the Prepetition Term Loan and the Prepetition Term Loan Agreement.  The Prepetition Term Loan Claims are Allowed Claims under the Plan.  For the avoidance of doubt, the Roll-Up DIP Claims are not Prepetition Term Loan Claims.

**1.121** ***Prepetition Term Loan Lender*** means any lender and any Participant (as defined in the Prepetition Term Loan Agreement) under the Prepetition Term Loan Facility pursuant to the Prepetition Term Loan Agreement, and its successors and assigns.

**1.122** ***Prepetition Term Loan New Common Units Distribution*** means 84.4% of the New Common Units, subject to dilution in connection with any management incentive plan that may be adopted by the New Board in accordance with Section 7.4 of this Plan.

**1.123**  *Priority Non-Tax Claim* means any Claim, other than an Administrative Expense Claim, a Professional Fee Claim, an Ad Hoc Group Fee Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

**1.124**  *Priority Tax Claim* means any Claim of a Governmental Unit of the kind entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.125**  *Pro Rata Share* means with respect to any distribution on account of an Allowed Claim, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in its Class.

**1.126**  *Professional Fee Claims* means an administrative expense claim of a Professional Person against any Debtor for compensation for services rendered or reimbursement of costs, expenses or other charges and disbursements incurred during the period from the Petition Date up to, and including, the Confirmation Date.

**1.127**  *Professional Person(s)* means all Persons retained by order of the Bankruptcy Court in connection with the Chapter 11 Cases, pursuant to sections 327 or 328 of the Bankruptcy Code, excluding any ordinary course professionals retained pursuant to an order of the Bankruptcy Court or otherwise.

**1.128**  *Proposed Assumption and Assignment Notice* has the meaning set forth in the Bidding Procedures Order.

**1.129**  *Released Parties* means each of the following in their capacity as such: (a) each member of the Ad Hoc Group; (b) the Prepetition Term Loan Lenders; (c) the Prepetition Revolving Credit Facility Lenders; (d) the Prepetition Term Loan Agent; (e) the Prepetition Revolving Credit Facility Agent; (f) the Debtors (for the avoidance of doubt, including the Reorganized Debtors, as applicable); (g) the DIP Agent and DIP Lenders; (h) if the Credit Bid Transaction is consummated, NewCo, and (i) with respect to each of the foregoing Entities in clauses (a) through (h), such party's current and former affiliates and subsidiaries, and such Entities' and their current and former affiliates' and subsidiaries' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; <u>provided</u>, (i) that no Person shall be a Released Party if it (a) opts out of the releases provided for in Article XII hereof through a timely submitted Ballot or (b) rejects or is deemed to reject or deemed to accept the Plan; and (ii) that no equity holder of the Debtors, in such capacity, shall be a Released Party (regardless of whether such interests are held directly or indirectly).

**1.130**  *Releasing Parties* means collectively, (a) each Released Party described in clauses (a), (d), (e), (f), and if the Credit Bid Transaction is consummated, (h) thereof, (b) each holder of a Claim that votes to accept the Plan but does not check the appropriate box on such holder's timely submitted Ballot to indicate that such holder elects to opt out of the release contained in

the Plan, and (c) as to each of the foregoing Entities in clauses (a) and (b) each such Entity's predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds and their current and former officers, directors, managers, partners, principals, shareholders, members, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals (in each case as to the foregoing Entities in clauses (a) and (b) solely in their capacity as such); provided that no equity holder of the Debtors, in such capacity, shall be a Releasing Party (regardless of whether such interests are held directly or indirectly).

**1.131**  *Reorganized Debtor(s)* means the applicable reorganized Debtor(s) or any successors thereto by merger, consolidation or otherwise, on and after the Effective Date, after giving effect to the restructuring transactions occurring on the Effective Date in accordance with this Plan.

**1.132**  *Reorganized Southcross* means Southcross Energy Partners L.P., or any successor thereto by merger, consolidation, or otherwise (for the avoidance of doubt, other than NewCo), on and after the Effective Date, which, for the avoidance of doubt, shall be a limited liability company.

**1.133**  *Roll-Up DIP Claim* means any Claim of the DIP Lenders related to, arising under, or in connection with the DIP Roll-Up Loans used to refinance and discharge dollar-for-dollar Prepetition Term Loans.

**1.134**  *Roll-Up DIP New Preferred Units Distribution* means 84.4% of the New Series A Preferred Units.

**1.135**  *Sales* means the CCPN Sale and/or the MS/AL Sale (as appropriate from the context).

**1.136**  *Schedule of Rejected Contracts and Leases* means a schedule of the contracts and leases to be rejected by the Debtors pursuant to section 365 of the Bankruptcy Code and Article X hereof, which will be filed as part of the Plan Supplement, and may be amended from time to time.

**1.137**  *Schedules* means the schedules of assets and liabilities and statements of financial affairs for each Debtor filed in the Chapter 11 Cases, as amended or supplemented from time to time.

**1.138**  *Second Supplemental Notice* means that certain *Second Supplemental Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount* [Docket No. 496] filed by the Debtors on September 23, 2019 in the Chapter 11 Cases.

**1.139**  *Secured Claim* means a Claim: (a) that is secured by a valid, perfected and enforceable Lien on Collateral, to the extent of the value of the Claim holder's interest in such Collateral as of the Confirmation Date; or (b) to the extent that the holder thereof has a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

**1.140**  *Securities Act* means the Securities Act of 1933, as amended.

**1.141**  *Sponsor Note Claims* means any Claim arising under the Sponsor Notes.

**1.142** *Sponsor Notes* means those certain unsecured notes, dated on or about January 22, 2018, issued by Southcross Energy Partners, L.P. and certain other Debtors and held by EIG Energy Fund XIV, L.P., EIG Energy Fund XIV (Cayman), L.P., EIG Energy Fund XIV-A, L.P., EIG Energy Fund XIV-B, L.P., EIG Energy Fund XV, L.P., EIG Energy Fund XV (Cayman), L.P., EIG Energy Fund XV-A, L.P., EIG Energy Fund XV-B, L.P., TW Southcross Sidecar II LP, and TW Southcross Sidecar II (N-QP) LP.

**1.143** *STIP* means the Debtors' annual short-term incentive performance plan adopted by the Debtors prior to the Petition Date (which may not be amended, restated, supplemented or modified without the consent of the Majority Ad Hoc Group).

**1.144** *Subordinated Claim* means any Claim against a Debtor that is subordinated pursuant to Bankruptcy Code section 510 or other applicable law.

**1.145** *Subsidiary* means any corporation, association or other business entity of which at least the majority of the securities or other ownership interest is owned or controlled by a Debtor and/or one or more subsidiaries of the Debtor.

**1.146** *Supplemental Assumption and Assignment Notice* has the meaning set forth in the Second Supplemental Notice.

**1.147** *Third Supplemental Notice* means the *Third Supplemental Notice Of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amount* [Docket No. 705].

**1.148** *Transaction* means the financial restructuring concerning or impacting the Debtors' indebtedness and other obligations as reflected in this Plan.

**1.149** *Unimpaired* means any Claim or Interest that is not Impaired.

**1.150** *U.S. Trustee* means the United States Trustee for the District of Delaware.

**1.151** *U.S. Trustee Fees* means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

**1.152** *Wind Down Budget* means, in the event that the Credit Bid Transaction is implemented, sufficient Cash to pay all Allowed Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, professional fees and expenses, U.S. Trustee Fees, and such other expenses necessary to wind down the Debtors' estates on a reasonable and appropriate timeline, as agreed to by the Debtors and the Credit Bid Required Lenders and as approved by the Bankruptcy Court (unless otherwise agreed to by the Debtors and the Credit Bid Required Lenders). For the avoidance of doubt, if there is any dispute among the Debtors and the Credit Bid Required Lenders regarding the Wind Down Budget, such dispute shall be resolved by the Bankruptcy Court.

### B. Interpretation; Application of Definitions and Rules of Construction.

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural. Whenever this Plan uses the term "including," such reference will be deemed to mean "including, without limitation." Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. Except for section 102(5) of the Bankruptcy Code, the rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan. The captions and headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns.

### C. Appendices and Plan Documents.

All Plan Documents and appendices to the Plan are incorporated into the Plan by reference and are a part of the Plan as if set forth in full herein. The documents contained in the exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order. Holders of Claims and Interests may inspect a copy of the Plan Documents, once filed, in the Office of the Clerk of the Bankruptcy Court during normal business hours, or via the Claims Agent's website at http://www.kccllc.net/southcrossenergy (the "***Debtors' Case Information Website***") or obtain a copy of any of the Plan Documents by a written request sent to the Claims Agent at the following address:

> Southcross Energy Partners, L.P.,
> c/o Kurtzman Carson Consultants
> 222 N. Pacific Coast Highway, Suite 300
> El Segundo, CA 90245
> Telephone: +1-866-967-0671 (Domestic)
> +1-310-751-2671 (International)

All Plan Documents must be in form and substance reasonably acceptable to the Debtors and the Majority Ad Hoc Group.

### ARTICLE II.
### CERTAIN INTER-CREDITOR AND INTER-DEBTOR ISSUES

**2.1.    [Deleted]**

**2.2.    *Formation of Debtor Groups for Convenience Purposes.***

The Plan is being proposed as a joint plan of reorganization of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan of reorganization for each Debtor. The Plan groups the Debtors together solely for purposes of describing treatment

under the Plan, confirmation of the Plan and making Plan Distributions in respect of Claims against and/or Interests in the Debtors under the Plan.  Such groupings shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, nor cause the transfer of any assets or the assumption of any liabilities; and, except as otherwise provided by or permitted in the Plan, all Debtors shall continue to exist as separate legal entities.

> **2.3.**     *Intercompany Claims and Intercompany Interests.*
>
> (a)     <u>Intercompany Claims</u>.

Notwithstanding anything to the contrary herein, on or after the Effective Date, any and all Intercompany Claims, shall, at the option of the Debtors and subject to the Implementation Memorandum, either be (i) extinguished, canceled, discharged, adjusted and/or otherwise similarly treated or (ii) reinstated and otherwise survive the Debtors' restructuring by virtue of such Intercompany Claims being left unimpaired.  To the extent any Intercompany Claim is reinstated, or otherwise adjusted (including by contribution, distribution in exchange for new debt or equity, or otherwise), paid or continued as of the Effective Date, any such transaction may be effected on or after the Effective Date without any further action by the Bankruptcy Court or by the equity holders of any of the Debtors.

> (b)     <u>Intercompany Interests</u>.

Notwithstanding anything to the contrary herein, except as provided in Section 12.2 of this Plan and subject to the Implementation Memorandum, on or after the Effective Date, any and all Intercompany Interests shall survive the Debtors' restructuring by virtue of such Intercompany Interests being left unimpaired to maintain the existing organizational structure of the Debtors.

### ARTICLE III.
### DIP CLAIMS, ADMINISTRATIVE EXPENSE CLAIMS,
### PROFESSIONAL FEE CLAIMS, U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS

The Plan constitutes a joint chapter 11 plan for all of the Debtors.  All Claims and Interests, except DIP Claims, Administrative Expense Claims, Professional Fee Claims, Ad Hoc Group Fee Claims, Prepetition Lender Fee Claims, Prepetition Agent Fee Claims, U.S. Trustee Fees and Priority Tax Claims, are placed in the Classes set forth in Article IV below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, DIP Claims, Administrative Expense Claims, Professional Fee Claims, U.S. Trustee Fees and Priority Tax Claims have not been classified, and the holders thereof are not entitled to vote on this Plan.  A Claim or Interest is placed in a particular Class only to the extent that such Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code.  However, a Claim or Interest is placed in a particular Class for the

purpose of receiving Plan Distributions only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest and has not been paid, released or otherwise settled prior to the Effective Date.

### 3.1.   *DIP Claims.*

The DIP Claims are Allowed Claims.  On the Effective Date, each holder of an Allowed New Money DIP Claim shall receive Cash in an amount sufficient to provide for the payment in full of such Allowed New Money DIP Claim, in full and final satisfaction, settlement, release and discharge of its Allowed New Money DIP Claim.

On the Effective Date, except to the extent that a holder of an Allowed Roll-Up DIP Claim agrees to less favorable treatment, each holder of an Allowed Roll-Up DIP Claim shall receive, in full and final satisfaction, settlement, release and discharge of its Allowed Roll-Up DIP Claim, its Pro Rata Share of the Roll-Up DIP New Preferred Units Distribution.

### 3.2.   *Administrative Expense Claims.*

(a)   Time for Filing Administrative Expense Claims.

The holder of an Administrative Expense Claim, other than the holder of:

(i)   an Administrative Expense Claim that has been Allowed on or before the Effective Date;

(ii)   an Administrative Expense Claim for an expense or liability incurred and payable in the ordinary course of business by a Debtor;

(iii)   an Administrative Expense Claim on account of fees and expenses incurred on or after the Petition Date by ordinary course professionals retained by the Debtors pursuant to an order of the Bankruptcy Court;

(iv)   a Claim for adequate protection arising under the DIP Order;

(v)   an Intercompany Claim; or

(vi)   a claim for Cure Amounts

(and, for the avoidance of doubt, other than a holder of a Professional Fee Claim, DIP Claim, Ad Hoc Group Fee Claim, or with respect to U.S. Trustee Fees) must file with the Bankruptcy Court and serve on the Debtors, the Claims Agent, and the Office of the U.S. Trustee, proof of such Administrative Expense Claim **within thirty (30) days after the Effective Date** (the "*Administrative Bar Date*").  Such proof of Administrative Expense Claim must include at a minimum: (i) the name of the applicable Debtor that is purported to be liable for the Administrative Expense Claim and if the Administrative Expense Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor; (ii) the name of the

holder of the Administrative Expense Claim; (iii) the asserted amount of the Administrative Expense Claim; (iv) the basis of the Administrative Expense Claim; and (v) supporting documentation for the Administrative Expense Claim. **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT IN SUCH CLAIM BEING FOREVER BARRED AND DISCHARGED. IF FOR ANY REASON ANY SUCH ADMINISTRATIVE CLAIM IS INCAPABLE OF BEING FOREVER BARRED AND DISALLOWED, THEN THE HOLDER OF SUCH CLAIM SHALL IN NO EVENT HAVE RECOURSE TO ANY PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN.** A notice setting forth the Administrative Bar Date will be (i) filed on the Bankruptcy Court's docket and served with the notice of the Effective Date and (ii) posted on the Debtors' Case Information Website. No other notice of the Administrative Bar Date will be provided.

(b)      Treatment of Administrative Expense Claims.

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, or as otherwise expressly provided herein, on the applicable Distribution Date, or as soon thereafter as is reasonably practicable, the holder of such Allowed Administrative Expense Claim shall receive from the applicable Debtor's Cash in an amount equal to such Allowed Claim; provided, however, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by any of the Debtors, as debtors in possession, shall be paid by the applicable Debtor in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents relating to, such liabilities; provided, further, however, in the event the Credit Bid Transaction is consummated, Allowed Administrative Expense Claims that are assumed liabilities under the Credit Bid Transaction Agreement shall be paid by NewCo in the ordinary course of business, consistent with the Debtors' past practice.

The DIP Obligations and any other claims which expressly constitute allowed claims under the Final DIP Order shall be deemed Allowed Administrative Expense Claims to the extent payable under the Final DIP Order, the DIP Credit Agreement or this Plan, without the necessity of filing a proof of claim with respect thereto, and, except as provided in Section 3.1, shall be paid in Cash on the Effective Date or as soon thereafter as is reasonably practicable without the need to file a proof of such Claim with the Bankruptcy Court in accordance with Section 3.2(a) hereof and without further order of the Bankruptcy Court.

**3.3.   *Professional Fee Claims.***

Except to the extent that the applicable holder of an Allowed Professional Fee Claim agrees to less favorable treatment with the Debtors, or as otherwise expressly set forth in this Plan, each holder of a Professional Fee Claim shall be paid in full in Cash pursuant to this Section 3.3. Ad Hoc Group Fee Claims will be paid without (i) the need for the filing of any claim or request for allowance under Section 3.2 or (ii) any further order of the Bankruptcy Court.

(a)    Fee Applications

All requests for payment of Professional Fee Claims must be filed with the Bankruptcy Court by the date that is 60 calendar days after the Confirmation Date; provided that if any Professional Person is unable to file its own request with the Bankruptcy Court, such Professional Person may deliver an original, executed copy and an electronic copy to the Debtors' attorneys and the Debtors at least three Business Days before the deadline, and the Debtors' attorneys shall file such request with the Bankruptcy Court.  The objection deadline relating to a request for payment of Professional Fee Claims shall be 4:00 p.m. (prevailing Eastern Time) on the date that is 30 days after filing such request, and a hearing on such request, if necessary, shall be held no later than 30 calendar days after the objection deadline. Distributions on account of Allowed Professional Fee Claims shall be made as soon as reasonably practicable after such Claims become Allowed.

(b)    Post-Confirmation Date Fees

Upon the Confirmation Date, any requirement that Professional Persons comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay all Professional Persons without any further notice to, action by or order or approval of the Bankruptcy Court or any other party.

(c)    Fee Escrow Account

On or after the Effective Date, the Debtors shall establish and fund the Fee Escrow Account. The Debtors shall fund the Fee Escrow Account with Cash equal to the Debtors' good faith estimate of the Allowed Professional Fee Claims. Funds held in the Fee Escrow Account shall not be considered property of the Debtors' Estates or property of the Debtors, but shall revert to the Debtors (or NewCo, in the event the Credit Bid Transaction is consummated) only after all Allowed Professional Fee Claims have been paid in full.  Fees owing to the applicable holder of an Allowed Professional Fee Claim shall be paid in Cash to such holder from funds held in the Fee Escrow Account when such Claims are Allowed by an order of the Bankruptcy Court or authorized to be paid under the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 191]; provided, that the Debtors' obligations with respect to Allowed Professional Fee Claims shall not be limited by nor deemed limited to the balance of funds held in the Fee Escrow Account. To the extent that funds held in the Fee Escrow Account are insufficient to satisfy the amount of accrued Allowed Professional Fee Claims, the holders of Allowed Professional Fee Claims shall have an Allowed Administrative Expense Claim for any such deficiency, which shall be satisfied in accordance with Section 3.2 of this Plan. No Liens, claims, or interests shall encumber the Fee Escrow Account in any way.

**3.4.    *U.S. Trustee Fees.***

The Debtors shall pay all outstanding U.S. Trustee Fees of a Debtor on an ongoing basis on the date such U.S. Trustee Fees become due, until such time as a final decree is

entered closing the applicable Chapter 11 Case, the applicable Chapter 11 Case is converted or dismissed, or the Bankruptcy Court orders otherwise.

**3.5.** *Priority Tax Claims.*

Except to the extent that the applicable holder of an Allowed Priority Tax Claim has been paid by the Debtors before the Effective Date, or the applicable Debtor and such holder agree to less favorable treatment by the Debtors, each holder of an Allowed Priority Tax Claim shall receive, on account of such Allowed Priority Tax Claim, at the option of the Debtors (a) payment in full in Cash made on or as soon as reasonably practicable after the later of the Effective Date and the first Distribution Date occurring at least 20 calendar days after the date such Claim is Allowed, (b) regular installment payments in accordance with section 1129(a)(9)(C) of the Bankruptcy Code or (c) such other amounts and in such other manner as may be determined by the Bankruptcy Court to provide the holder of such Allowed Priority Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim; provided, that if the Credit Bid Transaction is implemented, Allowed Priority Tax Claims that are assumed liabilities under the Credit Bid Transaction Agreement shall be paid by NewCo, at its option, in one of the foregoing manners provided for in subsections (a) through (c) above.

The Debtors shall have the right, in their sole discretion, to pay any Allowed Priority Tax Claim or any remaining balance of an Allowed Priority Tax Claim (together with accrued but unpaid interest) in full at any time on or after the Effective Date without premium or penalty.

## ARTICLE IV.
## CLASSIFICATION OF CLAIMS AND INTERESTS

**4.1.** *Classification of Claims and Interests.*

The following table designates the Classes of Claims against and Interests in the Debtors, and specifies which Classes are: (a) impaired or unimpaired by this Plan; (b) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code; and (c) presumed to accept or reject this Plan.

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | No | No |
| Class 2 | Other Secured Claims | No | No |
| Class 3 | Prepetition Revolving Credit Facility Claims | Yes | Yes |
| Class 4 | Prepetition Term Loan Claims | Yes | Yes |
| Class 5 | General Unsecured Claims | Yes | No |
| Class 6 | Sponsor Note Claims | Yes | No |
| Class 7 | Subordinated Claims | Yes | No |
| Class 8 | Existing Interests | Yes | No |

If a controversy arises regarding whether any Claim is properly classified under the Plan, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing.  If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

**4.2.**    *Unimpaired Classes of Claims.*

The following Classes of Claims are unimpaired and, therefore, deemed to have accepted this Plan and are not entitled to vote on this Plan under section 1126(f) of the Bankruptcy Code:

(a)    Class 1: Class 1 consists of all Priority Non-Tax Claims.

(b)    Class 2: Class 2 consists of all Other Secured Claims.

**4.3.**    *Impaired Classes of Claims.*

(a)    The following Classes of Claims are impaired and entitled to vote on this Plan:

(i)    Class 3: Class 3 consists of Prepetition Revolving Credit Facility Claims.

(ii)    Class 4:  Class 4 consists of Prepetition Term Loan Claims.

(b)    The following Classes of Claims and Interests are impaired and deemed to have rejected this Plan and, therefore, are not entitled to vote on this Plan under section 1126(g) of the Bankruptcy Code:

(i)    Class 5: Class 5 consists of General Unsecured Claims.

(ii)    Class 6: Class 6 consists of all Sponsor Note Claims.

(iii)    Class 7: Class 7 consists of all Subordinated Claims.

(iv)    Class 8: Class 8 consists of all Existing Interests.

**4.4.**    *Separate Classification of Other Secured Claims.*

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature, each Other Secured Claim, to the extent secured by a Lien on Collateral different than that securing any additional Other Secured Claims, shall be treated as being in a separate sub-Class for the purpose of receiving Plan Distributions.

## ARTICLE V.
## TREATMENT OF CLAIMS AND INTERESTS

5.1.    *Priority Non-Tax Claims (Class 1).*

(a)    <u>Treatment</u>: The legal, equitable and contractual rights of the holders of Priority Non-Tax Claims are unaltered by this Plan.  Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a different treatment, on the applicable Distribution Date, each holder of an Allowed Priority Non-Tax Claim shall receive Cash from the applicable Debtor in an amount equal to such Allowed Claim; <u>provided</u>, that if the Credit Bid Transaction is implemented, each Allowed Priority Non-Tax Claim that is an assumed liability under the Credit Bid Transaction Agreement shall be paid in Cash by NewCo in an amount equal to such Allowed Priority Non-Tax Claim.

(b)    <u>Voting</u>: The Priority Non-Tax Claims are not impaired Claims.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Priority Non-Tax Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Priority Non-Tax Claims.

5.2.    *Other Secured Claims (Class 2).*

(a)    <u>Treatment</u>: The legal, equitable and contractual rights of the holders of Other Secured Claims are unaltered by this Plan.  Except to the extent that a holder of an Allowed Other Secured Claim agrees to a different treatment, on the applicable Distribution Date, or as soon as reasonably practicable thereafter, each holder of an Allowed Other Secured Claim shall each receive, subject to the terms of the Plan, in full and final satisfaction, settlement, release and discharge of its Allowed Other Secured Claim, at the election of the Debtors:

(i)    Cash in an amount equal to such Allowed Other Secured Claim; or

(ii)    such other treatment that will render such Other Secured Claim unimpaired pursuant to section 1124 of the Bankruptcy Code;

<u>provided</u>, <u>however</u>, that (y) Other Secured Claims incurred by a Debtor in the ordinary course of business may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto, in the discretion of the applicable Debtor without further notice to or order of the Bankruptcy Court, and (z) each Other Secured Claim that is an assumed liability under the Credit Bid Transaction Agreement shall be paid in Cash by NewCo in an amount equal to such Allowed Other Secured Claim.

Each holder of an Allowed Other Secured Claim shall retain the Liens securing its Allowed Other Secured Claim as of the Effective Date until full and final satisfaction of such Allowed Other Secured Claim is made as provided herein.  On the full payment or other satisfaction of each Allowed Other Secured Claim in accordance with the Plan, the Liens securing such Allowed Other Secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or

action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

(b)    Voting: The Other Secured Claims are not impaired Claims.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Other Secured Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Other Secured Claims.

### 5.3.    *Prepetition Revolving Credit Facility Claims (Class 3).*

(a)    Treatment:  The Prepetition Revolving Credit Facility Claims shall be Allowed under the Plan and shall not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection or any other challenges under any applicable law or regulation by any Person.  On the Effective Date, or as soon as reasonably practicable thereafter, each holder of an Allowed Prepetition Revolving Credit Facility Claim shall receive, subject to the terms of the Plan, in full and final satisfaction, settlement, release and discharge of its Allowed Prepetition Revolving Credit Facility Claim, its Pro Rata Share of the Prepetition Revolving Credit Facility New Preferred Units Distribution and the Prepetition Revolving Credit Facility New Common Units Distribution.

(b)    Voting:  The Prepetition Revolving Credit Facility Claims are impaired Claims.  Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such holders will be solicited with respect to such Prepetition Revolving Credit Facility Claims.

### 5.4.    *Prepetition Term Loan Claims (Class 4).*

(a)    Treatment:  The Prepetition Term Loan Claims shall be Allowed under the Plan and shall not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection or any other challenges under any applicable law or regulation by any Person.  On the Effective Date, or as soon as reasonably practicable thereafter, each holder of an Allowed Prepetition Term Loan Claim shall receive, subject to the terms of the Plan, in full and final satisfaction, settlement, release and discharge of its Allowed Prepetition Term Loan Claim, its Pro Rata Share of the Prepetition Term Loan New Common Units Distribution.

(b)    Voting:  The Prepetition Term Loan Claims are impaired Claims.  Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such holders will be solicited with respect to such Prepetition Term Loan Claims.

### 5.5.    *General Unsecured Claims (Class 5).*

(a)    Treatment: Holders of Allowed General Unsecured Claims shall not receive or retain any distribution under the Plan on account of such Allowed General Unsecured Claims.

(b)      Voting: The General Unsecured Claims are impaired Claims.  In accordance with section 1126(g) of the Bankruptcy Code, the holders of General Unsecured Claims are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed General Unsecured Claims.

**5.6.** *Sponsor Note Claims (Class 6).*

(a)      Treatment: Each holder of a Sponsor Note Claim shall not receive or retain any distribution under the Plan on account of such Sponsor Note Claim.

(b)      Voting: The Sponsor Note Claims are impaired Claims.  In accordance with section 1126(g) of the Bankruptcy Code, the holders of Sponsor Note Claims are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Sponsor Note Claims.

**5.7.** *Subordinated Claims (Class 7).*

(a)      Treatment: Each holder of an Allowed Subordinated Claim shall not receive or retain any distribution under the Plan on account of such Subordinated Claim.

(b)      Voting: The Subordinated Claims are impaired Claims.  In accordance with section 1126(g) of the Bankruptcy Code, the holders of Subordinated Claims are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Subordinated Claims.

**5.8.** *Existing Interests (Class 8).*

(a)      Treatment:  Existing Interests shall be discharged, cancelled, released and extinguished, and holders thereof shall not receive or retain any distribution under the Plan on account of such Existing Interests.

(b)      Voting:  The Existing Interests are impaired Interests.  In accordance with section 1126(g) of the Bankruptcy Code, the holders of Existing Interests are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Existing Interests.

**ARTICLE VI.**
**ACCEPTANCE OR REJECTION OF**
**THE PLAN; EFFECT OF REJECTION BY ONE**
**OR MORE CLASSES OF CLAIMS OR INTERESTS**

**6.1.** *Class Acceptance Requirement.*

A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of holders of the Allowed Claims in such Class that have voted on the Plan.

**6.2.** *Tabulation of Votes on a Non-Consolidated Basis.*

All votes on the Plan shall be tabulated on a non-consolidated basis by Class and by Debtor for the purpose of determining whether the Plan satisfies sections 1129(a)(8) and/or (10) of the Bankruptcy Code.  Notwithstanding the foregoing, the Debtors, in consultation with the Majority Ad Hoc Group, reserve the right to seek to substantively consolidate any two or more Debtors; provided, that, such substantive consolidation does not materially and adversely impact the amount of the Plan Distributions to any Person.

**6.3.** *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown."*

Because certain Classes are deemed to have rejected this Plan, the Debtors will request confirmation of this Plan, as it may be modified and amended from time to time, under section 1129(b) of the Bankruptcy Code with respect to such Classes.  Subject to sections 14.3 and 14.4 of this Plan, the Debtors reserve the right, in consultation with the Majority Ad Hoc Group, to revoke or withdraw this Plan or, if reasonably acceptable to the Debtors and the Majority Ad Hoc Group, to alter, amend, or modify this plan or, alter, amend, modify, revoke or withdraw any Plan Document, in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.  Subject to sections 14.3 and 14.4 of this Plan (including the consent and consultation rights set forth therein), the Debtors also reserve the right to request confirmation of the Plan, as it may be modified, supplemented or amended from time to time, with respect to any Class that affirmatively votes to reject the Plan.

**6.4.** *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed as of the date of the deadline for voting to accept or reject the Plan shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan pursuant to section 1129(a)(8) of the Bankruptcy Code.

**6.5.** *Voting Classes; Deemed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class timely vote to accept or reject the Plan, the Plan shall be deemed accepted by such Class.

**6.6.** *Confirmation of All Cases.*

Except as otherwise specified herein, the Plan shall not be deemed to have been confirmed unless and until the Plan has been confirmed as to each of the Debtors; provided, however, that the (i) Debtors, in consultation with the Majority Ad Hoc Group, may at any time waive this section 6.6 and (ii) Debtors, in consultation with the Majority Ad Hoc Group can withdraw the Plan as to one of more Debtors if the Plan is not confirmed as to them.

## ARTICLE VII.
## MEANS FOR IMPLEMENTATION

**7.1.**    *Continued Existence and Vesting of Assets.*

(a)    In the event the Credit Bid Transaction is not implemented and except as otherwise provided in this Plan, the Debtors shall continue to exist after the Effective Date as Reorganized Debtors in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized and pursuant to the Amended Constituent Documents, for the purposes of satisfying their obligations under the Plan and the continuation of their businesses.  On or after the Effective Date, each Reorganized Debtor, in its discretion, may take such action as permitted by applicable law and such Reorganized Debtor's organizational documents, as such Reorganized Debtor may determine is reasonable and appropriate, including causing: (i) a Reorganized Debtor to be merged into another Reorganized Debtor, or its Subsidiary and/or affiliate; (ii) a Reorganized Debtor to be dissolved; (iii) the legal name of a Reorganized Debtor to be changed; or (iv) the closure of a Reorganized Debtor's case on the Effective Date or any time thereafter.  Additionally, on the Effective Date, each recipient of New Common Units and/or New Preferred Units will be deemed to be a party to the New LLC Agreement without the need for execution of the New LLC Agreement by such recipient.

(b)    In the event the Credit Bid Transaction is not implemented and except as otherwise provided in this Plan, on and after the Effective Date all property of the Estates, wherever located, including all claims, rights and Causes of Action, and any property, wherever located, acquired by the Debtors under or in connection with this Plan, shall vest in each respective Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances and Interests.  On and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire and dispose of property, wherever located, and prosecute, compromise or settle any Claims (including any Administrative Expense Claims) and Causes of Action without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by this Plan or the Confirmation Order.  Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur on or after the Effective Date for Professional Persons' fees, disbursements, expenses or related support services without application to the Bankruptcy Court.

(c)    On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions that may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law and any other terms to which the applicable entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, dissolution, or other organizational documents pursuant to applicable state law; and

(4) all other actions that the applicable entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

### 7.2. *Employee Protection Plan and STIP*

As of the Effective Date, the Reorganized Debtors (or, if the Credit Bid Transaction is implemented, NewCo) shall be deemed to have adopted the Employee Protection Plan for all of the Debtors' full-time employees, and the Reorganized Debtors' or NewCo's obligations thereunder shall be deemed incurred as of the Effective Date. For the STIP, the discretionary awards shall be paid on the Effective Date on terms, if any, to be agreed upon by the Debtors and the Majority Ad Hoc Group and included in the Plan Supplement. For the avoidance of doubt, the Bankruptcy Court has not been asked to approve, nor is it approving, either the Employee Protection Plan or STIP.

### 7.3. *Creation of NewCo and Credit Bid Transaction*

In the event that all Roll-Up DIP Lenders do not consent to the treatment set forth in Section 3.1 hereof, the Credit Bid Transaction may be implemented with the agreement of the Debtors and the Majority Ad Hoc Group. In such event, which shall result in substantially the same treatment for all of the Debtors' creditors as they would receive if the Credit Bid Transaction was not implemented, (a) the Debtors shall consummate the Credit Bid Transaction by, among other things, transferring all or substantially all of their assets, other than as necessary to satisfy the New Money DIP Claims, the Carve-Out, and the Wind Down Budget, to NewCo free and clear of all liens, Claims, encumbrances, and other interests pursuant to sections 365 and/or 1123 of the Bankruptcy Code, this Plan, and the Confirmation Order, (b) upon entry of the Confirmation Order by the Bankruptcy Court, all matters provided for under the Credit Bid Transaction Agreement and the Plan with respect to the Credit Bid Transaction, and any documents in connection herewith and therewith, shall be deemed authorized and approved without any requirement of further act or action by the Debtors, the Debtors' interest holders, general partners, limited partners, boards of directors, or any other Person, (c) the Credit Bid Required Lenders and the Debtors will agree to an appropriate Wind Down Budget, and (d) the Debtors shall be authorized to execute and deliver, and to consummate the transactions contemplated by, the Credit Bid Transaction Agreement and this Plan, as well as to execute, deliver, file, record, and issue any note, documents, or agreements in connection therewith, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule, or the vote, consent, authorization, or approval of any Person. Pursuant to the Credit Bid Transaction Agreement, NewCo shall be treated as a partnership for U.S. federal and applicable state and local income tax purposes unless otherwise directed in writing by the Credit Bid Required Lenders, in which case NewCo shall be treated as a corporation for U.S. federal and applicable state and local income tax purposes. If consummated, the Credit Bid Transaction (including the distributions of New Preferred Units and New Common Units in accordance herewith) will represent the settlement, compromise, and satisfaction of the DIP Claims (other than New Money DIP Claims, which will be satisfied in Cash by the Reorganized Debtors), Prepetition Revolving Credit Facility Claims, and Prepetition Term Loan Claims. For the avoidance of doubt, if there is any dispute among the Debtors and the Credit Bid Required Lenders regarding the Wind Down Budget, such dispute shall be resolved by the Bankruptcy Court. Any Carve-Out funds that are unused after satisfaction of all Allowed Claims with

recourse to the Carve-Out shall be transferred by Reorganized Southcross to NewCo as soon as reasonably practicable following satisfaction of all such Claims.

In the event all Roll-UP DIP Lenders do not consent to the treatment set forth in Section 3.1 hereof, and the Bankruptcy Court does not enter the Confirmation Order, this Plan shall be deemed a motion to approve the Credit Bid Transaction, in accordance with Section 7.3 hereof, under sections 105(a), 363, and 365 of the Bankruptcy Code and the applicable Bankruptcy Rules.

### 7.4.    *Issuance of New Common Units and New Preferred Units*

New Common Units shall be issued on the Effective Date and distributed as soon as practicable thereafter in accordance with this Plan. New Preferred Units may be issued on the Effective Date and shall be distributed on the Effective Date or as soon as practicable thereafter in accordance with this Plan. All of the New Common Units and New Preferred Units issuable in accordance with this Plan, if so issued, shall be duly authorized, validly issued, fully paid, and non-assessable. The issuance of the New Common Units and New Preferred Units is authorized without the need for any further corporate, limited liability company, or other similar action and without any further action by any holder of an Allowed Claim or Interest. The Reorganized Debtors (or NewCo, in the event the Credit Bid Transaction is implemented) are authorized to issue or reserve for issuance to the directors and/or management of the Reorganized Debtors (or NewCo, in the event the Credit Bid Transaction is implemented) a number of New Common Units on terms to be determined by the New Board in accordance with the terms of the New LLC Agreement.

The New Common Units and New Preferred Units will not be listed on a national securities exchange, the Reorganized Debtors and NewCo (if created) will not be reporting companies under the Securities Exchange Act, and the Reorganized Debtors and NewCo shall not be required to and will not file reports with the SEC or any other governmental entity after the Effective Date. To prevent the Reorganized Debtors and NewCo from becoming subject to registration or reporting requirements under the Securities Act or Securities Exchange Act, except in connection with a public offering, or the Investment Company Act of 1940, or to otherwise become subject to certain restrictions under the Employee Retirement Income Security Act of 1974, the Amended Constituent Documents and similar governing documents adopted by NewCo may impose certain trading restrictions, and the New Common Units and New Preferred Units will be subject to certain transfer and other restrictions pursuant to the Amended Constituent Documents designed to maintain the Reorganized Debtors and NewCo as private, non-reporting companies.

### 7.5.    *Plan Value of New Common Units and New Preferred Units*

For purposes of this Plan, (a) each New Common Unit shall have a deemed value equal to the New Common Units Plan Value and (b) each New Preferred Unit shall have a deemed value equal to the applicable New Preferred Units Plan Value.

### 7.6.   *Exemption from Registration*

Pursuant to section 1145 of the Bankruptcy Code, the issuance of the New Common Units and New Series A Units is exempt from the registration requirements of the Securities Act and any State or local law requiring registration for offer or sale of a security.  In addition, pursuant to section 4(a)(2) of the Securities Act and Rule 506 of Regulation D promulgated thereunder, the issuance of the New Series B Preferred Units is exempt from the registration requirements of the Securities Act and any State or local law requiring registration for offer or sale of a security.

### 7.7.   *Exit Credit Facility*

On the Effective Date, the Reorganized Debtors (or, if the Credit Bid Transaction is implemented, NewCo) shall be authorized to enter into the Exit Credit Facility Agreement without the need for any further corporate, limited liability company, or other similar action. The entry of the Confirmation Order shall be deemed approval of the Exit Credit Facility Agreement (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors (or, if the Credit Bid Transaction is implemented, NewCo) in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein) and authorization for the Reorganized Debtors (or, if the Credit Bid Transaction is implemented, NewCo) to enter into and execute the Exit Credit Facility Agreement and such other documents as the lenders thereunder may reasonably require, subject to such modifications as the Reorganized Debtors (or, if the Credit Bid Transaction is implemented, NewCo) may deem to be reasonably necessary to consummate the agreement.  The Reorganized Debtors (or, if the Credit Bid Transaction is implemented, NewCo) may use the Exit Credit Facility for any purpose permitted thereunder, including the funding of obligations under this Plan.

On the effective date of the Exit Credit Facility Agreement: (i) the Debtors and the Reorganized Debtors (or, if the Credit Bid Transaction is implemented, NewCo) are authorized to execute and deliver the Exit Credit Facility Documents and perform their obligations thereunder, including, without limitation, the payment or reimbursement of any fees, expenses, losses, damages, or indemnities; (ii) the Exit Credit Facility Documents shall constitute the legal, valid, and binding obligations of the Reorganized Debtors that are parties thereto (or, if the Credit Bid Transaction is implemented, NewCo), enforceable in accordance with their terms; and (iii) no obligation, payment, transfer, or grant of security under the Exit Credit Facility Documents shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law or subject to any defense, reduction, recoupment, setoff, or counterclaim.  The Debtors and the Reorganized Debtors (or, if the Credit Bid Transaction is implemented, NewCo), as applicable, and the other persons granting any Liens and security interests to secure the obligations under the Exit Credit Facility Documents are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary or desirable to establish and further evidence perfection of such Liens and security interests under the provisions of any applicable federal, state, provincial, or other law (whether domestic or foreign) (it being understood that perfection shall occur automatically by virtue of the occurrence of the Effective Date, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and

recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

**7.8.    *Cancellation of Existing Securities and Agreements.***

Except for the purpose of evidencing a right to distribution under this Plan, and except as otherwise set forth herein, on the Effective Date all agreements, instruments, and other documents evidencing, related to or connected with any Claim or Interest, other than Intercompany Claims and Intercompany Interests, and any rights of any holder in respect thereof, shall be deemed cancelled, discharged and of no force or effect.  The holders of, or parties to, such cancelled instruments, securities and other documentation will have no rights arising from or relating to such instruments, securities and other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan.  Notwithstanding anything to the contrary herein, (i) the Prepetition Term Loan Agreement and Prepetition Revolving Credit Facility Agreement shall continue in effect solely to the extent necessary to: (a) permit holders of Prepetition Term Loan Claims and the Prepetition Revolving Credit Facility Claims to receive Plan Distributions in accordance with the terms of this Plan; (b) permit the Debtors to make Plan Distributions on account of the Prepetition Term Loan Claims and the Prepetition Revolving Credit Facility Claims; and (c) authorize the Debtors or Reorganized Debtors (or, if the Credit Bid Transaction is implemented, NewCo), as applicable, to compensate and/or reimburse fees and expenses of the Prepetition Term Loan Agent and Prepetition Revolving Credit Facility Agent in accordance with the terms of this Plan.  Except as provided pursuant to this Plan, upon the satisfaction of the Prepetition Revolving Credit Facility Claims and the Prepetition Term Loan Claims, the Prepetition Agents and their respective agents, successors and assigns shall be discharged of all of their obligations associated with the Prepetition Revolving Credit Facility and Prepetition Term Loan, as applicable.  Notwithstanding the foregoing (including, without limitation, the releases set forth in Section 12.6(b) of this Plan) the indemnification and expense reimbursement obligations of the Prepetition Revolving Credit Facility Lenders and the Prepetition Term Loan Lenders under the Prepetition Revolving Credit Facility and the Prepetition Term Loan Agreement, respectively, shall survive the Effective Date of this Plan.

**7.9.    *Boards of Directors.***

(a)    On the Effective Date, the board of directors of each of the Debtors shall consist of those individuals selected by the Debtors, who shall be reasonably acceptable to the Debtors and the Majority Ad Hoc Group, and identified in the Plan Supplement to be filed with the Bankruptcy Court on or before the date of the Confirmation Hearing.

(b)    Unless reappointed pursuant to Section 7.9(a) hereof, the members of the board of directors of each Debtor prior to the Effective Date shall have no continuing obligations to the Debtors in their capacities as such on and after the Effective Date and each such member shall be deemed to have resigned or shall otherwise cease to be a director of the applicable Debtor on the Effective Date.  Commencing on the Effective Date, each of the directors of each of the Debtors shall serve pursuant to the terms of the applicable organizational documents of such Debtor and may be replaced or removed in accordance therewith, as applicable.

**7.10.** *Corporate and Other Action.*

(a)     The Debtors, as applicable, shall serve on the U.S. Trustee quarterly reports of the disbursements made by each Debtor on an entity-by-entity basis until such time as a final decree is entered closing the applicable Chapter 11 Case or the applicable Chapter 11 Case is converted or dismissed, or the Bankruptcy Court orders otherwise.  Any deadline for filing Administrative Expense Claims shall not apply to U.S. Trustee Fees.

(b)     On the Effective Date, the Amended Constituent Documents and any other applicable amended and restated corporate or other organizational documents of each of the Debtors shall be deemed authorized in all respects.

(c)     Any action under the Plan to be taken by or required of the Debtors as applicable, including the adoption or amendment of certificates of incorporation and by-laws, the issuance of securities and instruments, or the selection of officers or directors, shall be authorized and approved in all respects, without any requirement of further action by any of the Debtors' equity holders, holders of partnership interests, sole members, boards of directors or boards of managers, or similar body, as applicable.

(d)     The Debtors shall be authorized to execute, deliver, file, and record such documents (including the Plan Documents), contracts, instruments, releases and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan, without the necessity of any further Bankruptcy Court, corporate, limited liability company, board, member, or shareholder approval or action.  In addition, the selection of the Persons who will serve as the initial directors, officers and managers of the Reorganized Debtors (or, if the Credit Bid Transaction is implemented, NewCo) as of the Effective Date shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the board of directors, board of managers, or equity holders of the applicable Reorganized Debtor (or, if the Credit Bid Transaction is implemented, NewCo).

(e)     In the event the Credit Bid Transaction is implemented, the Debtors shall appoint a Person to serve as a plan administrator (the "**Plan Administrator**") to carry out the Debtors' duties and responsibilities under the Plan following the Effective Date.  The Confirmation Order shall contain customary provisions setting forth the Plan Administrator's powers and obligations.

**7.11.** *Comprehensive Settlement of Claims and Controversies.*

In consideration for the Plan Distributions and other benefits provided under this Plan, the provisions of this Plan will constitute a good faith compromise and settlement of all claims and controversies incorporated in the Plan.  The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are: (a) in the best interest of the Debtors, the Estates and their respective property and stakeholders; and (b) fair, equitable and reasonable.  Subject to Article

VIII of the Plan, all Plan Distributions made to holders of Allowed Claims are intended to be and shall be final.

### 7.12. *Ad Hoc Group Fee Claim.*

The Debtors, on the Effective Date or as soon as reasonably practicable thereafter, shall pay the Ad Hoc Group Fee Claim in full in Cash.

### 7.13. *Agent Fee Claims.*

The Debtors, on the Effective Date or as soon as reasonably practicable thereafter, shall pay each of the DIP Agent Fee Claim and Prepetition Agent Fee Claims, in full in Cash.

### 7.14. *Transactions Authorized under Plan*

On and after the Effective Date, the Debtors shall be authorized to take such actions as may necessary or appropriate to implement the transactions contemplated by the Plan and/or the Implementation Memorandum.

### 7.15. *Approval of Plan Documents*

The solicitation of votes with respect to the Plan shall be deemed a solicitation for the approval of the Plan Documents and all transactions contemplated hereunder.  Entry of the Confirmation Order shall constitute approval of the Plan Documents and such transactions.  On the Effective Date, each of the Debtors shall be authorized to enter into, file, execute and/or deliver each of the Plan Documents and any other agreement or instrument issued in connection with any Plan Document without the necessity of any further corporate, board, shareholder, manager, or similar action.

## ARTICLE VIII.
## DISTRIBUTIONS

### 8.1. *Distributions.*

The Disbursing Agent shall make all Plan Distributions to the applicable holders of Allowed Claims in accordance with the terms of this Plan; provided, however, that all Plan Consideration distributable to (i) the Prepetition Revolving Credit Facility Lenders on account of Prepetition Revolving Credit Facility Claims and (ii) the Prepetition Term Loan Lenders on account of the Prepetition Term Loan Claims shall be made directly to the applicable Prepetition Revolving Credit Facility Lenders and/or Prepetition Term Loan Lenders, with a record of such Plan Distributions provided to the Prepetition Revolving Credit Facility Lenders and Prepetition Term Loan Lenders, respectively, as soon as reasonably practicable after such Plan Distributions are made.

### 8.2. *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the Plan or Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any

Claims, and no holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

**8.3.    *Date of Distributions.***

Unless otherwise provided herein, any Plan Distributions and deliveries to be made hereunder shall be made on the Effective Date or as soon as reasonably practicable thereafter; provided, that the Debtors may utilize periodic Distribution Dates to the extent that use of a periodic Distribution Date does not delay payment of the Allowed Claim more than thirty (30) days.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**8.4.    *Distribution Record Date.***

As of the close of business on the Distribution Record Date, the various lists of holders of Claims in each of the Classes, as maintained by the Debtors or their agents, shall be deemed closed and there shall be no further changes in the record holders of any of the Claims after the Distribution Record Date.  Neither the Debtors nor the Disbursing Agent shall have any obligation to recognize any transfer of Claims occurring after the close of business on the Distribution Record Date.  Additionally, with respect to payment of any Cure Amounts or any Cure Disputes in connection with the assumption and/or assignment of the Debtors' executory contracts and unexpired leases, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease, even if such non-Debtor party has sold, assigned or otherwise transferred its Claim for a Cure Amount.

**8.5.    *Disbursing Agent.***

(a)    Powers of Disbursing Agent.

The Disbursing Agent shall be empowered to: (i) effectuate all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (ii) make all applicable Plan Distributions or payments contemplated hereby; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court (including any order issued after the Effective Date), pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

(b)    Expenses Incurred by the Disbursing Agent on or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, and subject to the written agreement of the Debtors, the amount of any reasonable and documented fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including reasonable attorney and other professional fees and expenses) of the Disbursing Agent shall be paid in Cash by the Debtors and will not be deducted from Plan Distributions made to holders of Allowed Claims by

the Disbursing Agent.  The foregoing fees and expenses shall be paid in the ordinary course, upon presentation of invoices to the Debtors.

In the event that the Disbursing Agent and the Debtors are unable to resolve a dispute with respect to the payment of the Disbursing Agent's fees, costs and expenses, the Disbursing Agent may elect to submit any such dispute to the Bankruptcy Court for resolution.

(c)      Bond.

The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court and, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtors.  Furthermore, any such entity required to give a bond shall notify the Bankruptcy Court and the U.S. Trustee in writing before terminating any such bond that is obtained.

(d)      Cooperation with Disbursing Agent.

The Debtors shall use all commercially reasonable efforts to provide the Disbursing Agent with the amount of Claims and the identity and addresses of holders of Claims, in each case, as set forth in the Debtors' books and records.  The Debtors will cooperate in good faith with the Disbursing Agent to comply with the withholding and reporting requirements outlined in Section 8.17 of this Plan.

**8.6.      *Delivery of Distribution.***

Subject to the provisions contained in this Article VIII, the Disbursing Agent will issue, or cause to be issued, and authenticate, as applicable, all Plan Consideration, and subject to Bankruptcy Rule 9010 and except as provided in Section 8.3 of this Plan, make all Plan Distributions or payments to any holder of an Allowed Claim as and when required by this Plan at: (a) the address of such holder on the books and records of the Debtors or their agents; or (b) the address in any written notice of address change delivered to the Debtors or the Disbursing Agent, including any addresses included on any filed proofs of Claim or transfers of Claim filed with the Bankruptcy Court.  In the event that any Plan Distribution to any holder is returned as undeliverable, no distribution or payment to such holder shall be made unless and until the Disbursing Agent has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter such Plan Distribution shall be made to such holder without interest; provided, however, such Plan Distributions or payments shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of the later of 180 days from: (i) the Effective Date; and (ii) the first Distribution Date after such holder's Claim is first Allowed.

**8.7.      *Unclaimed Property.***

Subject to Section 8.8 hereof, ninety (90) days from the later of: (i) the Effective Date, and (ii) the date that a Claim is first Allowed, all unclaimed property, wherever located, or interests in property distributable hereunder on account of such Claim shall be distributed as Plan Consideration pursuant to the terms hereof, including in accordance with the allocations set forth

in the DIP Credit Agreement, and any claim or right of the holder of such Claim to such property, wherever located, or interest in property shall be discharged and forever barred.

**8.8.** ***Unclaimed New Common Units and/or New Preferred Units***

Any Plan Distribution of New Common Units and/or New Preferred Units under this Plan on account of an Allowed Claim that is unclaimed after ninety (90) days after it has been delivered (or attempted to be delivered) shall be deemed forfeited and such New Common Units and/or New Preferred Units, as applicable, shall be cancelled notwithstanding any state or other escheat or similar laws to the contrary, and the entitlement by the holder of such unclaimed Allowed Claim to such Plan Distribution or any subsequent Plan Distribution on account of such Allowed Claim shall be extinguished and forever barred.

**8.9.** ***Satisfaction of Claims.***

Unless otherwise specifically provided herein, any Plan Distributions and deliveries to be made on account of Allowed Claims hereunder shall be in complete settlement, satisfaction and discharge of such Allowed Claims.

**8.10.** ***Manner of Payment Under Plan.***

Except as specifically provided herein, at the option of the Debtors, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

**8.11.** ***De Minimis Cash Distributions.***

The Debtors and the Disbursing Agent shall have no obligation to make a distribution that is less than $100.00 in Cash.

**8.12.** ***Fractional New Common Units or New Preferred Units***

Notwithstanding any other provision in this Plan to the contrary, no fractional interests of New Common Units or New Preferred Units shall be issued or distributed pursuant to this Plan. Whenever any Plan Distribution of a fraction of a share of New Common Units or New Preferred Units would otherwise be required under this Plan, the actual Plan Distribution made shall reflect a rounding of such fraction to the nearest whole share (up or down), with half shares or less being rounded down and fractions in excess of a half of a share being rounded up. If two or more holders are entitled to equal fractional entitlements and the number of holders so entitled exceeds the number of whole shares, as the case may be, which remain to be allocated, the Debtors shall allocate the remaining whole shares to such holders by random lot or such other impartial method as the Debtors deem fair, in the Debtors' sole discretion. Upon the allocation of all of the whole New Common Units and New Preferred Units authorized under this Plan, all remaining fractional portions of the entitlements shall be canceled and shall be of no further force and effect.

**8.13.    *Distributions on Account of Allowed Claims Only.***

Notwithstanding anything herein to the contrary, no Plan Distribution shall be made on account of a Claim until such Claim becomes an Allowed Claim in its entirety.

**8.14.    *No Distribution in Excess of Amount of Allowed Claim.***

Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Plan Distribution of a value in excess of the Allowed amount of such Claim.

**8.15.    *Exemption from Securities Laws.***

The issuance of and the distribution of the New Common Units and New Series A Units shall be exempt from registration under the Securities Act and any other applicable securities laws pursuant to section 1145 of the Bankruptcy Code, to the maximum extent permitted thereunder.  The New Common Units and New Series A Units may be resold by the holders thereof without restriction, except to the extent that any such holder is deemed to be an "underwriter" as defined in section 1145(b)(1) of the Bankruptcy Code.

The issuance of and the distribution of the New Series B Preferred Units (a) shall be exempt from the registration requirements of the Securities Act pursuant to section 4(a)(2) of the Securities Act and Rule 506 of Regulation D promulgated thereunder, (b) shall be "restricted securities" subject to transfer restrictions under the U.S. federal securities laws, and (c) may be resold, exchanged, assigned, or otherwise transferred pursuant to registration or in compliance with the applicable provisions of Rule 144, Rule 144A, or any other registration exemption under the Securities Act.

The availability of the exemptions under section 1145 of the Bankruptcy Code, section 4(a)(2) of the Securities Act, and/or any other applicable securities laws shall not be a condition to occurrence of the Effective Date of the Plan.

**8.16.    *Setoffs and Recoupments.***

Except as expressly provided in this Plan, each Debtor may, but shall not be required to, pursuant to sections 553 and 558 of the Bankruptcy Code or applicable non-bankruptcy law, setoff and/or recoup against any Allowed Claim and any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights and Causes of Action of any nature that such Debtor may hold against the holder of such Allowed Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law; provided, however, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver, abandonment or release by a Debtor or its successor of any and all claims, rights and Causes of Action that such Debtor or its successor may possess against the applicable holder; provided further, that, for the avoidance of doubt, the Debtors may not setoff and/or recoup any Allowed Claim, right, or Cause of Action that the Debtor may hold against Allowed DIP Claims, Allowed Prepetition Term Loan Claims, or Allowed Prepetition Revolving Credit Facility Claims.

8.17.    *Withholding and Reporting Requirements.*

In connection with this Plan and all Plan Distributions hereunder, the Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Plan Distributions hereunder shall be subject to any such withholding and reporting requirements.  The Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of any Plan Distribution to generate sufficient funds to pay applicable withholding taxes or establishing any other mechanisms the Debtors or the Disbursing Agent believe are reasonable and appropriate, including requiring a holder of a Claim to submit appropriate tax and withholding certifications.  Notwithstanding any other provision of this Plan: (a) each holder of an Allowed Claim that is to receive a Plan Distribution under this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations on account of such distribution; and (b) no Plan Distributions shall be required to be made to or on behalf of such holder pursuant to this Plan unless and until such holder has made arrangements satisfactory to the Debtors for the payment and satisfaction of such tax obligations or has, to the Debtors' satisfaction, established an exemption therefrom.

## ARTICLE IX.
## PROCEDURES FOR RESOLVING CLAIMS

9.1.    *Objections to Claims.*

Other than with respect to Professional Fee Claims (or as otherwise expressly provided in any order of the Bankruptcy Court), only the Debtors shall be entitled to object to Claims after the Effective Date; *provided*, that, if the Credit Bid Transaction is implemented, only NewCo shall be entitled to object to a Claim that is an assumed liability under the Credit Bid Transaction Agreement.  Any objections to those Claims (other than Administrative Expense Claims) shall be served and filed on or before the later of: (a) the Claims Objection Deadline and (b) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (a) hereof (for the avoidance of doubt, this objection deadline may be extended one or more times by the Bankruptcy Court).  Any Claims filed after the applicable Bar Date (including, for the avoidance of doubt and without limitation, the Administrative Bar Date) shall be deemed Disallowed and expunged in their entirety without further order of the Bankruptcy Court or any action being required on the part of the Debtors, as applicable, unless the Person wishing to file such untimely Claim has received the Bankruptcy Court's authorization to do so.  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the objecting party effects service in any of the following manners:  (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) by first class mail, postage prepaid, on the signatory on the proof of claim as well as all other representatives identified in the proof of claim or any attachment thereto; or (c) if counsel has agreed to or is otherwise deemed to accept service, by first class mail, postage prepaid, on any counsel that has appeared on the claimant's behalf in the Chapter 11 Cases (so long as such appearance has not been subsequently withdrawn).  From and after the Effective Date, the Debtors, in their sole discretion, shall have

exclusive authority to settle or compromise any Disputed Claim that is not an assumed liability under the Credit Bid Transaction Agreement without approval of the Bankruptcy Court.

**9.2.    *Amendment to Claims.***

From and after the Confirmation Date, no proof of Claim may be amended to increase or assert additional claims not reflected in a previously timely filed Claim (or Claim scheduled on the applicable Debtor's Schedules, unless superseded by a filed Claim), and any such Claim shall be deemed Disallowed and expunged in its entirety without further order of the Bankruptcy Court or any action being required on the part of the Debtors, unless the claimant has obtained the Bankruptcy Court's prior approval to file such amended or increased Claim.

**9.3.    *Disputed Claims.***

Disputed Claims shall not be entitled to any Plan Distributions unless and until they become Allowed Claims.

**9.4.    *Estimation of Claims***

The Debtors may request that the Bankruptcy Court enter an Estimation Order with respect to any Claim, pursuant to section 502(c) of the Bankruptcy Code, for purposes of determining the Allowed amount of such Claim regardless of whether any Person has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time (including during the pendency of any appeal with respect to the allowance or disallowance of such Claims).  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim for allowance or distribution purposes, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the objecting party may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim.  All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, resolved or withdrawn by any mechanism approved by the Bankruptcy Court.

**9.5.    *Reserves.***

For purposes of calculating and making Plan Distributions, the Debtors shall be entitled to estimate, in consultation with the Majority Ad Hoc Group, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed and Disputed Claims, inclusive of contingent and/or unliquidated Claims in a particular Class.  The Debtors also shall be entitled to seek one or more Estimation Orders from the Court for such purposes, regardless of whether the Debtors have previously objected to such Claim or whether the Court has ruled on any such objection, and the Court shall retain jurisdiction to estimate any Claim for purposes of determining the Allowed amount of such Claim at any time. Appropriate Disputed Claims reserves shall be established for each category of Claims as to which estimates are utilized or sought.  Unless otherwise expressly set forth in the Confirmation Order, the Debtors shall not be obligated to physically segregate and maintain separate accounts

for reserves.  Accordingly, reserves may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, as appropriate.

    **9.6.**    *Expenses Incurred on or After the Effective Date.*

    Except as otherwise ordered by the Bankruptcy Court, and subject to the written agreement of the Debtors, the amount of any reasonable fees and expenses incurred by any Professional Person or the Claims Agent on or after the Effective Date in connection with implementation of this Plan, including reconciliation of, objection to, and settlement of Claims, shall be paid in Cash by the Debtors. For the avoidance of doubt, the Debtors or Reorganized Debtors (or, if the Credit Bid Transaction is implemented, NewCo) shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred on or after the Effective Date of (i) the DIP Agent (including legal fees and expenses), and (ii) the Prepetition Agents (including legal fees and expenses), in connection with actions taken by the DIP Agent or the Prepetition Agents, as applicable, (x) at the prior written direction of the Required Lenders (as that term is respectively defined in each of the DIP Credit Agreement, the Prepetition Revolving Credit Facility Agreement and the Prepetition Term Loan Agreement (collectively, the "***Applicable Credit Agreements***")) in accordance with the terms of the respective Applicable Credit Agreements and/or the Final DIP Order, or (y) as required in the Applicable Credit Agreements, the Plan, or the Confirmation Order (including, for the avoidance of doubt, actions taken at the prior written direction of the Debtors or Required Lenders in accordance with the Plan or Confirmation Order), in each case, which payment and/or reimbursement obligations of the Debtors shall vest in the Reorganized Debtors (or, if the Credit Bid Transaction is implemented, NewCo) on the Effective Date.

## ARTICLE X.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

    **10.1.**    *General Treatment.*

    As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, all executory contracts and unexpired leases of the Debtors shall be deemed assumed, except that: (a) any executory contracts and unexpired leases that previously have been assumed, assumed and assigned, or rejected pursuant to a Final Order of the Bankruptcy Court  (including, without limitation, in connection with any of the Sales) shall be treated as provided in such Final Order; (b) any executory contracts and unexpired leases listed on the Schedule of Rejected Contracts and Leases shall be deemed rejected as of the Effective Date; (c) all executory contracts and unexpired leases that are the subject of a separate motion to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date shall be treated as provided for in the Final Order resolving such motion; and (d) executory contracts and unexpired leases related to the D&O Liability Insurance Policies shall not be rejected; provided, that any executory contracts or unexpired leases that were in effect on the Petition Date and are rejected pursuant to a Final Order of the Bankruptcy Court or are rejected through a separate motion to reject under section 365 of the Bankruptcy Code shall be deemed terminated upon rejection, provided that rejection of any executory contract or unexpired lease pursuant to the Plan or otherwise will not constitute a termination of obligations owed to the Debtors under

such contract or lease that survive breach under applicable law; *provided*, *further*, that if the Credit Bid Transaction is implemented, any executory contracts or unexpired leases that were in effect on the Petition Date and have not otherwise been assumed and assigned or rejected pursuant to a Final Order of the Bankruptcy Court shall be assumed by the Debtors and assigned to NewCo unless otherwise rejected pursuant to the terms of this Plan.  Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments and rejections described in this Section 10.1 pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Each executory contract and unexpired lease assumed pursuant to this Section 10.1 shall revest in and be fully enforceable by the applicable Debtors in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable federal law.  Nothing contained in this Plan or the listing of a document on the Schedule of Rejected Contracts and Leases, any Cure Notice, or the Proposed Assumption and Assignment Notice shall constitute an admission by the Debtors that such document is an executory contract or an unexpired lease or that any Debtor or its successors and assigns has any liability thereunder.  Notwithstanding anything to the contrary in the Plan, to the extent that any of the executory contracts and unexpired leases of the Debtors <u>are not</u> listed on the Schedule of Rejected Contracts and Leases, those executory contracts and unexpired leases of the Debtors shall be assumed under the Plan (and, if the Credit Bid Transaction is implemented, assigned to NewCo).  To the extent that any of the executory contracts and unexpired leases of the Debtors <u>are</u> listed on the Schedule of Rejected Contracts and Leases, the Debtors may remove those executory contracts and unexpired leases of the Debtors from the Schedule of Rejected Contracts and Leases up until the commencement of the Confirmation Hearing, and those executory contracts and unexpired leases of the Debtors shall be assumed under the Plan (and, if the Credit Bid Transaction is implemented, assigned to NewCo).

**10.2.**   ***Claims Based on Rejection of Executory Contracts or Unexpired Leases.***

Except as otherwise explicitly set forth in the Plan, all Claims arising from the rejection of executory contracts or unexpired leases, if evidenced by a timely filed proof of claim, will be treated as General Unsecured Claims.  All such Claims shall be discharged as of the Effective Date, and shall not be enforceable against the Debtors, the Estates or their respective properties or interests in property, or the Disbursing Agent.  In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not evidenced by a timely filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors or their respective properties or interests in property as agents, successors or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtors on or before the date that is thirty (30) days after the Effective Date of such rejection (which may be the Effective Date, the date on which the Debtors reject the applicable contract or lease as provided in Section 10.1 of this Plan, or pursuant to an order of the Bankruptcy Court).

**10.3.** ***Cure of Defaults for Assumed or Assumed and Assigned Executory Contracts and Unexpired Leases.***

(a)    Except to the extent that less favorable treatment has been agreed to by the non-Debtor party or parties to each such executory contract or unexpired lease to be assumed or assumed and assigned pursuant to the Plan, any monetary defaults arising under such executory contract or unexpired lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the appropriate amount (the "***Cure Amount***") in full in Cash on the later of thirty (30) days after: (i) the Effective Date; or (ii) the date on which any Cure Dispute relating to such Cure Amount has been resolved (either consensually or through judicial decision).

(b)    With respect to any executory contract or unexpired lease to be assumed or assumed and assigned pursuant to Section 10.1 of this Plan, the Debtors shall (i) abide by the terms and conditions set forth in the Bidding Procedures Order and the CCPN Sale Order or MS/AL Sale Order (as applicable) and (ii) no later than 14 calendar days prior to the commencement of the Confirmation Hearing, file a schedule (a "***Cure Schedule***") setting forth the Cure Amount, if any, for each executory contract or unexpired lease to be assumed by the Debtors (and not assigned), that was not listed on any Cure Notice.  For the avoidance of doubt, to the extent the applicable counterparty to any contract or lease has previously received a Cure Notice from the Debtors, and failed to object to the Cure Amount by the deadline set forth therein, such Cure Amount shall be final in all cases (unless subsequently modified by the Debtors).

(c)    In the event of a dispute (each, a "***Cure Dispute***") regarding: (i) the Cure Amount; (ii) the ability of the applicable Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or assumed and assigned; or (iii) any other matter pertaining to the proposed assumption or assumption and assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving such Cure Dispute and approving the assumption or assumption and assignment.  To the extent a Cure Dispute relates solely to the Cure Amount, the applicable Debtor may assume and/or assume and assign the applicable contract or lease prior to the resolution of the Cure Dispute provided, that, such Debtor reserves Cash in an amount sufficient to pay the full amount asserted as the required cure payment by the non-Debtor party to such contract or lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court).  To the extent the Cure Dispute is resolved or determined against the applicable Debtor such Debtor may reject the applicable executory contract or unexpired lease after such determination, and the counterparty may thereafter file a proof of claim in the manner set forth in Section 3.2 of this Plan.

(d)    In the event the Credit Bid Transaction Agreement is consummated, the Debtors shall assume and assign to NewCo any executory contract or unexpired lease that otherwise would have been assumed by the Reorganized Debtors as of the Effective Date unless such contract is otherwise rejected pursuant to the terms of this Plan.

**10.4.** *Effect of Confirmation Order on Assumption, Assumption and Assignment, and Rejection.*

Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute entry of an order by the Bankruptcy Court pursuant to sections 365(a) and 1123(b) of the Bankruptcy Code approving the assumptions, assumptions and assignments and rejections described in this Article X and determining that: (a) with respect to such rejections, such rejected executory contracts and unexpired leases are burdensome and that the rejection therein is in the best interests of the Estates; (b) with respect to such assumptions, to the extent necessary, that the applicable Debtor has (i) cured, or provided adequate assurance that the applicable Debtor will promptly cure, any default in accordance with section 365(b)(1)(A) of the Bankruptcy Code, (ii) compensated or provided adequate assurance that it or its affiliate will promptly compensate the counterparty for any actual pecuniary loss to such party resulting from such default, and (iii) provided adequate assurance of future performance under such executory contract or unexpired lease; and (c) with respect to any assignment, to the extent necessary, that the applicable Debtor or the proposed assignee (including NewCo, if applicable) has (i) cured, or provided adequate assurance that it or its affiliate will promptly cure, any default in accordance with section 365(b)(1)(A) of the Bankruptcy Code, (ii) compensated or provided adequate assurance that the applicable Debtor or the proposed assignee will promptly compensate the counterparty for any actual pecuniary loss to such party resulting from such default, and (iii) that "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) by the assignee has been demonstrated and no further adequate assurance is required. Assumption of any executory contract or unexpired lease and satisfaction of the Cure Amounts shall result in the full discharge, release and satisfaction of any claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the date such executory contract or unexpired lease is assumed. Each executory contract and unexpired lease assumed or assumed and assigned pursuant to this Article X shall revest in and be fully enforceable by the applicable Debtor or NewCo, if applicable, in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable federal law. To the maximum extent permitted by law, to the extent any provision in any executory contract or unexpired lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such executory contract or unexpired lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such executory contract or unexpired lease or to exercise any other default-related rights with respect thereto. Any party that fails to timely file a Cure Dispute on the basis that consent to assume or assume and assign the applicable executory contract or unexpired lease is a condition to such assumption or assumption and assignment, shall be deemed to have consented to the assumption or assumption and assignment, as applicable, of such contract or unexpired lease.

**10.5.    *Compensation and Benefit Programs.***

Except as otherwise expressly provided hereunder, in a prior order of the Bankruptcy Court or to the extent subject to a motion pending before the Bankruptcy Court as of the Effective Date, all employment and severance policies (that were in place as of the Petition Date and relate to employees whose employment will continue with the Debtors following the occurrence of the Effective Date), and all compensation and benefit plans, policies, and programs of the Debtors applicable to their respective employees, retirees and non-employee directors including all savings plans, unfunded retirement plans, healthcare plans, disability plans, severance benefit plans, retention plans, incentive plans, and life, accidental death and dismemberment insurance plans are treated as executory contracts under the Plan and on the Effective Date will be assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code.  Each of the Debtors may, prior to the Effective Date, enter into employment agreements with employees that become effective on or prior to the Effective Date and survive consummation of this Plan.  Any such agreements (or a summary of the material terms thereof) shall be in form and substance reasonably acceptable to the Debtors and the Majority Ad Hoc Group and be included in the Plan Supplement or otherwise filed with the Bankruptcy Court on or before the date of the Confirmation Hearing.  For the avoidance of doubt, this Section 10.5 does not apply to the Debtors' annual short-term incentive performance plan adopted by the Debtors prior to the Petition Date.  Notwithstanding the foregoing, if the Credit Bid Transaction is implemented, the Credit Bid Transaction Agreement shall provide for NewCo to assume such plans, policies, programs, and agreements under the Credit Bid Transaction Agreement in a manner acceptable to the Debtors and NewCo.

**10.6.    *Assumption of Directors and Officers Insurance Policies***

To the extent that the D&O Liability Insurance Policies issued to, or entered into by, the Debtors prior to the Petition Date constitute executory contracts, notwithstanding anything in the Plan to the contrary, the Debtors shall be deemed to have assumed all of the Debtors' unexpired D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the D&O Liability Insurance Policies.  Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan shall not discharge, impair or otherwise modify any advancement, indemnity or other obligations of the D&O Liability Insurance Policies.

In addition, after the Effective Date, none of the Reorganized Debtors shall terminate or otherwise reduce the coverage under any of the D&O Liability Insurance Policies with respect to conduct occurring prior thereto, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled from the applicable insurers to the full benefits of any such policy for the full term of such policy regardless of whether such directors and officers remain in such positions after the Effective Date.

On or before the Effective Date, the Debtors shall purchase and maintain directors, officers and employee liability tail coverage for the six year period following the Effective Date on terms no less favorable than the Debtors' existing director, officer and

employee coverage and with an aggregate limit of liability upon the Effective Date of no less than the aggregate limit of liability under the existing director, officer and employee coverage upon placement.  From and after the Effective Date, reasonable directors and officers insurance policies shall remain in place in the ordinary course.

The Reorganized Debtors shall comply with the foregoing paragraphs of this Section 10.6 regardless of whether the Credit Bid Transaction is implemented.  If the Credit Bid Transaction is implemented, as soon as reasonably practicable after the Effective Date, NewCo shall purchase and maintain directors, officers, and employee liability coverage following the Effective Date, with an aggregate limit of liability upon the Effective Date of no less than the aggregate limit of liability under the existing director, officer, and employee coverage held by Reorganized Southcross as of the Effective Date.

### 10.7.  *Assumption of Certain Indemnification Obligations*

Each Indemnification Obligation to a current or former director, officer, manager or employee who was employed by any of the Debtors in such capacity on or after January 1, 2019 (including, for the avoidance of doubt, the members of the board of directors, board of managers or equivalent body of each Debtor at any time) shall be deemed assumed by the Reorganized Debtors (and, if the Credit Bid Transaction is implemented, assigned to NewCo) effective as of the Effective Date.  Each Indemnification Obligation that is deemed assumed by the Reorganized Debtors (and, if the Credit Bid Transaction is implemented, assigned to NewCo) pursuant to the Plan shall (a) remain in full force and effect, (b) not be modified, reduced, discharged, impaired or otherwise affected in any way, (c) be deemed and treated as an executory contract pursuant to sections 365 and 1123 of the Bankruptcy Code regardless of whether or not proofs of claim have been filed with respect to such obligations and (d) survive Unimpaired and unaffected irrespective of whether such indemnification is owed for an act or event occurring before, on or after the Petition Date.

Any obligations of the Debtors (whether pursuant to their corporate charters, bylaws, certificates of incorporation, other organizational documents, board resolutions, indemnification agreements, employment contracts, policy of providing employee indemnification, applicable state law, specific agreement in respect of any claims, demands, suits, causes of action or proceedings against such Persons or agreements, including amendments, or otherwise) entered into at any time prior to the Effective Date, to indemnify, reimburse or limit the liability of the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers and other professionals of the Debtors, as applicable, in each case, based upon any act or omission related to such Persons' service with, for or on behalf of the Debtors prior to the Effective Date with respect to all present and future actions, suits and proceedings relating to the Debtors shall survive the Confirmation Order and, except as set forth herein, remain unaffected thereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement or limitation of liability accrued or is owed in connection with an occurrence before or after the Petition Date; provided, that all obligations under this Section 10.7 shall be limited solely to available insurance coverage and neither the Debtors nor any of their assets shall be liable for any such obligations.  Any Claim based on the Debtors' obligations set forth in this Section 10.7 shall not be a Disputed Claim or subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code.  This provision for indemnification

obligations shall not apply to or cover any Causes of Action against a Person that result in a Final Order determining that such Person seeking indemnification is liable for fraud, willful misconduct, gross negligence, bad faith, self-dealing or breach of the duty of loyalty. Notwithstanding the foregoing, if the Credit Bid Transaction is implemented, NewCo shall assume the Debtors' obligations set forth in this paragraph pursuant to the terms of the Credit Bid Transaction Agreement.

For the avoidance of doubt, all obligations of the Debtors to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of former directors, officers or employees who were not directors, officers or employees of any of the Debtors at any time on or after January 1, 2019, against any Causes of Action, shall be classified and treated as General Unsecured Claims and shall be discharged on the Effective Date.

## ARTICLE XI.
## CONDITIONS PRECEDENT TO
## CONSUMMATION OF THE PLAN

**11.1.** *Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date is subject to:

(a)  the Disclosure Statement Order, in form and substance reasonably acceptable to the Debtors and the Majority Ad Hoc Group, having been entered by the Bankruptcy Court and remaining in full force and effect;

(b)  the Confirmation Order, in form and substance reasonably acceptable to the Debtors and the Majority Ad Hoc Group, having become a Final Order and remaining in full force and effect;

(c)  the Plan Documents, including the Plan Supplement, in form and substance reasonably acceptable to the Debtors and the Majority Ad Hoc Group, being filed with the Bankruptcy Court, executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification by a Debtor that the Effective Date has occurred) contained therein having been satisfied or waived in accordance therewith;

(d)  a chapter 11 trustee, a responsible officer, or an examiner with enlarged powers relating to the operation of the businesses of any of the Debtors (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) not having been appointed in any of the Chapter 11 Cases;

(e)  all material governmental, regulatory and third party approvals, authorizations, certifications, rulings, no-action letters, opinions, waivers and/or consents required in connection with the Plan, if any, having been obtained and remaining in full force and effect, and there existing no claim, action, suit, investigation, litigation or proceeding, pending or threatened in any court or before any arbitrator or governmental instrumentality, which would prohibit the consummation of the Plan;

(f)    the Amended Constituent Documents, in form and substance reasonably acceptable to the Debtors and the Majority Ad Hoc Group, shall have been filed with the applicable authorities of the relevant jurisdictions of incorporation and shall have become effective in accordance with such jurisdictions' corporation laws;

(g)    the Exit Credit Facility Documents having been consummated, and being in full force and effect;

(h)    if the Credit Bid Transaction is implemented, the Credit Bid Transaction Agreement having been consummated, and being in full force and effect; and

(i)    all fees and expenses incurred as of the Effective Date by the Prepetition Term Loan Agent, the Prepetition Revolving Credit Facility Agent, the Prepetition Term Loan Lenders and the Prepetition Revolving Credit Facility Lenders that are provided for under the Final DIP Order, other financing or cash collateral order approved by the Bankruptcy Court or this Plan, having been paid in full in Cash by the Debtors; provided, that, payment of any such amounts incurred by such parties as of the Effective Date but not invoiced to the Debtors shall not be a condition precedent to the effectiveness of this Plan and shall be payable by the Debtors, after receipt by the Debtors of one or more invoices therefor (redacted as appropriate to preserve privilege).

### 11.2.    *Satisfaction and Waiver of Conditions Precedent.*

Except as otherwise provided herein, any actions taken on the Effective Date shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action.  Any of the conditions set forth in section 11.1 of this Plan may be waived in whole or in part, if reasonably acceptable to the Debtors and the Majority Ad Hoc Group, without notice and a hearing, and the Debtors' benefits under any "mootness" doctrine shall be unaffected by any provision hereof.  The failure to satisfy or waive any condition may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any act, action, failure to act or inaction by the Debtors).  The failure of the Debtors to assert the non-satisfaction of any such conditions shall not be deemed a waiver of any other rights hereunder, and each such right shall be deemed an ongoing right that may be asserted or waived (as set forth herein) at any time or from time to time.

### 11.3.    *Effect of Failure of Conditions Precedent to the Effective Date.*

If all of the conditions to effectiveness have not been satisfied (as provided in Section 11.1 hereof) or duly waived (as provided in Section 11.2 hereof) and the Effective Date has not occurred on or before the first Business Day that is more than 30 days after the Confirmation Date, or by such later date as set forth by the Debtors in a notice filed with the Bankruptcy Court prior to the expiration of such period, then, if reasonably acceptable to the Debtors and the Majority Ad Hoc Group, the Debtors may file a motion to vacate the Confirmation Order.  Notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if all of the conditions to consummation set forth in Section 11.1 hereof are either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested

in such motion.  If the Confirmation Order is vacated pursuant to this Section 11.3, this Plan shall be null and void in all respects, the Confirmation Order shall be of no further force or effect, no Plan Distributions shall be made, the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and upon such occurrence, nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims against or Interests in the Debtors; (b) prejudice in any manner the rights of the holder of any Claim against or Interest in the Debtors; or (c) constitute an admission, acknowledgment, offer or undertaking by any Debtor or any other Person with respect to any matter set forth in the Plan.

## ARTICLE XII.
## EFFECT OF CONFIRMATION

### 12.1.   *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or Interest in, the Debtors and inure to the benefit of and be binding on such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under this Plan and whether or not such holder has accepted this Plan.

### 12.2.   *Discharge of Claims Against and Interests in the Debtors.*

Upon the Effective Date and in consideration of the Plan Distributions, except as otherwise provided herein or in the Confirmation Order, each Person that is a holder (as well as any trustees and agents for or on behalf of such Person) of a Claim or Interest shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights and liabilities that arose prior to the Effective Date.  Except as otherwise provided herein, upon the Effective Date, all such holders of Claims and Interests shall be forever precluded and enjoined, pursuant to sections 105, 524, 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in any Debtor or any property, wherever located, of the Estates.

### 12.3.   *Term of Pre-Confirmation Injunctions or Stays.*

Unless otherwise provided herein, all injunctions or stays provided in the Chapter 11 Cases arising prior to the Confirmation Date in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 12.4.   *Injunction Against Interference with Plan.*

Upon the entry of the Confirmation Order, all holders of Claims and Interests and other Persons, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions, whether in the United States or elsewhere, to interfere with the implementation or consummation of this Plan.

Moreover, Bankruptcy Code section 1141(c) provides, among other things, that the property dealt with by this Plan is free and clear of all Claims and Interests.  As such, to the fullest extent permissible under applicable law, no Person holding a Claim or Interest may receive any payment from, or seek recourse against, any assets that are to be distributed under this Plan other than assets required to be distributed to that Person under this Plan.  As of the Confirmation Date, to the fullest extent permissible under applicable law, all Persons are precluded and barred from asserting against any property to be distributed under this Plan any Claims, rights, Causes of Action, liabilities, Interests, or other action or remedy based on any act, omission, transaction, or other activity that occurred before the Confirmation Date except as expressly provided in this Plan or the Confirmation Order.

      **12.5.**  *Injunction.*

      (a)  **Except as otherwise specifically provided in this Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons or Entities who have held, hold or may hold Claims against and/or Interests in the Debtors or the Estates, and all other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, representatives and affiliates are, with respect to any such Claims or Interests, permanently enjoined after the Confirmation Date from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, their Estates or any of their property, wherever located, or any direct or indirect transferee of any property, wherever located, of, or direct or indirect successor in interest to, any of the foregoing Persons or any property, wherever located, of any such transferee or successor; (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtors, or their Estates or any of their property, wherever located, or any direct or indirect transferee of any property, wherever located, of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property, wherever located, of any such transferee or successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors or their Estates or any of their property, wherever located, or any direct or indirect transferee of any property, of, or successor in interest to, any of the foregoing Persons; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law (including, without limitation, commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan) to the fullest extent permitted by applicable law, or (v) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or their Estates, or against the property or interests in property of the Debtors or their Estates, with respect to any such Claim or Interest.  Such injunction shall extend to any successors or assignees of the Debtors and their respective properties and interest in properties; <u>provided</u>, <u>however</u>, that nothing contained herein shall preclude such Persons from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of this Plan.**

(b)    **By accepting Plan Distributions, each holder of an Allowed Claim or Interest will be deemed to have specifically consented to the injunctions set forth in this Section 12.5.**

12.6.    *Releases.*

(a)    <u>Releases by the Debtors</u>.  **Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Confirmation Order, on and after the Effective Date, for good and valuable consideration, including their cooperation and contributions to the Chapter 11 Cases, the Released Parties shall be deemed released and discharged by the Debtors and their Estates from any and all Claims, obligations, debts, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity or otherwise, whether for tort, fraud, contract, violations of federal or state laws or otherwise, including Avoidance Actions, those Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability or otherwise that the Debtors, their Estates or their affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity or that any holder of a Claim or Interest or other Entity would have been legally entitled to assert derivatively for or on behalf of the Debtors, or their Estates, based on, relating to or in any manner arising from, in whole or in part, the Debtors, their Estates, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party excluding any assumed executory contract or lease, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the DIP Credit Agreement, the Chapter 11 Cases, or, in each case, related agreements, instruments or other documents, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined in a Final Order to have constituted willful misconduct (including, without limitation, actual fraud) or gross negligence; <u>provided</u>, that if any Released Party directly or indirectly brings or asserts any Claim or Cause of Action that has been released or is contemplated to be released pursuant to the Plan in any way arising out of or related to any document or transaction that was in existence prior to the Effective Date against any other Released Party, and such Released Party does not abandon such Claim or Cause of Action upon request, then the release set forth in the Plan shall automatically and retroactively be null and void *ab initio* with respect to the Released Party bringing or asserting such Claim or Cause of Action; <u>provided further</u> that the immediately preceding proviso shall not apply to (i) any action by a Released Party in the Bankruptcy Court (or any other court determined to have competent jurisdiction), including any appeal therefrom, to prosecute the amount, priority or secured status of any prepetition or ordinary course administrative Claim against the Debtors or (ii) any release or indemnification provided for in any settlement or granted under any other court order, <u>provided</u> that, in the case of (i) and (ii), the Debtors shall retain all defenses related to any such action.  Notwithstanding anything contained herein**

to the contrary, the foregoing release shall not release any obligation of any party under the Plan or any document, instrument or agreement executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in the Plan is:  (i) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such Claims; (ii) in the best interests of the Debtors and all holders of Interests and Claims; (iii) fair, equitable and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to the Debtors asserting any claim, Cause of Action or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

(b)    **Releases by the Holders of Claims and Interests**.  Except as otherwise specifically provided in this Plan or the Confirmation Order, on and after the Effective Date, for good and valuable consideration, including the obligations of the Debtors under this Plan, the Plan Consideration and other contracts, instruments, releases, agreements or documents executed and delivered in connection with this Plan, each Releasing Party shall be deemed to have consented to this Plan and the restructuring embodied herein for all purposes, and shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged the Released Parties from any and all Claims, Interests, obligations, debts, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity or otherwise, whether for tort, fraud, contract, violations of federal or state laws or otherwise, including Avoidance Actions, those Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability or otherwise that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on, relating to or in any manner arising from, in whole or in part, the Debtors, the Estates, the liquidation, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Releasing Party excluding any assumed executory contract or lease, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the DIP Credit Agreement, the Prepetition Revolving Credit Facility, the Prepetition Term Loan Agreement, or this Plan or the Disclosure Statement, or, in each case, related agreements, instruments or other documents, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined in a Final Order to have constituted willful misconduct (including, without limitation, actual fraud) or gross negligence; **provided** that any holder of a Claim or Interest that elects to opt out of the releases contained in the Plan shall not receive the benefit of the releases set forth in the Plan (even if for any reason otherwise entitled).  Notwithstanding anything contained

herein to the contrary, the foregoing release shall not release any obligation of any party under the Plan or any document, instrument or agreement executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in the Plan is: (i) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such Claims; (ii) in the best interests of the Debtors and all holders of Interests and Claims; (ii) fair, equitable and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to the Debtors asserting any claim, Cause of Action or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

(c)    Notwithstanding anything to the contrary contained herein, the releases set forth in this Section 12.6 shall not release any (i) claims against any Person to the extent such Person asserts a crossclaim, counterclaim and/or claim for setoff which seeks affirmative relief against a Debtor or any of its officers, directors, or representatives and (ii) claims against any Person arising from or relating to such Person's gross negligence, willful misconduct, each as determined by a Final Order of the Bankruptcy Court.

12.7.    *Exculpation and Limitation of Liability.*

On the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, for good and valuable consideration, to the maximum extent permissible under applicable law, none of the Exculpated Parties shall have or incur any liability to any holder of any Claim or Interest or any other Person for any act or omission in connection with, or arising out of the Debtors' restructuring, including the negotiation, implementation and execution of this Plan, the Plan Supplement, the Chapter 11 Cases, the Prepetition Term Loan Agreement, the Prepetition Revolving Credit Facility Agreement, the Disclosure Statement, the solicitation of votes for and the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, including all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all activities leading to the promulgation and confirmation of this Plan except for gross negligence or willful misconduct, each as determined by a Final Order of the Bankruptcy Court. For purposes of the foregoing, it is expressly understood that any act or omission effected with the approval of the Bankruptcy Court conclusively will be deemed not to constitute gross negligence or willful misconduct unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation, and in all respects, the applicable Persons shall be entitled to rely on the advice of counsel with respect to their duties and responsibilities under, or in connection with, the Chapter 11 Cases, the Plan, and administration thereof. The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distributions of the securities pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time

for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

### 12.8. *Injunction Related to Releases and Exculpation.*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released pursuant to this Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities released in or encompassed by Sections 12.6 and 12.7 of this Plan. Each of the Reorganized Debtors and the Debtors is expressly authorized hereby to seek to enforce such injunction.

### 12.9. *Retention of Causes of Action/Reservation of Rights.*

(a)     Except as expressly provided in this Plan or in the Confirmation Order, nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or Causes of Action that the Debtors or the Estates may have, or that the Debtors may choose to assert on behalf of their respective Estates or the Estates, as applicable, under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, (i) any and all Causes of Action or claims against any Person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim and/or claim for setoff that seeks affirmative relief against the Debtors, their officers, directors or representatives or (ii) the turnover of any property of the Estates to the Debtors.

(b)     Except as expressly provided in this Plan or in the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or Causes of Action that the Debtors had immediately prior to the Petition Date or the Effective Date against or regarding any Claim left Unimpaired by the Plan. The Debtors shall have, retain, reserve and be entitled to commence, assert and pursue all such rights and Causes of Action as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights respecting any Claim left Unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced.

(c)     Except as expressly provided in this Plan or in the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to release any post-Effective Date obligations of any party under the Plan, or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

### ARTICLE XIII.
### <u>RETENTION OF JURISDICTION</u>

Pursuant to sections 105 and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction, to the fullest extent permissible under law, over all matters arising in, arising under, or related to the Chapter 11 Cases for, among other things, the following purposes:

(a)     To hear and determine all matters relating to the assumption or rejection of executory contracts or unexpired leases, including whether a contract or lease is or was executory or expired, and the Cure Disputes resulting therefrom;

(b)     To hear and determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)     To hear and resolve any disputes arising from or relating to (i) any orders of the Bankruptcy Court granting relief under Bankruptcy Rule 2004, or (ii) any protective orders entered by the Bankruptcy Court in connection with the foregoing;

(d)     To ensure that Plan Distributions to holders of Allowed Claims are accomplished as provided herein;

(e)     To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claim;

(f)     To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(g)     To issue and enforce injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court (including, without limitation, with respect to releases, exculpations and indemnifications);

(h)     To hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)     To hear and determine all matters relating to the allowance, disallowance, liquidation, classification, priority or estimation of any Claim;

(j)     To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

(k)     To hear and determine disputes arising in connection with or related to the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, the Disclosure Statement, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing (including without limitation the Plan Supplement and the Plan Documents); provided that the Bankruptcy Court shall not retain jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection or dispute resolution clause that refers disputes to a different court and any disputes concerning documents contained in the Plan Supplement shall be governed in accordance with the provisions of such documents;

-55-

(l)     To take any action and issue such orders, including any such action or orders as may be necessary after occurrence of the Effective Date and/or consummation of the Plan, as may be necessary to construe, enforce, implement, execute, and consummate this Plan, including any release or injunction provisions set forth herein, or to maintain the integrity of this Plan following consummation;

(m)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)     To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(p)     To resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Cases, the Disclosure Statement Hearing, the Confirmation Hearing, any applicable Bar Date, or the deadline for responding or objecting to a Cure Amount, for the purpose of determining whether a Claim or Interest is discharged hereunder, or for any other purpose;

(q)     To recover all assets of the Debtors and property of the Estates, wherever located;

(r)     To hear and determine any rights, claims or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory; and

(s)     To enter a final decree closing each of the Chapter 11 Cases.

As of the Effective Date, notwithstanding anything in this Article XIII to the contrary, the Exit Credit Facility Agreement and the Exit Credit Facility Documents shall be governed by the jurisdictional provisions therein.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, the provisions of this Article XIII shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

### 14.1.   *Exemption from Certain Transfer Taxes.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code and applicable law, (i) any issuance, transfer, or exchange under this Plan of New Common Units and New Preferred Units and the security interests in favor of the lenders under the Exit Credit

Facility and (ii) the consummation of sale transactions by the Debtors and approved by the Bankruptcy Court on and after the Confirmation Date through and including the Effective Date, including any transfers effectuated under this Plan, the sale by the Debtors of any owned property pursuant to section 363(b) of the Bankruptcy Code, and any assumption, assignment, and/or sale by the Debtors of their interests in unexpired leases of non-residential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, shall constitute a "transfer under a plan" and shall not be subject to any stamp, real estate transfer, recording, or other similar tax.

### 14.2.    *Termination of Professionals.*

On the Effective Date, the engagement of each Professional Person retained by the Debtors shall be terminated without further order of the Bankruptcy Court or act of the parties; provided, however, such Professional Person shall be entitled to prosecute their respective Professional Fee Claims and represent their respective constituents with respect to applications for allowance and payment of such Professional Fee Claims and the Debtors shall be responsible for the reasonable and documented fees, costs and expenses associated with the prosecution of such Professional Fee Claims.  Nothing herein shall preclude any Debtor from engaging a former Professional Person on and after the Effective Date in the same capacity as such Professional Person was engaged prior to the Effective Date.

### 14.3.    *Amendments.*

If reasonably acceptable to the Debtors and the Majority Ad Hoc Group, this Plan may be amended, modified, or supplemented in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Bankruptcy Court.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to this Plan, the Debtors may, if reasonably acceptable to the Debtors and the Majority Ad Hoc Group, make appropriate technical adjustments, remedy any defect or omission or reconcile any inconsistencies in this Plan, the Plan Documents and/or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of this Plan, and any holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

### 14.4.    *Revocation or Withdrawal of this Plan.*

The Debtors reserve the right, in consultation with the Majority Ad Hoc Group, to revoke, delay or withdraw this Plan, as to any or all of the Debtors, prior to the Effective Date.  If the Debtors revoke, delay or withdraw this Plan, in accordance with the preceding sentence, prior to the Effective Date as to any or all of the Debtors, or if confirmation or consummation as to any or all of the Debtors does not occur, then, with respect to such Debtors: (a) this Plan shall be null and void in all respects; (b) any settlement or compromise not previously approved by Final Order of the Bankruptcy Court embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), assumption, assumption and assignment, or rejection of executory contracts or leases affected by this Plan, and any

document or agreement executed pursuant to this Plan shall be deemed null and void; and (c) nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtors or any other Person, (ii) prejudice in any manner the rights of such Debtors or any other Person or (iii) constitute an admission of any sort by the Debtors or any other Person.

### 14.5. *Allocation of Plan Distributions Between Principal and Interest.*

To the extent that any Allowed Claim entitled to a distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts.

### 14.6. *Severability.*

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, in consultation with the Majority Ad Hoc Group, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 14.7. *Governing Law.*

Except to the extent that the Bankruptcy Code or other U.S. federal law is applicable, or to the extent a Plan Document or exhibit or schedule to the Plan provides otherwise, the rights, duties, and obligations arising under this Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof to the extent such principles would result in the application of the laws of any other jurisdiction.

### 14.8. *Section 1125(e) of the Bankruptcy Code.*

The Debtors have, and upon confirmation of this Plan shall be deemed to have, solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and the Debtors and the Ad Hoc Group (and each of their respective affiliates, agents, directors, officers, employees, advisors, and attorneys) participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, solicitation and/or purchase of the securities offered and sold under this Plan, and therefore are not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the

solicitation of acceptances or rejections of this Plan or offer, issuance, sale, or purchase of the securities offered and sold under this Plan.

### 14.9. *Inconsistency.*

In the event of any inconsistency among the Plan, the Disclosure Statement, the Plan Documents, any exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern.

### 14.10. *Time.*

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.  If any payment, distribution, act or deadline under the Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but shall be deemed to have been completed or to have occurred as of the required date.

### 14.11. *Exhibits.*

All exhibits to this Plan are incorporated and are a part of this Plan as if set forth in full herein.

### 14.12. *Notices.*

In order to be effective, all notices, requests, and demands to or upon the Debtors shall be in writing (including by facsimile transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or made only when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> Southcross Energy Partners, L.P.
> 1717 Main St., Suite 5300
> Dallas, TX 75201
> Attn: Kelly Jameson
> Fax: (214) 979-3710
> Email: kelly.jameson@southcrossenergy.com
>
> with a copy to (which shall not constitute notice):
>
> Davis Polk & Wardwell LLP
> 450 Lexington Ave.
> New York, NY 10017
> Attn: Marshall S. Huebner, Darren S. Klein and Steven Szanzer
> Fax: (212) 701-5217
> Email: marshall.huebner@davispolk.com

darren.klein@davispolk.com
steven.szanzer@davispolk.com


Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market St., 16th Floor, PO Box 1347
Attn: Robert J. Dehney, Andrew R. Remming, Joseph C. Barsalona II, and
Eric W. Moats
Fax: (302) 658-3989
Email: rdehney@mnat.com
aremming@mnat.com
jbarsalona@mnat.com
emoats@mnat.com


Willkie Farr & Gallagher LLP
787 Seventh Ave.
New York, NY 10019
Attn:  Joseph G. Minias, Paul V. Shalhoub, and Debra C. McElligott
Fax:  (212) 728-8111
Email:  jminias@willkie.com
pshalhoub@willkie.com
dmcelligott@willkie.com


-and-

Young Conaway Stargatt & Taylor LLP
1000 N. King St.
Wilmington, DE 19801
Attn:  Matthew B. Lunn, Edmon L. Morton, and Joseph M. Mulvihill
Fax:  (302) 571-1253
Email:  mlunn@ycst.com
emorton@ycst.com
jmulvihill@ycst.com

### 14.13. *Filing of Additional Documents.*

On or before substantial consummation of the Plan, the Debtors shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 14.14. *Reservation of Rights.*

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of this Plan, any statement or provision contained herein, or the taking of any action by the Debtors or the Ad Hoc Group (or the Majority Ad Hoc Group) with respect to this Plan shall be or shall be deemed to

be, an admission or waiver of any rights of the Debtors or the Ad Hoc Group (or the Majority Ad Hoc Group) with respect to any Claims or Interests prior to the Effective Date.

Respectfully submitted,

Southcross Energy Partners GP, LLC (for itself and on behalf of all Debtors)

*/s/ James W. Swent III*

Name: James W. Swent III
Title: Chief Executive Officer

Exhibit A

The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:

Southcross Energy Partners, L.P. (5230)

Southcross Gulf Coast Transmission, LTD. (0546)

Southcross Energy Partners GP, LLC (5141)

Southcross Mississippi Gathering, L.P. (2994)

Southcross Energy Finance Corp. (2225)

Southcross Delta Pipeline LLC (6804)

Southcross Energy Operating, LLC (9605)

Southcross Alabama Pipeline LLC (7180)

Southcross Energy GP LLC (4246)

Southcross Nueces Pipelines LLC (7034)

Southcross Energy LP LLC (4304)

Southcross Processing LLC (0672)

Southcross Gathering LTD. (7233)

FL Rich Gas Services GP, LLC (5172)

Southcross CCNG Gathering LTD. (9553)

FL Rich Gas Services, LP (0219)

Southcross CCNG Transmission LTD. (4531)

FL Rich Gas Utility GP, LLC (3280)

Southcross Marketing Company LTD. (3313)

FL Rich Gas Utility, LP (3644)

Southcross NGL Pipeline LTD. (3214)

Southcross Transmission, LP (6432)

Southcross Midstream Services, L.P. (5932)

T2 EF Cogeneration Holdings LLC (0613)

Southcross Mississippi Industrial Gas Sales, L.P. (7519)

T2 EF Cogeneration LLC (4976)

Southcross Mississippi Pipeline, L.P. (7499)