**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Chapter 11 |
| SOUTHCROSS ENERGY PARTNERS, L.P., *et al.*, | ) ) ) | Case No. 19-10702 (MFW) |
| Debtors.[1] | ) ) ) ) | Jointly Administered |

**ORDER CONFIRMING FIRST AMENDED CHAPTER 11 PLAN FOR
SOUTHCROSS ENERGY PARTNERS, L.P. AND ITS AFFILIATED DEBTORS**

The Debtors[2] having proposed and filed:

a. the *Chapter 11 Plan for Southcross Energy Partners, L.P. and its Affiliated Debtors*, dated November 7, 2019 [D.I. 675] (the "**Original Plan**"), which the Debtors amended by filing the *First Amended Chapter 11 Plan for Southcross Energy Partners, L.P. and its Affiliated Debtors*, dated January 7, 2020 [D.I. 816], as revised by the *First Amended Chapter 11 Plan for Southcross Energy Partners, L.P. and its Affiliated Debtors*, dated January 24, 2020 [D.I. 863] (as amended, supplemented, or modified from time to time in accordance with the terms thereof, the "**Plan**"), attached hereto as Exhibit A; and

b. the *Disclosure Statement for Chapter 11 Plan for Southcross Energy Partners, L.P. and its Affiliated Debtors*, dated November 7, 2019 [D.I. 677] (the "**Original Disclosure Statement**") and the *Disclosure Statement Supplement for First Amended Chapter 11 Plan for Southcross Energy Partners L.P. and its Affiliated Debtors* [D.I. 818] (the

---

[1]    The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Southcross Energy Partners, L.P. (5230); Southcross Energy Partners GP, LLC (5141); Southcross Energy Finance Corp. (2225); Southcross Energy Operating, LLC (9605); Southcross Energy GP LLC (4246); Southcross Energy LP LLC (4304); Southcross Gathering Ltd. (7233); Southcross CCNG Gathering Ltd. (9553); Southcross CCNG Transmission Ltd. (4531); Southcross Marketing Company Ltd. (3313); Southcross NGL Pipeline Ltd. (3214); Southcross Midstream Services, L.P. (5932); Southcross Mississippi Industrial Gas Sales, L.P. (7519); Southcross Mississippi Pipeline, L.P. (7499); Southcross Gulf Coast Transmission Ltd. (0546); Southcross Mississippi Gathering, L.P. (2994); Southcross Delta Pipeline LLC (6804); Southcross Alabama Pipeline LLC (7180); Southcross Nueces Pipelines LLC (7034); Southcross Processing LLC (0672); FL Rich Gas Services GP, LLC (5172); FL Rich Gas Services, LP (0219); FL Rich Gas Utility GP, LLC (3280); FL Rich Gas Utility, LP (3644); Southcross Transmission, LP (6432); T2 EF Cogeneration Holdings LLC (0613); and T2 EF Cogeneration LLC (4976). The debtors' mailing address is 1717 Main Street, Suite 5300, Dallas, TX 75201.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, the Disclosure Statement, the Disclosure Statement Order, or the Continued Solicitation Order (each as defined herein), as applicable.

"**Disclosure Statement Supplement**" and, together with the Original Disclosure Statement, as amended, supplemented, or modified from time to time, the "**Disclosure Statement**"); and

the United States Bankruptcy Court for the District of Delaware (the "**Court**") having:

c.  entered the *Order (I) Approving the Disclosure Statement, (II) Establishing Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Plan, (III) Approving the Form of Ballot and Solicitation Materials, (IV) Establishing the Voting Record Date, (V) Fixing the Date, Time, and Place for the Confirmation Hearing and the Deadline for Filing Objections Thereto, and (VI) Approving Related Notice Procedures*, dated November 7, 2019 [D.I. 674] (the "**Disclosure Statement Order")** and the *Order (I) Approving the Debtors' Continued Solicitation of the Amended Chapter 11 Plan, (II) Approving the Adequacy of the Disclosure Statement Supplement in Connection With the Amended Chapter 11 Plan, (III) Establishing Certain Deadlines and Procedures in Connection With Confirmation of the Amended Chapter 11 Plan, and (IV) Granting Related Relief* [D.I. 814] (the "**Continued Solicitation Order**" and, together with the Disclosure Statement Order, the "**Solicitation Orders**");

d.  approved, pursuant to the Solicitation Orders, the transmission to holders of Claims against, or Interests in, the Debtors' Estates of the (i) Original Plan and Disclosure Statement and (ii) the Plan and Disclosure Statement Supplement, in compliance with title 11 of the United States Code (as amended, the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"); and

e.  approved, pursuant to the *Order (I) Authorizing Entry Into the Exit Financing Commitment Letter, (II) Approving Alternate Transaction Fee, and (III) Granting Related Relief* [D.I. 815], among other things, the Debtors' entry into the Commitment Letter (as defined therein) in connection with the Exit Credit Facility; and

the Debtors having:

f.  timely and properly solicited (i) the Original Plan and Original Disclosure Statement and (ii) the Plan and Disclosure Statement Supplement and provided due notice of the hearing before the Court to consider the confirmation of the Plan (the "**Confirmation Hearing**") to holders of Claims against, or Interests in, the Debtors and other parties in interest, all in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Solicitation Orders, as established by (A) the *Affidavit of Service* of Andrew Henchen*, an* employee of the Court-approved notice, claims, solicitation, and balloting agent, Kurtzman Carson Consultants LLC ("**KCC**"), sworn to November 15, 2019 [D.I. 697] (the "**Original Solicitation/Notice Affidavit**"), and (B) the *Affidavit of Service* of Andrew Henchen, sworn to on  January 15, 2020 [D.I. 834] (the "**Continued Solicitation/Notice Affidavit**" and, together with the Original Solicitation/Notice Affidavit, the "**Solicitation/Notice Affidavits")**), describing the manner in which votes were solicited, and notice was provided, with respect to the Original Plan and the Plan, respectively;

g. timely and properly filed the *Notice of (I) Approval of Disclosure Statement, (II) Deadline for Casting Votes to Accept or Reject the Plan, and (III) the Hearing to Consider Confirmation of the Plan* [D.I. 821] (the "**Confirmation Hearing Notice**"), which, among other things, provided notice to parties in interest of the Confirmation Hearing and the deadline for objections related thereto;

h. filed and served on each applicable counterparty the following Cure Notices, providing notice of the Cure Costs associated with each contract and lease set forth therein:

    i. The Potential Assumption and Assignment Notice [D.I. 327];

    ii. The Supplemental Assumption and Assignment Notice [D.I. 429];

    iii. The Second Supplemental Notice [D.I. 496]; and

    iv. The Third Supplemental Notice [D.I. 705];

i. filed and served on each applicable counterparty the *Notice of Rejected Contracts and Leases* [D.I. 725], as supplemented by the *Notice of Supplemental Schedule of Rejected Contracts and Leases* [D.I. 829] (collectively, the "**Schedule of Rejected Contracts and Leases**");

j. filed and served on the required parties the *Notice of Filing Plan Supplement to the Debtors' First Amended Chapter 11 Plan for Southcross Energy Partners L.P. and its Affiliated Debtors* [D.I. 826], the *Notice of Filing Amended Plan Supplement to the Debtors' First Amended Chapter 11 Plan for Southcross Energy Partners L.P. and its Affiliated Debtors* [D.I. 830], and the *Notice of Filing of Second Amended Plan Supplement to the Debtors' First Amended Chapter 11 Plan for Southcross Energy Partners L.P. and its Affiliated Debtors* [D.I. 853]; and

k. submitted the *Certification of Leanne V. Rehder Scott with Respect to Tabulation of Votes on Chapter 11 Plan for Southcross Energy Partners, L.P. and its Affiliated Debtors*, sworn to January 23, 2020 [D.I. 858] (the "**Tabulation Certification**"), describing the methodology used for the tabulation of votes and the results of voting with respect to the Plan; and

the Court having:

l. found that the notice provided regarding the Confirmation Hearing, and the opportunity for any party in interest to object to confirmation of the Plan, have been adequate and appropriate under the circumstances and no further notice is required;

m. found that the Cure Notices provided adequate and appropriate notice to the applicable counterparties of the applicable Cure Costs in connection with the contracts and leases listed in the Cure Notices and no further notice is required;

n. considered the Plan and other relevant factors affecting the Chapter 11 Cases;

o. considered, and having taken judicial notice of, the entire record of the Chapter 11 Cases;

p.  held the Confirmation Hearing;

q.  considered the entire record of the Confirmation Hearing, including, but not limited to,

    i.  the Plan (including, without limitation, the Plan Documents), the Disclosure Statement, and the Solicitation Orders,

    ii.  the Solicitation/Notice Affidavits, the Confirmation Hearing Notice, and Tabulation Certification,

    iii.  the objections, reservation of rights, and other responses filed with respect to the Plan (collectively, the "**Objections**"), including the following: *The Texas Taxing Authorities' Objection to the Debtors' Chapter 11 Plan for Southcross Energy Partners, L.P. and its Affiliated Debtors* [D.I. 655], *Objection by Lisa Bueno Martinez to Chapter 11 Plan* [D.I. 843], and *Objection to (i) Notice of Rejected Contracts and Leases and (ii) Chapter 11 Plan for Southcross Energy Partners L.P. and its Affiliated Debtors* [D.I. 842] (filed under seal),

    iv.  *The Debtors' Memorandum of Law in Support of Confirmation of Chapter 11 Plan for Southcross Energy Partners, L.P. and its Affiliated Debtors* [D.I. 859],

    v.  *Declaration of Ed Mosley in Support of Confirmation of the First Amended Chapter 11 Plan for Southcross Energy Partners, L.P. and its Affiliated Debtors* [D.I. 851] (the "**Mosley Declaration**"),

    vi.  *Declaration of Robert A. Pacha in Support of Confirmation of the First Amended Chapter 11 Plan for Southcross Energy Partners, L.P. and its Affiliated Debtors* [D.I. 852] (the "**Pacha Declaration**"), and

    vii.  arguments of counsel and the evidence proffered, adduced, and/or presented at the Confirmation Hearing,

r.  overruled any and all Objections to the Plan and to confirmation not consensually resolved or withdrawn, unless otherwise indicated herein; and

s.  found the legal and factual bases set forth in the documents filed in support of confirmation of the Plan and presented at the Confirmation Hearing establish just cause for the relief granted herein; and

after due deliberation and good and sufficient cause appearing therefor, and based on the decision set forth on the record, it is hereby **FOUND, ORDERED, and ADJUDGED that:**

<u>**FINDINGS OF FACT AND CONCLUSIONS OF LAW**</u>

A.  <u>Jurisdiction and Venue</u>.  The Court has jurisdiction over the Chapter 11 Cases and

confirmation of the Plan pursuant to 28 U.S.C. §§ 157, 1334 and the *Amended Standing Order of*

*Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and (O), and the Court has jurisdiction to enter a Final Order with respect thereto.  Each of the Debtor entities is an eligible debtor under section 109 of the Bankruptcy Code.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      Commencement and Joint Administration of Chapter 11 Cases.  On April 1, 2019 (the "**Petition Date**"), the Debtors commenced the Chapter 11 Cases.  By order of the Court [D.I. 48], the Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015.  The Debtors operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or official committee has been appointed in the Chapter 11 Cases.

C.      Judicial Notice.  The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including, but not limited to, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, adduced, and/or presented at the various hearings held before the Court during the pendency of the Chapter 11 Cases.

D.      Disclosure Statement Order, Continued Solicitation Order, Solicitation, and Notice.

1.      On November 7, 2019, the Court entered the Disclosure Statement Order, which, among other things, (a) approved the Original Disclosure Statement for purposes of solicitation, finding that it contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code, (b) authorized the Debtors, through KCC, to solicit acceptances or rejections of the Original Plan in accordance with the approved solicitation and Tabulation Procedures,  (c) approved the form of Ballot, solicitation materials, and related notices and

procedures, (d) established the voting record date, and (e) fixed the date, time, and place for the

Confirmation Hearing (as then scheduled) and the deadlines for voting on and filing objections to

the confirmation of the Original Plan.

2.      Promptly following entry of the Disclosure Statement Order, in

compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the

Disclosure Statement Order, and as evidenced by the Solicitation/Notice Affidavit, KCC

effectuated:

(a)      filing and service on all parties in interest of a notice concerning

the Original Disclosure Statement and the Original Plan, and deadlines and hearing dates with

respect thereto, including, but not limited to, setting forth the proposed release, exculpation, and

injunction provisions in the Original Plan, the dates applicable to, and procedures regarding, the

solicitation of votes on the Original Plan, the date of the Confirmation Hearing (as then

scheduled), and the procedures for objecting to confirmation of the Original Plan; and

(b)      service of the appropriate solicitation materials on each holder of

Claims entitled to vote under the Original Plan (i.e., holders of Prepetition Revolving Credit

Facility Claims (Class 3) and Prepetition Term Loan Claims (Class 4)), including (i) the Original

Disclosure Statement, (ii) the Disclosure Statement Order, (iii) a notice regarding the

Confirmation Hearing (as then scheduled), and (iv) an appropriate number of Ballots (with

voting instructions with respect thereto) (collectively, the "**Original Solicitation Materials**").

3.      As described in the Disclosure Statement Order and as evidenced by the

Original Solicitation/Notice Affidavit, service of the Original Solicitation Materials was

adequate and sufficient under the circumstances of the Chapter 11 Cases, and adequate and

sufficient notice of the Confirmation Hearing (as then scheduled) and other requirements,

deadlines, hearings, and matters described in the Disclosure Statement Order (a) was timely and

properly provided in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local

Rules, and the Disclosure Statement Order and (b) provided due process, and an opportunity to

appear and to be heard, to all parties in interest.

4.     On January 7, 2020, the Court entered the Continued Solicitation Order,

which, among other things, (a) approved the Disclosure Statement Supplement for purposes of

solicitation, finding that it contained "adequate information" within the meaning of section 1125

of the Bankruptcy Code, (b) authorized the Debtors, through KCC, to solicit acceptances or

rejections of the Plan in accordance with the solicitation and Tabulation Procedures previously

approved in the Disclosure Statement Order, and (c) fixed the date, time, and place for the

Confirmation Hearing and the deadline for voting on (as applicable),[3] and filing objections to,

the confirmation of the Plan.

5.     As described in the Continued Solicitation Order, and as evidenced by the

Continued Solicitation/Notice Affidavit, service of the supplemental solicitation materials,

including the Supplemental Solicitation Packages (the "**Supplemental Solicitation Materials**"

and, together with the Original Solicitation Materials, the "**Solicitation Materials**"),

was adequate and sufficient under the circumstances of the Chapter 11 Cases and adequate and

sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings, and

matters described in the Continued Solicitation Order (a) was timely and properly provided in

compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the

Continued Solicitation Order, and (b) provided due process, and an opportunity to appear and to

be heard, to all parties in interest.

---

[3] The Disclosure Statement Supplement approved by the Continued Solicitation Order provides that parties entitled to vote who submitted a Ballot with respect to the Original Plan, but chose not to submit a Ballot with respect to the Plan, are entitled to rely on (and are bound by) votes cast with respect to the Original Plan with regard to the Plan. *See* Disclosure Statement Supplement, Articles I.E. and V.D.2.

6. Because the foregoing transmittals, notices, and service set forth above was adequate and sufficient, no other or further notice is necessary or shall be required.

E. <u>Voting</u>. Votes on the Plan (including votes cast with respect to the Original Plan) were solicited after disclosure of "adequate information" as defined in section 1125 of the Bankruptcy Code. As evidenced by the Solicitation/Notice Affidavits and Tabulation Certification, votes to accept the Plan (including votes to accept the Original Plan, as applicable) have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Solicitation Orders, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

F. <u>Plan Supplement</u>. The filing and notice of the Plan Supplement (and subsequent amendments, modifications, and supplements thereto filed with the Court) was proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Solicitation Orders, and no other or further notice is or shall be required.

G. <u>Plan Modifications</u>. Any modifications to the Plan since the commencement of solicitation described or set forth herein following the Continued Solicitation Order comply with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules. Such modifications constitute immaterial modifications and/or do not adversely affect or change the treatment of any Claims or Interests. Pursuant to Bankruptcy Rule 3019, the modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

H. <u>Burden of Proof</u>. The Debtors, as Plan proponents, have met their burden of proving the satisfaction of the requirements for confirmation of the Plan set forth in section 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard.

Further, each witness who testified on behalf of the Debtors at or in connection with (by declaration) the Confirmation Hearing was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

I.      <u>Voting Results</u>.  As more fully set forth in the Tabulation Certification, Class 3 and Class 4 voted to accept the Plan.

J.      <u>Bankruptcy Rule 3016</u>.  The Plan is dated and identifies the Debtors as the entities submitting the Plan, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).

## COMPLIANCE WITH SECTION 1129 OF BANKRUPTCY CODE

K.      <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  As further detailed below, the Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

1.      *Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).*  Article IV of the Plan designates eight Classes of Claims or Interests.  The Claims or Interests in each Class are substantially similar to other Claims or Interests in each such Class.  Valid business, legal, and factual reasons exist for separately classifying the various Classes of Claims and Interests under the Plan.  The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

2.      *Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).*  The Plan specifies that Classes 1 and 2 are Unimpaired under the Plan, within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

3.      *Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).*  The Plan specifies that Classes 3, 4, 5, 6, 7, and 8 are Impaired under the Plan, within the meaning of

section 1124 of the Bankruptcy Code, and specifies the treatment of such Classes, thereby

satisfying section 1123(a)(3) of the Bankruptcy Code.

    4.    *No Disparate Treatment (11 U.S.C. § 1123(a)(4))*.  The Plan provides for

the same treatment for each Claim or Interest in each respective Class unless the holder of a

particular Claim or Interest has agreed to less favorable treatment on account of such Claim or

Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

    5.    *Implementation of Plan (11 U.S.C. § 1123(a)(5))*.  Article VII and other

provisions of the Plan, the various documents included in the Plan Supplement, and the terms of

this Confirmation Order (this "**Order**") provide adequate and proper means for the

implementation of the Plan, including, but not limited to, the following:

    (a)    <u>Plan Consideration</u>. All consideration necessary to make Plan Distributions will be in the form of (i) Cash, (ii) the New Preferred Units, and (iii) the New Common Units.

    (b)    <u>Vesting of Assets</u>.  Except as otherwise provided in the Plan, on or after the Effective Date, all property of the Estates, wherever located, including all claims, rights and Causes of Action, and any property, wherever located, acquired by the Debtors under or in connection with the Plan shall vest in each respective Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances and Interests.

    (c)    <u>Issuance of New Common Units</u>.  New Common Units shall be issued on the Effective Date and distributed as soon as practicable thereafter in accordance with the Plan.

    (d)    <u>Issuance of New Preferred Units</u>.  New Preferred Units shall be issued on the Effective Date and shall be distributed on the Effective Date or as soon as practicable thereafter in accordance with the Plan.

    (e)    <u>Intercompany Interests</u>.  Notwithstanding anything to the contrary in the Plan except as provided in Section 12.2 of the Plan and subject to the Implementation Memorandum, on or after the Effective Date, any and all Intercompany Interests shall survive the Debtors' restructuring by virtue of such Intercompany Interests being left Unimpaired to maintain the existing organizational structure of the Debtors.

    (f)    <u>Amended Constituent Documents</u>.  On the Effective Date, the Amended Constituent Documents and any other applicable amended and restated corporate or other organizational documents of each of the Debtors shall be deemed authorized in all respects.

(g)      Corporate and Other Action.  Any action under the Plan to be taken by or required of the Debtors as applicable, including the adoption or amendment of certificates of incorporation and by-laws, the issuance of securities and instruments, or the selection of officers or directors, shall be authorized and approved in all respects, without any requirement of further action by any of the Debtors' equity holders, holders of partnership interests, sole members, boards of directors or boards of managers, or similar body, as applicable.

(h)      Exit Credit Facility.  On the Effective Date, the Reorganized Debtors shall be authorized to enter into the Exit Credit Facility without the need for any further corporate, limited liability company, or other similar action.  The entry of this Order shall be deemed approval of the Exit Credit Facility (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for or otherwise contemplated therein) and authorization for the Reorganized Debtors to enter into and execute the Exit Credit Facility Agreement and such other documents and agreements (including supplemental bi-lateral letter of credit agreements with any letter of credit issuer and all documentation related thereto) as the lenders under the Exit Credit Facility Agreement may reasonably require, subject to such modifications as the Reorganized Debtors may deem to be reasonably necessary to consummate transactions contemplated by the Exit Credit Facility.  The Reorganized Debtors may use the Exit Credit Facility for any purpose permitted thereunder, including the funding of obligations under the Plan.

(i)      Cancellation of Existing Securities and Agreements.  Except for the purpose of evidencing a right to distribution under the Plan and except as otherwise set forth in the Plan or this Order, on the Effective Date all agreements, instruments, and other documents evidencing, related to or connected with any Claim or Interest, other than Intercompany Claims and Intercompany Interests, and any rights of any holder in respect thereof, shall be deemed cancelled, discharged and of no force or effect.

(j)      Effective Date Transactions. Employee Protection Plan and STIP.  As of the Effective Date, the Reorganized Debtors shall be deemed to have adopted the Employee Protection Plan for all of the Debtors' full-time employees, and the Reorganized Debtors' obligations thereunder shall be deemed incurred as of the Effective Date.  For the STIP, the discretionary awards shall be paid on the Effective Date on terms included in Exhibit E of the Plan Supplement.

The Plan, therefore, satisfies section 1123(a)(5) of the Bankruptcy Code.

6.      *Charter Provisions (11 U.S.C. § 1123(a)(6)).*  The applicable Reorganized

Debtors organizational documents including, but not limited to, the Amended Constituent

Documents, the New LLC Agreement, and any and all certificates or articles of incorporation,

bylaws, limited partnership agreements, limited liability company agreements, or other similar

governance or organizational documents pertaining to the Reorganized Debtors (the

"**Reorganized Debtors Governance Documents**") shall contain provisions necessary to

(a) except as consented to by the initial holder thereof, prohibit the issuance of nonvoting equity

securities as required by section 1123(a)(6) of the Bankruptcy Code, subject to further

amendment of the applicable Reorganized Debtors' organizational documents as permitted by

applicable law, and (b) effectuate the provisions of the Plan, in each case without any further

action by the holders of New Common Units or New Preferred Units or directors, managers, or

similarly situated Persons of the Debtors or the Reorganized Debtors.  Accordingly, the Plan

satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

7.      *Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).*  The

identities and affiliations of any and all persons proposed to serve as a director or officer of the

Reorganized Debtors, to the extent known and determined, were disclosed at, or before, the

Confirmation Hearing in compliance with applicable law.  The foregoing is consistent with the

interests of holders of Claims and holders of Interests, and with public policy, thereby satisfying

section 1123(a)(7) of the Bankruptcy Code.

8.      *Additional Plan Provisions (11 U.S.C. § 1123(b)).*  As set forth below, the

discretionary provisions of the Plan comply with section 1123(b) of the Bankruptcy Code and are

not inconsistent with the applicable provisions of the Bankruptcy Code.  Thus, section 1123(b) of

the Bankruptcy Code is satisfied.

(a)      *Impairment/Unimpairment of Classes (11 U.S.C. § 1123(b)(1)).*  In

accordance with section 1123(b)(1) of the Bankruptcy Code, Classes 1 and 2 are Unimpaired,

and Classes 3, 4, 5, 6, 7, and 8 are Impaired, by the Plan.

(b)      *Assumption and Rejection of Executory Contracts and Unexpired*

*Leases (11 U.S.C. § 1123(b)(2)).*  In accordance with section 1123(b)(2) of the Bankruptcy Code,

Article X of the Plan provides for the assumption of each executory contract and unexpired lease, except that: (i) any executory contracts and unexpired leases that previously have been assumed, assumed and assigned, or rejected pursuant to a Final Order of the Court (including, without limitation, in connection with any of the Sales) shall be treated as provided in such Final Order; (ii) any executory contracts and unexpired leases listed on the Schedule of Rejected Contracts and Leases shall be deemed rejected as of the Effective Date; (iii) all executory contracts and unexpired leases that are the subject of a separate motion to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date shall be treated as provided for in the Final Order resolving such motion; and (iv) executory contracts and unexpired leases related to the D&O Liability Insurance Policies shall not be rejected; provided, that any executory contracts or unexpired leases that were in effect on the Petition Date and are rejected pursuant to a Final Order of the Court or are rejected through a separate motion to reject under section 365 of the Bankruptcy Code shall be deemed terminated upon rejection, provided that rejection of any executory contract or unexpired lease pursuant to the Plan or otherwise will not constitute a termination of obligations owed to the Debtors under such contract or lease that survive breach under applicable law.  Subject to the occurrence of the Effective Date, entry of this Order shall constitute approval of the assumptions, assumptions and assignments and rejections described in Article X of the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Each executory contract and unexpired lease assumed pursuant to Article X of the Plan shall revest in and be fully enforceable by the applicable Debtors in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Court authorizing and providing for its assumption, or applicable federal law.

(c)     *Retention of Claims (11 U.S.C. § 1123(b)(3)).*  Except as otherwise provided in the Plan, on and after the Effective Date, all property of the Estates, wherever

located, including all claims, rights and Causes of Action, and any property, wherever located, acquired by the Debtors under or in connection with the Plan, shall vest in each respective Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances and Interests, *provided, however*, that any real property being acquired by or vesting in the Reorganized Debtors pursuant to the Plan shall remain subject to any and all valid and existing easements and rights-of-way in favor of TPL SouthTex Processing Company, LP, T2 Eagle Ford Gathering Company LLC, T2 Gas Utility LLC or any other affiliate of Targa Resources Corporation.  On and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire and dispose of property, wherever located, and prosecute, compromise or settle any Claims (including any Administrative Expense Claims) and Causes of Action without supervision of or approval by the Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan or this Order.  Without limiting the foregoing, the Debtors may pay the charges that they incur on or after the Confirmation Date for Professional Persons' and ordinary course professionals' fees, disbursements, expenses  or related support services without application to the Court, and the Reorganized Debtors may pay the charges that they incur on or after the Effective Date for Professional Persons' and ordinary course professionals' fees, disbursements, expenses or related support services without application to the Court.

      i.  Except as expressly provided in the Plan or in this Order, nothing contained in the Plan or this Order shall be deemed to be a waiver or relinquishment of any rights or Causes of Action that the Reorganized Debtors, the Debtors, or the Estates may have, or that the Reorganized Debtors or the Debtors may choose to assert on behalf of their respective Estates or the Estates, as applicable, under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, (A) any and all Causes of

Action or claims against any Person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim and/or claim for setoff that seeks affirmative relief against the Debtors, their officers, directors or representatives or (B) the turnover of any property of the Estates to the Debtors or Reorganized Debtors.

    ii.  Except as expressly provided in the Plan or in this Order, nothing contained in the Plan or this Order shall be deemed to be a waiver or relinquishment of any rights or Causes of Action that the Debtors had immediately prior to the Petition Date or the Effective Date against or regarding any Claim left Unimpaired by the Plan.  The Reorganized Debtors or the Debtors, as applicable, shall have, retain, reserve and be entitled to commence, assert and pursue all such rights and Causes of Action as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights respecting any Claim left Unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced.

    iii.  Except as expressly provided in the Plan or in this Order, nothing contained in the Plan or this Order shall be deemed to release any post-Effective Date obligations of any party under the Plan, or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

    (d)  *Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).*  The Plan's other provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, but not limited to, provisions for (i) distributions to holders of Claims, (ii) resolution of Disputed Claims and Interests, (iii) Allowance of certain Claims and Interests, (iv) indemnification obligations, (v) releases by the Debtors of certain parties, (vi) releases by certain third parties, (vii) exculpations of certain parties, (viii) injunctions from certain actions,

and (ix) retention of the Court's jurisdiction, thereby satisfying the requirements of section 1123(b)(6) of the Bankruptcy Code.

9.      *Cure of Defaults (11 U.S.C. 1123(d))*.  Section 10.3 of the Plan provides that, except to the extent that less favorable treatment has been agreed to by the non-Debtor party or parties to each such executory contract or unexpired lease to be assumed or assumed and assigned pursuant to the Plan, any monetary defaults arising under such executory contract or unexpired lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the appropriate amount (the "**Cure Amount**") in full in Cash on the later of 30 days after: (a) the Effective Date; or (b) the date on which any Cure Dispute relating to such Cure Amount has been resolved (either consensually or through judicial decision).

10.     With respect to any executory contract or unexpired lease to be assumed or assumed and assigned pursuant to Section 10.1 of the Plan, the Debtors have (a) abided by the terms and conditions set forth in the Bidding Procedures Order and the CCPN Sale Order or MS/AL Sale Order (as applicable) and (b) have provided, on sufficient notice to all applicable counterparties, Cure Notices setting forth the applicable Cure Amount, if any, for each executory contract or unexpired lease to be assumed or assumed and assigned by the Debtors.  For the avoidance of doubt, to the extent the applicable counterparty to any contract or lease has received a Cure Notice from the Debtors, and failed to object to the Cure Amount by the deadline set forth therein, such Cure Amount shall be final in all cases (unless it has subsequently been modified by the Debtors).

11.     To the extent there is a Cure Dispute unresolved prior to the entry of this Order regarding (a) the Cure Amount, (b) the ability of the applicable Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or assumed and assigned, or (c) any

16

other matter pertaining to the proposed assumption or assumption and assignment, the cure

payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the

entry of a Final Order resolving such Cure Dispute and approving the assumption or assumption

and assignment.  To the extent such Cure Dispute relates solely to the Cure Amount, the

applicable Debtor may assume and/or assume and assign the applicable contract or lease prior to

the resolution of the Cure Dispute provided, that, such Debtor reserves Cash in an amount

sufficient to pay the full amount asserted as the required cure payment by the non-Debtor party

to such contract or lease (or such smaller amount fixed or estimated by the Court prior to or

subsequent to the entry of this Order).  To the extent the Cure Dispute is resolved or determined

against the applicable Debtor such Debtor may reject the applicable executory contract or

unexpired lease after such determination, and the counterparty may thereafter file a proof of

claim in the manner set forth in Section 3.2 of the Plan.

           12.      Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

     L.      <u>The Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.  As

further detailed below, the Debtors have complied with the applicable provisions of the

Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.  Specifically:

           1.      Each of the Debtor entities is a proper debtor under section 109 of the

Bankruptcy Code.

           2.      The Debtors have complied with all applicable provisions of the

Bankruptcy Code, except as otherwise provided or permitted by orders of the Court.

           3.      The Debtors have complied with the applicable provisions of the

Solicitation Orders, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, including,

but not limited to, sections 1125 and 1126(b) of the Bankruptcy Code, in (a) transmitting the

Solicitation Materials and related documents and (b) soliciting and tabulating votes with respect to the Plan (including with respect to the Original Plan).

4.    Good, sufficient, and timely notice of the Confirmation Hearing has been provided to each holder of Claims that was entitled to vote to accept or reject the Plan and to holders of Claims or Interests that were not entitled to vote to accept or reject the Plan.

5.    The Debtors did not solicit acceptances of the Original Plan or the Plan by any holder of Claims or holder of Interests prior to the transmission of the Original Disclosure Statement or Disclosure Statement Supplement, respectively.

M.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Plan is the product of the open, honest, and good faith process through which the Debtors have conducted their restructuring from the beginning of the Chapter 11 Cases and reflects extensive, good faith, arm's length negotiations among the Debtors and their economic stakeholders.  The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' good faith, serve the public interest, and assure fair treatment of holders of Claims.  In addition to achieving a result consistent with the objectives of the Bankruptcy Code, the Plan allows the Debtors' economic stakeholders to realize the highest possible recoveries under the circumstances.  Consistent with the overriding purpose of the Bankruptcy Code, the Chapter 11 Cases were filed and the Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates.  Accordingly, the Plan is fair, reasonable, and consistent with sections 1122, 1123, and 1129 of the Bankruptcy Code.  Based on the foregoing, the facts and record of the Chapter 11 Cases, including, but not limited to, the hearing with respect to the Disclosure Statement, the hearing with respect to the Disclosure Statement Supplement, the Continued Solicitation Motion, the Confirmation Hearing, the Mosley

Declaration, and the Pacha Declaration, the Plan has been proposed in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.

N.    <u>Payment for Services or Cost and Expenses (11 U.S.C. § 1129(a)(4))</u>.  All payments made or to be made by the Debtors for services or for costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been authorized by, approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

O.    <u>Service of Certain Individuals (11 U.S.C. § 1129(a)(5))</u>.  The identity and affiliations of the persons proposed to serve as the initial directors and officers of the Reorganized Debtors after the confirmation of the Plan, to the extent known and determined, were disclosed at, or before, the Confirmation Hearing in compliance with applicable law. Selection of members of the Reorganized Debtors' boards was, and is, in compliance with the procedures set forth for selection in the Reorganized Debtors Governance Documents.  The appointment to, or continuance in, such offices and roles of such persons is consistent with the interests of holders of Claims against, or Interests in, the Debtors and with public policy. The identity of any insider that shall be employed or retained by the Reorganized Debtors, and the nature of such insider's compensation, have also been fully disclosed.  Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

P.    <u>Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  The Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction, and, accordingly, section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Plan.

Q.    <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>.

1.    The Plan satisfies section 1129(a)(7) of the Bankruptcy Code because each holder of a Claim or Interest either (a) has voted to accept the Plan, (b) is Unimpaired and

deemed to have accepted the Plan, or (c) shall receive or retain under the Plan, on account of

such Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less

than the amount that such holder would receive or retain if the Debtors were to be liquidated

under chapter 7 of the Bankruptcy Code on such date.

2.      In addition, the liquidation analysis attached as Exhibit B to the Disclosure

Statement Supplement and the other evidence related thereto in support of the Plan that was

proffered or adduced at, prior to, or in affidavits in connection with, the Confirmation Hearing

(a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence

was proffered, adduced, and/or presented, (b) utilize reasonable and appropriate methodologies

and assumptions, (c) have not been controverted by other evidence, and (d) establish that, with

respect to each Impaired Class of Claims or Interests, each holder of an Allowed Claim or

Interest in such Class shall receive under the Plan on account of such Allowed Claim or Interest

property of a value, as of the Effective Date, that is not less than the amount such holder would

receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy

Code.  Accordingly, the Debtors have satisfied the requirements of section 1129(a)(7) of the

Bankruptcy Code.

R.      Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).

1.      Holders of Claims in Classes 1 (Priority Non-Tax Claims) and 2 (Other

Secured Claims) are Unimpaired and, pursuant to section 1126(f) of the Bankruptcy Code, are

conclusively presumed to have accepted the Plan, thus meeting the requirements of section

1128(a)(8) of the Bankruptcy Code.

2.      As reflected in the Tabulation Certification, more than the

requisite  number of holders and Claim amounts in each Impaired Class of Claims entitled to

vote to accept or reject the Plan have affirmatively voted to accept the Plan (i.e., Class 3

(Prepetition Revolving Credit Facility Claims) voted 100% in number and 100% in amount to accept the Plan and Class 4 (Prepetition Term Loan Claims) voted 100% in number and 100% in amount to accept the Plan).

   3.  Accordingly, the Debtors have satisfied the requirements of section 1129(a)(8) of the Bankruptcy Code with respect to such Impaired Classes of Claims or Interests. Although Classes 5, 6, 7, and 8 are rejecting Classes for purposes of section 1129(a)(8) of the Bankruptcy Code, the Plan is confirmable pursuant to section 1129(b) of the Bankruptcy Code notwithstanding such rejection.

   S.  <u>Treatment of Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims, and Other Secured Claims (11 U.S.C. § 1129(a)(9))</u>.  The treatment of Administrative Expense Claims (including, for the avoidance of doubt, Roll-Up DIP Claims), Priority Tax Claims, Priority Non-Tax Claims, and Other Secured Claims pursuant to Articles III and IV of the Plan satisfies the requirements of sections 1129(a)(9) of the Bankruptcy Code. Holders of Allowed Roll-Up DIP Claims have consented to the treatment of such claims set forth in Section 3.1 of the Plan pursuant to that certain Cooperation Agreement, dated as of December 12, 2019 (the "**Cooperation Agreement**") attached as <u>Exhibit A</u> to the *Statement of Ad Hoc Group of Pre- and Postpetition Lenders in Support of the Debtors' First Amended Chapter 11 Plan, Disclosure Statement Supplement, and Motion Seeking Approval of Disclosure Statement Supplement* [D.I. 799].

   T.  <u>Acceptance by Impaired Class of Claims (11 U.S.C. § 1129(a)(10))</u>.  Class 3 (Prepetition Revolving Credit Facility Claims) and Class 4 (Prepetition Term Loan Claims), each of which is Impaired under the Plan, have voted to accept the Plan, determined without including any vote to accept the Plan by any insider, thereby satisfying section 1129(a)(10) of the Bankruptcy Code.

21

U.      Feasibility (11 U.S.C. § 1129(a)(11)).  All Allowed Claims shall be paid or otherwise satisfied in full in accordance with the terms of the Plan and the Plan Documents.  The evidence proffered, adduced, and/or presented at the Confirmation Hearing (1) is reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered, (2) utilizes reasonable and appropriate methodologies and assumptions, (3) has not been controverted by other evidence, and (4) establishes that the Plan is feasible, the Reorganized Debtors shall have sufficient liquidity and be able to meet their financial obligations under the Plan and in the ordinary course of their businesses, and the confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

V.      Payment of Fees (11 U.S.C. § 1129(a)(12)).  The Plan provides that the Debtors shall pay all outstanding U.S. Trustee Fees of a Debtor on an ongoing basis on the date such U.S. Trustee Fees become due, until such time as a final decree is entered closing the applicable Chapter 11 Case, the applicable Chapter 11 Case is converted or dismissed, or the Court orders otherwise, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

W.      Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  The Plan does not address or change retiree benefits, and, accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Plan.

X.      Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).  The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation and, accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable to the Plan.

Y.      Plan of an Individual Debtor (11 U.S.C. § 1129(a)(15)).  None of the Debtors are individuals and, accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable to the Plan.

Z.      Transfers in Accordance with Non-Bankruptcy Law (11 U.S.C. § 1129(a)(16)). None of the Debtor entities is a nonprofit entity and, accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable to the Plan.

AA.      No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).  Although Classes 5, 6, 7, and 8 are rejecting Classes for purposes of section 1129(a)(8) of the Bankruptcy Code, the Plan is confirmable pursuant to section 1129(b) of the Bankruptcy Code notwithstanding such rejection because, based upon the record before the Court and the treatment provided to such Claims and Interests, the Plan does not discriminate unfairly against, and is fair and equitable with respect to, such Classes of Claims and Interests, and the Plan satisfies all the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code, except for section 1129(a)(8).  The evidence in support of confirmation of the Plan proffered or adduced by the Debtors at, or prior to, or in declarations filed in connection with, the Confirmation Hearing regarding the Debtors' classification and treatment of Claims and Interests and the requirements for confirmation of the Plan under section 1129(b) of the Bankruptcy Code (1) is reasonable, persuasive, credible, and accurate, (2) utilizes reasonable and appropriate methodologies and assumptions, and (3) has not been controverted by other credible evidence.

BB.      Only One Plan (11 U.S.C. § 1129(c)).  The Plan (including the previous version as reflected in the Original Plan) is the only plan that has been filed in the Chapter 11 Cases and meets the requirements of sections 1129(a) and (b), thereby satisfying the requirements of section 1129(c) of the Bankruptcy Code.

CC.     Principal Purpose of Plan (11 U.S.C. § 1129(d)).  The principal purpose of the

Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the

Securities Act, thereby satisfying the requirements of section 1129(d) of the Bankruptcy Code.

DD.     Not Small Business Cases (11 U.S.C. § 1129(e)).  The Chapter 11 Cases are not

small business cases and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable to

the Chapter 11 Cases.

EE.     Good Faith Solicitation (11 U.S.C. § 1125(e)).  Based on the record of the

Chapter 11 Cases, including, but not limited to, the evidence proffered, adduced, and/or

presented at the Confirmation Hearing, which is reasonable, persuasive, and credible, utilizes

reasonable and appropriate methodologies and assumptions, and has not been controverted by

other evidence, the Debtors, the Reorganized Debtors, and each of their successors, predecessors,

control persons, members, agents, employees, officers, directors, financial advisors, investment

bankers, attorneys, accountants, consultants, and other professionals (1) have solicited

acceptances of the Plan in good faith and in compliance with the applicable provisions of the

Bankruptcy Code, including, but not limited to, section 1125(e) of the Bankruptcy Code, and any

applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in

connection with such solicitation, and (2) shall be deemed to have participated in good faith and

in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale,

and purchase of any securities offered and sold under the Plan and, therefore, (a) are not, and, on

account of any such offer, issuance, and solicitation, shall not be, liable at any time for any

violation of any applicable law, rule, or regulation governing the solicitation of acceptances or

rejections of the Plan or the offer, issuance, sale, or purchase of any securities offered and sold

under the Plan and (b) are entitled to the protections afforded by section 1125(e) of the

Bankruptcy Code and the exculpation provisions set forth in Article XII of the Plan.  In addition,

the Debtors have acted and entered into the documents effectuating the Debtors' restructuring

pursuant to the Plan in good faith and shall be deemed to continue to act in good faith if they

(1) proceed to consummate the Plan, the transactions contemplated thereby, and the Debtors'

restructuring pursuant thereto and (2) take the actions authorized and directed by this Order.  The

Debtors fairly and reasonably negotiated the transactions effectuating the Debtors' restructuring

at arm's length, and the resulting terms of the agreements (including the Exit Credit Facility

Documents and the Reorganized Debtors Governance Documents) are in the best interests of the

Debtors and the Estates.

FF.    <u>Satisfaction of Confirmation Requirements</u>.  Based upon the foregoing, all other

pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with

confirmation of the Plan, and all evidence and arguments made, proffered, or adduced at the

Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in section

1129 of the Bankruptcy Code.

## ADDITIONAL FINDINGS REGARDING CHAPTER 11 CASES AND PLAN

GG.    <u>Implementation</u>.  All documents and agreements necessary to implement the Plan,

including, but not limited to, those contained in the Plan Supplement, Exit Credit Facility

Documents, the Reorganized Debtors Governance Documents, and any Plan Document, are

essential elements of the Plan and have been negotiated in good faith and at arm's length, and

entry into and consummation of the transactions contemplated by each such document and

agreement is in the best interests of the Debtors, the Estates, and the holders of Claims and shall,

upon completion of documentation and execution, be valid, binding, and enforceable agreements

and not be in conflict with any federal, state, or local law.  The Debtors have exercised

reasonable business judgment in determining which agreements to enter into and have provided

sufficient and adequate notice of such documents and agreements.  The Debtors are authorized,

without any further notice to, or action, order, or approval of, the Court, to finalize, execute, and deliver all agreements, documents, instruments, and certificates relating to the Plan and to perform their obligations under such agreements, documents, instruments, and certificates in accordance with the Plan.

HH.    Transfers by the Debtors.  All transfers of property of the Estates shall be free and clear of all Liens, Claims, charges, interests, and other encumbrances, in accordance with applicable law, except as expressly provided in the Plan or this Order.

II.    Exemption from Securities Law.  The offering, issuance, and distribution of the securities contemplated by the Plan and any and all agreements incorporated therein, including, but not limited to, the New Common Units and the New Preferred Units, shall be exempt from, among other things, the registration and prospectus delivery requirements of section 5 of the Securities Act, and any other applicable state or federal law requiring registration or delivery of a prospectus prior to the offering, issuance, distribution, or sale of securities, pursuant to, section 1145 of the Bankruptcy Code (in the case of the New Common Units and New Series A Preferred Units), section 4(a)(2) of the Securities Act and Rule 506 of Regulation D promulgated thereunder (in the case of the issuance of the New Series B Preferred Units), or pursuant to another applicable exemption from the registration requirements of the Securities Act.

JJ.    Exit Credit Facility.

1.    The Exit Credit Facility, as may be amended or modified without further approval from the Court in accordance with its terms, is the best financing alternative available to the Debtors, an essential element of the Plan, was proposed in good faith, is critical to the success and feasibility of the Plan, and is necessary and appropriate for the consummation of the Plan.  Entry into the Exit Credit Facility, and all related agreements and documents (including any supplemental bi-lateral letter of credit agreement with any letter of credit issuer and all

documentation related thereto), is fair, reasonable, and in the best interests of the Debtors, their

Estates, all holders of Claims, and the Reorganized Debtors.  The lenders under the Exit Credit

Facility (together with the Exit Credit Facility Agent, the "**Exit Credit Facility Lenders**"), and

each of their respective agents and affiliates (together with the Exit Credit Facility Lenders, the

"**Exit Credit Facility Parties**") participated in good faith, arm's length negotiations with respect

to the Exit Credit Facility and all other contracts, instruments, agreements, and documents to be

executed and delivered in connection with the Exit Credit Facility Documents (which, for

purposes of this Order shall include, but not be limited to, any guarantee agreements, any pledge

and security agreements, any mortgages, any exhibits and schedules to any agreements, UCC

financing statements, deposit account control agreements, any bi-lateral letter of credit

agreements with any letter of credit issuers of the Reorganized Debtors or other perfection

documents, any subordination agreements, and any intercreditor agreements, and collectively

with any and all commitment and fee letters and any and all highly confident letters), and any

credit extended or loans made to the Reorganized Debtors by the Exit Lenders pursuant to the

Exit Credit Facility, shall be deemed to have been extended, issued, and made in good faith and

for legitimate business purposes.

2.       The Exit Credit Facility Parties and their respective agents, affiliates,

members, officers, directors, employees, advisors, and attorneys are entitled to the protections

and indemnifications provided for in the Exit Credit Facility Documents.  The Debtors exercised

reasonable business judgment in determining to enter into the Exit Credit Facility and the Exit

Credit Facility Documents and have provided sufficient and adequate notice thereof, and, in

addition, the Debtors and the Reorganized Debtors, as applicable, are hereby authorized, without

further approval of the Court or notice to any other party, to execute and deliver the applicable

Exit Credit Facility Documents, amend or modify such documents without further notice to, or

27

approval from, the Court and fully perform their obligations thereunder.  The Exit Credit Facility

Documents (when, and to the extent, entered into) shall be, and are hereby deemed to be, valid,

binding, and enforceable against the applicable Reorganized Debtors in accordance with their

terms.  The Exit Credit Facility Agreement (a) contains, or shall contain, fixed maturity dates,

(b) contains, or shall contain, fixed or floating interest rate margins, and (c) is, or shall be, as the

case may be, secured by mortgages, pledges, Liens, and other security interests.  The mortgages,

pledges, Liens, and other security interests, and all other consideration granted pursuant to, or in

connection with, the Exit Credit Facility are, or shall be, as the case may be, and are hereby

deemed to be, granted in good faith, for good and valuable consideration, and for legitimate

business purposes as an inducement to the Exit Credit Facility Parties to extend credit

thereunder, and do not, and hereby are deemed not to, constitute fraudulent conveyances,

fraudulent transfers, or contributions of equity and shall not otherwise be subject to avoidance or

recharacterization.  No third party consents, authorizations, or approvals are required with

respect to the Exit Credit Facility Documents, and such Exit Credit Facility Documents do not,

and shall not, contravene the Reorganized Debtors Governance Documents or constitute a

violation of, a default under, or otherwise contravene any other instrument, contract, or

agreement to which the applicable Reorganized Debtor is a party.  Neither the execution and

delivery by the Reorganized Debtors of any of the Exit Credit Facility Documents, nor the

performance by the applicable Reorganized Debtor of its obligations thereunder, constitutes a

violation of, or a default under, any contract or agreement to be assumed, assumed and assigned,

or otherwise reinstated under the Plan.

     KK.    <u>Reorganized Debtors Governance Documents</u>.

       1.    The Reorganized Debtors Governance Documents, as may be amended or

modified without further approval from the Court in accordance with their terms, are essential

elements of the Plan, were proposed in good faith, are critical to the success and feasibility of the Plan, and are necessary and appropriate for the consummation of the Plan.  Entry into the Reorganized Debtors Governance Documents, and all related agreements and documents, is fair, reasonable, and in the best interests of the Debtors, their Estates, all holders of Claims, and the Reorganized Debtors.  The Reorganized Debtors Governance Documents are the product of good faith, arm's length negotiations.

2.      The Debtors exercised reasonable business judgment in determining to enter into the Reorganized Debtors Governance Documents and have provided sufficient and adequate notice thereof.  The Reorganized Debtors are hereby authorized, without further approval of this Court or notice to any other party, to execute and deliver the applicable Reorganized Debtors Governance Documents, including, but not limited to, the New LLC Agreement and the Amended Constituent Documents, amend or modify such documents without further notice to, or approval from, the Court, and fully perform their obligations thereunder. Neither the execution and delivery by the Reorganized Debtors of any of the Reorganized Debtors Governance Documents, nor the performance by the applicable Reorganized Debtor of its obligations thereunder, constitutes a violation of, or a default under, any contract or agreement to which they are a party, including, but not limited to, those contracts or agreements reinstated under the Plan.

LL.      Injunction, Exculpation, and Releases.

1.      The Court has jurisdiction under sections 157 and 1334(a) and (b) of title 28 of the United States Code to approve the releases, exculpations, and injunctions set forth in Article XII of the Plan.  Section 105(a) of the Bankruptcy Code permits issuance of the injunctions and approval of the releases and exculpations set forth in Article XII of the Plan.

2.      The Released Parties include (a) each member of the Ad Hoc Group; (b) the Prepetition Term Loan Lenders; (c) the Prepetition Revolving Credit Facility Lenders; (d) the Prepetition Term Loan Agent; (e) the Prepetition Revolving Credit Facility Agent; (f) the Debtors (for the avoidance of doubt, including the Reorganized Debtors, as applicable); (g) the DIP Agent and DIP Lenders; and (h) with respect to each of the foregoing Entities in clauses (a) through (g), such party's current and former affiliates and subsidiaries, and such Entities' and their current and former affiliates' and subsidiaries' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; provided, (i) that no Person shall be a Released Party if it (a) opts out of the releases provided for in Article XII of the Plan through a timely submitted Ballot or (b) rejects or is deemed to reject or deemed to accept the Plan and (ii) that no equity holder of the Debtors, in such capacity, shall be a Released Party (regardless of whether such interests are held directly or indirectly).  The Released Parties played a meaningful role in the negotiation and development of the Plan and the restructuring transactions and settlements contemplated thereby, including, but not limited to, agreeing to settle disputes and Claims, contributing claims in exchange for their treatment under the Plan, supporting the Plan, foregoing asserting certain rights, and/or providing valuable consideration assuring recoveries for the Estates' creditors and other stakeholders.  The Released Parties made substantial contributions to the Debtors and their Estates and played an integral role in working towards the resolution of the Chapter 11 Cases.  Accordingly, the release of potential claims

belonging to the Debtors or the Estates pursuant to the Plan are part of a fair and a valid exercise of the Debtors' business judgment, and the third party releases contemplated by Section 12.6(b) of the Plan are consensual, fair, reasonable, and appropriate under the circumstances of the Chapter 11 Cases.

3.      The Exculpated Parties include the Debtors and their respective subsidiaries, affiliates, current and former officers and directors, principals, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and all other retained Professional Persons.  The Exculpated Parties made substantial contributions to the Debtors and their Estates and played an integral role in working towards the resolution of the Chapter 11 Cases. Accordingly, the exculpations contemplated by Section 12.7 of the Plan are part of a fair and a valid exercise of the Debtors' business judgment and are fair, reasonable, and appropriate under the circumstances of the Chapter 11 Cases.

4.      Based on the record before the Court, including, but not limited to, the evidence proffered, adduced, and/or presented at the Confirmation Hearing, which is reasonable, persuasive, and credible, utilizes reasonable and appropriate methodologies and assumptions, and has not been controverted by other evidence, the release, exculpation, and injunction provisions set forth in the Plan (a) confer substantial benefit to the Estates, (b) are fair, equitable, reasonable, and necessary to the Debtors' reorganization, (c) are in the best interests of the Debtors, their Estates, and parties in interest, (d) are supported by valuable consideration, (e) do not relieve any party of liability arising out of an act or omission constituting willful misconduct (including, but not limited to, fraud) or gross negligence, (f) given and made after notice and opportunity for a hearing, and (g) with respect to the third party releases contemplated by Section 12.6(b) of the Plan, shall not be binding on any holder of a claim (i) voting to reject the Plan, (ii)

31

that abstains from voting on the Plan, or (iii) votes to accept the Plan but rejects the third party release provided in the Plan by checking the box on the applicable Ballot indicating that such holder opts not to grant such third party release.  Accordingly, the Court finds that the release, exculpation, and injunction provisions set forth in the Plan (x) were proposed in good faith, are essential to the Plan, are appropriately tailored, and are intended to promote finality and prevent parties from attempting to circumvent the Plan's terms, (y) are critical to the success of the Plan, and (z) are consistent with the Bankruptcy Code and applicable law and, therefore, are valid and binding.

MM.    Disputed Claims Reserve and Effective Date Distributions.  Based on the evidence proffered, adduced, and/or presented by the Debtors at the Confirmation Hearing, the procedures for establishing Disputed Claims reserves, as set forth more fully in Section 9.5 of the Plan, are adequate to ensure that each holder of a Claim that is Disputed on the Effective Date but Allowed thereafter shall receive distributions equal to the Plan Distributions such Disputed Claim would be entitled to on the Effective Date if such Disputed Claim were Allowed in its full amount on the Effective Date.

NN.    Payment of Administrative Expense Claims and Priority Claims.  Based on the evidence proffered, adduced, and/or presented by the Debtors at the Confirmation Hearing, the Plan provides for payment in full in Cash of all Allowed Administrative Expense Claims, Professional Fee Claims, Ad Hoc Group Fee Claims, New Money DIP Claims, Priority Tax Claims, and Priority Non-Tax Claims, as well as U.S. Trustee Fees.  The Plan provides for payment of Allowed Roll-Up DIP Claims in accordance with Section 3.1 thereof, which treatment has been consented to by holders of 100% of Allowed Roll-Up DIP Claims pursuant to the terms of the Cooperation Agreement.

OO.    <u>Retention of Jurisdiction</u>.  The Court may properly retain, and does hereby retain, jurisdiction over any matter arising under the Bankruptcy Code, or arising in, or related to, the Chapter 11 Cases or the Plan, after confirmation thereof and after the Effective Date, and any other matter or proceeding that is within the Court's jurisdiction pursuant to 28 U.S.C. § 1334 or 28 U.S.C. § 157.

PP.    <u>Likelihood of Satisfaction of Conditions Precedent</u>.  Each of the conditions precedent to the Confirmation Date and Effective Date, as set forth in Article XI of the Plan, has been satisfied or waived in accordance with the provisions of the Plan or is reasonably likely to be satisfied or waived prior to the Confirmation Date and Effective Date, as applicable.

QQ.    <u>Good Faith</u>.  The Debtors, the Ad Hoc Group, the DIP Lenders, the Prepetition Revolving Credit Facility Lenders, and the Prepetition Term Loan Lenders and all of their respective managers, members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners, affiliates and representatives will be acting in good faith if they proceed to (1) consummate the Plan and the agreements, transactions and transfers contemplated thereby, including, but not limited to, the Exit Credit Facility, and (2) take the actions authorized by this Order.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.    <u>Findings of Fact and Conclusions of Law</u>.  The findings and conclusions set forth above and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014, and are incorporated by reference as though fully set forth herein.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

2.      _Confirmation_.  All requirements for the confirmation of the Plan have

been satisfied.  Accordingly, the Plan, in its entirety, is CONFIRMED pursuant to section 1129

of the Bankruptcy Code.  Each of the terms and conditions of the Plan and the exhibits and

schedules thereto, including, but not limited to, the Plan Documents, and any amendments,

modifications, and supplements thereto, are an integral part of the Plan and are incorporated by

reference into this Order.  The failure to specifically describe or include any particular provision

of the Plan (or any Plan Document) in this Order shall not diminish or impair the effectiveness of

such provision, it being the intent of the Court that the Plan (including all Plan Documents) be

approved and confirmed in its entirety.  The Plan complies with all applicable provisions of the

Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  A copy of the confirmed Plan is

attached hereto as _Exhibit A_.  Once finalized and executed, the documents comprising the Plan

Documents and all other documents contemplated by the Plan shall, as applicable, constitute

legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in

accordance with their terms and the terms of the Plan and this Order.

3.      _Objections_.  All parties have had a fair opportunity to litigate all issues

raised by the Objections, or which might have been raised, and the Objections have been fully

and fairly litigated.  All Objections, responses, statements, reservation of rights, and comments in

opposition to the Plan, other than those withdrawn with prejudice in their entirety, waived,

settled, or resolved prior to the Confirmation Hearing, or otherwise resolved on the record of the

Confirmation Hearing and/or herein, are hereby overruled for the reasons stated on the record.

The record of the Confirmation Hearing is hereby closed.

4.      _Solicitation and Notice_.  Notice of the Confirmation Hearing and the Plan,

and all related documents, the solicitation of votes on the Plan, and the Solicitation Materials:

(a) complied with the solicitation procedures in the Solicitation Orders, (b) were appropriate and

satisfactory based upon the circumstances of the Chapter 11 Cases, and (c) were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

5. <u>Plan Classification</u>. The categories listed in Section 4.1 of the Plan classify Claims against, and Interests in, each of the Debtors, pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code, for all purposes, including, but not limited to, voting, confirmation of the Plan, and distributions pursuant to the Plan, and shall be controlling. The Court hereby holds that (a) the classifications of Claims and Interests under the Plan (i) are fair, reasonable, and appropriate and (ii) were not done for any improper purpose, (b) valid business, legal, and factual reasons exist for separately classifying the various Classes of Claims and Interests under the Plan, and (c) the creation of such Classes does not unfairly discriminate between or among holders of Claims or Interests.

6. <u>Compromise of Controversies</u>. In consideration for the Plan Distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all claims and controversies incorporated in the Plan. The entry of this Order will constitute the Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Court's finding that all such compromises or settlements are (a) in the best interest of the Debtors, the Estates, and their respective property and stakeholders and (b) fair, equitable and reasonable. Subject to Article VIII of the Plan, all Plan Distributions made to holders of Allowed Claims are intended to be and shall be final.

7. <u>Plan Transactions</u>. All of the transactions contemplated by the Plan are hereby approved. The Debtors and the Reorganized Debtors, as applicable, are authorized to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including, but not limited to, the following: (a) the execution and delivery of (i) appropriate agreements or other documents

of merger, amalgamation, consolidation, equity issuance, sale, and dissolution and

(ii) certificates of incorporation, certificates of partnership, operating agreements, bylaws, or

other documents containing terms that are consistent with or reasonably necessary to implement

the terms of the Plan and that satisfy the requirements of applicable law; (b) the execution and

delivery of appropriate instruments of equity issuance, transfer, assignment, assumption, or

delegation of any property, right, liability, duty, or obligation on terms consistent with the terms

of the Plan; and (c) all other actions that are consistent with the terms of the Plan that the

Debtors, Reorganized Debtors, and/or the Majority Ad Hoc Group, as applicable, determine are

necessary or appropriate.

8.      Exit Credit Facility.  The Exit Credit Facility constitutes a valid debt

obligation secured by Liens and is hereby approved.  The applicable Reorganized Debtors are

authorized, without further approval of the Court or any other party, to (a) enter into the Exit

Credit Facility Agreement and grant collateral security required thereunder, (b) execute and

make such security agreements, mortgages, control agreements, certificates, and other documents

and agreements (including any supplemental bi-lateral letter of credit agreements with any letter

of credit issuers) and deliveries as the lenders under the Exit Credit Facility or the Exit Credit

Facility Agent reasonably request, and (c) deliver customary opinions, in each case with such

changes as may be agreed between the Reorganized Debtors, the lenders under the Exit Credit

Facility, and the Exit Credit Facility Agent thereunder without further notice to, or approval

from, the Court, and the Exit Credit Facility Agreement, and all other documents, instruments,

and agreements to be entered into, delivered, or contemplated under the Plan or hereunder, shall

become effective in accordance with their terms on the Effective Date and are ratified.  The Exit

Credit Facility Agreement and all related documents, including, but not limited to, those granting

collateral security required thereunder, as may be amended or modified without further approval

from the Court in accordance with their terms, are approved and shall constitute legal, valid,

binding, and authorized obligations of the applicable Reorganized Debtors, enforceable in

accordance with their terms, and all creditors (existing and hereafter) and parties in interest are

and shall be bound thereby. The Reorganized Debtors and Debtors, as applicable, are authorized

to pay in full all fees, indemnities, and expenses incurred in connection with the Exit Credit

Facility. Notwithstanding anything to the contrary in the Plan or this Order, a holder of an

Allowed New Money DIP Claim shall be permitted, at its election in its sole discretion, to

become a Rollover Lender (as defined in the Exit Credit Facility) and have all or a portion of its

commitments under the Exit Credit Facility funded (or deemed to be so funded) from the cash

proceeds distributed in payment of its Allowed New Money DIP Claim in accordance with the

terms of the Exit Credit Facility and such other agreements, instruments, or other documents as

may be agreed between the Reorganized Debtors, the Rollover Lenders, and the Exit Credit

Facility Agent. All or a portion of such Allowed New Money DIP Claim that is so funded shall

be deemed to be paid in full in Cash in accordance with Section 3.1 of the Plan. Further,

notwithstanding anything to the contrary in the Plan or this Order, (a) all amounts on deposit in

the Letter of Credit Account (as defined in the DIP Credit Agreement) on the Effective Date

immediately prior to the occurrence thereof (such amounts, the "**Letter of Credit Account**

**Amount**") shall be withdrawn by the DIP Agent and applied by the DIP Agent to the payment of

the Allowed New Money DIP Claims on the Effective Date (with such excess amounts (if any)

to be applied as directed by the Debtors or, if applicable, with such shortfall amounts (if any) to

be provided by the Debtors to the DIP Agent in Cash for the purpose of satisfaction of the

Allowed New Money DIP Claims), which withdrawal and application shall be deemed to be a

payment made by the Debtors in accordance with the Plan and (b) on the Effective Date, the

Reorganized Debtors shall collateralize with Cash, or otherwise enter into arrangements

satisfactory to the Issuing Banks (as defined in the DIP Credit Agreement) to backstop, all issued and outstanding letters of credit under the DIP Facility (such letters of credit, the "**Existing Letters of Credit**") until such time as the Existing Letters of Credit are replaced by letters of credit issued under the Exit Credit Facility or any other letter of credit facility entered into by the Reorganized Debtors and acceptable to requisite lenders under the Exit Credit Facility.

9.  <u>Exit Credit Facility Liens</u>.  The security interests and Liens granted pursuant to, or in connection with, the Exit Credit Facility and the Exit Credit Facility Documents (a) shall constitute, as of the Effective Date, legal, valid, binding duly perfected, and enforceable Liens on, and security interests in, the applicable property and assets of the applicable Reorganized Debtors as set forth in the applicable Exit Credit Facility Documents, (b) are granted in good faith as an inducement to the lenders thereunder to extend credit thereunder, and (c) shall be, and hereby are, deemed not to constitute fraudulent conveyances, fraudulent transfers, or contributions of equity and shall not otherwise be subject to avoidance or recharacterization, and the priorities of such Liens and security interests shall be as set forth in the Exit Credit Facility Documents and subject only to such Liens and security interests as may be permitted pursuant hereto or under the Plan or under the Exit Credit Facility Documents.  On the Effective Date, all of the Liens and security interests to be created under, or in connection with, the Exit Credit Facility Documents shall (x) be deemed created, (y) be legal, valid, binding, and perfected, and (z) afford to the Exit Credit Facility Parties thereunder all remedies customarily granted to a holder of such Liens and security interests, without (i) any requirement of filing or recording of financing statements, or other evidence of such Liens and security interests and (ii) any approvals or consents from governmental entities or any other persons and regardless of whether or not there are any errors, deficiencies, or omissions in any property descriptions attached to any filing, and, to the extent permitted under applicable law, no further

act shall be required for perfection of such Liens and security interests.  Notwithstanding the

foregoing, the parties granting such Liens and security interests are authorized to make all filings

and recordings and to obtain all governmental approvals and consents necessary to establish and

perfect such Liens and security interests under the provisions of law that would be applicable in

the absence of this Order, and shall thereafter make all other filings and recordings that otherwise

would be necessary under applicable law to give notice of such Liens and security interests to

third parties.

          10.     <u>Issuance of New Common Units and New Preferred Units; Reinstatement</u>

<u>of Intercompany Interests</u>.  The issuance and distribution of the New Common Units and New

Preferred Units, and reinstatement of the Intercompany Interests, are essential elements of the

Plan, are fair, reasonable, and in the best interests of the Debtors, their Estates, and all holders of

Claims, and are hereby approved.  The Debtors have exercised reasonable business judgment in

determining to incorporate the New Common Units and New Preferred Units as part of the Plan

(and in determining to reinstate Intercompany Interests) and have provided sufficient and

adequate notice of the terms of the New Common Units and New Preferred Units.  The Debtors

and the Reorganized Debtors, as applicable, are authorized, without further approval of the Court

or any other party, to (a) issue the New Common Units and New Preferred Units, and reinstate

the Intercompany Interests, in accordance with the Plan, (b) execute and deliver all agreements,

documents, instruments, and certificates relating thereto, and (c) perform their obligations

thereunder.  On the Effective Date, each recipient of New Common Units and/or New Preferred

Units will be deemed to be a party to the New LLC Agreement without the need for execution of

the New LLC Agreement by such recipient.

          11.     <u>Reorganized Debtors Governance Documents</u>.  The Reorganized Debtors

Governance Documents, including, but not limited to, the New LLC Agreement and the

Amended Constituent Documents, are essential elements of the Plan, and the Reorganized

Debtors Governance Documents and the other related documents (as may be amended or

modified without further approval from the Court in accordance with their terms) are fair,

reasonable, and in the best interests of the Debtors, their Estates, and all holders of Claims and

are hereby approved.  The Debtors have exercised reasonable business judgment in determining

to implement and adopt the Reorganized Debtors Governance Documents and the other related

documents, and have provided sufficient and adequate notice of the terms of the Reorganized

Debtors Governance Documents.  The terms and conditions of the Reorganized Debtors

Governance Documents are fair and reasonable, and the Reorganized Debtors Governance

Documents were negotiated in good faith and at arm's length.  The Debtors and the Reorganized

Debtors, as applicable, are authorized, with the consent of the Majority Ad Hoc Group, but

without further approval of the Court or any other party, to (a) execute and deliver all

agreements, documents, instruments, and certificates relating to the Reorganized Debtors

Governance Documents, and to take such other actions as reasonably deemed necessary to

institute the measures set forth therein and to ensure compliance with, among other things,

applicable law, and (b) perform their obligations thereunder, including, but not limited to, the

payment of all fees, indemnities, and expenses provided therein.

    12. <u>Exemption From Registration</u>.  The offering, issuance, and distribution of

the securities contemplated by the Plan and any and all agreements incorporated therein,

including, but not limited to, the New Common Units and the New Preferred Units, shall be

exempt from, among other things, the registration and prospectus delivery requirements of

section 5 of the Securities Act, and any other applicable state or federal law requiring registration

or delivery of a prospectus prior to the offering, issuance, distribution, or sale of securities,

pursuant to section 1145 of the Bankruptcy Code (in the case of the New Common Units and

New Series A Preferred Units), section 4(a)(2) of the Securities Act and Rule 506 of Regulation

D promulgated thereunder (in the case of the issuance of the New Series B Preferred Units), or

pursuant to another applicable exemption from the registration requirements of the Securities

Act.  In addition, any securities contemplated by the Plan and any and all agreements

incorporated therein, including, but not limited to, the New Common Units and the New

Preferred Units, shall be subject to (a) if issued pursuant to section 1145 of the Bankruptcy Code,

the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an

underwriter in section 2(a)(11) of the Securities Act, (b) compliance with any rules and

regulations of the SEC, if any, applicable at the time of any future transfer of such securities or

instruments, (c) the restrictions, if any, on the transferability of such securities and instruments,

including, but not limited to, those set forth in the Reorganized Debtors Governance Documents,

and (d) applicable regulatory approval, if any.  The availability of the exemptions under section

1145 of the Bankruptcy Code, section 4(a)(2) of the Securities Act, and/or any other applicable

securities laws shall not be a condition to occurrence of the Effective Date of the Plan.

        13.     <u>Section 1146 Exemption</u>.  To the fullest extent permitted by section

1146(a) of the Bankruptcy Code and applicable law, (a) any issuance, transfer, or exchange

under the Plan of New Common Units and New Preferred Units and the security interests in

favor of the lenders under the Exit Credit Facility and (b) the consummation of sale transactions

by the Debtors and approved by the Court on and after the Confirmation Date through and

including the Effective Date, including any transfers effectuated under the Plan, the sale by the

Debtors of any owned property pursuant to section 363(b) of the Bankruptcy Code, and any

assumption, assignment, and/or sale by the Debtors of their interests in unexpired leases of non-

residential real property or executory contracts pursuant to section 365(a) of the Bankruptcy

Code, shall constitute a "transfer under a plan" and shall not be subject to any stamp, real estate

transfer, recording, or other similar tax.

14.    <u>Continued Existence and Vesting of Assets in Reorganized Debtors</u>.

(a)    Except as otherwise provided in the Plan or this Order, the Debtors

shall continue to exist after the Effective Date as Reorganized Debtors in accordance with the

applicable laws of the respective jurisdictions in which they are incorporated or organized and

pursuant to the Reorganized Debtors Governance Documents, for the purposes of satisfying their

obligations under the Plan and the continuation of their businesses.  On or after the Effective

Date, each Reorganized Debtor, in its discretion, is hereby authorized take such action as

permitted by applicable law and such Reorganized Debtor's organizational documents, as such

Reorganized Debtor may determine is reasonable and appropriate, including causing: (i) a

Reorganized Debtor to be merged into another Reorganized Debtor, or its Subsidiary and/or

affiliate; (ii) a Reorganized Debtor to be dissolved; (iii) the transfer of any equity interests of any

Reorganized Debtor from one Reorganized Debtor to another Reorganized Debtor; or (iv) the

legal name of a Reorganized Debtor to be changed.  Additionally, on the Effective Date, each

recipient of New Common Units or New Preferred Units is hereby deemed to be a party to the

New LLC Agreement without the need for execution of the New LLC Agreement by such

recipient.

(b)    Except as otherwise provided in the Plan or this Order, on and after

the Effective Date, all property of the Estates, wherever located, including all claims, rights and

Causes of Action, and any property, wherever located, acquired by the Debtors under or in

connection with the Plan, shall vest in each respective Reorganized Debtor free and clear of all

Claims, Liens, charges, other encumbrances and Interests.  On and after the Effective Date, the

Reorganized Debtors may operate their businesses and may use, acquire and dispose of property,

wherever located, and prosecute, compromise or settle any Claims (including any Administrative

Expense Claims) and Causes of Action without supervision of or approval by the Court and free

and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than

restrictions expressly imposed by the Plan or this Order.  Without limiting the foregoing, the

Reorganized Debtors may pay the charges that they incur on or after the Effective Date for

Professional Persons' and ordinary course professionals' fees, disbursements, expenses or related

support services without application to the Court.

(c)     On the Effective Date or as soon as reasonably practicable

thereafter, the Reorganized Debtors may take all actions that may be necessary or appropriate to

effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate

the Plan, including, (i) the execution and delivery of appropriate agreements or other documents

of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or

liquidation containing terms that are consistent with the terms of the Plan and that satisfy the

requirements of applicable law and any other terms to which the applicable entities may agree,

(ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption or

delegation of any asset, property, right, liability, debt or obligation on terms consistent with the

terms of the Plan and having other terms on which the applicable parties agree, (iii) the filing of

appropriate certificates or articles of incorporation, reincorporation, merger, consolidation,

conversion, dissolution, or other organizational documents pursuant to applicable state law, and

(iv) all other actions that the applicable entities determine to be necessary or appropriate,

including making filings or recordings that may be required by applicable law.

15.     <u>Cancellation of Existing Securities and Agreements</u>.  Except for the

purpose of evidencing a right to distribution under the Plan, and except as otherwise set forth in

the Plan or this Order (including paragraph 44 hereof), on the Effective Date all agreements,

instruments, and other documents  (including, without limitation, the DIP Documents, the

Prepetition Revolving Facility Documents, and the Prepetition Term Facility Documents (each as

defined in the Final DIP Order) but excluding all Existing Letters of Credit that are collateralized

in Cash or otherwise backstopped as further described in paragraph 8 above) evidencing, related

to or connected with any Claim or Interest other than Intercompany Claims and Intercompany

Interests, and any rights of any holder in respect thereof, shall be deemed cancelled, discharged,

and of no force or effect.  The holders of, or parties to, such cancelled instruments, securities,

and other documentation will have no rights arising from or relating to such instruments,

securities, and other documentation or the cancellation thereof, except the rights provided for

pursuant to the Plan or this Order.  Notwithstanding anything to the contrary herein or in the Plan

(but in addition to the provisions of paragraph 44 hereof), the DIP Credit Agreement, Prepetition

Term Loan Agreement and Prepetition Revolving Credit Facility Agreement shall continue in

effect solely to the extent necessary to (a) permit holders of DIP Claims, Prepetition Term Loan

Claims and the Prepetition Revolving Credit Facility Claims to receive Plan Distributions in

accordance with the terms of the Plan, (b) permit the Debtors to make Plan Distributions on

account of the DIP Claims, Prepetition Term Loan Claims and the Prepetition Revolving Credit

Facility Claims, (c) authorize the Debtors or Reorganized Debtors, as applicable, to compensate

and/or reimburse fees and expenses of the DIP Agent, Prepetition Term Loan Agent and

Prepetition Revolving Credit Facility Agent in accordance with the terms of the Plan, (d) subject

to the releases granted pursuant to section 12.6(b) of the Plan, to allow the DIP Agent,

Prepetition Term Loan Agent and the Prepetition Revolving Credit Facility Agent to enforce

their rights, claims, and interests vis-à-vis any party other than the Debtors and the Reorganized

Debtors, including any rights with respect to priority of payment and/or to exercise charging

liens, (e) to permit the DIP Agent, the Prepetition Term Loan Agent and the Prepetition

Revolving Credit Facility Agent to perform any function necessary to effectuate the foregoing and (f) to allow the DIP Agent, the Prepetition Term Loan Agent and the Prepetition Revolving Credit Facility Agent to appear in the Chapter 11 Cases or in any proceeding in the Court or any other court relating to the Prepetition Term Loan Agreement and Prepetition Revolving Credit Facility Agreement; provided that, nothing in this paragraph shall affect the discharge of Claims pursuant to the Bankruptcy Code, the Order, or the Plan.  Except as provided pursuant to the Plan or this Order, upon the satisfaction of the Prepetition Revolving Credit Facility Claims and the Prepetition Term Loan Claims, the Prepetition Agents and their respective agents, successors and assigns shall be discharged of all of their obligations and relieved of all further duties and responsibilities associated with the Prepetition Revolving Credit Facility and Prepetition Term Loan, as applicable.  Notwithstanding the foregoing (including, without limitation, the releases set forth in Section 12.6(b) of the Plan) the indemnification and expense reimbursement obligations of the Prepetition Revolving Credit Facility Lenders and the Prepetition Term Loan Lenders under the Prepetition Revolving Credit Facility and the Prepetition Term Loan Agreement, respectively, shall survive the Effective Date of the Plan.

16.    <u>Preservation, Transfer, and Waiver of Rights of Action</u>.  In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VII of the Plan, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action held by the Debtors, whether arising before or after the Petition Date, including, but not limited to, any Causes of Action that may be described in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or

the Reorganized Debtors, as applicable, shall not pursue any and all available Causes of Action against them.  The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan or this Order.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Court order, the Reorganized Debtors expressly reserve all Causes of Action for later adjudication and, therefore, no preclusion doctrine, including, but not limited to, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the confirmation or consummation of the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors.

17.    <u>Executory Contracts and Unexpired Leases</u>.

(a)    The Debtors have exercised sound business judgment in determining whether to assume or reject each of their executory contracts and unexpired leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, Article X of the Plan, and as set forth in the Plan Supplement and in the Schedule of Rejected Contracts and Leases.  Except as set forth herein or in separate orders entered by the Court relating to assumption of executory contracts or unexpired leases, the Debtors have cured, or provided adequate assurance of future performance (as that term is used in section 365 of the Bankruptcy Code) that the Debtors shall cure, defaults (if any) under or relating to each executory contract or unexpired lease assumed under the Plan.  The Court shall adjudicate and decide any unresolved disputes relating to the assumption of executory contracts and unexpired leases, including, but not limited to, disputed

46

issues relating to Cure Amounts, financial wherewithal, or adequate assurance of future performance, at a hearing scheduled at such time as determined by the Court.

(b)     As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, all executory contracts and unexpired leases of the Debtors shall be deemed assumed, and such assumptions are hereby approved, except that (i) any executory contracts and unexpired leases that previously have been assumed, assumed and assigned, or rejected pursuant to a Final Order of the Court (including, without limitation, in connection with any of the Sales) shall be treated as provided in such Final Order, (ii) any executory contracts and unexpired leases listed on the Schedule of Rejected Contracts and Leases shall be deemed rejected as of the Effective Date, (iii) all executory contracts and unexpired leases that are the subject of a separate motion to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date shall be treated as provided for in the Final Order resolving such motion, and (iv) executory contracts and unexpired leases related to the D&O Liability Insurance Policies shall not be rejected; provided, that any executory contracts or unexpired leases that were in effect on the Petition Date and are rejected pursuant to a Final Order of the Court or are rejected through a separate motion to reject under section 365 of the Bankruptcy Code shall be deemed terminated upon rejection, provided that rejection of any executory contract or unexpired lease pursuant to the Plan or otherwise will not constitute a termination of obligations owed to the Debtors under such contract or lease that survive breach under applicable law.

(c)     Subject to the occurrence of the Effective Date, entry of this Order hereby constitutes approval of the assumptions, assumptions and assignments, and rejections described in Article X of the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each executory contract and unexpired lease assumed pursuant to Article X of the Plan shall

47

revest in and be fully enforceable by the applicable Reorganized Debtors in accordance with its

terms, except as modified by the provisions of the Plan, or any order of the Court authorizing and

providing for its assumption, or applicable federal law.

(d)    Nothing contained in the Plan or the listing of a document on the

Schedule of Rejected Contracts and Leases, any Cure Notice, or the Proposed Assumption and

Assignment Notice shall constitute an admission by the Debtors that such document is an

executory contract or an unexpired lease or that any Debtor or its successors and assigns has any

liability thereunder.

(e)    Notwithstanding anything to the contrary in the Plan, to the extent

that any of the executory contracts and unexpired leases of the Debtors are not listed on the

Schedule of Rejected Contracts and Leases, those executory contracts and unexpired leases of

the Debtors shall be assumed under the Plan, and such assumptions are hereby approved.

18.    <u>Distributions Under Plan</u>.

(a)    Except as set forth herein or in the Plan, each Plan Distribution

referred to in Article VIII of the Plan shall be governed by the terms and conditions set forth

herein and in the Plan applicable to such Plan Distribution and by the terms and conditions of the

instruments evidencing or relating to such Plan Distribution, if any, which terms and conditions

shall bind each entity receiving such Plan Distribution.  Except as otherwise provided herein or

in the Plan, Plan Distributions of Plan Consideration under the Plan shall be made by the Debtors

or the Reorganized Debtors, as applicable, to the Disbursing Agent for the benefit of the holders

of Allowed Claims, and the other eligible entities under the Plan, as applicable.  All Plan

Distributions by the Disbursing Agent shall be at the discretion of the Debtors or the

Reorganized Debtors, as applicable, and the Disbursing Agent shall not have any liability to any

entity for Plan Distributions made by it under the Plan.

(b)    Commencing upon the Effective Date, the Debtors, Reorganized Debtors, the Disbursing Agent, the Prepetition Agents, and Exit Credit Facility Agent, as applicable, are hereby authorized and directed to distribute the amounts required under the Plan, this Order, or any other order of the Court, as applicable, to the holders of Allowed Claims or other eligible entities, as applicable, solely according to the provisions of the Plan, including, but not limited to, Article VIII of the Plan, this Order, or any other order of the Court, as applicable.

19.    Disputed Claims.  The provisions of Article IX of the Plan, including, but not limited to, the provisions governing procedures for resolving Disputed Claims, are found to be fair and reasonable and are approved.

20.    No Post-Petition Interest on Claims.  Unless otherwise specifically provided for in the Plan or this Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

21.    Full and Final Satisfaction of Claims.  Upon the Effective Date, all Claims against, or Interests in, any of the Debtors shall be deemed fixed and adjusted pursuant to the Plan, and the Debtors shall have no further liability on account of any Claims or Interests except as set forth in the Plan or in this Order.  Except as otherwise provided by the Plan or this Order, all payments and all distributions made by the Debtors or the Reorganized Debtors under, and in accordance with, the Plan shall be in full and final satisfaction, settlement, and release of all Claims and Interests.

22.    Approval of Discharge, Releases, Injunctions, and Exculpations.  In light of all of the circumstances and the record in the Chapter 11 Cases, including the evidence proffered or addressed at the Confirmation Hearing and through the Mosely Declaration and the Pacha Declaration, each of the discharge, injunctions, indemnifications, and exculpations

49

provided under the Plan, including those, without limitation, set forth in Sections 12.2, 12.3, 12.4, 12.5, 12.6, 12.7, and 12.8 of the Plan, are hereby approved as being (a) within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d), (b) an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code, (c) an integral element of the transactions and settlements incorporated in the Plan, (d) beneficial to, and in the best interests of, the Debtors and the Estates, (e) critical to the overall objections of the Plan, and (f) consistent with sections 105, 1123, 1129, and all applicable provisions of the Bankruptcy Code and applicable law.

23.     <u>Discharge of Claims and Termination of Interests</u>.

(a)     **Upon the Effective Date and in consideration of the Plan Distributions, except as otherwise provided in the Plan or in this Order, each Person that is a holder (as well as any trustees and agents for or on behalf of such Person) of a Claim or Interest shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights and liabilities that arose prior to the Effective Date.  Except as otherwise provided herein or in the Plan, upon the Effective Date, all such holders of Claims and Interests shall be forever precluded and enjoined, pursuant to sections 105, 524, 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in any Debtor or any property, wherever located, of the Estates.**

(b)     **This Order constitutes a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date that shall, to the fullest extent provided under section 524 and other applicable provisions of the Bankruptcy Code, (i) void any judgment at any time obtained, to the extent that such**

**judgment is a determination of the personal liability of any Debtor or Reorganized Debtor with respect to any Claim discharged under this Order and (ii) operate as a permanent injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such discharged Claim as a personal liability of any Debtor or Reorganized Debtor.**

(c)    Except as otherwise expressly provided by the Plan or this Order, upon the Effective Date, (i) the rights afforded herein and in the Plan, and the treatment of all Claims and Interests under the Plan, shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Interests of any nature whatsoever, including, but not limited to, any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their respective assets, property, or Estates, (ii) all Claims and Interests shall be satisfied, discharged, and released in full, and each Debtor's liability with respect thereto shall be extinguished completely without further notice or action, and (iii) all Entities shall be precluded from asserting against the Debtors, the Estates, the Reorganized Debtors, each of their respective successors and assigns, and each of their respective assets and properties, any such Claims or Interests, whether based upon any documents, instruments, act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date or otherwise.

24.    **Injunction Against Interference with Plan.  All holders of Claims and Interests and other Persons, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, are hereby enjoined from taking any actions, whether in the United States or elsewhere, to interfere with the implementation or consummation of the Plan.  Moreover, section 1141(c) of the Bankruptcy Code provides, among other things, that the property dealt with by the Plan is free and clear of all Claims**

**and Interests.  As such, to the fullest extent permissible under applicable law, no Person**

**holding a Claim or Interest may receive any payment from, or seek recourse against, any**

**assets that are to be distributed under the Plan other than assets required to be distributed**

**to that Person under the Plan.  As of the Confirmation Date, to the fullest extent**

**permissible under applicable law, all Persons are precluded and barred from asserting**

**against any property to be distributed under the Plan any Claims, rights, Causes of Action,**

**liabilities, Interests, or other action or remedy based on any act, omission, transaction, or**

**other activity that occurred before the Confirmation Date except as expressly provided in**

**the Plan or this Order.**

25.    <u>Releases by Debtors</u>.  Pursuant to section 1123(b) of the Bankruptcy

Code, and except as otherwise specifically provided in the Plan or this Order, on and after the

Effective Date, for good and valuable consideration, including their cooperation and

contributions to the Chapter 11 Cases, the Released Parties are deemed released and discharged

by the Debtors and their Estates from any and all Claims, obligations, debts, rights, suits,

damages, Causes of Action, remedies and liabilities whatsoever, whether known or unknown,

foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity or

otherwise, whether for tort, fraud, contract, violations of federal or state laws or otherwise,

including Avoidance Actions, those Causes of Action based on veil piercing or alter-ego theories

of liability, contribution, indemnification, joint liability or otherwise that the Debtors, their

Estates or their affiliates would have been legally entitled to assert in their own right (whether

individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity or

that any holder of a Claim or Interest or other Entity would have been legally entitled to assert

derivatively for or on behalf of the Debtors, or their Estates, based on, relating to or in any

manner arising from, in whole or in part, the Debtors, their Estates, the purchase, sale or

rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party excluding any assumed executory contract or lease, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the DIP Credit Agreement, the Chapter 11 Cases, or, in each case, related agreements, instruments or other documents, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined in a Final Order to have constituted willful misconduct (including, without limitation, actual fraud) or gross negligence; provided, that if any Released Party directly or indirectly brings or asserts any Claim or Cause of Action that has been released or is contemplated to be released pursuant to the Plan in any way arising out of or related to any document or transaction that was in existence prior to the Effective Date against any other Released Party, and such Released Party does not abandon such Claim or Cause of Action upon request, then the release set forth in the Plan shall automatically and retroactively be null and void *ab initio* with respect to the Released Party bringing or asserting such Claim or Cause of Action; provided further that the immediately preceding proviso shall not apply to (i) any action by a Released Party in the Court (or any other court determined to have competent jurisdiction), including any appeal therefrom, to prosecute the amount, priority or secured status of any prepetition or ordinary course administrative Claim against the Debtors or (ii) any release or indemnification provided for in any settlement or granted under any other court order, provided that, in the case of (i) and (ii), the Debtors shall retain all defenses related to any such action.  Notwithstanding anything contained in the Plan or this Order to the contrary, the foregoing release shall not release any

obligation of any party under the Plan or any document, instrument, or agreement executed to implement the Plan.

26.     <u>Releases by Holders of Claims or Interests</u>.

(a)     Except as otherwise specifically provided in the Plan or this Order, on and after the Effective Date, for good and valuable consideration, including the obligations of the Debtors under the Plan, the Plan Consideration and other contracts, instruments, releases, agreements or documents executed and delivered in connection with the Plan, each Releasing Party is deemed to have consented to the Plan and the restructuring embodied therein for all purposes, and shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged the Released Parties from any and all Claims, Interests, obligations, debts, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity or otherwise, whether for tort, fraud, contract, violations of federal or state laws or otherwise, including Avoidance Actions, those Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability or otherwise that such Releasing Party would have been legally entitled to assert (whether individually or collectively), based on, relating to or in any manner arising from, in whole or in part, the Debtors, the Estates, the liquidation, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Releasing Party excluding any assumed executory contract or lease, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Plan Supplement, the DIP Credit Agreement, the Prepetition Revolving Credit

Facility, the Prepetition Term Loan Agreement, or the Plan or the Disclosure Statement, or, in each case, related agreements, instruments or other documents, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined in a Final Order to have constituted willful misconduct (including, without limitation, actual fraud) or gross negligence; provided that any holder of a Claim or Interest that elects to opt out of the releases contained in the Plan shall not receive the benefit of the releases set forth in the Plan (even if for any reason otherwise entitled).

(b)     Notwithstanding anything contained herein or in the Plan to the contrary, the foregoing release shall not release any obligation of any party under the Plan or any document, instrument or agreement executed to implement the Plan.

27.     Exculpation and Limitation of Liability.  On the Effective Date, except as otherwise provided herein or in the Plan, for good and valuable consideration, to the maximum extent permissible under applicable law, none of the Exculpated Parties shall have or incur any liability to any holder of any Claim or Interest or any other Person for any act or omission in connection with, or arising out of the Debtors' restructuring, including the negotiation, implementation and execution of the Plan, the Plan Supplement, the Chapter 11 Cases, the Prepetition Term Loan Agreement, the Prepetition Revolving Credit Facility Agreement, the Disclosure Statement, the solicitation of votes for and the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, including all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all activities leading to the promulgation and confirmation of the Plan except for gross negligence or willful misconduct, each as determined by a Final Order of the Court.  For purposes of the foregoing, any act or omission

effected with the approval of the Court conclusively will be deemed not to constitute gross negligence or willful misconduct unless the approval of the Court was obtained by fraud or misrepresentation, and in all respects, the applicable Persons shall be entitled to rely on the advice of counsel with respect to their duties and responsibilities under, or in connection with, the Chapter 11 Cases, the Plan, and administration thereof.  The Exculpated Parties have, and are be hereby deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distributions of the securities pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

28.    **Injunction.  All Persons are hereby enjoined from the commencement or prosecution, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released pursuant to the Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities released in or encompassed by Sections 12.6 and 12.7 of the Plan.  Each of the Reorganized Debtors and the Debtors is hereby authorized to enforce such injunction.**

29.    Amendments to the Plan.  If reasonably acceptable to the Debtors and the Majority Ad Hoc Group, the Plan may be amended, modified, or supplemented in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Court.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to the Plan, the Debtors may, if reasonably acceptable to the Debtors and the Majority Ad Hoc Group, make

appropriate technical adjustments, remedy any defect or omission or reconcile any

inconsistencies in the Plan, the Plan Documents, or this Order, with respect to such matters as

may be necessary to carry out the purposes and effects of the Plan, and any holder of a Claim or

Interest that has accepted the Plan shall be deemed to have accepted the Plan as amended,

modified, or supplemented.

30.     Revocation or Withdrawal of Plan.  The Debtors shall have the right, in

consultation with the Majority Ad Hoc Group, to revoke, delay, or withdraw the Plan, as to any

or all of the Debtors, prior to the Effective Date.  If the Debtors revoke, delay, or withdraw the

Plan, in accordance with the preceding sentence, prior to the Effective Date as to any or all of the

Debtors, or if confirmation or consummation as to any or all of the Debtors does not occur, then,

with respect to such Debtors, (a) the Plan shall be null and void in all respects, (b) any settlement

or compromise not previously approved by Final Order of the Court embodied in the Plan

(including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or

Interests), assumption, assumption and assignment, or rejection of executory contracts or leases

affected by the Plan, and any document or agreement executed pursuant to the Plan shall be

deemed null and void, and (c) nothing contained in the Plan shall (i) constitute a waiver or

release of any Claims by or against, or any Interests in, such Debtors or any other Person,

(ii) prejudice in any manner the rights of such Debtors or any other Person, or (iii) constitute an

admission of any sort by the Debtors or any other Person.

31.     Reversal.  If any or all of the provisions of this Order are hereafter

reversed, modified, or vacated by subsequent order of the Court or any other court of competent

jurisdiction, such reversal, modification, or vacatur shall not affect the validity or the

enforceability of (a) any act, obligations, indebtedness, liability, priority, or Lien incurred or

undertaken by the Debtors or the Reorganized Debtors, as applicable, under or in connection

with the Plan (including, but not limited to, pursuant to any other order of the Court) prior to the date that the Debtors or the Reorganized Debtors received actual written notice of the effective date of any such reversal, modification, or vacatur or (b) any provisions of this Order that are not expressly reversed, modified, or vacated by such subsequent order of the Court or any other court of competent jurisdiction. Notwithstanding any such reversal, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Order, the Plan, and any amendments or modifications thereto.

32.   <u>Retention of Jurisdiction</u>.

(a)   Notwithstanding the entry of this Order and the occurrence of the Effective Date, on and after the Effective Date, the Court shall retain jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including, but not limited to, jurisdiction for the purposes set forth in Article XIII of the Plan.

(b)   Notwithstanding any other provision in Article XIII of the Plan to the contrary, nothing herein or in the Plan shall prevent the Reorganized Debtors from commencing and prosecuting any Causes of Action before any other court or judicial body which would otherwise have appropriate jurisdiction over the matter and parties thereto, and nothing herein shall restrict any such courts or judicial bodies from hearing and resolving such Causes of Action.

33.   <u>Successors and Assigns</u>. Except as expressly set forth herein or in the Plan, the rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or

assign, affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

34.     <u>No Successors In Interest</u>.  Except as to obligations expressly assumed pursuant to the Plan, the Reorganized Debtors shall not be deemed to be successors to the Debtors and shall not assume, nor be deemed to assume, or in any way be responsible for, any successor liability or similar liability with respect to the Debtors or the Debtors' operations that are not expressly assumed or reinstated in connection with, or expressly provided by, the Plan or this Order.

35.     <u>Further Assurances</u>.  The holders of Claims receiving distributions under the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

36.     <u>Service of Documents</u>.  Any pleading, notice, or other document required by the Plan to be served shall be served pursuant to the terms of Section 14.12 of the Plan.

37.     <u>Effectiveness of All Actions</u>.  Except as set forth in the Plan or this Order, all actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after the Effective Date pursuant to this Order, as applicable, without further notice to, or action, order, or approval of, the Court or further action by the respective shareholders, affiliates, subsidiaries, members (including, but not limited to, ex-officio members), officers, directors, principals, managers, trustees, employees, partners, agents, or representatives of the Debtors or the Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such shareholders, affiliates, subsidiaries, members (including, but not limited to, ex-officio members), officers, directors, principals, managers, trustees, employees, partners, agents, or representatives.

38.     Notice of Confirmation Order and Effective Date; Substantial

Consummation of Plan.  KCC shall serve notice of the entry of this Order to (a) all holders of

Claims or Interests and (b) those parties on whom the Plan, Disclosure Statement, and related

documents were served.  Such service constitutes good and sufficient notice pursuant to

Bankruptcy Rules 2002(f)(7) and 3020(c).  On the Effective Date, or as soon thereafter as is

reasonably practicable, the Debtors shall file with the Court a "Notice of Effective Date" and

cause KCC to serve such Notice of Effective Date by first class mail, postage prepaid, or by

facsimile to those persons who have filed with the Court requests for notices pursuant to

Bankruptcy Rule 2002, which notice and service shall constitute appropriate and adequate notice

that the Plan has become effective.  Upon the Effective Date, the Plan shall be deemed

substantially consummated as to each Debtor entity, consistent with the definition of "substantial

consummation" as defined in section 1101(2) of the Bankruptcy Code.

39.     Transactions on Business Days.  If any payment, distribution, act or

deadline under the Plan is required to be made or performed or occurs on a day that is not a

Business Day, then the making of such payment or distribution, the performance of such act, or

the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but

shall be deemed to have been completed or to have occurred as of the required date.

40.     Filing of Additional Documents.  On or before substantial consummation

of the Plan, the Debtors shall file with the Court such agreements and other documents as may be

necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

41.     Utility Deposits.  All utilities, including, but not limited to, any Person

who received a deposit or other form of "adequate assurance" of performance pursuant to section

366 of the Bankruptcy Code during the Chapter 11 Cases (collectively, the "**Deposits**"), whether

pursuant to the *Final Order (I) Prohibiting Utilities from Altering, Refusing, and Discontinuing*

*Service, (II) Deeming Utilities Adequately Assured of Future Performance, and (III) Establishing*

*Procedures for Determining Requests for Additional Adequate Assurance* [D.I. 142] or

otherwise, including, but not limited to, gas, electric, and telephone services, are directed to

return such Deposits to the Reorganized Debtors, either by setoff against post-petition

indebtedness or by Cash refund, within thirty (30) days following the Effective Date.

       42.   <u>Insurance Neutrality</u>.  Notwithstanding any other term or provision in the

Plan or this Order, nothing in the Plan or this Order (a) shall prejudice any of the rights, claims,

or defenses of the Debtors' insurers (the "**Insurers**") under any insurance policies under which

the Debtors, or successor in interest, seeks coverage (the "**Policies**") and any agreements related

to the Policies (together with the Policies, the "**Insurance Agreements**"), (b) shall modify any of

the terms, conditions, limitations, and/or exclusions contained in the Insurance Agreements,

which shall remain in full force and effect, (c) shall be deemed to create any insurance coverage

that does not otherwise exist, if at all, under the terms of the Insurance Agreements, or create any

right of action against the Insurers that does not otherwise exist under applicable non-bankruptcy

law, (d) shall be deemed to prejudice any of the Insurers' rights and/or defenses in any pending

or subsequent litigation in which the Insurers or the Debtors may seek any declaration regarding

the nature and/or extent of any insurance coverage under the Insurance Agreements, (e) shall be

deemed to alter the continuing duties and obligations of any insured under the Insurance

Agreements, (f) shall be deemed or construed to create a direct right of action for any claimant or

plaintiff against any of the Insurers for insurance proceeds, except where such right exists as a

matter of law or otherwise, or (g) shall be construed as an acknowledgement that the Insurance

Agreements cover or otherwise apply to any claims or that any claims are eligible for payment

under any of the Insurance Agreements.  In addition, notwithstanding any other term or provision

in the Plan or this Order, nothing in the Plan or this Order shall alter, diminish, or otherwise

prejudice the rights, claims, or defenses of any of the Debtors or their successors in interest in respect of any Insurance Agreements.

43.    General Authorizations.  Pursuant to section 1142 of the Bankruptcy Code, Section 303 of the Delaware General Corporation Law, and any comparable provisions of the business corporation or similar law of any applicable state, the Debtors, the Reorganized Debtors, and any other necessary parties are authorized and empowered without further corporate action or action by the Debtors' directors, members, partners, shareholders, or any other person to (a) execute and deliver any instrument, agreement, or document, (b) adopt amendments to by-laws or similar governing documents, (c) appoint, on the Effective Date, the board of directors or other similar governing body of each Reorganized Debtor, and (d) perform any act that is necessary, desirable, or required to comply with the terms and conditions of the Plan and this Order and consummation of the Plan, and are authorized and empowered, without limitation, to take all actions necessary or appropriate to enter into, implement, perform under, and consummate the contracts, instruments, and other agreements or documents created in connection with the Plan, including, without limitation, entering into the Plan Documents and the Exit Credit Facility.

44.    DIP Claims.

(a)    DIP Claims Generally.  All Plan Distributions made on account of the DIP Claims, pursuant to Section 3.1 of the Plan, shall be indefeasible and not subject to avoidance, recharacterization, or other challenge.  The DIP Agent shall be discharged and shall have no further obligation or liability except as provided in the Plan and this Order, and after the performance by the DIP Agent and its representatives and professionals of any obligations and duties required under the Plan related to the DIP Facility, the DIP Agent shall be relieved of and released from any obligations and duties arising thereunder.  Notwithstanding anything to the

contrary in the Plan or this Order, the DIP Facility and the DIP Credit Agreement shall continue in full force and effect after the Effective Date with respect to any obligations thereunder governing (i) the Debtors' obligations under the DIP Facility, including under the DIP Credit Agreement and Final DIP Order, that are contingent and/or unliquidated, other than DIP Claims that are paid in full in Cash on or prior to the Effective Date, Roll-Up DIP Claims receiving their Pro Rata Share of the Roll-Up DIP New Preferred Units Distribution in accordance with Section 3.1 of the Plan, and contingent indemnification obligations of the Debtors under the DIP Facility and the Final DIP Order as to which a Claim has been asserted on or prior to the Effective Date and (ii) the relationship among the DIP Agent and the DIP Lenders, as applicable, including but not limited to, those provisions relating to the rights of the DIP Agent and the DIP Lenders to expense reimbursement, indemnification, and other similar amounts (either from the Debtors, the Reorganized Debtors, or the DIP Lenders), and any provision that may survive termination or maturity of the DIP Facility in accordance with the terms thereof.

(b)     <u>Allowed Roll-Up DIP Claims</u>.  Notwithstanding any provision contained in this Order, the Final DIP Order, or the Bankruptcy Code, including, but not limited to section 507(b) thereof, all Plan Distributions made on account of the Allowed Roll-Up DIP Claims, pursuant to Section 3.1 of the Plan, shall constitute full and final satisfaction of such Claims.  This Order shall supersede the requirement set forth in the Final DIP Order and the DIP Credit Agreement that the Allowed Roll-Up DIP Claims be paid in full and in cash on the Effective Date, <u>provided</u>, that, in the event that the Effective Date fails to occur, holders of such Claims shall retain all rights under the Final DIP Order and DIP Credit Agreement.

45.     <u>Administrative Expense Claims</u>.

(a)     The holder of an Administrative Expense Claim, other than the holder of (i) an Administrative Expense Claim that has been Allowed on or before the Effective

Date, (ii) an Administrative Expense Claim for an expense or liability incurred and payable in

the ordinary course of business by a Debtor, (iii) an Administrative Expense Claim on account of

fees and expenses incurred on or after the Petition Date by ordinary course professionals retained

by the Debtors pursuant to an order of the Court, (iv) a Claim for adequate protection arising

under the DIP Order, (v) an Intercompany Claim, or (vi) a claim for Cure Amounts (and, for the

avoidance of doubt, other than a holder of a Professional Fee Claim, DIP Claim, Ad Hoc Group

Fee Claim, or with respect to U.S. Trustee Fees), must file with the Court and serve on the

Debtors, the Claims Agent, and the U.S. Trustee, proof of such Administrative Expense Claim

within 30 days after the Effective Date (the "**Administrative Bar Date**").  Such proof of

Administrative Expense Claim must include at a minimum the following: (i) the name of the

applicable Debtor that is purported to be liable for the Administrative Expense Claim and if the

Administrative Expense Claim is asserted against more than one Debtor, the exact amount

asserted to be owed by each such Debtor; (ii) the name of the holder of the Administrative

Expense Claim; (iii) the asserted amount of the Administrative Expense Claim; (iv) the basis of

the Administrative Expense Claim; and (v) supporting documentation for the Administrative

Expense Claim.

   (b)  Failure to file and serve such proof of Administrative Expense

Claim timely and properly shall result in such claim being forever barred and discharged.  If for

any reason any such Administrative Expense Claim is incapable of being forever barred and

disallowed, then the holder of such Claim shall in no event have recourse to any property to be

distributed pursuant to the Plan.  The Debtors shall file a notice setting forth the Administrative

Bar Date on the Court's docket and serve such notice with the notice of the Effective Date and

post such notice on the Debtors' Case Information Website.  No other notice of the

Administrative Bar Date need be provided.

46.    <u>Professional Fee Claims</u>.

(a)    All requests for payment of Professional Fee Claims must be filed with the Court by the date that is 60 calendar days after the Confirmation Date; <u>provided</u>, that if any Professional Person is unable to file its own request with the Court, such Professional Person may deliver an original, executed copy and an electronic copy to the Debtors' attorneys and the Debtors at least three Business Days before the deadline, and the Debtors' attorneys shall file such request with the Court.  The objection deadline relating to a request for payment of Professional Fee Claims shall be 4:00 p.m. (prevailing Eastern Time) on the date that is 30 days after filing such request, and a hearing on such request, if necessary, shall be held no later than 30 calendar days after the objection deadline.  Distributions on account of Allowed Professional Fee Claims shall be made as soon as reasonably practicable after such Claims become Allowed.

(b)    Upon the Confirmation Date, any requirement that Professional Persons comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay all Professional Persons without any further notice to, action by or order or approval of the Court or any other party.

(c)    On or after the Effective Date, the Reorganized Debtors shall establish and fund the Fee Escrow Account.  The Reorganized Debtors shall fund the Fee Escrow Account with Cash equal to the Reorganized Debtors' good faith estimate of the Allowed Professional Fee Claims.  Funds held in the Fee Escrow Account shall not be considered property of the Reorganized Debtors' Estates or property of the Reorganized Debtors, but shall revert to the Reorganized Debtors only after all Allowed Professional Fee Claims have been paid in full.  Fees owing to the applicable holder of an Allowed Professional Fee Claim shall be paid in Cash to such holder from funds held in the Fee Escrow Account when such Claims are

Allowed by an order of the Court or authorized to be paid under the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [D.I. 191]; provided, that the Debtors' obligations with respect to Allowed Professional Fee Claims shall not be limited by nor deemed limited to the balance of funds held in the Fee Escrow Account.  To the extent that funds held in the Fee Escrow Account are insufficient to satisfy the amount of accrued Allowed Professional Fee Claims, the holders of Allowed Professional Fee Claims shall have an Allowed Administrative Expense Claim for any such deficiency, which shall be satisfied in accordance with Section 3.2 of the Plan.  No Liens, claims, or interests shall encumber the Fee Escrow Account in any way.

47.     Certain Liabilities to Governmental Units.  Notwithstanding any provision in this Order or the Plan, or any implementing document, nothing herein or therein shall (a) authorize the assumption, sale, assignment, or other transfer to any party of any easements, rights of way, licenses, instruments, contracts, leases, agreements, or other interests of the federal government or a State (collectively, "**State and Federal Interests**") without compliance with all terms of the State and Federal Interests and all applicable legal requirements and approvals under non-bankruptcy law, (b) authorize the transfer or assignment of any governmental license, permit, registration, authorization, or approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law, (c) be interpreted to set cure amounts or require the government to novate, approve, or otherwise consent to the assumption, sale, assignment, or other transfer of any State and Federal Interests, (d) subject to section 553 of the Bankruptcy Code, affect the government's rights to assert setoff or recoup any amounts due under, or relating to, the State and Federal Interests, (e) release or affect any deed restriction or easement in favor of a governmental unit (as defined in 11 U.S.C. § 101(27),  a "**Governmental Unit**"), (f) release,

nullify, preclude or enjoin the enforcement of any police or regulatory liability to a Governmental Unit (including, but not limited to, the Texas Commission on Environmental Quality) that any entity would be subject to as the post-Effective Date owner or operator of property subject hereto, or (g) divest any tribunal of any jurisdiction it may have with respect to the State and Federal Interests, or under police or regulatory law, to interpret this Order or to adjudicate any defense asserted under this Order, the   Plan, or any implementing document. Nothing in this Order or the Plan or related documents discharges, releases, precludes, or enjoins: (a) any liability to any Governmental Unit that is not a "claim" as defined in 11 U.S.C. § 101(5), (b) any claim (as defined in 11 U.S.C. § 101(5)) of a Governmental Unit arising on or after the Confirmation Date, (c) any police or regulatory liability to a Governmental Unit that any entity would be subject to as the owner or operator of property after the Confirmation Date, or (d) any liability to a Governmental Unit on the part of any Person other than the Debtors or Reorganized Debtors. Nor shall anything in this Order or the Plan or related documents enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence.

48.    <u>Payment of Statutory Fees</u>.  The Debtors shall pay all outstanding U.S. Trustee Fees of each Debtor on an ongoing basis on the date such U.S. Trustee Fees become due, until such time as a final decree is entered closing the applicable Chapter 11 Case, the applicable Chapter 11 Case is converted or dismissed, or the Court orders otherwise.

49.    <u>Term of Injunctions or Stays</u>.  Unless otherwise provided in this Order or the Plan, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Order), shall remain in full force

and effect until the Effective Date.  All injunctions or stays contained in the Plan or this Order

shall remain in full force and effect in accordance with their terms.

50.    <u>Plan Supplement</u>.  All materials included in the Plan Supplement (as may

be amended in accordance with the terms of the Plan or this Order) are integral to, part of, and

incorporated by reference into the Plan.  The Plan Supplement (as may be amended in

accordance with the terms of the Plan or this Order) and all related documents are hereby

approved, including, but not limited to, (a) the Amended Constituent Documents, (b) the list of

proposed officers and directors of the Reorganized Debtors, (c) the Schedule of Rejected

Contracts and Leases, (d) the Exit Credit Facility Agreement, (e) a list containing the

compensation arrangement for any insider of the Debtors who will be an officer of a

Reorganized Debtor, (f) the Implementation Memorandum, and (g) the New LLC Agreement.

51.    <u>Entire Agreement</u>.  Except as otherwise indicated, the Plan and the Plan

Supplement supersede all previous and contemporaneous negotiations, promises, covenants,

agreements, understandings, and representations on such subjects, all of which have become

merged and integrated into the Plan.

52.    <u>Headings</u>.  The headings contained within this Order are used for the

convenience of the parties and shall not alter or affect the meaning of the text of this Order.

53.    <u>Existing Board of Directors</u>.  On the Effective Date, the board of directors

of each of the Debtors shall consist of those individuals selected by the Debtors and the Majority

Ad Hoc Group and identified in the Plan Supplement.  Unless reappointed pursuant to Section

7.9(a) of the Plan, the members of the board of directors of each Debtor prior to the Effective

Date shall have no continuing obligations to the Debtors in their capacities as such on and after

the Effective Date and each such member shall be deemed to have resigned or shall otherwise

cease to be a director of the applicable Debtor on the Effective Date.  Commencing on the

Effective Date, each of the directors of each of the Reorganized Debtors shall serve pursuant to the terms of the applicable organizational documents of such Reorganized Debtor and may be replaced or removed in accordance therewith, as applicable.

54.     Non-Severability.  This Order constitutes a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with Section 14.6 of the Plan, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors and the Majority Ad Hoc Group, and (c) non-severable and mutually dependent.  The provisions of the Plan shall not be severable unless such severance is agreed to by the Debtors (or, if after the Effective Date, by the Reorganized Debtors), the Majority Ad Hoc Group, and such severance would constitute a permissible modification of the Plan pursuant to section 1127 of the Bankruptcy Code.

55.     Final Order.  This Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

56.     Closing of Chapter 11 Cases.  The Reorganized Debtors shall promptly, upon the full administration of the Chapter 11 Cases, file with the Court all documents required by the Bankruptcy Rules and any applicable orders of the Court to close the Chapter 11 Cases.

57.     Binding Effect; Waiver of Bankruptcy Rules 3020(e), 6004(h), and 7062 and Federal Rule of Civil Procedure 62(a).  The 14-day stay provided by Bankruptcy Rules 3020(e), 6004(h), and 7062 and Federal Rule of Civil Procedure 62(a) shall not apply to this Order.  Immediately upon the entry of this Order, (a) the provisions of the Plan shall be binding upon (i) the Debtors, (ii) all holders of Claims against, or Interests in, the Debtors, whether or not Impaired under the Plan and whether or not, if Impaired, such holders accepted the Plan, (iii) each Person acquiring property under the Plan, (iv) any other party in interest, (v) any Person making an appearance in the Chapter 11 Cases, and (vi) each of the foregoing's

respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians, and (b) the Debtors authorized to consummate the Plan immediately upon entry of this Order.

58.    Cigna. Notwithstanding anything to the contrary herein, in the Plan, or in any related notices, the "LINA Policies" as defined in the *Objection of Cigna Entities to Disclosure Statement for Chapter 11 Plan for Southcross Energy Partners L.P. and its Affiliated Debtors* [D.I. 559] (the "**Cigna Objection**") shall be assumed under the Plan.  In lieu of cure, any obligations coming due under the LINA Policies on and after December 31, 2019 shall pass through and survive assumption so that nothing in the Plan, this Order, section 365 of the Bankruptcy Code shall impact Cigna's (as defined in the Cigna Objection) rights of recovery under the LINA Policies for any obligations coming due under the LINA Policies on and after December 31, 2019, or any defenses with respect thereto.

59.    Local Texas Tax Authorities.  Notwithstanding anything to the contrary in the Plan or this Order, the Debtors or Reorganized Debtors, as applicable, shall pay the Allowed Secured Claims of the Local Texas Tax Authorities[4] in the ordinary course of business.  The tax liens, including statutory liens and privileges, if any, of the Local Texas Tax Authorities, to the extent that the Local Texas Tax Authorities are entitled to such liens, shall be expressly retained, in accordance with applicable state law with respect to taxes payable under applicable state law to the Local Texas Tax Authorities in the ordinary course of business, until such time as such Allowed Secured Claim is paid in full.  To the extent the Local Texas Tax Authorities' Allowed

---

[4] For purposes of this Final Order, the term "**Local Texas Tax Authorities**" shall refer to local governmental entities that are (a) authorized by the State of Texas to assess and collect taxes and (b) represented by either the law firms of Linebarger Goggan Blair & Sampson, LLP, McCreary, Veselka, Bragg & Allen, P.C., or Perdue Brandon Fielder Collins and Mott, LLP.

Secured Claims are not paid on or prior to January 31, 2020, interest shall begin to accrue on the

subject Allowed Secured Claims at the applicable non-bankruptcy interest rate provided under

state law.  In any event, the Allowed Secured Claims of the Local Texas Tax Authorities shall be

paid within 30 days of the Effective Date unless an objection thereto has been filed.

       60.   <u>Texas Comptroller of Public  Accounts</u>.  Notwithstanding any term in the

Plan or this Order to the contrary, (a) the Texas Comptroller of Public Accounts' (the

"**Comptroller**") setoff rights are preserved under section 553 of the Bankruptcy Code,

(b) pursuant to section 503(b)(1)(D) of the Bankruptcy Code, the Comptroller shall not be

required to file a request for payment of any amounts coming due post-petition, (c) any and all

tax liabilities owed by Debtors to the Comptroller, including those resulting from the Sales Tax

and Direct Pay Sales Tax audits of FL Rich Gas Services, LP (the "**Audits**"), shall be

determined, resolved, and paid under and in accordance with the laws of the State of Texas,

(d) all matters involving Debtors' liabilities to the Comptroller shall be resolved in accordance

with the processes and procedures provided by Texas law to the extent such processes and

procedures do not conflict with the *Order Establishing Deadlines and Procedures for Filing*

*Proofs of Claim and Approving the Form and Manner of Notice Thereof* [D.I. 260] (the "**Bar**

**Date Order**"); *provided* that the Comptroller shall be allowed to amend its proofs of claim,

without leave of court, to reflect tax liabilities owed by Debtors to the Comptroller determined in

connection with the Audits; and (e) the Chapter 11 Cases shall have no effect on the

Comptroller's rights as to non-Debtor third parties.  *Provided*, that any and all prepetition tax

liabilities against the Debtors asserted by the Comptroller shall be governed by the terms of the

Bar Date Order; *provided further*, that the Court shall retain jurisdiction to hear and determine all

matters involving the Debtors' and the Reorganized Debtors' (as applicable) pre-petition tax

liabilities to the Comptroller other than allowing the Audits to proceed under Texas Law,

including prosecution in Texas state courts with respect thereto.

61.    <u>The United States</u>.  Notwithstanding any provision to the contrary in the

Plan, this Order or any implementing plan documents (collectively, the "**Implementing**

**Documents**"):  Solely as to the United States, nothing in the Implementing Documents shall: (a)

require the United States to file an administrative claim in order to receive payment for any

liability described in 11 U.S.C. Section 503(b)(1)(B) and (C) of the Bankruptcy Code; (b) be

construed as a compromise or settlement of any claim, cause of action or interest of the United

States; (c) release, enjoin or discharge any non-Debtor from any claim, liability, suit, right or

cause of action of the United States; (d) require the United States to obtain Court approval prior

to amending any pre-petition or post-petition claim; (e) discharge any debt described in Section

1141(d)(6) of the Bankruptcy Code; (f) expand the scope of Section 505 of the Bankruptcy

Code; or (g) modify or alter Section 502 of the Bankruptcy Code with respect to the rights and

claims of the United States, including but not limited to the provisions pertaining to the

estimation of claims.  Administrative expense claims of the United States allowed pursuant to the

terms of the Plan or the Bankruptcy Code shall be paid in accordance with Section 1129(a)(9)(A)

of the Bankruptcy Code and shall accrue interest and penalties as provided by non-bankruptcy

law until paid in full.  Priority Tax Claims of the United States shall be paid in accordance with

Section 1129(a)(9)(C) of the Bankruptcy Code and to the extent the Priority Tax Claims of the

United States allowed pursuant to the terms of the Plan or the Bankruptcy Code (including any

penalties, interest or additions to tax entitled to priority under the Bankruptcy Code), if any, are

not paid in full in cash on the Effective Date, then such Priority Tax Claims shall accrue interest

commencing on the Effective Date at the rate set forth in Section 511 of the Bankruptcy Code.

Moreover, nothing shall effect a release, discharge or otherwise preclude any claim whatsoever

against any Debtor or the Debtors' Estates by or on behalf of the United States for any liability

arising (i) out of pre-petition or post-petition tax periods for which a required return has not been

filed or (ii) as a result of a pending audit or audit that may be performed with respect to any pre-

petition tax or post-petition tax return.  Further, nothing shall enjoin the United States from

amending any claim against any Debtor or the Debtors' Estates with respect to any tax liability

(y) arising out of pre-petition or post-petition tax periods for which a required tax return has not

been filed or (z) from a pending audit or audit that may be performed with respect to any pre-

petition or post-petition tax return.  Any liability arising out of pre-petition or post-petition tax

periods for which a required return has not been filed or as a result of a pending audit or audit

which may be performed with respect to any pre-petition or post-petition tax return shall be paid

in accordance with 11 U.S.C. Sections 1129(a)(9)(A) and (C).  Without limiting the foregoing

but for the avoidance of doubt, nothing contained in the Implementing Documents shall be

deemed to determine the tax liability of any person or entity, including, but not limited to, the

Debtors and the Reorganized Debtors, nor shall the Implementing Documents be deemed to have

determined the federal tax treatment of any item, distribution, or entity, including the federal tax

consequences of this Plan, nor shall anything in the Implementing Documents be deemed to have

conferred jurisdiction upon the Court to make determinations as to federal tax liability and

federal tax treatment except as provided under 11 U.S.C. Section 505.

      62.    The Dow Chemical Company.  Notwithstanding anything to the contrary

in this Order, the Plan, the Plan Supplement, any other Plan Document, and/or the transactions

contemplated thereby, or the acceptance by the Dow Chemical Company and/or its affiliates

(collectively, "**Dow**") of any distributions under the Plan, this Order and the Plan shall be

construed to provide as follows:

(a)      With respect to the Debtors' non-debtor affiliates and subsidiaries, Dow is not a "Releasing Party" under the Plan;

(b)      Dow's right to assert any Claims or Causes of Action (including rights of setoff, contribution, indemnification or recoupment) in response to any claims or Causes of Action that have been or may be asserted against Dow by, the Debtors, the Reorganized Debtors, the Estates, and/or any party acting on their behalf, shall not in any way be compromised, limited, reduced, restricted, enjoined or otherwise affected; *provided, however*, that Dow shall not be entitled to any affirmative recovery from the Debtors or the Reorganized Debtors unless such claims or Causes of Action arose after the Petition Date; and

(c)      as a result of the informal objection received from Dow in connection with the Debtors' proposed assumption of the Sale and Purchase Agreement for Ethane Product from Southcross Fractionators dated December 8, 2011, as amended, and the Sale and Purchase Agreement for Propane Product from Southcross Fractionators dated January 21, 2012, by and between Dow Hydrocarbons & Resources LLC and Southcross Marketing Company, Ltd. (the "**Dow Agreements**"), the Dow Agreements shall not be assumed, assumed and assigned, or rejected (as applicable) pursuant to the entry of this Order; *rather*, the assumption, assumption and assignment, or rejection of the Dow Agreements (as applicable) shall be deemed effective as of the Effective Date, subject to either (i) the entry of an additional Final Order, so determining or (ii) the agreement of Dow and the Debtors or Reorganized Debtors (as applicable).

63.      Estrella Resources.  As a result of the objection filed by Estrella Resources, L.L.C. d/b/a Star Natural Gas, L.L.C. ("**Star**") [D.I. 842] in connection with the Debtors' proposed rejection of that certain Amended and Restated Throughput Fee Agreement, dated April 21, 2011 (the "**Star Agreement**"), the Star Agreement shall not be assumed,

assumed and assigned, or rejected (as applicable) pursuant to the entry of this Order; rather, the assumption, assumption and assignment, or rejection of the Star Agreement (as applicable) shall be deemed effective as of the Effective Date, subject to either (i) the entry of an additional Final Order, so determining or (ii) the agreement of Star and the Debtors or Reorganized Debtors (as applicable).

64.    Order Approving Stipulation.  For the avoidance of doubt, notwithstanding anything to the contrary in the Plan or this Order, the *Order Approving Stipulation Between Debtors and Lisa Bueno Martinez for Relief From the Automatic Stay* [D.I. 257] shall remain in full force and effect, to the same extent as prior to the entry of this Order.

65.    Conflicts with This Order.  The provisions of the Plan and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Order that cannot be so reconciled, then solely to the extent of such inconsistency, the provisions of this Order shall govern, and any provision of this Order shall be deemed a modification of the Plan and shall control and take precedence.  Subject to paragraph 31 of this Order, the provisions of this Order are integrated with each other and are non-severable and mutually dependent.

**Dated: January 27th, 2020**
**Wilmington, Delaware**

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**